**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| T.W., a minor, | ) |
| By his parent and next friend, | ) |
| Ms. Dorothy Watson | ) |
| 1926 Rosedale Street, N.E. | ) |
| Washington D.C.  20002 | ) |
| | ) |
| and | ) |
| | ) |
| T.W. | ) |
| 1926 Rosedale Street, N.E. | ) |
| Washington, D.C. 20002 | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, | ) |
| A Municipal Corporation, | ) |
| One Judiciary Square | ) |
| 441 4th St., N.W. | ) |
| Washington, D.C.  20001, | ) |
| | ) |
| and | ) |
| | ) |
| Ms. Michelle Rhee, | ) |
| DCPS Chancellor | ) |
| District of Columbia Public Schools | ) |
| 825 North Capitol St., N.E. | ) |
| Washington, D.C.  20002 | ) |
| (In her official capacity) | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**<u>Introduction</u>**

1.      This is an action by Plaintiffs T.W. and Dorothy Watson for placement and funding

of T.W. at The Children's Guild, a full-time special education private school, with

transportation services to be provided, because the District of Columbia Public

1

Schools ("DCPS") is failing to provide T.W. with a free and appropriate public education ("FAPE") in violation of the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"). 20 U.S.C. § 1400 *et seq.*  DCPS is denying T.W. a FAPE because: 1) it has failed to create and implement an appropriate Individualized Educational Program ("IEP"), 2) it has failed to provide T.W. with an appropriate school placement that can meet his special needs, and 3) it has failed to provide him with the supervision, support and structure necessary to maintain his safety.

2.   This untenable situation is preventing T.W. from making educational progress and, even more urgently, has led to increasingly dangerous situations for T.W., including the setting of a life-threatening fire in the school building on September 5, 2007.

3.   DCPS's only response to the T.W.'s present state of crisis has been to remove him from the classroom and in fact to exclude him from school entirely.

4.   DCPS is also failing to follow the procedural requirements of the IDEIA, and therefore is failing to provide Ms. Watson and T.W. with the due process protections to which they are entitled, resulting in further injury to T.W.

### Jurisdiction

5.   This Court has jurisdiction over this matter pursuant to the Court's jurisdiction over cases arising under federal law and specifically under 20 U.S.C. § 1415 (i)(2)(A) (2007); 42 U.S.C. § 1983; 42 U.S.C. §1988; 28 U.S.C. § 1331, 2201, 2202; D.C. Mun. Regs. Tit. 5 §3031.5 (2007).

6.   Generally, parents challenging a school district's action under the IDEIA must first exhaust the administrative remedies available under the statute. 20 U.S.C. § 1415(l).

7.     However, parents may bypass the administrative process where exhaustion would
       be futile or inadequate.  *Honig v. Doe*, 484 U.S. 305, 326-27 (1988).  *See also*
       *Massey v. District of Columbia*, 400 F. Supp. 2d. 66, 69-70 (D.D.C. 2005);
       *Bridgeforth v. District of Columbia*, 933 F. Supp. 7, 9 (D.D.C. 1996).  In such
       circumstances, the rationale of the exhaustion requirement – to prevent "premature
       interruption of the administrative process" – is not served by the requirement of
       exhaustion.  *Massey*, 400 F. Supp. 2d. at 70, quoting *Randolph-Sheppard Vendors*
       *of Am. V. Weinberger*, 795 F.2d 90, 104 (D.C. Cir. 1986).

8.     Exhaustion of administrative remedies in this case is not required.  Continued
       pursuit of the administrative process would be futile and inadequate for Ms. Watson
       because DCPS is failing to meet both its procedural and substantive obligations
       under the IDEIA, and T.W. is consequently enduring irreparable harm – in the form
       of educational failure as well as highly perilous and even life-threatening situations
       at school – with each passing day.

       <u>DCPS's Failure to Provide T.W. with an Appropriate Educational Placement</u>

9.     First, DCPS has failed and is failing to provide T.W. with an appropriate school
       placement.

10.    During the 2004-2005 school year, T.W. was provided a full-time special education
       placement at National Children's Center based on his special needs, including a
       speech/language deficit, social/emotional problems, and problems with learning.

11.    On August 4, 2005, DCPS inappropriately exited T.W. from his special education
       program, placing him in a regular education Kindergarten classroom at Gibbs
       Elementary School ("Gibbs E.S.").  *See* <u>Attachment A</u>.

12. During the 2005-2006 school year, T.W.'s teacher made consistent comments indicating and highlighting his disabilities and need for considerable special education services, yet DCPS failed to identify, evaluate, and provide him with an appropriate educational placement and program. *Id.*

13. During the 2006-2007 school year, T.W. continued to struggle in his regular education setting; DCPS did not provide him with an IEP until the last six weeks of the school year. *Id.*

14. An IEP was created for T.W. on May 9, 2007; this IEP was untimely and inappropriate, and failed to provide him with the full-time special education placement he requires.

15. The IEP of May 9, 2007 provides 15 hours of specialized instruction per week and one hour of counseling per week; this level of special education services fails to appropriately serve T.W.'s significant learning disabilities as well as emotional and behavioral issues that regularly place him and his regular education peers in unsafe and potentially catastrophic situations.

16. The IEP itself states that only a "full time therapeutic setting" can appropriately serve T.W.'s special needs.

17. To date, DCPS has failed to provide T.W. with a FAPE in spite of the IEP team's determination of his need for a full-time therapeutic setting, continued academic failures, and increasingly dangerous situations that result from his disabilities.

18. On September 5, 2007, DCPS's failure to provide appropriate supervision, structure and support for T.W. led to T.W.'s setting a fire in the school's restroom, resulting

in evacuation of the building, significant fire damage, and the extended exclusion of T.W. from the classroom. *See* <u>Attachment A</u>.

<div align="center">DCPS's Failure to Hold a Resolution Session</div>

19.   Second, following the filing of a due process complaint for T.W. on April 3, 2007, DCPS failed to hold a resolution session as required by the IDEIA. 20 U.S.C. § 1415(f)(1)(B); <u>Attachment A.</u>

20.   The IDEIA requires the local educational agency, within fifteen days of receiving notice of the parent's due process complaint, to convene a resolution session with the parents and relevant members of the IEP team who have specific knowledge of the facts identified in the complaint. 20 U.S.C. § 1415(f)(1)(B); <u>Attachment B.</u>

21.   The IDEIA sets forth that at the resolution session, the parents are provided with an opportunity to discuss the complaint and the relating facts, and DCPS is provided with an opportunity to resolve the complaint. 20 U.S.C. § 1415(f)(1)(B).

22.   DCPS failed to contact Ms. Watson to schedule a resolution session. <u>Attachment C</u>.

23.   DCPS failed to contact undersigned counsel to schedule a resolution session. <u>Attachment D</u>.

24.   DCPS failed to convene any resolution session whatsoever for T.W. *See* <u>Attachments C</u> and <u>D</u>.

25.   Due to this failure, Ms. Watson was not afforded the opportunity to pursue an early resolution to her complaint, as required by the IDEIA.

<div align="center">DCPS's Failure to Respond to the Due Process Complaint</div>

26.   Third, DCPS failed to timely and appropriately respond to the due process complaint as required by the IDEIA. 20 U.S.C. § 1415 (c)(2)(B).

27.   The IDEIA specifically requires DCPS to send the parent a response within ten (10) days of receiving a due process complaint.  *Id.; See also* <u>Attachment B</u>.

28.   The IDEIA requires that DCPS respond to a due process hearing request in writing within ten days, providing: (1) an explanation of why the school district refused to take the actions raised in the complaint, (2) a description of other options that were considered and the reasons why those options were rejected, (3) a description of the evaluation, procedure, assessment, record or report the school district used as the basis for the refused action, and (4) a description of the factors that are relevant to the school district's refusal.  *See* 20 U.S.C. § 1415 (c)(2)(B).

29.   In this case, nineteen (19) days – nearly twice the legal limit – passed before any response whatsoever was provided to Ms. Watson.  *See* <u>Attachment D</u>.

30.   When a response was finally provided to Ms. Watson, it was not legally sufficient. *See* <u>Attachment E</u>.

31.   The DCPS response, a one-page fax, written and sent by the special education coordinator at Gibbs E.S., failed to provide the information required under federal law and failed to address the core issues of the due process complaint, which include assertions that T.W. requires a full-time special education placement that can serve his extensive learning deficits and social/emotional needs, that DCPS inappropriately exited T.W. from a full-time special education program, and that DCPS continues to deny a FAPE to T.W.  *See* <u>Attachment E</u>; 20 U.S.C. § 1415 (c)(2)(B).

32.   As a result of DCPS's legally insufficient and untimely response, Ms. Watson has not been provided with timely or adequate notice of DCPS's position or the reasons

behind its actions as they relate to T.W., further preventing her from any opportunity at early resolution and preventing her from being able to prepare her case if she has to proceed with the administrative process.

<u>DCPS's Failure to Respond to the Motion for Default</u>

33. Fourth, DCPS has failed to respond to the Motion for Default that was filed with the Student Hearing Office and served on DCPS on August 28, 2007. *See* <u>Attachment D</u>.

34. In response to DCPS's failure to timely and adequately provide a written response to the due process complaint of August 1, 2007 as well as DCPS's failure to convene a resolution session, Ms. Watson submitted a Motion for Default on August 28, 2007, in an effort to enforce her procedural and substantive rights under the IDEIA.

35. Pursuant to DCPS's own procedures, parties are required to respond to all motions no later than three (3) business days from the date the motion is filed with the Student Hearing Office. *See* Special Education Student Hearing Office Due Process Hearing Standard Operating Procedures § 401(C)(5).

36. To date, DCPS has provided no response to the Motion for Default.

37. To date, the Student Hearing Officer has not issued a decision based on the Motion for Default, further preventing Ms. Watson and T.W. from enforcing their procedural and substantive rights under the IDEIA.

<u>DCPS's Administrative Process Will Not Prevent the Immediate Irreparable Harm T.W. is Suffering</u>

38. T.W. is being denied a FAPE as required because DCPS is failing to create and implement an appropriate IEP, is failing to provide him with an appropriate educational placement, and is failing to provide an educational setting that will ensure T.W.'s safety and well being given his learning and behavioral needs.

39.    DCPS's ongoing failures to provide T.W. with a FAPE constitute irreparable harm that continues to compound with each passing day. *See Blackman v. District of Columbia*, 277 F. Supp. 2d. 71, 79 (D.D.C. 2003).

40.    This Court has held that "a well recognized exception to the exhaustion requirement, in an instance where irreparable harm may accrue, satisfies the failure to pursue administrative remedies." *Cox v. Brown*, 498 F. Supp. 823, 829 (D.D.C. 1980).

41.    The administrative remedy in this matter is the issuance of a hearing officer's determination following a due process hearing.

42.    The issuance of a hearing officer's determination is not required until seventy-five days after the due process complaint is received.  20 U.S.C. §1415(f)(B)(ii); D.C. Mun. Regs. tit. 5 § 3030.1(d).

43.    Thus, without the granting of a preliminary injunction, T.W. may face the denial of FAPE for more than thirty additional days and possibly for an even longer unknown period of time.

44.    In the interim, T.W. remains in an inappropriate placement and due to the present exclusion from class, is in fact receiving no educational services at all due to DCPS's failure to serve his extensive needs.

45.    Reliance on this administrative remedy cannot rectify the daily irreparable harm T.W. is suffering, particularly as T.W.'s present inappropriate placement is effecting increasingly dangerous and life-threatening situations for T.W.

<u>DCPS's Administrative Process is Futile and Inadequate</u>

46. DCPS's administrative process is inadequate to prevent the immediate injury to T.W., and Plaintiffs are therefore not required to exhaust the administrative process.

47. This Court has previously recognized that exhaustion of the administrative process by a parent is not required where DCPS failed to provide a student with an appropriate placement, to convene a resolution session following the filing of a due process complaint, and to timely and appropriately respond to a due process complaint as required by the IDEIA. *See Massey,* 400 F. Supp. 2d. at 69-73. In the instant case, DCPS failed in all three of these responsibilities.

48. The litany of DCPS's failures and inaction in this case reveals that DCPS is neglecting to comply with statutory procedures and to address Ms. Watson's due process complaint in the manner required by the IDEIA.

49. Due to DCPS's repeated failures to follow the IDEIA legal requirements, DCPS's process for administrative relief is both futile and inadequate.

50. Also, given the irreparable harm T.W. is suffering, DCPS's administrative process is inadequate.

51. There is additional impetus for the legal and administrative process to be completed without further delay: recent circumstances and events have made clear that DCPS cannot ensure T.W.'s safety or provide educational benefit. DCPS cannot provide necessary supervision and a safe school environment, which has led to highly dangerous situations such as T.W.'s igniting a fire in the school building, posing a major danger to himself and to his fellow students.

52. DCPS's only response to this untenable situation has been to exclude T.W. from school, magnifying the denial of a FAPE.

53. In sum, this Court has jurisdiction over the instant matter because exhaustion of administrative remedies is not required, given that pursuit of DCPS's administrative process is both futile and inadequate plus the irreparable harm that will be caused unless immediate judicial relief is provided.

**Parties**

54. T.W., the son of Plaintiff Dorothy Watson, is a seven year old resident of the District of Columbia.

55. T.W. is a "child with a disability" as defined by the District of Columbia Municipal Regulations ("DCMR") and the IDEIA, and is eligible to receive special education and related services pursuant to the DCMR and IDEIA.

56. Plaintiff Dorothy Watson is the great-grandmother and custodian of T.W.  She is the legal "parent" under the IDEIA.  20 U.S.C. § 1401(23).

57. Dorothy Watson has resided in the District of Columbia at all times relevant to the claims asserted herein.  Ms. Watson brings this action on behalf of her son as well as in her own right.

58. Defendant District of Columbia is a municipal corporation that receives federal funding for use in ensuring that children with disabilities in the District of Columbia are afforded the services to which they are entitled under the IDEIA.

59. Defendant Michelle Rhee is the Chancellor of DCPS, the public official charged with the responsibility of ensuring that DCPS complies with federal and local law

as to the education of children with disabilities. Ms. Rhee is sued in her official capacity.

**Factual Allegations**

60. T.W. is a seven year old student in the second grade with a significant learning disability as well as extensive emotional and behavioral needs.

61. T.W. is a student at Gibbs Elementary School ("Gibbs E.S."), a District of Columbia Public School.

62. T.W. began attending Gibbs E.S. at the beginning of the 2005-2006 school year.

63. Prior to attending Gibbs E.S., DCPS had placed T.W. in a full-time special education program at National Children's Center.  *See* Attachments A and C.

64. DCPS exited T.W. entirely from special education on August 4, 2005, placing him in regular education Kindergarten classroom at Gibbs E.S.  *See id.*

65. T.W. has struggled with his academic achievement, emotional development, and behavior from the time he entered school at Gibbs E.S. in 2005-2006.  *See id.*

66. DCPS did not provide T.W. with evaluations for special education during T.W.'s 2005-2006 school year, in violation of the IDEIA requirements.  20 U.S.C. § 1412(a)(3)(A).

67. DCPS did not provide Ms. Watson with any written documentation of its refusal to initiate the special education evaluation or referral process for T.W. during the 2005-2006 school year.  20 U.S.C. § 1415(b)(3); § 1415(c) .

68. As a kindergarten student during the 2005-2006 school year, T.W.'s behavior was "aggressive" and marked by his "refusal to participate" in classroom lessons and activities.  *See* Attachment F.

69. T.W.'s teacher noted that T.W. was "easily distracted and his task performance is low," while "his reaction to being redirected is to demonstrate a tantrum." *See id.*

70. During the 2006-2007 school year, as a first grader, T.W. continued to make little to no educational progress and exhibited dangerous behavior, including, but not limited to moving classroom furniture, climbing on installations, and leaving the classroom unsupervised. *See* Attachment C.

71. T.W. has repeatedly been removed from class and sent to the office by his regular education teacher. *See id.*

72. T.W. is often unable to remain in the classroom and leaves without permission. On several occasions, he has wandered the school grounds without any teacher or staff supervision. *See id.*

73. On September 5, 2007, T.W. left the classroom by himself and proceeded to the school's restroom. Upon information and belief, he lit several matches from a match box that he possessed. According to Gibbs E.S., T.W. "caused arsenal [sic] combustion in the primary boy's bathroom using matches and toilet paper." Another student observed this behavior and reported it to school staff. The school building was evacuated, and the fire did extensive damage to the restroom. *See* Attachments C and H.

74. Gibbs E.S. is unable to provide T.W. with adequate supervision and the appropriate structure and therapeutic supports to maintain T.W.'s safety and to enable T.W. to make educational progress. *See* Attachment I.

75.  Ms. Watson has made consistent efforts to obtain an appropriate special education placement and program for T.W.  She requested special education evaluations for T.W. in December 2006.  *See* <u>Attachment A</u>.

76.  DCPS conducted a psycho-educational evaluation for T.W. in February 2007.  The DCPS psychologist confirmed T.W.'s diagnosis of Attention Deficit Hyperactivity Disorder (ADHD), identified considerable emotional problems, and determined that T.W. is learning disabled.  *See id.*

77.  At an MDT (Multi-Disciplinary Team) meeting for T.W. in March 2007, the MDT determined that T.W. qualifies for special education services with a classification of learning disabled.  *See id.*

78.  At an IEP meeting for T.W. convened on May 9, 2007, Ms. Watson expressed concerns that T.W. required a full-time special education placement and that Gibbs E.S. would be an inappropriate placement for T.W.  *See id.*

79.  As documented in the IEP of May 9, 2007, a General Education Classroom cannot meet his service needs, as it will effect "continued school failure," and a Combination General Education Classroom and Resource Room will not meet his service needs, as it will effect "continued conflicts with peers."  The IEP team agreed that a "full time therapeutic setting" is necessary to meet T.W.'s needs.  *See* <u>Attachment J</u>.

80.  However, DCPS failed to provide a full-time special education placement, as well as necessary and appropriate specialized instruction and related services.  *See* <u>Attachment A</u> and <u>J</u>.

81. DCPS failed to offer any placement other than at Gibbs E.S.  All present IEP team members, including the DCPS psychologist, agreed that Gibbs E.S. was an inappropriate placement for T.W.  *See* <u>Attachment C</u>.

82. Despite the agreement by the entire MDT/IEP team that Gibbs E.S. could not provide an appropriate education to T.W., no appropriate school placement has been provided by DCPS for T.W.  *See id.*

83. T.W. remains at Gibbs E.S., an inappropriate school where he is unsafe and unable to obtain educational benefit.  *See id.*

84. On August 1, 2007, Ms. Watson filed a due process complaint with the Student Hearing Office, requesting placement for T.W. at The Children's Guild, an appropriate full-time therapeutic non-public special education placement that can meet T.W.'s needs, with transportation services to be provided, and requesting compensatory education services for the time period in which T.W. was denied a free and appropriate public education.  <u>Attachments A</u>, <u>G</u>, and <u>I</u>.

85. DCPS did not provide Ms. Watson or undersigned counsel with a timely or adequate written response to her due process hearing request as required by the IDEIA.  20 U.S.C. § 1415(c)(2)(B); <u>Attachment D</u>.

86. DCPS did not contact undersigned counsel or Ms. Watson in an attempt to schedule a resolution session.  *See* <u>Attachments C</u> and <u>D</u>.

87. DCPS did not convene the legally required resolution session.  20 U.S.C.A. §1415(f)(1)(B).

88. DCPS did not respond to the Motion for Default Judgment that was filed on August 28, 2007.

14

89.   DCPS has failed for more than two years to provide T.W. with a FAPE, and has failed to comply with the due process procedural requirements of IDEIA.

**Claims for Relief**

90.   Plaintiffs incorporate by reference the factual allegations stated above in paragraphs 1 through 89.

91.   DCPS has denied T.W. a free and appropriate public education in violation of the IDEIA and District of Columbia law by failing: 1) to create an appropriate IEP; 2) to provide T.W. with an appropriate school placement that can meet his special education needs, and 3) to provide T.W. with the supervision, support and structure necessary to maintain his safety and enable him to benefit from his education.

92.   This Court has the authority under the IDEIA to order DCPS to provide T.W. with an appropriate placement where he can begin receiving a FAPE.

WHEREFORE, Plaintiffs respectfully request that the Court:

1.   Grant judgment for Plaintiffs and against Defendants.

2.   Grant declaratory relief that Defendants violated Plaintiffs' rights under applicable law.

3.   Grant injunctive relief ordering Defendants to immediately place and fund T.W. at The Children's Guild with all necessary special education and related services, including transportation services.

4.   Award attorneys' fees in this matter.

5.   Grant Plaintiffs any other relief this Court deems just and proper.

Respectfully submitted,

_____

Aaron J. Fischer, Esq.
D.C. Bar No. pending (admitted 9/10/07)
*Pro Bono* Counsel for Ms. Watson
The Children's Law Center
616 H St., NW, Suite 300
Washington, D.C. 20001
202-467-4900 ext. 525
Fax: 202-552-7125
afischer@childrenslawcenter.org

_____

Tracy L. Goodman, Esq.
D.C. Bar No. 481088
*Pro Bono* Counsel for Ms. Watson
The Children's Law Center
616 H St., NW, Suite 300
Washington, DC 20001
202-467-4900, ext. 503
Fax: 202-467-4949
tgoodman@childrenslawcenter.org

<u>Certification Pursuant to LCvR 83.2(g) and LCvR 83.2(j)</u>

I, Aaron J. Fischer, undersigned counsel, hereby certify that I am providing legal representation without compensation for Plaintiff, Dorothy Watson, in this matter, and that I am a member in good standing of the District of Columbia Bar.  Furthermore, I hereby certify that I have personal familiarity with the Local Rules for United States District Court for the District of Columbia.

I certify under penalty of perjury that the foregoing is true and correct.  Executed on September 19, 2007.

_____
Aaron J. Fischer, Esq.
D.C. Bar No. pending (admitted 9/10/07)
*Pro Bono* Counsel for Ms. Watson
The Children's Law Center
616 H St., NW, Suite 300
Washington, D.C. 20001
202-467-4900 ext. 525
Fax: 202-552-7125
afischer@childrenslawcenter.org

<u>Certification Pursuant to LCvR 83.2(g) and LCvR 83.2(j)</u>

I, Tracy L. Goodman, undersigned counsel, hereby certify that I am providing legal representation without compensation for Plaintiff, Dorothy Watson, in this matter, and that I am a member in good standing of the District of Columbia Bar.  Furthermore, I hereby certify that I have personal familiarity with the Local Rules for United States District Court for the District of Columbia.

I certify under penalty of perjury that the foregoing is true and correct.  Executed on September 19, 2007.

_____
Tracy L. Goodman, Esq.
D.C. Bar No. 481088
*Pro Bono* Counsel for Ms. Watson
The Children's Law Center
616 H St., NW, Suite 300
Washington, DC 20001
202-467-4900, ext. 503
Fax: 202-467-4949
tgoodman@childrenslawcenter.org

<u>**LIST OF ATTACHMENTS**</u>
<u>**FOR**</u>
<u>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**</u>

| | |
|---|---|
| Attachment A | Due Process Complaint Notice, August 1, 2007 |
| Attachment B | Student Hearing Office Scheduling Memorandum, August 6, 2007 |
| Attachment C | Declaration of Dorothy Watson |
| Attachment D | Declaration of Aaron J. Fischer, Esq. |
| Attachment E | DCPS Response to Due Process Complaint by Gibbs Elementary School special education coordinator, August 20, 2007 |
| Attachment F | T.W. Report Cards for Kindergarten (2005-2006) and First Grade (2006-2007) and Student Support Team SST Notes (2005-06) |
| Attachment G | Declaration of La Mar Williams, Director of Admissions, The Children's Guild |
| Attachment H | Notice of Student Disciplinary Action, Gibbs Elementary School, September 10, 2007 |
| Attachment I | Declaration of Ellie Giles, Expert in Special Education |
| Attachment J | Individualized Educational Plan, May 9, 2007 |

EXHIBIT

A

**State Educational Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**

# *Due Process Complaint Notice*

· The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a due process complaint notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

· Parents initiating a complaint must provide a completed due process complaint form to the Local Education Agency ("LEA"). For students in traditional public schools, nonpublic day school, or residential treatment facility, notice to the LEA shall be provided to the Office of the General Counsel, 825 N. Capitol St. NE, Washington, D.C. 20002, with a copy to the Student Hearing Office. If a charter school is a named party, the due process complaint must be provided to the principal or director of the charter school, with a copy to the Student Hearing Office.

· Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

· Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (**called a "Resolution Session"**) with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution sessions.**

· Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

· Policies and Procedures governing due process hearings are contained in federal and local law and the SHO SOP. You may obtain a copy of the SOP from the Student Hearing Office or any D.C. Public or Charter School without cost. The SOP is also at the DCPS website.

## A.    **Information About the Student:**

Student Name:  T█████ W███████        Birth Date: ███████

Address:  ████████████████████
   ____Washington D.C.  20002

Home School:  Gibbs Elementary School

Revised May 1, 2006

Present School of Attendance: <u>Gibbs Elementary School</u>
Is this a charter school? _____ (If yes, you must also provide a copy of this notice to
the charter school principal or director.)

Parent/Guardian of the Student: ▮▮▮▮▮▮▮

Address (if different from the student's above): <u>(same)</u>

Phone/Contact Number: (▮▮▮▮▮▮▮)    Fax Number (if applicable): _____

## B.    Individual Making the Complaint/Request for Due Process Hearing:

Name: ▮▮▮▮▮▮▮▮

Complete Address: ▮▮▮▮▮▮▮▮▮▮
                  <u>Washington D.C.  20002</u>.

Phone: (h) (▮▮▮▮▮▮▮)    (w) ▮▮▮▮▮▮▮    (Fax) _____    (e-mail) _____

Relationship to the Student:

☑ Parent              ☐ Legal Guardian                    ☐ Parent Surrogate
☐ Self/Student        ☐ Local Education Agency (LEA)      ☐ Parent Advocate

## C.    Legal Representative/Attorney (if applicable):

Name: <u>Aaron J. Fischer, Esq.</u>

Address: <u>The Children's Law Center</u>
         <u>616 H Street, NW – Suite 300</u>
         <u>Washington DC, 20001</u>

Phone: (w) <u>(202) 467-4900, x 525</u>   (Fax) <u>(202) 552-7125</u>   (e-mail) <u>Afischer@childrenslawcenter.org</u>
Will attorney /Legal representative attend the resolution session?    ☑ Yes          ☐ No

## D.    Complaint Made Against (check all that apply):

☑ DCPS school (name of the school if different from page one)_____
☐ Charter school (name of the charter school if different from page one)_____
☐ Non-public school or residential treatment facility (name) _____
☐ Parent

## E.    Resolution Session Between Parent and LEA:

I understand that it is my right to have a resolution session to resolve this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive the resolution session to avoid having this meeting.)

☐ I wish to waive the Resolution Session.

## F.    Mediation Process:

IDEA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session. Mediation is also available prior to a due process hearing, but mediation may not be used to deny or delay a parent's right to a hearing on the parent's due process complaint. Please check all that apply:

☐ I am requesting mediation as an alternative to the resolution session meeting.
☐ I am requesting mediation services only.
☑ I do not wish to use a mediator at this time.

## G.    Facts and Reasons for the Complaint:

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions. Provide complete details about all the facts supporting your claims. (You may attach additional pages if needed):

1.    What is the nature of the problem, including the facts relating to the problem, that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

T█████ W█████ is a seven-year old student with learning disabilities and substantial special education needs. He was in fact a full-time special education student during his Pre-K school year (2004-05). DCPS inappropriately terminated his eligibility for special education before the 2005-06 school year. For the next two years, as T███ struggled increasingly in the classroom to make educational progress, DCPS did not identify him as a child with special needs. DCPS failed to provide T███ an Individualized Education Plan (IEP), even as there were numerous red flags in the classroom and repeated pleas for help from his great-grandmother and legal guardian, Dorothy Watson. T███ was found eligible for special education in March 2007, but DCPS has continued to fail to provide T███ an appropriate IEP, appropriate special education services, and an appropriate placement.

## I. DCPS inappropriately exited T████ from his full-time special education program and provided no special education services for two years.

T████ special needs were evident at a very young age. On June 11, 2004, when T███ was four years old, an MDT/IEP team found him eligible for special education, providing him with 30 hours/week of specialized instruction, with placement at National Children's Center. His classification was "Developmental Delay." Yet on August 4, 2005, DCPS inappropriately terminated T███ eligibility for special education services and exited T███ from special education entirely. Instead of continuing to provide full-time, intensive special education services, DCPS placed T███ in a regular education Kindergarten class at Gibbs Elementary School. Subsequently, his substantial special needs went unmet, resulting in little to no educational progress and recurring behavioral problems reflective of his frustration and depression.

As a Kindergarten student at Gibbs Elementary School, T███ immediately and repeatedly demonstrated the severity and extent of his special needs. In October 2005, his teacher, Ms. Stevens, reported that T███ behavior was "aggressive" and marked by his "refusal to participate" in classroom lessons and activities. In January 2006, his teacher noted that T███ is "easily distracted and his task performance is low," while "his reaction to being redirected is to demonstrate a tantrum." Ms. Stevens explicitly noted that "additional support is needed" for T███. The same month, Ms. Stevens' outlined extensive concerns for a Student Support Team, identifying that T███ "ignores verbal directions," "crawls on the floor," "refuses to participate in group activities," "demonstrates periods of being in a trance-like state," and shows "limited work production." In June 2006, she wrote that T███ "becomes overstimulated in large groups" and "performs better in small groups." In spite of these reports, DCPS failed to identify T███ as a student with special needs, to evaluate him, and to provide him with an appropriate educational placement and program during the 2005-06 school year.

The following year, SY 2006-2007, T███ struggled consistently on all first grade academic work. He would not do the reading or math assignments provided by the regular education teacher. Upon information and belief, the situation deteriorated in the regular education classroom to the point

that, on a few occasions, the school staff sent T███ to the special education teacher's room, even *before* he was evaluated and found eligible for special education. DCPS's failure to provide an appropriate educational program and placement also repeatedly resulted in dangerous situations for T████ Without an appropriate educational environment – including but not limited to specialized instruction and appropriate related services including counseling – T████ regularly refused to complete his work assignments and participate in the classroom activities. Instead, he frequently hid under the classroom tables, moved chairs, left the classroom on his own and unsupervised, and even climbed on bathroom stalls, radiators, or tables. These major threats to T█████ safety highlight his need for a full-time special education placement that can serve both his learning disabilities and social/emotional needs.

**II. DCPS failed to timely and/or appropriately identify and evaluate T████ and provide an appropriate educational placement with the necessary specialized instruction and related services that Terrik requires in order to make educational progress.**

On December 21, 2006, Ms. W████ requested an immediate referral for special education evaluations. An initial MDT meeting was convened on January 30, 2007. During the meeting, the regular education teacher reported that T████ would do work only when he was taken out of the regular education classroom and placed in a considerably smaller setting, generally with the school social worker or special education teacher. Based on T█████ learning deficits and social/emotional problems, the team agreed to move forward with a psycho-educational evaluation and Functional Behavior Assessment. T██████ classroom teacher and Ms. Watson completed Functional Behavior Assessments, but DCPS has failed to create a Behavior Intervention Plan for T████.

In February 2007, the DCPS psychologist conducted a psycho-educational evaluation, in which he identified T█████ significant learning deficits. The evaluation report identifies that T█████ reading and math skills are in the "Borderline" range, and that his "related skills" – including the ability to match and read a series of printed words, match words with pictures, read sentences, and solve basic addition and subtraction problems – "are extremely low." The DCPS psychologist also identified impaired social/emotional functioning. The evaluation affirms that T█████ behavior – including having trouble staying seated, being overly active, acting impulsively, and being easily distracted – "are interfering with his learning process" and require "considerably more attention than it is getting" in his present placement.

During the referral and evaluation process, DCPS continued to fail to provide appropriate special education services for T██████, compounding the protracted denial of FAPE for T████. Upon information and belief, the school removed T████ from class and sent him home on several occasions in the fall and winter of the 2006-07 school year; these exclusions were DCPS's inappropriate response to T████ behavioral and academic problems stemming from his disabilities. On or about February 12, 2007, in response to behavior that was a clear manifestation of T██████ special needs and disabilities, the school suspended T████ for ten days. Parent's counsel contacted the school by letter to clarify that this ten-day suspension, along with the many class exclusions earlier in the year, would be a violation of the Individuals with Disabilities Education Act 2004. T████ ultimately served two days of this suspension before DCPS allowed him to return to school.

On March 22, 2007, T██████ multi-disciplinary team convened and finally found T████ eligible for special education; his disability classification was Learning Disabled. The team also determined that a large classroom with numerous students is not appropriate for T████ given his academic and social/emotional issues, including his LD and ADHD diagnoses. The DCPS psycho-educational evaluation report recommended that T████ requires a "different physical placement … i.e., either a different classroom where the opportunities for distraction are much less, or a different school where the opportunities for distraction are much less." DCPS has failed to provide such a placement.

**III. DCPS continues to fail to provide T▓▓▓an appropriate IEP, placement, and related services.**

Following the MDT meeting of March 22, 2007, DCPS twice canceled a scheduled IEP meeting to create an IEP for T▓▓ effecting a further delay in the special education process. An initial IEP meeting was scheduled for April 13, 2007; DCPS canceled this meeting. After rescheduling this IEP meeting for April 20, 2007, DCPS canceled that meeting as well. Even as T▓▓ continued to demonstrate substantial special needs in his academic program, no interim special education services were provided during this time. Finally, on May 9, 2007, an initial IEP meeting was held at Gibbs Elementary School. The IEP meeting did not include the legally-mandated participants, including the special education teacher, the school social worker, and an individual knowledgeable about the placement options for T▓▓. Among those IEP team members who did attend the meeting – including the special education coordinator and DCPS psychologist – no one was able to provide information on the special education program at Gibbs Elementary School nor any other placement option. DCPS refused to offer any placement other than Gibbs for T▓▓.

Ultimately, T▓▓ IEP – with its insufficient hours of specialized instruction, lack of a Behavior Intervention Plan, and inappropriately drafted IEP goals and objectives –cannot provide T▓▓ with the Free and Appropriate Public Education to which he is legally entitled. In response to the parent's stated disagreement with Gibbs as the placement, and despite the DCPS psychologist's and team's recommendations, the special education coordinator explained to the parent that he had no authority to offer or approve a placement outside of Gibbs Elementary School. Further, DCPS provided only 15 hours/week of specialized instruction, leaving T▓▓ in the regular education classroom where he has made little to no academic progress and ultimately, denying him the full-time special educational placement he requires. DCPS also failed to create and implement a Behavior Implementation Plan as part of T▓▓IEP in spite of Ms. Watson's request to do so and the agreement of the team that one was necessary for T▓▓. Finally, the IEP goals and objectives on his IEP are inappropriate. According to Gibbs' special education coordinator, they were drafted prior to the meeting by the school's special education teacher, who had limited knowledge of T▓▓ profile and needs and was not present at the IEP meeting. Strikingly, T▓▓ – who was present at the IEP meeting – completed some of the drafted short-term objectives (such as writing the numbers 1-25) *during the meeting*. The special education coordinator simply removed these objectives from Terrik's IEP. Without the appropriate and legally-mandated IEP team members in attendance, and without sufficient discussion about T▓▓need for a full-time special education placement that can serve his learning and social/emotional needs, DCPS failed to create an appropriate IEP for T▓▓.

T▓▓ has continued to demonstrate his extensive special needs, warranting a full-time special education program and placement. T▓▓ participated in the Extended School Year program at Miner Elementary School during summer 2007. The program's social worker documented in her report that T▓▓did not demonstrate progress on multiple articulated goals. She noted that T▓▓ "was not on task nor did he participate in any classroom instruction assignments." She further noted that when T▓▓ was unable to succeed in a classroom activity in which he demonstrated some effort, he "regressed quickly: Hiding under the table, angry." An ESY classroom aide reported at the conclusion of the summer program that T▓▓ had made no progress and refused to do any of his academic work. The program's coordinator indicated to Ms. W▓▓ that T▓▓ requires a "full-time therapeutic setting."

In sum, DCPS inappropriately exited T▓▓from special education on August 4, 2005, abruptly and wrongfully terminating his full-time special education program and placing him into regular education. For the next two school years, T▓▓ made little to no progress in his regular education classroom at Gibbs Elementary School: DCPS neither provided an appropriate setting nor appropriate special education services, preventing T▓▓ from receiving educational benefit and creating a dangerous environment for T▓▓ given his special needs. T▓▓ has continued to fail academically and to demonstrate increasingly serious social/emotional behaviors at school. Even when DCPS returned

T███ to special education at the parent's request on May 9, 2007, DCPS continued to fail to provide an appropriate educational placement and special education services for T███ to receive educational benefit. T█████ need for a full-time special education placement was identified, as reflected in his IEP during the 2004-05 school year. He will continue to fail in his present placement, which provides an insufficient level of special education services and a setting in which he has made essentially no progress for the last two years.

DCPS is on notice of any and all actions taken by DCPS and/or to which DCPS is a party, including but not limited to meetings held regarding T███ W████ and any interventions taken by DCPS, after the filing of this due process complaint and prior to a due process hearing. Consequently, ██████████, T█████ legal guardian, reserves the right to litigate new legal issues and present relevant evidence, in relation to those actions taken by DCPS that change and/or add relevant facts to this due process complaint, at the due process hearing that arises out of this complaint.

2.    To the extent known to you at this time, how can this problem be resolved?

1) DCPS will place and fund T███ at an appropriate, full-time non-public special education program – such as The Children's Guild – that can serve the needs of children with learning disabilities and social/emotional needs, with transportation services to be provided by DCPS. There is no DCPS program that is able to meet T████ special needs.

2) DCPS will provide compensatory education services for the two years in which it failed to provide FAPE to T███.

3.    Issues presented:

**The central issue to be addressed is the past and continuing failure of DCPS to provide T████ Watson with a Free and Appropriate Public Education. More specifically, the issues to be addressed include, but are not necessarily limited to the following:**

1) Whether DCPS inappropriately exited T███ from special education on August 4, 2005.

2) Whether DCPS failed to timely identify, locate, and/or appropriately evaluate T███ for special education eligibility.

3) Whether DCPS failed to create an appropriate Individualized Education Plan for T███ to address his special education needs.

4) Whether DCPS failed to provide T███ an appropriate educational placement to address his unique special needs.

5) Whether DCPS wrongfully excluded T███ from class for more than ten days without conducting a manifestation meeting to determine whether the demonstrated behaviors are related to T█████ disability.

6) Whether DCPS failed to create and implement an appropriate and/or timely Behavior Intervention Plan for T███.

7) Whether DCPS failed to include all necessary members of the MDT/IEP team in the IEP development process.

8) Whether DCPS has failed to convene and/or conduct appropriate and/or timely MDT/IEP meetings.

## H. <u>Estimated amount of time needed for the hearing</u>: 12 hours

Note: In the absence of a specified amount of time, the SHO schedules hearings in two hour blocks of time and will allocate two hours to conduct the hearing. Please indicate if you believe more than two hours will be needed.

## I. Accommodations and Assistance Needed:

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type)_____
- Special Communication (please describe the type)_____
- Special Accommodations for Disability (please be specific)_____
- Other_____

## J. <u>Waiver of Procedural Safeguards (Optional)</u>:

☐ I (parent/guardian) waive receiving a copy of the procedural safeguards at this time. I understand that waiver of this right is optional and not a requirement for filing this Complaint.

## K. <u>Requirement to Consider Compensatory Education</u>:

If a hearing is held on a date that is past the date on which the Hearing Officer's Determination was required to be issued, there is a rebuttable presumption of harm and compensatory education must be an issue considered by the Hearing Officer during the hearing.

## L. <u>Parent or Local Educational Agency Signature and Affirmation</u>:

I affirm that the information provided on this form is true and correct.

_____
Signature of Parent or Guardian                    Date

_____
Signature of Representative of the Local Educational Agency    Date
(if hearing requested by a LEA)

## M. <u>Signature of Attorney/ Legal Representative</u>:

_____
Legal Representative / Advocate                    Date

**Mail, fax or deliver this complaint notice to:**
**State Enforcement and Investigation Division**
**For Special Education Programs (SEID)**
**Student Hearing Office (SHO)**
**1150 5th Street, SE**
**Washington, DC 20003**
**Fax number: 202/698-3825**

EXHIBIT

β

# STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| W_____, T.           Petitioner | ) | |
| | ) | |
| Vs. | ) | HEARING OFFICER |
| | ) | |
| PUBLIC | ) | |
| Gibbs ES | ) | |
| | ) | DISTRICT OF COLUMBIA |
| Respondent | ) | |
| | ) | PUBLIC SCHOOLS |

## SCHEDULING MEMORANDUM

1.  A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint <u>within 15 calendar days of receiving notice of the parents' complaint</u>. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings**.

2.  The complaint notice was filed on **August 1, 2007**

3.  The deadline for the resolution meeting is **August 16, 2007** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A.  *__Prior Written Notice Not Issued by the Local Educational Agency__*.  If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, <u>within 10 days of receiving the complaint</u>, send to the parent a response that shall include:

   1.  An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;
   2.  A description of other options that the IEP Team considered and the reasons why those options were rejected;
   3.  A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

Rev'd. 7/6/05

...ion of the factors that is relevant to the agency's proposal or refusal.

B.     Prior written notice, if not already provided to the parent, must be sent by the Local Educational Agency to the complaining party no later than **August 11, 2007**.

C.     *Deficiency Notice*.  A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, <u>within 15 days of receiving the notice of the complaint</u>, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.     The deadline for filing a deficiency notice is **August 16, 2007**.

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence.  A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice.  The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law.  The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

Rev'd. 7/6/05

EXHIBIT

C

### DECLARATION OF DOROTHY WATSON IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Dorothy Watson declares and says as follows:

1.     I am the great-grandmother and adoptive parent of my son T.W., who is seven years old.

2.     I reside at 1926 Rosedale Street, NE, Washington, DC 20002.

3.     T.W. lives at the same residence as me.

4.     T.W. was placed in a full-time special education placement at National Children's Center for the 2004-2005 school year.

5.     During the 2004-2005 school year, his disability classification was "Developmental Delay."

6.     In August 2005, DCPS informed me that T.W. would no longer be eligible for special education; he was removed entirely from his full-time special education placement and program and placed in the regular education classroom at Gibbs Elementary School ("Gibbs ES").

7.     T.W. began attending Gibbs ES as a Kindergarten student in the 2005-2006 school year.

8.     During T.W.'s 2005-2006 school year, he struggled a lot with his academics as well as with his behavior at school.

9.     T.W.'s Kindergarten teacher expressed her concerns to me about his academic difficulties.

10.     DCPS did not provide T.W. with evaluations for special education during T.W.'s 2005-2006 school year.

11.     DCPS did not provide me with notice of my procedural safeguards under the IDEIA during T.W.'s 2005-2006 school year.

12.     DCPS did not provide me with any written documentation of its refusal to initiate the special education evaluation or referral process for T.W. during T.W.'s 2005-2006 school year.

13.     T.W. attended Gibbs ES as a first grade student during the 2006-2007 school year.

14. As a first grade student, T.W. would not listen to directions, frequently hid under the classroom tables, moved chairs, left the classroom on his own and entirely unsupervised, and even climbed on bathroom stalls, radiators, or tables.

15. On several occasions, he has wandered the school halls and playground without any teacher or staff person supervising him.

16. Because T.W.'s first grade teacher was often unable to calm T.W. down in the classroom and keep him on task, T.W.'s teacher would regularly send him to other classrooms and to the office.

17. T.W.'s first grade teacher expressed to me personally and at T.W.'s MDT/IEP meetings that she is unable to provide the appropriate instruction, supervision, and educational services to T.W. in her classroom given his special needs.

18. T.W. is often unable to remain in the classroom and therefore leaves on his own without permission.

19. On numerous occasions during the 2005-2006 and 2006-2007 school years, I have been called at work to come to the school in order to take T.W. home because the school is unable to manage T.W.'s behavioral problems.

20. Due to my concerns about T.W.'s behavioral, emotional, and academic difficulties, in December 2006, I requested that DCPS conduct special education evaluations for T.W.

21. I attended T.W.'s IEP meeting at Gibbs ES on May 9, 2007 with Aaron J. Fischer as my attorney.

22. At the IEP meeting on May 9, 2007, the special education coordinator stated that the school's special education program functions based on the inclusion model.

23. No one from DCPS at the IEP meeting on May 9, 2007 had knowledge about the special education program at Gibbs ES; the school's only special education teacher was not present for most of the meeting.

24. During the meeting on May 9, 2007, Mr. Fischer requested that the special education teacher be present at the meeting to describe the school's special education program. He eventually joined the IEP meeting for less than five minutes at the end of the meeting.

25. During this meeting, the special education teacher explained to the IEP team that he works with more than twenty special education students at all grade levels. In addition to the inclusion model, he generally serves all of these students – from the first to the sixth grade – in a large classroom setting.

26. The special education teacher has communicated to my attorney and me that because he works with such a large group of special education students at one time, he is unable to provide the appropriate level of attention to T.W given his special needs.

27. Based on this and other available information, the MDT/IEP team members – including the special education coordinator and DCPS psychologist – agreed that Gibbs ES was not an appropriate placement for T.W. given the combination of his special needs.

28. At that meeting, the DCPS psychologist recommended that T.W. be provided a different placement Specifically, the psychologist stated that T.W. needs a smaller educational setting and more behavioral supports.

29. The DCPS special education coordinator informed me that DCPS was offering placement at Gibbs ES.

30. I expressed my concerns that T.W. required a full-time special education placement that would be able to serve his learning disabilities and unique emotional and behavioral needs.

31. In spite of my concerns, DCPS refused to consider or offer any additional special education programs, placements, or services.

32. T.W. attended Miner Elementary School for the Extended School Year (ESY) program during the summer of 2007.

33. During T.W.'s ESY program at Miner Elementary School, DCPS could not provide the academic and educational supports necessary for T.W. to be able to do and complete his work and maintain appropriate behavior in the classroom. The program's coordinator recommended that T.W. required a full-time, therapeutic special education placement.

34. On August 27, 2007, T.W. entered second grade at Gibbs ES.

35. It is my understanding that Gibbs ES has kept T.W. in the special education coordinator's office during some school days this school year based on the fact that the school is unable to serve his needs and keep him safe in his classroom.

36. On September 5, 2007, I received a call from a staff person from Gibbs ES while I was at work. The school informed me that T.W. had left the classroom unsupervised and gone to the restroom by himself.

37. The staff person informed me that T.W. used a box of matches to ignite every roll of toilet paper in each stall on fire. Another student who observed this situation reported it to school staff.

38. Due to the fire ignited by T.W., the entire school building was evacuated and substantial damage was done to the school restroom.

39. Thankfully, T.W. was not physically injured during the incident, though he has been significantly affected emotionally and psychologically by this event; he was frightened by the fire setting and is upset about his actions and their consequences.

40. The school principal informed me shortly after the incident that T.W. would be suspended from Gibbs ES for eight (8) days, starting September 14, 2007.

41. DCPS did not communicate to me about any additional services, accommodations, or alternative placements that would be implemented in order to provide T.W. with an appropriate education and safe school environment given his special needs.

42. I am extremely concerned about T.W.'s lack of educational progress since he began at Gibbs ES more than two years ago.

43. I am extremely concerned about T.W.'s safety and well being at Gibbs ES, as he has repeatedly been placed in highly dangerous situations, including but not limited to climbing on school installations and furniture and starting fires, showing that he is not getting appropriate supervision, structure, and supports.

44. It is clear to me that the staff at Gibbs ES cannot keep T.W. safe and free from harm.

45. No DCPS representatives have contacted me to schedule a resolution session following my filing of a due process complaint on August 1, 2007.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on _9/13/07_

Dorothy Watson

**EXHIBIT**

D

### DECLARATION OF AARON FISCHER IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Aaron Fischer declares and says as follows:

1. I am an attorney serving as counsel for Dorothy Watson.

2. Dorothy Watson is the great-grandmother and adoptive mother of T.W.

3. T.W. is a seven year old special education student at Gibbs Elementary School.

4. I attended T.W.'s May 9, 2007 MDT/IEP meeting at Gibbs Elementary School.

5. At this meeting, DCPS failed to consider or offer any placement other than at Gibbs Elementary School.

6. All present IEP team members at the May 9, 2007 MDT/IEP meeting – including the special education coordinator and the DCPS psychologist – agreed that Gibbs Elementary School could not serve T.W.'s special needs.

7. I filed a due process complaint on behalf of Dorothy Watson on August 1, 2007.

8. I received no response, in writing or otherwise, from DCPS to the due process complaint for nineteen (19) days.

9. A response was faxed to me from Aaron Terry, the Special Education Coordinator at Gibbs Elementary School, on August 20, 2007.

10. DCPS never contacted me to schedule a dispute resolution session in this matter.

11. To date, no resolution session was ever held in this matter.

12. I filed a Motion for Default Judgment on behalf of Dorothy Watson on August 28, 2007.

13. To date, I received no response from DCPS to this Motion for Default Judgment.

14. No due process hearing has been scheduled in this matter.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on _____          _____
                                      Aaron J. Fischer, Esq.





EXHIBIT
E

# Gibbs ES – MEMO
**Mr. Aaron Terry, SEC**
**c/o Gibbs ES**
500 19ᵗʰ St., NE
Washington, DC 20002
Work: (202) 724 – 4573 OR (202) 939 – 4380
Cell: (301) 641 – 1410 FAX: (202) 724 – 3996
E-Mail:

**August 20, 2007**

**To:**  **Mr. Aaron Fischer, Ed. Attorney**
**c/o Children's Law Center**
616 H St., NW Suite 300
Washington, DC 20001 (**Via FAX**: (202) 467 – 4949)

**Subject:** Response To Complaint – T████ W█████

**Mr. Fischer, Ed. Attorney:**

In response to T████ W█████;

1) Student was EXITED from Sp. Ed. in 2005 by the Summer Assessment Team. PRIOR to coming to Gibbs ES and he was referred to our SST. Therefore DCPS Sp. Ed. Office at Gibbs ES was not responsible and cannot answer to why or when the process of the SST was delayed or never done.

2) As for the more than 10 Day Suspension. AGAIN this occurred PRIOR to the student being placed in Special Education in 2007.

3) As for the Placement, at the Initial 2007 ELIGIBILITY MEETING the DCPS Gibbs ES MDT Team, SPECIFICALLY stated that T████ was Emotionally Disturbed. BUT the attorney felt that our decision was "too drastic" OR they were not in agreement with the diagnosis, which is why the Functional Behavioral Assessment/FBA and Behavior Intervention Plan/BIP were never mentioned at the meetings. ALSO since T████ did not have any other serious OUTBURSTS in Gibbs ES after the IEP was implemented there was no reason for an FBA or BIP.

4) HOWEVER, we do know that T████ was hit by a car when not at school sometime towards the end of the school year. He was, "running across the street from his mother". DCPS knows of no follow up or intervention with community sources OR an outside agency independent of DCPS that was mentioned by the parent or attorney pertaining to this serious incident.

Sincerely,

Aaron Terry
**SEC - DCPS**

EXHIBIT
12

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## KINDERGARTEN PROGRESS REPORT

(Page 1 of 3)

Student: _Jada W._
SY: 2005-2006
Teacher: _G. Stevens_
School: _Gibbs Elem._

Parents: This report is to inform you of your child's progress so that we may work together in guiding his/her development.

**SCORING KEY**
P = Progressing Satisfactorily
N = Needs Support

**FOR INDIVIDUAL OBJECTIVES**
+ = Excellent
— = Unsatisfactory
√ = Satisfactory

| READING PREPARATION | Sem 1 | Sem 2 |
|---|---|---|
| | P | P |
| Names/Recognizes letters of the alphabet | √ | √ |
| Associates most letters with sounds | √ | √ |
| Seeks likenesses and differences in objects, in letters, in words | — | √ |
| Names familiar signs, labels book titles | √ | √ |
| Works from left to right | √ | √ |
| Names/Identifies basic colors | √ | √ |
| Recognizes name in print | √ | √ |
| Matches like/same objects | √ | √ |
| Finds the one that is different | √ | √ |
| Plays simple board games | √ | √ |
| Completes 10 to 12 piece interlocking puzzles | √ | √ |

| WRITING PREPARATION | Sem 1 | Sem 2 |
|---|---|---|
| | P | P |
| Aware of some purposes for writing | √ | √ |
| Attempts to print to convey own ideas | √ | √ |
| Writes using invented spelling | √ | √ |
| Enjoys/shares own writing | √ | √ |

| LISTENING & SPEAKING | Sem 1 | Sem 2 |
|---|---|---|
| | P | P |
| Listens attentively | √ | √ |
| Follows directions | √ | √ |
| Hears likenesses/differences in sounds of letters | √ | √ |
| Tells the sounds made by letters | √ | √ |
| Recalls nursery rhymes, short stories, short poems | √ | √ |
| Answers questions in sentences | √ | √ |
| Expresses ideas clearly in keeping with age | √ | √ |
| Participates in class discussion | √ | √ |

| LITERATURE | Sem 1 | Sem 2 |
|---|---|---|
| Names picture/story characters | √ | √ |

| | Sem 1 | Sem 2 |
|---|---|---|
| Has a sight-word vocabulary (up to 40 words) | √ | √ |
| Identifies main idea | √ | √ |
| Connects text with personal experiences | √ | √ |
| Enjoys "reading" picture books | √ | √ |

| SCIENCE/SOCIAL STUDIES | Sem 1 | Sem 2 |
|---|---|---|
| | N | P |
| Participates in care of living things | √ | √ |
| Recognizes/Describes seasons | √ | √ |
| Participates in guided experiments | √ | √ |
| Makes observations and discoveries about the environment/community | √ | √ |

| SPECIAL SERVICES (Please check if applicable) | | |
|---|---|---|
| ESL/Bilingual | | |
| Special Education | | |
| Speech & Language | | |
| Other | | |

**ATTENDANCE**

| | Advisories | | | |
|---|---|---|---|---|
| | 1 | 2 | 3 | 4 |
| Days for Instruction | 42 | 29 | 43 | 44 |
| Days Absent | 1 | 4 | 0 | 4 |
| Days Tardy | | | | |

**TEACHER COMMENTS Attached**

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
KINDERGARTEN PROGRESS REPORT

(Page 2 of 3)

Student _____



## MATHEMATICS

| | Sem 1 | Sem 2 |
|---|---|---|
| | N | P |
| Names/Recognizes shapes | | |
| Matches items one-to-one | | |
| Duplicates patterns | | |
| Identifies sets with ten items | | |
| Identifies numbers 1 through 12 | | |
| Counts by rote to 50 | | |
| Names wholes and parts of wholes | | |
| Reads/Interprets simple graphs | | |
| Orders/Sorts objects by specific characteristics (size, shape) | | |
| Uses math terms (less, equal) | | |
| Names hour on analog clock | | |
| Identifies penny, nickel, dime, quarter | | |
| Tells use of measuring devices (clock, calendar, ruler, thermometer) | | |
| Compares objects by length, weight | | |



## ART AND MUSIC

Identifies and uses line, shape, color, texture, form and direction
Creates images that represent ideas and feelings through symbols
Responds rhythmically and expressively to music
Imitates dance
Sings individually and in groups

## PHYSICAL DEVELOPMENT

Manages fastenings (zips, ties)
Cuts on the line with preschool scissors
Holds and uses pencil with a mature pencil grasp
Prints full name
Copies simple geometric shapes

## HEALTH/PHYSICAL EDUCATION

Walks down stairs alternating feet
Skips and hops

## SOCIAL DEVELOPMENT

Tells full name
Tells address/telephone number
Tells age/birthday
Shares and takes turns
Displays self-discipline
Adjusts to new situations
Respects property of others
Names persons who make up family
Tells function of body parts
Completes actions in toileting
Shows responsibility for own things
Follows class rules
Gets along well with peers
Catches, bounces, throws ball
Displays age-appropriate health and safety practices

## WORK HABITS

Works at task until complete
Seeks help when needed
Takes care of materials
Cleans up after work period
Asks questions

**Grade Next Year**



SCORING KEY
P = Progressing Satisfactorily
N = Needs Support

FOR INDIVIDUAL OBJECTIVES
+ = Excellent
√ = Satisfactory
— = Unsatisfactory

TEACHER COMMENTS Attached



## District of Columbia Public Schools Report Card

SY 2005-2006 (Page three of three)

**TEACHER COMMENTS**

Student Name: [redacted]                    Grade: [illegible]

**First Advisory**

[illegible]

Teacher Signature: [signature] Stevens                    Date: 10-28-05

**Second Advisory**

[redacted] has demonstrated some academic progress from his entry level performance in the areas of letter and number recognition. His classroom performance when in a small group setting [illegible] It becomes easily distracted and his task performance is low. He is an auditory and tactile learner who demonstrates difficulty working in a group without involving someone or something. His reaction to being redirected is to demonstrate a tantrum. [illegible] additional support is needed.

Teacher Signature: [signature]                    Date: 1-20-06

**Third Advisory**

[redacted] enjoys individual conferencing to discuss his feelings about his performance in school and other concerns. His verbal responses demonstrate that he is grasping concepts and he expresses pride in what he knows. He becomes frustrated when he is asked to conform to socially acceptable standards. He becomes verbally and physically combative. His aggressive actions compromise the safety of other students and disrupts the learning process. He does not take responsibility for his behavior and blames other students for his actions.

Teacher Signature: L. Stevens                    Date: 3-24-06

**Fourth Advisory**

[redacted] demonstrates progress from his entry level performance. He performs better in small groups. He becomes overstimulated in large groups. Have him to read books, write stories and use numbers 1-100 in his everyday activities during the summer. Continue to encourage him to make good choices. I've enjoyed teaching him. Have a peaceful summer.

Teacher Signature: L. Stevens                    Date: 6-14-06

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## 1st GRADE REPORT CARD
### SY 2006-2007

Page 1 of 3

Student Name: 

Student ID#:

Grade:



School:

Teacher:

**Keys:** **Overall Academic Progress**   4 = Advanced    3 = Proficient    2 = Basic    1 = Below Basic
**Skills Within Subject Area**   s=Secure    d=Developing    b=Beginning    n=Not Introduced

| Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **READING/ENGLISH LANGUAGE ARTS (Overall)** | | | | |
| ***Language Development*** | | | | |
| Describes familiar objects, people, and events and their attributes with specific words and phrases | b | | | |
| Identifies base words (look) and their inflectional forms (e.g., looks, looked, looking) | b | | | |
| ***Beginning Reading*** | | | | |
| Decodes regularly spelled one- and two-syllable words fluently in decodable text by applying the most common letter-sound correspondences, including the sounds represented by single letters (consonants and vowels); consonant blends; consonant digraphs; vowel digraphs and diphthongs | b | | | |
| Reads aloud grade –appropriate text fluently, accurately, and with comprehension | b | | | |
| Recognizes the distinguishing features of a sentence (e.g., capitalization, ending punctuation) | b | | | |
| ***Informational Text*** | | | | |
| Responds appropriately to questions based on facts in text heard or read | b | | | |
| ***Literary Text*** | | | | |
| Identifies elements of plot, character, and setting in a favorite story | b | | | |
| Identifies differences between fiction and nonfiction and determines whether a literary selection is realistic or a fantasy | b | | | |
| ***Writing*** | | | | |
| Writes or dictates stories that have a beginning, middle, and end, and arranges ideas in a logical way | | | | |
| ***English Language Conventions*** | | | | |
| Identifies and employs correct usage of singular and plural regular nouns, contractions, and possessives | b | | | |
| **MATHEMATICS (Overall)** | l | | | |
| ***Number Sense and Operations*** | | | | |
| Counts, reads, and writes whole numbers to 110 and relates them to the quantities they represent (e.g., knows that 60 is bigger than 20) | | | | |
| Represents equivalent forms of the same number through the use of physical models, diagrams, and number expressions (e.g., 9 may be represented as 6, 3 + 3 + 3, 10 – 1, 12 – 3) | b | | | |

| Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| ***Geometry*** | | | | |
| Describes attributes and parts of two- and three dimensional shapes (e.g., length of sides and number of corners, edges, faces, and sides) | b | | | |
| ***Measurement*** | | | | |
| Makes and uses estimates of measurement, including time and weight | b | | | |
| ***Data Analysis, Statistics and Probability*** | | | | |
| Represents and compares data (e.g., largest, smallest, most often, least often) using tally charts, pictures, and bar graphs | b | | | |
| **SCIENCE (Overall)** | b | | | |
| Observes and measures that the sun supplies heat and light to the Earth and is necessary for most life | b | | | |
| Investigates and explains that air is a mixture of different gases that surrounds us and takes up space, and we feel its movement as wind | | | | |
| Observes and describes that the way to make something move (faster or slower or in a different direction) is by giving it a push or a pull, which is called a force | b | | | |
| Describes and compares, objects in terms of number shape, texture, size, mass, color, and motion | b | | | |
| Recognizes that animals (including humans) and plants are living things that grow, reproduce, and need food, air, and water | b | | | |
| **SOCIAL STUDIES (Overall)** | l | | | |
| Locates Washington, D.C. on a map | b | | | |
| Labels the continents, oceans, and major mountain ranges on a map | b | | | |
| States the meaning of U.S. national symbols, such as the American flag, the bald eagle, the White House, and the Statue of Liberty | | | | |
| Identifies the current president of the United States, describes what presidents do, and explains that they are elected by the people | b | | | |
| Identifies how locations and climate affect economies and trade systems | b | | | |
| **MUSIC (Overall)** | | | | |
| Identifies music of various cultures and styles | | | | |

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## 1st GRADE REPORT CARD
### SY 2006-2007

Page 2 of 3

Student Name: 
Student ID#:
Grade: *1st*



School: *Hilda E. J.*
Teacher: *R. Oliver*

**Keys:** Overall Academic Progress
Skills Within Subject Area

| 4 = Advanced | 3 = Proficient | 2 = Basic | 1 = Below Basic |
|---|---|---|---|
| s=Secure | d=Developing | b=Beginning | n=Not Introduced |

## WORK HABITS, PERSONAL & SOCIAL SKILLS

| | Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|---|

The following key is used:

**I** = Independently
**LP** = With Limited Prompting
**FP** = With Frequent Prompting
**R** = Rarely

### WORK HABITS

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| Follows directions | R | | | |
| Completes classwork on time | R | | | |
| Works well with others/cooperates | R | | | |
| Uses time wisely | R | | | |
| Completes and returns homework | R | | | |
| Participates in class discussion | R | | | |
| Makes an effort | R | | | |

### PERSONAL & SOCIAL SKILLS

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| Follows classroom rules | R | | | |
| Follows playground rules/school rules | R | | | |
| Respects the rights/property of others | R | | | |
| Listens while others speak | R | | | |
| Practices self-control | R | | | |

### ATTENDANCE

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| Days of Instruction | 45 | | | |
| Days Absent | 0 | | | |
| Days Tardy | 3 | | | |

## SUPPORT SERVICES *(Checked where applicable. Additional comments from support staff are attached )*

| | Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|---|
| Resource: Reading | | | | | |
| Resource: Mathematics | | | | | |
| Special Education | | | | | |
| Bilingual/ESL | | | | | |

### REPORTING KEY

**For overall progress in subject area:**

**4 = Exceeds the standard (Advanced)**
Student takes initiative to exceed the standard; consistently produces excellent work, applying skills concepts correctly; shows creativity and insight.

**3 = Meets the standard (Proficient)**
Student produces work that meets the standard; frequently produces work of high quality; applies skills/concepts correctly.

**2 = Approaches the standard (Basic)**
Student shows a basic working knowledge of skills concepts; produces satisfactory work; usually applies skills concepts correctly.

**1 = Does not meet the standard (Below Basic)**
Student does not show basic working knowledge of skills concepts; seldom produces work of satisfactory quality.

**For skills/expectations within subject area:**

| s | = | Secure |
|---|---|---|
| d | = | Developing |
| b | = | Beginning |
| n | = | Not Introduced |

**Grade Next Year** _____

SY 2007 – 2008

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**Elementary School Report Card**
**School Year 2006 - 2007**

Student Name
Student ID#
Grade:

970885

**Teacher Comments**

School:
Teacher:

**First Advisory**

As I have told you
by phone and in person
only wants to
draw. He has marked
up his practice book
at marks up anything
that is paper. When
he has to stop he throws
a tantrum. He has
broken crayons and
other things that are
meant for the class

Teacher's Signature: _K. R. Oliver_

**Second Advisory**

Teacher's Signature: _____

**Third Advisory**

Teacher's Signature: _____

EXHIBIT
G

## DECLARATION OF LAMAR WILLIAMS IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

LaMar Williams declares and says as follows:

1. I am the Director of Admissions at The Children's Guild.

2. I know and am familiar with T.W.

3. I met T.W. and his adoptive mother, Dorothy Watson, at The Children's Guild on July 25, 2007.

4. At that time, I interviewed T.W. and Ms. Watson for possible placement of T.W. at The Children's Guild and provided them with a tour of The Children's Guild.

5. I have reviewed a variety of documentation regarding T.W., including T.W.'s February 2007 psycho-educational evaluation and May 9, 2007 IEP and MDT/IEP meeting notes.

6. A pre-admissions team, including myself, the principal, the school psychiatrist, and the director of clinical services met and determined that The Children's Guild can provide an appropriate education to T.W.

7. The Children's Guild issued a notice of acceptance to T.W. on August 9, 2007.

8. The Children's Guild aims to provide unique special education programs, stimulating environments, and integrated approaches to educating children with emotional and behavioral challenges.

9. The Children's Guild provides a full-time special education program for children who have emotional, behavioral, and learning problems.

10. The Children's Guild serves children who have a classification of learning disabled, emotional disturbance, multiple disabilities, or in a separate program, autism.

11. The Children's Guild also serves children who have secondary disabilities, such as Attention Deficit Hyperactivity Disorder, other health impairments, and speech and language impairments.

12. The Children's Guild in Chillum serves children ages five through fourteen years old.

13. If T.W. attends the Children's Guild, he will be grouped in a classroom with peers his age. There will never be more than twelve (12) students in T.W.'s classroom.

14. T.W.'s classroom will be taught by two special education certified teachers. The classroom environment provides a small student-to-teacher ratio that will allow T.W. to receive the specialized instruction he needs to make educational progress.

15. T.W.'s therapist will be an integral part of the teaching team and work closely with T.W. both in the classroom and in his individual and group therapy.

16. T.W.'s therapy will be integrated into the classroom instruction and curriculum.

17. T.W.'s therapist will work with him to achieve his individualized goals in the classroom setting, and work with the teachers to ensure that his therapeutic and academic needs are being addressed.

18. The therapists and teachers will meet each day after school to discuss the issues that arise for T.W. throughout the course of the day, and to ensure that as a team, they are appropriately addressing T.W.'s needs.

19. T.W.'s therapist will be available whenever needed throughout the school day, including in a time of crisis.

20. The presence and involvement of T.W.'s therapist in the classroom will help to prevent and curb T.W.'s self-injurious behaviors.

21. All staff are trained in crisis de-escalation.

22. The Children's Guild has a multi-sensory de-escalation room where T.W. can go to re-group if needed.

23. The multi-sensory de-escalation room is supervised by our therapeutic staff and is designed to include energy outlets that involve sensory integration.

24. The Children's Guild also has a psychiatrist on staff and offers psychiatric services and medication management if needed.

25. The Children's Guild has a school wide behavioral program called Positive Behavior Intervention Supports (PBIS).

26. PBIS provides students with positive reinforcement and a token economy to promote positive behaviors.

27. The Children's Guild has a literacy team comprised of instructors trained to facilitate reading programs.

28. The Children's Guild offers extensive multi-sensory instruction, which T.W. will be able to receive.

29. Each child has an individual computer and each classroom has a Smart Board, which allows the teacher to incorporate the computers into academic lessons for the whole class.

30. With a computer integrated into his curriculum, T.W. will be able to develop keyboarding and word processing skills.

31. The Children's Guild can provide T.W. with any specialized instruction, supports, or services he may require to address his learning disabilities.

32. The Children's Guild can meet T.W.'s needs as a child with emotional and behavioral problems.

33. The Children's Guild can provide T.W. with individual and/or group counseling onsite, consistent with his IEP.

34. The Children's Guild will be able to implement T.W.'s IEP; a 30-day IEP review will be completed once he is enrolled at the school to ensure that he is provided with a all necessary and appropriate instruction and related services.

35. The Children's Guild can provide T.W. with speech/language therapy if needed.

36. The Children's Guild can provide T.W. with occupational therapy if needed.

37. Based on my knowledge of T.W., T.W.'s IEP, and the evaluations that have been conducted for him, The Children's Guild is an appropriate placement for T.W.

38. T.W. has been accepted to The Children's Guild for the current 2007-2008 school year.

39. It is possible that T.W. may lose his spot at The Children's Guild for the 2007-2008 school year if he is not immediately placed at our school.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on 9.17.07

LaMar Williams

LaMar Williams



EXHIBIT
H



# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## FINDINGS AND RECOMMENDATIONS FROM
### STUDENT/PARENT CONFERENCE

**Mildred E. Gibbs Elementary School**
School
**(202) 724-4573**
Telephone

Signature of Principal
**September 10, 2007**
Date of Delivery
[ ] Certified Mail
[x] Hand Delivery

Student ____**Terrik Watson**____        Date of Birth ___**3/20/2000**___

Student's Grade ___**2**___    Male [ ] Female [X]    Ethnicity Code ___**Black**___

Sp. Ed. Student: Yes [X] No [ ]   Disability Code ___**LD**___    LRE/Educational Setting:
Comp.Ed. Classroom

Parent/Guardian ___**Dorothy Watson**___ _____

Address: **1926 Rosedale St., N.E., Washington, D.C. 20002**

Home Telephone ___**(202)-399-2516**___ Work Telephone ___**(202)225-7109**___

Dear ___**Ms. Watson**___ :
        Name of Parent/Guardian

As a result of the conference held pursuant to Board Rule 2505.4, **Terrik Watson**
                                                                Name of Client
Shall be disciplined as follows:

[X] Excluded from ___**9/11/2007**___ , **9/25 2007** .
    Your child should return on 9 2 2007.

[X] During this disciplinary period the student must report to:
    __**Gibbs Elementary School**__        **8AM-3:15PM (9/11-9/13 2007)**
    Name of School                          Program/Class/ Time Period
    at ___**500 19th Street N.E. Washington, DC 20002**___ .
          Address

[x] During this disciplinary period, the student is placed on home suspension from
    **9/14/07 to 9/25/07.** An educational package will be provided to the student. Further
    instructional information will be provided by this office. If your child does not
    receive this information within four (4) school days of your receipt of this notice,
    please call
    **Ms. Kimberly R. Davis**        on ___**(202) 724-4573**___ .

[ ] No disciplinary action will be taken. _____is to return to school
    immediately.
        Work Packet Enclosed   number of days suspended.

Page 1 of 1

SHO 104
August 2005



## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## NOTICE OF STUDENT DISCIPLINARY ACTION

### SUSPENSION LEVEL II

**Mildred E. Gibbs Elementary School**
School
**(202) 724-457 3**
Telephone

Signature of Principal
9/6/2007
Date of Delivery
[ ] Certified Mail
[x] Hand Delivery

Student _____ **Terrik Watson** _____          Date of Birth   **3/20/2000**

Student's Grade   **2**          Male [X] Female []          Ethnicity Code _____ **Black**

Sp. Ed. Student: Yes [X] No []   Disability Code **LD**          LRE/Educational Setting:
                                                                 Comp Ed. Classroom

Parent/Guardian _____ **Dorothy Watson** _____

Address: 1926 Rosedale St., N.E.  Washington, D.C. 20002

Home Telephone _____ **(202)399-2516** _____  Work Telephone _____ **202-225-7109**

Dear **Ms. Watson** _____ :
          Name of Parent/Guardian

    Please be advised that pursuant to **Rules of the Board of Education, Section 2500,** your son/daughter is being disciplined for violating the following section(s) of the Board **Rules: 2503.2 (e) (Attempted or actual arson of any part of any DCPS building or property located within or upon DCPS premises or property.**

Brief description of incident: _____  On September 5, 2007, Terrik caused arsenal combustion in the primary boy's bathroom using matches and toilet paper. _____

          (State each action individually)

<u>_____**Terrik Watson**_____</u>
**Name of Student**

**I am notifying you, in accordance with Bo**  d **Rule Section 2505.3, that**
<u>__Terrik Wa on__ is to be suspended for</u>   days. from ___<u>9/11/07</u>___ **through**
<u>9/25/07 and r turning on 9/26/07.</u>

[ x ] A confere ce was held on _____<u>9/10/07</u>   ____with  <u>Terrik Watson_____</u>.
<span style="margin-left:4em">Date</span>                      Name of Student

[ ] A conference has been scheduled on ___   ___ a  _____, **in the school**
<span style="margin-left:22em">Time</span>

<span style="margin-left:4em">office.</span>

Contact _____ on _____ **to confirm attendance.**
<span style="margin-left:4em">(Na    f Contact Person)</span>        (Teleph   Number

## CHECK WH RE APPROPRIATE

[ x ]  **During** this disciplinary time period    student **must report to this school for in school**
**suspension**. T is will take place from <u>9/11/0</u>   rough <u>9/13/07.</u>

[ ] **During** th s **disciplinary time period th**    tudent **must report to the following alternative**
**educational** p cement: _____  _____, **located at** _____
_____    _____.
**The telephon  number is** _____  _____.

[x] **Because** of the **seriousness of the offens**  nd potential **harm to your child and others,** I am
**initiating a h** me **suspension in accordance**   h the Board **Rules. During this disciplinary time**
**period, the s** dent **shall be placed on h**  e **suspension for <u>8</u> days from <u>9/14/07</u> through**
<u>9/25/07.</u> An  ucational **packet will be prov**  ed to the student. **This office will provide further**
**instructional**  ormation. **If your child doe**   ot receive this information within (4) school days
**of receipt of** t is notice, **please call:**

<u>**Ms. Kimberl** R. Davis_____</u>          <u>(202) 24-4573_____</u>
<span style="margin-left:4em">N   e</span>                               Telep  e Number

<span style="margin-left:4em">This</span> s spension **will not be made**   **part** o  the student's permanent record.   The
**principal has**  formed the Student Discipli    Hearing Office of this suspension.

<span style="margin-left:4em">A c py **of Chapter 25 of the Board**</span>    les is attached.

**DECLARATION OF ELLIE GILES IN SUPPORT OF PLAINTIFF'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY
INJUNCTION**

Ellie Giles declares and says as follows:

1. My name is Ellie Giles.

2. I am an educational consultant in North Potomac, Maryland.

3. My educational background includes: B.A., Elementary Education – Florida State
   University; M.S., Special Education – Johns Hopkins University, second year
   Doctoral student, Educational Leadership – University of Phoenix.

4. I have worked with families and children with special needs for over 30 years.

5. I have worked in direct service to students, in terms of teaching, from
   kindergarten – 12th grade.

6. I currently hold the Maryland State Advance Professional Certification in
   teaching and administration for general education grades K-12, Special Education
   grades K-12, and Administration grades K-12. I meet all requirements for highly
   qualified status under NCLB,

7. I have been in practice as an educational consultant for the last fifteen (15) years.

8. Being an educational consultant means that I work with families who have
   children with special needs, and I look at the specific child's diagnostics, program
   and placement; I look at and interpret evaluations and attend IEP meetings and
   make recommendations for appropriate placement.

9. I have testified at administrative due process hearings ten (10) times and have
   been qualified as an expert in the field of special education at each of those
   hearings.

10. I read and reviewed the educational records pertaining to T.W. The documents I
    reviewed include: (a) IEP with IEP meeting notes, 5/9/07; (b) Completion of
    Services Form, with MDT meeting notes, 8/4/05; (c) IEP, with IEP meeting notes,
    2/22/05; (d) IEP, 6/11/04; (e) First grade report card, Gibbs ES, SY 2006-2007;
    (f) Teacher Comments, Gibbs ES SY 2006-2007; (g) Kindergarten Progress
    Report, Gibbs ES, SY 2005-2006; (h) Teacher Comments, Gibbs ES, SY 2005-
    2006; (i) Student Support Team, Initial Meeting Report, 3/7/06; (j) Student
    Support Team Request Form, 1/24/06; (k) Psycho-Educational Evaluation,
    Andrew Johnson, DCPS psychologist, 2/28/07; (l) NICHQ Vanderbilt Assessment
    Follow-up, 10/6/06; (m) NICHQ Vanderbilt Assessment Follow-up, 12/19/05; (n)
    Psycho-Educational Evaluation, DCPS Psychologist, 3/18/05; (o) Speech Therapy

Functioning Review, DCPS, 2/22/05; (p) Speech and Language Evaluation, DCPS, 2/18/04; and (q) Occupational Therapy Evaluation, National Children's Center, 2/05/04.

11. I visited Gibbs Elementary School on September 5, 2007, in order to observe T.W. in the classroom and in his present educational program.

12. On September 5, 2007, I spoke with Aaron Terry, the special education coordinator at Gibbs Elementary School, about T.W.'s special needs as well as the special education program provided at Gibbs Elementary School.

13. Mr. Terry told me that Gibbs Elementary School is unable to provide an appropriate special education placement and program for T.W., given T.W.'s learning disabilities as well as emotional and behavioral issues.

14. During my visit to Gibbs Elementary School on September 5, 2007, I was unable to observe T.W. in the classroom due to the incident in which he had started a fire in the school restroom earlier that day.

15. Based on my review of T.W.'s educational records, my discussions with the special education coordinator at Gibbs Elementary School and other staff members, and my own expertise and experience in special education, T.W. requires a full-time special education placement that provides a small, self-contained learning environment with a low student-to-teacher ratio, a behavior intervention plan, counseling and support services, specialized instruction, and a program with an effective behavioral management component.

16. Additionally, T.W. requires individualized instructional strategies across content areas, which include multi-modality instruction, scaffold skills, opportunities for guided practice, and self-monitoring strategies to promote application and generalization of acquired skills.

17. T.W. also requires individualized opportunities for social processing in order to problem-solve social challenges and to acquire and apply self-regulating strategies.

18. Based on my review of T.W.'s educational records, my discussions with the special education coordinator at Gibbs Elementary School and other staff members, and my own expertise and experience in special education, I believe that T.W.'s IEP is inappropriate. It provides an insufficient number of hours of specialized instruction and related services, an inappropriate classroom setting, and a lack of a behavior intervention plan and behavioral management supports.

19. T.W.'s IEP states that the General Education Classroom cannot meet his service needs, as it will effect "continued school failure," and that the Combination General Education Classroom/Resource Room will not meet his service needs, as

it will effect "continued conflicts with peers." The IEP documents that a "full time therapeutic setting" is necessary to meet T.W.'s needs. Based on this appropriate assessment, T.W.'s special education program – including the number of special education hours – is inappropriate.

20. Based on T.W.'s special needs, as recognized on his IEP, T.W. cannot be appropriately placed in the part-time special education placement that DCPS has provided. Therefore, the IEP does not provide sufficient hours of specialized instruction and related services.

21. Furthermore, T.W.'s IEP fails to identify and document T.W.'s significant academic and social skill deficits.

22. T.W. requires an educational environment that assures physical safety through constant and structured supervision, emotional supports through daily and ongoing counseling and crisis support when needed, and individualized instructional strategies that monitors curriculum scope, pace, and sequence.

23. In addition, T.W. requires a structured and predictable school environment, including frequent motor breaks and attention enhancing strategies, where expectations are constant and consistent for all students across all learning environments in order to minimize distractions and transitions resulting in reduced learning frustrations and obstacles.

24. On September 5, 2007, I visited The Children's Guild at 5702 Sargent Road Chillum, MD 20782.

25. During my visit to The Children's Guild, I observed the classroom environment in which T.W. would be placed if he attended the school, the process by which students are transitioned, and the academic and behavioral supports provided by the school; I also spoke with staff at The Children's Guild about the special education program and its appropriateness for T.W.

26. The program at The Children's Guild is very comprehensive, infusing behavioral supports into the academic program in a natural and dignified manner.

27. The second grade class that T.W. would attend if placed at The Children's Guild includes six (6) students, supported by one teacher, one counselor, and two paraprofessionals who provide frequent individualized instruction.

28. The classroom at The Children's Guild utilizes technology to teach and to motivate students. Each student had an assigned computer and individualized tasks to be completed on the computer, which monitors ongoing progress and regulates the learning pace to accommodate the student's needs. This structure will allow T.W. to learn and make educational progress.

29. Classroom expectations at The Children's Guild are clear and positively impact students' behaviors. A positive behavior management system was consistently implemented across all school settings. In compliance with NCLB, the school implements researched-based reading and math programs and exposes students to grade level content as well as IEP-specific instruction.

30. Based on my review of T.W.'s educational records, my discussions with the special education coordinator at Gibbs Elementary School and other staff members, and my own expertise and experience in special education, I believe that Gibbs Elementary School cannot provide an appropriate special education program and placement for T.W. In my expert opinion, The Children's Guild can provide this environment as well as these necessary educational services.

31. Based on my review of T.W.'s educational records, my discussions with the special education coordinator at Gibbs Elementary School and other staff members, and my own expertise and experience in special education, I believe that DCPS cannot provide a safe educational setting to T.W. in which T.W. can make educational progress.

32. Based on my review of T.W.'s educational records, my discussions with the special education coordinator at Gibbs Elementary School and other staff members, and my own expertise and experience in special education, I believe that T.W. would receive educational benefit in a full-time placement like The Children's Guild.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on _____

Ellie Giles

DIS        F COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D C
INDIVIDUALIZED EDUCATIONAL PROGRAM

**EXHIBIT J**

## 1 IDENTIFICATION INFORMATION

Student Name Last W███████    First T███████    MI

Student ID 9108685    Soc Sec No

Gender [X] M [ ] F    Date of Birth ██████    Ethnic Group Black    Age 7    Grade 1st

Address _____ House No ___ Street Name ████████

[ ] Non-attending    City Washington    Quadrant ████ Apartment # ███    D C    20002
                                                                      State    Zip Code

Attending School Gibbs Elementary    Home School Gibbs Elementary

[X] Elem [ ] Mid/JHS [ ] SHS [ ]CWS /

Parent Ms ██████ W██████ (Great - Grandmother)

Address of (if different from student)    [X] Parent [ ] Guardian [ ] Surrogate
(Same as above)

House No Street Name ████████ ████ Up No City    State    Zip Code
Telephone Home )███████
                    Work

## 11. CUR...

Date of IEP Meeting: 5/09/2007

Date of Last IEP Meeting: N/A

Date of Most Recent Eligibility Decision:

Purpose of IEP Conference
[X] Initial IEP          [ ] Review of IEP
[ ] Requested Eval    [ ] 3yr Re-Eval

Indicate Level of Standardized Assessment
III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
| ESY | TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | | Oral |
| Parent | English | English | English | Native Lang. | Rdg / Written |
| Home | English | English | English | Native Lang. | Instrument |
| | | | | Native Lang. | Date |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd SpEd Total | | | FREQUENCY Hrs Min D/W/M | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks /mos |
|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | | 15 | 15 | Hrs | W | Special Education Teacher | 5/10/2007 | 10 | months |
| Psychological Services | | 1 | 1 | Hrs | W | Psychologist/Social Worker | 5/10/2007 | 10 | months |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | TOTAL | | 16 | Hours Per Week | | | | |

## V. Disability(ies)

Specific Learning Disability

[ ] (Check if setting is general Ed )

Percent of time in Specialized Instruction and Related Services
[ ] 0-20%  [X] 21-60%  [ ] 61-100%

Percent of time NOT in a Regular Education Setting 49%

## VI. IEP TEAM (Participants in the development of the IEP)

Ms D████ W████ (Guardian) D█████ W████

Ms. K. Davis Principal

Mr. R. Weismiller, Sp Ed. Teacher

Ms. Verdell, Grade 1 Teacher.

Ms. Lee, Social Worker

Aaron Fisher, Attorney    ██ █. ████

Print and sign your name below.

Mr. A. Johnson, School Pysh.

Mr. Aaron Terry, SEC

Michael Wilson

Truly Workman    ████████

_I AGREE_ with the contents of this IEP I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.
_____ Parent/Guardian Signature

| Student Name | W⬛⬛⬛ | T⬛⬛ | | |
|---|---|---|---|---|
| Student ID Number | 9108685 | DOB ⬛⬛⬛ | Home School | Gibbs Elementary |
| | | | Attending School | Gibbs Elementary |

DCPS - IEP
Page 2 of 4

## VII. Present Educational Performance Levels in Areas Affected by the Disability

Additional Comments: ☐

**Academic Areas: (Evaluator)** Andrew Johnson, MA, LPC/Psych.

Math Strengths

| Using whole numbers to describe quantities. Writing numbers to correspond with rote counting. |

Impact of disability on educational performance in general education curriculum

| Will make learning more difficult. |

Reading Strengths

| Recognizes some letters of the alphabet and a few sight words. |

Impact of disability on educational performance in general education curriculum

| Will make learning more difficult. |

**Score(s) When Available**

| Math Cal | GE | K2 |
| Math Rea | GE | PK |
| See goal page | 4 | |
| Date | 01/31/2007 | |
| Rdg Com | GE | 10 |
| Rdg Basic | GE | K8 |
| Written Ex | NA | NA |
| See goal page | 2 | |
| Date | 1/31/2007 | |

**Communication (Speech & Language) (Evaluator)**

Strengths

Impact of disability on educational performance in general education curriculum

**Score(s) When Available**

Exp Lang.
Rec-Lang.
Artic
Voice
Fluency
Exp Voc
Rec Voc
See goal page
Date

**Motor/Health (Evaluator)**

Strengths

Impact of disability on educational performance in general education curriculum

**Score(s) /Results When Available**

See goal page
Date

**Social Emotional Behavioral Areas: (Evaluator)** Andrew Johnson, MA, LPC/Psych.

Strengths

| Is sometimes cooperative and calm. |

Impact of disability on educational performance in general education curriculum.

| Will make learning more difficult. |

**Score(s) When Available**

NA

See goal page   1
Date   1/31/2007

**Cognitive/Adaptive Behavior: (Evaluator)** Andrew Johnson, MA, LPC/Psych.

Strengths

| Some aspects of his processing speed is superior to most everyone else his age. |

Impact of disability on educational performance in general education curriculum.

| Will make learning more difficult. |

**Score(s) When Available**

| VCI | 878 |
| PRI | 100 |
| FSIQ | 99 |

See goal page
Date

**Prevocational Skills (Evaluator)**

Strengths

Impact of disability on educational performance in general education curriculum.

**Score(s) When Available**

See goal page
Date

District of Columbia Public Schools    07.02.2001    Division of Special Education    Appendix - A    IEP Page 2 of 4

| Student Name | ██████ | T███ | | HomeSchool | G███s Elementary | | |
| Student ID Number 9 ██████ | | DOB ██████ | | Attending School | Gibbs Elementary | | DCPS - IEP Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments ☐ |
|---|---|

Area addressed by goal:  Social Emotional                    Goal Number  1

**ANNUAL GOAL**  (including mastery criteria )

T███ will demonstrate gowth in social emotional functioning, as evidenced by mastery of the short term objectives by 80%

Provider(s) Social Worker/Psychologist

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| T███ will take risks in situations that are socially challenging (ie. presentation in front of the class, etc.) | | Monthly |
| T███ will demonstrate improved self - image as evidenced by increased participation in school activities, positive interaction with others and increased personal responsibility for behavior in 8 out of 10 opportunities. | | Monthly |
| T███ will distinguish between appropriate and inappropriate behaviors with minimal assistance from adult authority as measured in 8 out of 10 opportunities. | | Monthly |
| T███ will identify personal strengths and weakness when prompted by therapist in 8 out of 10 opportunities. | | Monthly |
| T███ will communicate personal feelings and perceptions of self in relation to others with minimal prompting and assistance from the therapist in 8 out of 10 opportunities. | | Monthly |
| T███ will accurately describe social situations and demonstrate appropriate responses to these situations with minimal assistance from the therapist in 8 out of 10 opportunities. | | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☒ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☐ Other

District of Columbia Public Schools        07-02-2001        Division of Special Education        Appendix - A        IEP Page 3 of 4

Student Name   W_____   T_____
Student ID Number _____   DOB _____
HomeSchool   Gibbs Elementary
Attending School   Gibbs Elementary

DCPS - IEP
Page 3 of 4

| VIII. SPECIALIZED SERVICES | Additional Comments ☐ |

Goal Number: 2

Area addressed by goal   Academics - Reading/Language Arts

**ANNUAL GOAL** (including mastery criteria )

T____ will demonstrate improvement in reading skills by mastering the short term objectives as measured by formal and informal testing with 80% accuracy as measured within a grading period.

Provider(s)   Special Education Teacher, General Education Teacher and Parent

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| T____ will recognize and recite the letters of the alphabet individually in 4 out of 5 attempts with 80% accuracy | | Monthly |
| T____ will recognize basic vowel sounds to decode basic sight words in 4 out of 5 attempts with 80% accuracy | | Monthly |
| T____ will listen to a short story and write one sentence and or draw a picture about the story in 4 out of 5 attempts within a grading period. | | Monthly |
| T____ will use pictures to help recognize basic words. (i.e dog, cat, mop, etc.) within a grading period. | | Monthly |
| Given multisensory activities on the student's instructional level, T____ will read and share thirty (30) books with pictures or book equivalents within a year. | | Monthly |
| T____ will use the writing process (prewriting, drafting, revising, and publishing) to convey meaning with 80% accuracy | | Monthly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other

District of Columbia Public Schools      07-02-2001      Division of Special Education      Appendix - A      IEP Page 3 of 4

| Student Name | W█████ | | T████ | | | DCPS - IEP |
|---|---|---|---|---|---|---|
| Student ID Number █████ | | | DOB █████ | HomeSchool | Gibbs Elementary | Page 3 of 4 |
| | | | | Attending School | Gibbs Elementary | |

| VIII. SPECIALIZED SERVICES | Additional Comments ☐ | |
|---|---|---|

Area addressed by goal: **Academics - Mathematics**        Goal Number: 4

ANNUAL GOAL (including mastery criteria.)

T████ will demonstrate improvement in basic mathematic skills by mastering short term objectives by formal and informal testing with 80% accuracy.

Provider(s) Special Education Teacher, General Education Teacher and Parent

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| T████ will complete simple one digit addition and subtraction of numbers from 1 to 10 without regrouping with 80% accuracy within a grading period. | | Monthly |
| T████ will use whole numbers to describe quatities with 80% accuracy. | | Monthly |
| T████ will create and solve simple addition and subtraction problems both written and oral using whole numbers with 80% accuracy. | | Monthly |
| T████ will solve basic math problems involving money both numerically and written forms with 80% accuracy. | | Monthly |
| | | |
| | | |
| | | |

EVALUATION PROCEDURE(S)

☒ Portfolio   ☐ Log   ☐ Chart   ☒ Test   ☒ Documented Observation   ☐ Report   ☐ Other

District of Columbia Public Schools        07-02-2001        Division of Special Education        Appendix - A        IEP Page 3 of 4

| Student Name | W_____ | T_____ | Managing School | Gibbs Elementary | | DCPS - IEP |
| Student ID Number | _____ | DOB _____ | Attending School | Gibbs Elementary | | Page 4 of 4 |

Additional Comments: ☐

## IX LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
### SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in **regular education**?    ☐ Yes  ☒ No

Explanation for removal out of regular education classroom

> Student requires low student to teacher ratio student is significantly below grade level requires intensive or individualized instruction.

## X  Supplementary Aids and Services
### Classroom Needs
(Do not name products or companies.)

| | SETTING | | | FREQUENCY | | PROVIDER | BEGINNING DATE |
| | GenEd | SpEd | Total | Hr / Min | DM/M | (by discipline) | (mm/dd/yyyy) |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for **testing**    ☐ None needed

| Timing/Scheduling: | Untimed Breaks; Extenden Time |
| Setting: | Preferential seating reduced minimal distraction. Cooling off period |
| Presentation: | Read directions/test to student/ verbal rec. of instruction |
| Response: | Orally |
| Equipment: | Calculator.Manipulatives and Times Table Chart |

## XI STATE AND DISTRICT ASSESSMENTS

☐ Level I Tested with non-disabled peers under standard conditions without accommodations.

☒ Level III (Describe non-uniform conditions for level I*) Tested under non-standard conditions with permissible accommodations

☐ Level V Portfolio:

☐ Level II (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV (Describe the alternative assessment)

## XII Areas Requiring Specialized Instruction and Related Services

☒ Reading
☒ Mathematics
☒ Written Expression
☐ Other
☐ None

☐ Physical/Sensory
☒ Social Emotional
☐ Physical Development

☐ Transition
☐ Vocational
☐ Independent Living
☐ Speech/Language

Modifications:
☒ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
| --- | --- | --- |
| General Education Classroom | Reject will not meet needs for service | Continued school failure. |
| Combination Gen. Ed./ Resource Room | Reject will not meet needs for servcice | Continued Conflicts with Peers. |
| Out of General Education Setting | Accept will meet needs for service | Full Time Therapeutic Setting. |

Modification(s) /Accommodation (s) to address the harmful effects:

> Specific scheduling to accomodate for related services, Psychological services

Location for Services _____

District of Columbia Public Schools          07-02-2001          Division of Special Education          Appendix - A          IEP Page 4 of 4

School      Gibbs ES                    Principal    Ms. Kimberly Davis    Special Education Coordinator    Mr. Terry
5/9/2007                                                                                                    Ms. C. Helton
         T___ W___          Mr. Terry
    Ms. D___ W___                        Nov.  7   Grade  1st
                                         (202) ___ ___
                                         Washington, DC  20002

[X]                [X]

Combination Reg.Ed./ Sp. Ed. Classroom Setting

**JUSTIFICATION FOR SETTING CONSIDERATION**
(Submit EAT/MDT Documentation)
**SUPPORTIVE DATA DOCUMENTATION**

**ACCOMMODATIONS/ MODIFICATIONS**                    **DATA REQUIREMENTS:**

1) Extended Time – Response and Presentation
2) Time – Extension Presentation
3) Multiple Test Session - Equipment

MDT Initial IEP – 5/9/2007                          Specific Meeting Place

**6. CURRENT SETTING CONSIDERATIONS**

[X]                              [X]      **SERVICE PROVIDER**            [X]      **LEVEL OF SERVICE**

**DIRECTIONS:**

**LEVEL OF NEED**
[X] MODERATE

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES**

MDT

SCHOOL    Gibbs ES                     DATE  5/09/07

PARTICIPANTS (Print Name)

Aaron Teng
Aaron Fischer
Andrew Johnson
Tracy Goodman
Michael Wilson

PARTICIPANTS (Sign Name)

POSITION

MCKE 9
SEC
Parent's Atty.
Psychologist
The Children's Law Center
The Children's Law Center

An MDT Intial IEP Follow Up Meeting was held on T████ today. Everyone introduced themselves. Mr. Wesmille, Sp. Ed. Teacher was not available at the meting, however, he reviewed the drafted academic goals with the team.

Mr. Johnson – School Psychologist – Reviewed the Strengths and Weaknesses on T████ for page 2 of his IEP. Based n the evaluations and the Team collaborative decision T████ will receive 1 hour of Social Work Psych. Counseling per week. Specialized Instruction – He will receive 15 hours of Special Education Services or 49% of the time, not in Gen. Ed. His Level of Assessment will be Level III.

Ms. Verdell, Grade 1 Teacher - Stated that she has seen some improvement with his behavior He also is completing some of his homework. Ms. Verdell also stated that she did not get the impression that T████ could not do the academic portion, but it was his behavior that was the problem.

The FBA will have to be completed at another meeting, since we do not have the worksheets returned to us.

The team discussed its concern of the setting in which T████ would receive spec. ed. instruction. Ms. Verdell said that T████ should be outside of her classroom and in a smaller setting - where he can receive individualized attention. No one at the meeting knows the amount of time T████ would receive inclusion vs. pull-out. The psychologist's recommendations state that T████ should be in a different educational setting. the team agrees that T████ is unable to receive appropriate instruction in his academic subjects in the regular ed classroom. T████ requires sufficient time - essentially all specialized instruction time - entirely outside the regular ed setting. Gibbs Elementary provides spec ed instruct...

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE: _____

**MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES**
MEETING TYPE: Initial IEP

Page: 2 of 2 (41)

STUDENT: T███ W█████

SCHOOL: Gibbs

DATE: 5/9/07

Mr. Weismiller joined the meeting very briefly. He has 19-26 students in his spec ed class all day. There is no teacher's aide in the class. Mr. Johnson and the team agree that this is an inappropriate setting for T█████ given the recommendation for a smaller educational setting.

A.F

D
07-1716
EGS

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| **I (a) PLAINTIFFS** T.W. and Dorothy Watson, next of friend | **DEFENDANTS** District of Columbia and Michelle Rhee, D.C. Public Schools Washington DC |
|---|---|
| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Washington DC (EXCEPT IN U.S. PLAINTIFF CASES) 11091 | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Washington DC (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRA... |

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Aaron Fischer, Tracy Goodman
The Children's Law Center - Suite 300
616 H Street NW, Washington DC 20001

AT:
Case: 1:07-cv-01716
Assigned To : Sullivan, Emmet G.
Assign. Date : 9/26/2007
Description: TRO/PI

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

Ⓧ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

Ⓣ

| ☐ **A.** *Antitrust* | ☐ **B.** *Personal Injury/ Malpractice* | Ⓧ **C.** *Administrative Agency Review* | Ⓧ **D.** *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ☒f ☐ **E.** *General Civil (Other)* OR ☐ **F.** *Pro Se General Civil* |
|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant)<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

Ⓒ

| □ G. *Habeas Corpus/ 2255* | □ L. *Employment Discrimination* | □ I. *FOIA/PRIVACY ACT* | □ J. *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| □ K. *Labor/ERISA (non-employment)*<br>□ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ L. *Other Civil Rights (non-employment)*<br>□ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other *(IDEIA)* | □ M. *Contract*<br>□ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ N. *Three-Judge Court*<br>□ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

(⊗) 1 Original Proceeding   □ 2 Removed from State Court   □ 3 Remanded from Appellate Court   □ 4 Reinstated or Reopened   □ 5 Transferred from another district (specify)   □ Multi district Litigation   □ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

*Special Education, 20 U.S.C. §1415 - Failure to provide a Free Appropriate Public Education*

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS   □ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint   **JURY DEMAND:** □ YES  (⊗) NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   □ YES  (⊗) NO   If yes, please complete related case form.

**DATE** 9/26/07   **SIGNATURE OF ATTORNEY OF RECORD** *Aaron J. Fischer*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.