**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| T.W., a minor, | ) |
| By his parent and next friend, | ) |
| Ms. Dorothy Watson | ) |
| 1926 Rosedale Street, N.E. | ) |
| Washington D.C.  20002 | ) |
| | ) |
| and | ) |
| | ) |
| T.W. | ) |
| 1926 Rosedale Street, N.E. | ) |
| Washington, D.C. 20002 | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, | ) |
| A Municipal Corporation, | ) |
| One Judiciary Square | ) |
| 441 4th St., N.W. | ) |
| Washington, D.C.  20001, | ) |
| | ) |
| and | ) |
| | ) |
| Ms. Michelle Rhee, | ) |
| DCPS Chancellor | ) |
| District of Columbia Public Schools | ) |
| 825 North Capitol St., N.E. | ) |
| Washington, D.C.  20002 | ) |
| (In her official capacity) | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

Plaintiffs Dorothy Watson and T.W. respectfully request that the Court issue an

Order pursuant to Rule 65 of the Federal Rules of Civil Procedure, (a) Granting judgment

for Plaintiffs and against Defendants; (b) Granting declaratory relief that Defendants

violated Plaintiffs' rights under applicable law; (c) Granting injunctive relief ordering

Defendants to immediately place and fund T.W. at The Children's Guild with all

necessary special education and related services, including transportation services; (d)

Awarding attorneys' fees in this matter; and (e) Granting Plaintiffs any other relief this

Court deems just and proper.

In support of this motion, Plaintiffs respectfully refer the Court to the attached

Memorandum of Points and Authorities.

Respectfully submitted,

_____

Aaron J. Fischer, Esq.
D.C. Bar No. pending (admitted 9/10/07)
*Pro Bono* Counsel for Ms. Watson
The Children's Law Center
616 H St., NW, Suite 300
Washington, D.C. 20001
202-467-4900 ext. 525
Fax: 202-552-7125
afischer@childrenslawcenter.org

_____

Tracy L. Goodman, Esq.
D.C. Bar No. 481088
*Pro Bono* Counsel for Ms. Watson
The Children's Law Center
616 H St., NW, Suite 300
Washington, DC 20001
202-467-4900, ext. 503
Fax: 202-467-4949
tgoodman@childrenslawcenter.org

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| T.W., a minor, | ) |
| By his parent and next friend, | ) |
| Ms. Dorothy Watson | ) |
| 1926 Rosedale Street, N.E. | ) |
| Washington D.C.  20002 | ) |
| | ) |
| and | ) |
| | ) |
| T.W. | ) |
| 1926 Rosedale Street, N.E. | ) |
| Washington, D.C. 20002 | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, | ) |
| A Municipal Corporation, | ) |
| One Judiciary Square | ) |
| 441 4th St., N.W. | ) |
| Washington, D.C.  20001, | ) |
| | ) |
| and | ) |
| | ) |
| Ms. Michelle Rhee, DCPS Chancellor | ) |
| District of Columbia Public Schools | ) |
| 825 North Capitol St., N.E. | ) |
| Washington, D.C.  20002 | ) |
| (In her official capacity) | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

Immediate injunctive relief is necessary in this case to prevent irreparable injury

to a disabled child and to ensure that his right to a free and appropriate public education

("FAPE") is honored.  The Individuals with Disabilities Education Act ("IDEIA")

establishes this right to a FAPE and seeks to ensure that the rights of disabled children and their parents are protected. 20 U.S.C. § 1400 *et seq.* (2007). The District of Columbia Public Schools ("DCPS") violated and continues to violate T.W.'s rights by not providing him with a FAPE. Equally alarming, DCPS is failing to provide T.W. with an appropriate school placement with the supervision, support and structure necessary to maintain T.W.'s safety and well being, given his special needs. The result has been perpetual academic failure and, most urgently, increasingly life-threatening situations at school.

DCPS must be ordered to comply with federal and local law and provide T.W. with a FAPE without delay. Ms. Watson requests that this Court find that DCPS is denying T.W. a FAPE and therefore must provide him with the education to which he is entitled. Specifically, Ms. Watson requests that this Court order Defendants to immediately place and fund T.W. at The Children's Guild, with transportation services to be provided, along with all necessary special education and related services. This relief will appropriately implement the special education program and placement T.W. requires pursuant to extensive evidence and, in fact, the IEP DCPS created for him, which documents that a "full time therapeutic setting" is necessary to meet T.W.'s needs. As presented below, the standards for the issuance of a preliminary injunction and temporary restraining order are met in this case.

**I. Factual Background**

T.W., a resident of the District of Columbia, is a seven year old boy with a learning disability and extensive emotional needs. T.W.'s disability classification is learning disabled. Currently, T.W. is in a highly unsafe, untenable, and inappropriate

school environment. DCPS is denying T.W. a FAPE by not providing him with an appropriate Individualized Educational Program ("IEP"), adequate supervision, appropriate levels and quality of specialized instruction, essential special education supports and related services, and an appropriate school placement. Moreover, DCPS is jeopardizing T.W.'s health and safety. Most recently, T.W. was allowed to roam the school building unsupervised. He went to the school's restroom with a box of matches, lighting several rolls of toilet paper on fire. This highly dangerous incident led to the evacuation of the school building and significant damage to the restroom. The lives, safety, and well being of T.W. and his peers were put at considerable risk in the process. *See* Exhibits P-1; P-2.

This incident arises in the wake of repeated instances in which DCPS has failed to ensure T.W.'s safety – resulting in other dangerous situations posed by T.W.'s climbing on school installations, throwing of furniture, and leaving the classroom without permission or supervision. *See* Exhibit P-1. Further, DCPS is failing to afford T.W. the opportunity to make educational progress as required by the law. As such, T.W.'s great-grandmother and legal guardian, Ms. Watson seeks an appropriate placement that can provide T.W. with a safe environment as well as an appropriate setting in which to obtain educational benefit without further delay.

**History of Denial of FAPE**

T.W. is currently a second grade student at Gibbs Elementary School ("Gibbs E.S."), where he began attending in the 2005-2006 school year. *See* Exhibits P-1; P-3. As a Kindergarten and first grade student, T.W. struggled consistently with his academic program, and T.W.'s teachers expressed concerns about T.W.'s difficulties on numerous

occasions. *Id.* Nonetheless, DCPS failed to take timely and appropriate action in response to T.W.'s academic difficulties. *See* Exhibit P-4.

T.W.'s special needs were evident at a very young age. When T.W. was four years old, an MDT/IEP team found him eligible for special education, providing him with 30 hours/week of specialized instruction, with a full-time placement at National Children's Center. *See* Exhibit P-5. His classification was "Developmental Delay." *Id.* Yet on August 4, 2005, just one year after being placed in a full-time special education program, DCPS terminated T.W.'s eligibility for special education services and exited T.W. from special education entirely. *See* Exhibit P-6. Instead of continuing to provide full-time, intensive special education services, DCPS placed T.W. in a regular education Kindergarten classroom at Gibbs E.S. *See* Exhibits P-1; P-3; P-4. Subsequently, his substantial special needs went unmet, resulting in little to no educational progress and recurring behavioral problems reflective of his ADHD diagnosis as well as his frustration and depression relating to his academic deficits and failures. *See* Exhibits P-1; P-3; P-4; P-7; P-8.

As a Kindergarten student at Gibbs Elementary School during the 2005-2006 school year, T.W. immediately and repeatedly demonstrated the severity and extent of his special needs, including impaired social/emotional functioning as well as considerable learning deficits. In October 2005, his teacher reported that T.W.'s behavior was "aggressive" and marked by his "refusal to participate" in classroom lessons and activities. *See* Exhibit P-3. In January 2006, his teacher noted that T.W. is "easily distracted and his task performance is low," while "his reaction to being redirected is to demonstrate a tantrum." *Id.* She explicitly asserted that "additional support is needed"

for T.W, noting that T.W. "ignores verbal directions," "crawls on the floor," "refuses to participate in group activities," "demonstrates periods of being in a trance-like state," and shows "limited work production." *See* Exhibit P-7. In June 2006, she wrote that T.W. "becomes overstimulated in large groups" and "performs better in small groups." *See* Exhibit P-3. In spite of these reports, DCPS failed to identify T.W. as a student with special needs, to evaluate him, and to provide him with an appropriate educational placement and program during the 2005-06 school year.

During the 2006-2007 school year, T.W. continued to display academic difficulties and significant behavioral problems. T.W. struggled consistently on all first grade academic work. He would not do the reading or math assignments provided by the regular education teacher. *See* Exhibit P-8. T.W.'s behavior also deteriorated and became increasingly alarming: he frequently hid under the classroom tables, moved chairs, left the classroom on his own and entirely unsupervised, and even climbed on bathroom stalls, radiators, or tables. *See* Exhibits P-1; P-4. These major threats to T.W.'s safety combined with T.W.'s lack of educational progress highlight his need for a full-time special education placement that can serve both his learning disabilities and social/emotional needs. T.W. requires a full-time special education placement that provides a small, self-contained learning environment with a low student-to-teacher ratio, a behavior intervention plan, counseling and support services, special education materials, and a program with an effective behavioral management component. *See* Exhibits P-9; P-10. Additionally, T.W. requires individualized instructional strategies across content areas, which include multi-modality instruction, scaffold skills, opportunities for guided practice, and self-monitoring strategies to promote application

and generalization of acquired skills.  *See* Exhibit P-10.  He also requires individualized

opportunities for social processing in order to problem-solve social challenges and to

acquire and apply self-regulating strategies.  *See id*.

On December 21, 2006, Ms. Watson requested an immediate referral for special

education evaluations.  An initial MDT meeting was convened on January 30, 2007.

During the meeting, the regular education teacher reported that T.W. would do work only

when he was taken out of the regular education classroom and placed in a considerably

smaller setting, generally one with the school social worker or special education teacher.

*See* Exhibit P-8.  In February 2007, the DCPS psychologist conducted a psycho-

educational evaluation, in which he identified T.W.'s significant learning deficits.  *See*

Exhibit P-9.  The evaluation report identifies that T.W.'s reading and math skills are in

the "Borderline" range, and that his "related skills . . .  are extremely low."  *Id*.  The

DCPS psychologist also identified impaired social/emotional functioning – including

having trouble staying seated, being overly active, acting impulsively, and being easily

distracted – that is "interfering with his learning process" and requires "considerably

more attention than it is getting" in his present placement.  *Id*.

Meanwhile, T.W.'s teachers and other school staff continued to observe and

report significant concerns about his special needs and the inappropriateness of his

present placement.  In February 2007, in response to unsafe behavior at school –

including but not limited to moving classroom furniture, climbing school installations,

and roaming the school unsupervised – that was a manifestation of T.W.'s special needs

and disabilities, the school suspended T.W. for ten days.  Ms. Watson's legal counsel

contacted the school by letter to clarify that this ten-day suspension, along with the many

class exclusions earlier in the year, would be a violation of the IDEIA.  *See* Exhibit P-11;
20 U.S.C. § 1415(k)(1).  T.W. ultimately served two days of this suspension before
DCPS allowed him to return to school.

On March 22, 2007, T.W.'s multi-disciplinary team convened and found T.W.
eligible for special education as a student with the disability classification of learning
disabled ("LD").  *See*  Exhibits P-9; P-12.  The team also determined that a large
classroom with numerous students is not appropriate for T.W. given his academic and
social/emotional issues, including his LD and ADHD diagnoses.  The DCPS psycho-
educational evaluation report recommended that T.W. be placed in a "different physical
placement … i.e., either a different classroom where the opportunities for distraction are
much less, or a different school where the opportunities for distraction are much less."  *In
fact, the IEP itself states that the General Education Classroom cannot meet his service
needs, as it will effect "continued school failure," and that the Combination General
Education Classroom and Resource Room will not meet his service needs, as it will effect
"continued conflicts with peers."  The IEP documents that a "full time therapeutic
setting" is necessary to meet T.W.'s needs.  See* Exhibit P-12.  However, DCPS failed to
provide such a placement, instead placing T.W. in a part-time program that provides only
sixteen hours of specialized instruction and related services at Gibbs E.S.  *See* Exhibits P-
1; P-12.

Meanwhile, T.W. has continued in this unsafe, inappropriate, and harmful
placement and program, resulting in ongoing educational failure and further damaging
incidents.  During T.W.'s Extended School Year (ESY) program at Miner Elementary
School in June and July, 2007, the program's social worker documented that T.W. did not

demonstrate progress on multiple articulated goals.  She noted that T.W. "was not on task nor did he participate in any classroom instruction assignments."  *See* Exhibit P-13. She further noted that when T.W. was unable to succeed in a classroom activity in which he demonstrated some effort, he "regressed quickly: Hiding under the table, angry."  *Id*.  An ESY classroom aide reported at the conclusion of the summer program that T.W. had made little to no educational progress and refused to do any of his academic work.  *See* Exhibit P-1.  The program's coordinator indicated to Ms. Watson that T.W. requires a full-time therapeutic setting.  *See id*.

**Ongoing Denial of FAPE and Threat to T.W.'s Safety under Present Circumstances**

To date, DCPS has not provided T.W. with the appropriate special education and related services that he requires, and T.W. has therefore been unable to make educational progress.  Moreover, T.W.'s safety and well being is in serious jeopardy at Gibbs E.S., highlighted by the recent highly dangerous situation involving T.W.'s unsupervised use of matches and "arsenal [sic] combustion" inside the school building.  *See* Exhibit P-2.

On September 5, 2007, Gibbs ES staff allowed T.W. to wander out of his classroom on his own.  T.W. proceeded to the restroom with a box of matches.  Once in the restroom, he lit several matches, igniting rolls of toilet paper in each bathroom stall and according to the school's report, causing "arsenal [sic] combustion."  *See* Exhibits P-1; P-2.  Thankfully, another child entered the restroom and, observing the smell and sight of fire, reported the situation to school staff.  *Id*.  The student body was evacuated from the school building.  *See* Exhibit P-1.  While T.W. was eventually removed from the restroom without suffering physical harm, the restroom itself was significantly damaged due to the fire.  *Id*.  Subsequent to this highly dangerous incident, DCPS took no steps to

10

provide T.W. with an appropriate special education program and placement that would serve his needs and ensure his safety moving forward. *Id.* Instead, the school removed T.W. from his class for a three-day in-school suspension, having him sit in the special education coordinator's office on his own, receiving no educational services of instruction at all. The school also imposed an eight-day suspension – to begin September 14, 2007 – that does nothing to provide T.W. with a more appropriate education, instead exacerbating his academic failures as well as his frustrations, anger, and emotional deficits by denying him any educational services at all. *See* Exhibits P-1; P-2.

Due to DCPS's failures to address T.W.'s learning disabilities and impaired social-emotional functioning, T.W. is neither in a safe school setting nor in a setting in which he is available for learning and able to learn. He frequently acts out in the classroom and even leaves the classroom on his own. Further, when T.W. is in class, he is emotionally unavailable for learning, as he is hyperactive, impulsive, disruptive and unable to cope with the frustrations and stresses of being in a classroom that cannot serve his considerable learning disabilities and social/emotional needs. It has become readily apparent that ensuring safety and educational progress in T.W.'s current placement is simply impossible. He requires a full-time special education placement at The Children's Guild in order to obtain a FAPE. *See* Exhibit P-10. Still, DCPS has continued to insist that Gibbs E.S. remain T.W.'s educational placement.

**The Due Process Complaint and Further DCPS Violations**

Due to DCPS's refusal to serve T.W.'s special needs by providing FAPE through a full-time and appropriate placement, Ms. Watson filed a due process complaint with the DCPS State Education Agency Special Education Student Hearing Officer ("Student

Hearing Office") on August 1, 2007.[1]  *See* Exhibit P-3.  The due process complaint requested placement for T.W. at The Children's Guild, with transportation services to be provided, as well as compensatory education services to compensate T.W. for the time during which he was denied a FAPE, for the period beginning with DCPS's action of exiting T.W. from special education entirely on August 4, 2005 and continuing to the present.  *See id.*

In response to the due process complaint filed by Ms. Watson, the Student Hearing Office issued a Scheduling Memorandum to both parties on August 6, 2007.  *See* Exhibit P-14.  The Scheduling Memorandum required DCPS to provide a response to the complaint no later than August 11, 2007 and convene a resolution session no later than August 16, 2007, in conformity with the statutory timelines of the IDEIA.  *Id.*  DCPS failed to comply with any of the deadlines in this order, and failed in all of its responsibilities under the IDEIA in regards to required due process procedures.  *See* Exhibits P-1; P-4; P-15.

DCPS failed to provide a written response or prior written notice to Petitioner for nineteen (19) days – almost twice the legal maximum – and when it did issue a response on August 20, 2007, it failed to comply with the explicit legal requirements for that

---

[1] The Due Process Complaint alleges that DCPS failed to provide T.W. with a FAPE.  The particular issues included: (1) DCPS's action to inappropriately exit T.W. from special education on August 4, 2005; (2) DCPS's failure to timely identify, locate, and/or appropriately evaluate T.W. for special education eligibility; (3) DCPS's failure to create an appropriate Individualized Education Plan for T.W. to address his special education needs; (4) DCPS's failure to provide T.W. an appropriate educational placement to address his unique special needs; (5) DCPS's wrongful exclusion of  T.W. from class for more than ten days without conducting a manifestation meeting to determine whether the demonstrated behaviors are related to T.W.'s disability; (6) DCPS's failure to create and implement an appropriate and/or timely Behavior Intervention Plan for T.W.; (7) DCPS's failure to include all necessary members of the MDT/IEP team in the IEP development process; and (8) DCPS's failure to convene and/or conduct appropriate and/or timely MDT/IEP meetings.  *See* Exhibit P-3.

response.  *See* 20 U.S.C. § 1415 (c)(2)(B); Exhibits P-15; P-16.  The response was written by the special education coordinator at Gibbs E.S., not the Office of General Counsel.  *See* Exhibit P-16.  The special education coordinator acknowledged that he "cannot answer to why or when the process of the SST was delayed or never done" and made no mention of the disputed IEP and placement.  *Id.*  While this extremely brief response makes reference to some individual issues relating to the due process complaint, it does not provide an explanation of why the agency proposed or refused to take the actions raised by Ms. Watson, making no reference to the evaluations, records, and other factors that were relevant to DCPS's proposed or refused actions.  *Id.*  The core issues of the due process complaint, asserting that (1) T.W. requires a full-time special education placement that can serve his extensive learning deficits and social/emotional needs, (2) DCPS inappropriately exited T.W. from full-time special education program, and (3) DCPS continues to deny a FAPE, go fundamentally unaddressed in DCPS's response.  *Id.*  Meanwhile, DCPS failed to hold the legally required resolution session at all, as required by the IDEIA and the scheduling order.  *See* 20 U.S.C. § 1415(f)(1)(B); *see also* Exhibits P-1; P-14.

Ms. Watson filed a Motion for Default with the Student Hearing Office on August 28, 2007, serving a copy of that Motion on DCPS's Office of General Counsel.  *See* Exhibit P-17.  DCPS has provided no response to this Motion, and the Student Hearing Office has issued no decision.  The Student Hearing Office informed the petitioner of this Motion by phone that no decision would be issued until the due process hearing was scheduled, at which point a Hearing Officer would be assigned.  Ms. Watson remains

without timely recourse for the multiple and ongoing violations by DCPS and their harmful impact on T.W.'s education, safety, and well being.

**Remedy Sought for the Ongoing Denial of FAPE and Threat to T.W.'s Safety**

As requested in the due process complaint, Ms. Watson seeks placement for T.W. at The Children's Guild in Chillum, Maryland, an appropriate school for T.W. to which he has been accepted.  *See* Exhibits P-18; P-19.  Ellie Giles, an expert in special who has been an educational consultant for fifteen (15) years and has professional certification in teaching, administration, and special education, has considerable knowledge about T.W.'s profile and needs; she has declared that T.W. requires a placement at The Children's Guild, which will be able to address his emotional needs as well as his academic needs.  *See* Exhibit P-10.  The Children's Guild is a therapeutic full-time, special education school that serves children with emotional, behavioral, and learning needs.  *See* Exhibit P-19.  LaMar Williams, the Admissions Director at The Children's Guild has reviewed T.W.'s educational records and met with him and Ms. Watson; she has determined that The Children's Guild can serve T.W.'s extensive special needs.  *See* Exhibit P-19.

The special education and support services outlined in T.W.'s IEP can be provided on campus by the staff at The Children's Guild.  *See* Exhibit P-10.  The Children's Guild provides a low student-staff ratio, with two certified special education teachers and a therapist assigned to a classroom of no more than twelve (12) students. *See* Exhibit P-19.  If placed at the The Children's Guild, T.W. will have a therapist who will be available whenever needed throughout the school day.  *See id.*  T.W.'s therapist will also be an integral part of the teaching team and will work closely with T.W. both in

the classroom and through counseling services pursuant to his IEP.  *See id*.  In addition,

the students at The Children's Guild have access to a multi-sensory de-escalation room

outside of the classroom that provides a safe and supervised space in which students can

safely regroup and regain composure if necessary.  *See id*.  The Children's Guild is an

appropriate school placement for T.W. that can provide him a FAPE; if placed there,

T.W. will at long last have an opportunity to make educational progress.  *See* Exhibit P-

10.

 However, T.W. could lose his spot if he is not placed at The Children's Guild

immediately, as the school has limited availability for new students and cannot guarantee

a spot for T.W. indefinitely.  *See* Exhibit P-19.  There is no doubt that T.W. requires

immediate placement at The Children's Guild.  To date, DCPS has failed both to comply

with the procedural requirements of the IDEIA as well as to create and implement an

appropriate IEP for T.W. and to provide him with an appropriate special education

program and placement.  Given this set of circumstances, Ms. Watson seeks immediate

injunctive relief to prevent irreparable harm to T.W.

## II. Parent is Entitled to Injunctive Relief Under the Traditional Four-Prong Test

 Ms. Watson and T.W. are entitled to injunctive relief to ensure that the provisions

of IDEIA are enforced so as to guarantee that T.W. can receive the FAPE to which T.W.

is entitled.  The traditional standards for injunctive relief are set forth in *Virginia*

*Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F.2d 921, 925 (D.C. Cir.

1958).  *See also Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559

F.2d 841, 843 (D.C. Cir. 1977).  In order to be granted injunctive relief, a plaintiff must

show that: (1) it is likely to prevail on the merits of the appeal; (2) without the relief

requested it will suffer irreparable injury; (3) the issuance of the injunction would not substantially harm other interested parties; and (4) the public interest lies with the granting of the injunction. This four-prong test is the standard applicable to a request for injunctive relief under IDEIA. *See Massey v. District of Columbia*, 400 F. Supp. 2d 66 (D.D.C. 2005). This Court has applied the same standards for both temporary restraining orders and preliminary injunctions. *See Canales v. Paulson*, 2006 U.S. Dist LEXIS 61915, *9 (D.D.C 2006); *Katz v. Georgetown Univ.*, 246 F.3d 685, 687-88 (D.C. Cir. 2001); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). Ms. Watson and T.W. meet all four prongs of this test, and therefore are entitled to injunctive relief.

**A. Ms. Watson Has Demonstrated a Likelihood of Success on the Merits**.

      **1.**     **There is a substantial likelihood that Ms. Watson will prevail on the merits of her claim that DCPS is denying T.W. a free and appropriate public education in violation of the IDEIA.**

Ms. Watson is substantially likely to prevail on the merits of her claim because DCPS is failing to provide T.W. the free and appropriate public education (FAPE) to which he is entitled under the IDEIA. 20 U.S.C. § 1412(a)(1)(A) ("A free appropriate public education is available to all children with disabilities … between the ages of 3 and 21…"). A FAPE is defined in part as special education and related services that have been provided at public expense in conformity with a child's IEP. 20 U.S.C. § 1401(9). The Supreme Court has clarified that school districts provide a disabled child a FAPE by ensuring that he or she has access to specialized instruction and related services that are individually designed to confer some educational benefit upon the child. *Bd. Of Educ. v. Rowley*, 458 U.S. 176, 188-89 (1982). To receive educational benefit, T.W. requires

specialized instruction and counseling services in a full-time therapeutic special education program like that provided at The Children's Guild.  However, DCPS has failed in its obligation to provide T.W. with a FAPE for more than two years.

Despite T.W.'s clear academic and behavioral needs, DCPS inappropriately and inexplicably removed him from his full-time special education program on August 4, 2005.  *See* Exhibit P-6.  During the 2005-2006 school year and nearly the entire 2006-2007 school year, no special education services at all were provided to T.W.  *See* Exhibits P-1; P-4.  The IDEIA requires that DCPS identify, locate, and evaluate all children in need of special education in the District of Columbia.  20 U.S.C. § 1412(a)(3)(A). Nonetheless, once T.W. was exited from special education and placed at Gibbs E.S. – where he consistently demonstrated serious learning deficits and behavioral problems – DCPS did not provide T.W. with evaluations for special education or take additional steps to provide him with the services and accommodations he needs.  T.W. was therefore deprived of a FAPE; his intensive special needs went entirely unaddressed and unmet.

During the current school year, 2007-2008, DCPS continues to deny T.W. a FAPE.  The IDEIA requires that an IEP be developed and in effect for all children with disabilities who qualify for special education.  20 U.S.C. § 1412(a)(4); 1414(d)(1)(A); § 1414(d)(2)(A).  An IEP was developed for T.W. on May 9, 2007, but this IEP is inappropriate and insufficient to meet T.W.'s needs, and the documented need for a full-time therapeutic setting is not being implemented.  *See* Exhibits P-10; P-12.  It provides an insufficient special education program that is far short of the full-time, therapeutic special education program he needs in order to receive a FAPE.  The IEP team –

including the DCPS psychologist and special education coordinator – agreed that T.W. requires specialized instruction in a small, self-contained special education setting. *See* Exhibits P-1; P-12. Gibbs E.S. has only one special education teacher for all of its students, and the special education coordinator has stated that the school's special education program functions based on the inclusion model. *See* Exhibit P-1. Inclusion in the general education setting is not appropriate for T.W., as he requires full-time specialized instruction in a self-contained setting. *See* Exhibit P-10. Furthermore, the special education classroom at Gibbs E.S. itself is entirely insufficient given T.W.'s special needs, as it regularly contains more than twenty students from different grades. *See* Exhibit P-1. T.W. requires a far more intensive therapeutic special education placement that can provide a smaller, more supportive educational setting. Neither the placement presently provided at Gibbs E.S. nor placement at any other DCPS school can provide T.W. with a FAPE given his special needs.

Accordingly, T.W. must be placed in a full-time therapeutic special education placement like The Children's Guild, where his special needs will be appropriately served. There is no doubt that Ms. Watson will prevail on the merits because of DCPS's failure to create and implement an IEP that can provide T.W. with an appropriate educational program and placement. This flagrant violation of the IDEIA continues to preclude educational benefit for T.W. and, equally significant, to endanger T.W. and his classmates at Gibbs E.S.[2]

_____

[2] Though Ms. Watson's likelihood of success on the merits is obvious and substantial, it is not necessary that she demonstrate "a mathematical probability" that she will succeed on the merits. *Cox v. Brown,* 498 F. Supp 823, 828 (D.D.C. 1980). Rather, in IDEIA cases, the Court "must weigh the irreparability of harm, and if it is substantial, the Court may, in its discretion, grant relief even though its view of the merits may markedly differ from that of the plaintiffs." *Id.* (citing *Washington Metropolitan Area Transit Commission*, 559 F.2d at 843-44). Although Ms. Watson will undoubtedly prevail on the

**2.    There is a substantial likelihood of success on the merits because the remedy sought by Ms. Watson is appropriate.**

Ms. Watson is substantially likely to receive the requested remedy of placement at The Children's Guild because DCPS failed to provide T.W. with any appropriate placement and The Children's Guild is an appropriate school placement for T.W. Furthermore, no other remedy is appropriate in this case. If the school system does not provide a child with a FAPE, private placement is proper if the education provided by the private school placement is "reasonably calculated to enable the child to receive educational benefits." *Wirta v. District of Columbia,* 859 F. Supp. 1, 4 (D.D.C. 1994), citing *Rowley*, 458 U.S. at 176. Ms. Watson seeks placement for her son at The Children's Guild, which has accepted T.W. *See* Exhibit P-18. As a full-time therapeutic special education school that serves children with special emotional, behavioral, and learning needs, and that can provide T.W. with all of the supports, services, and accommodations he requires, The Children's Guild is an appropriate special education placement for T.W. *See* Exhibits P-10; P-19.

Importantly, DCPS cannot be given another opportunity to fail this child when it has repeatedly denied T.W. the education that is his right for more than two years now. *Wirta*, 859 F. Supp. at 5 (D.D.C. 1994). ("There is [n]o authority which permits a school system a second opportunity to conduct evaluations and propose an alternative placement where its failure to do so in the first instance violated the requirements of the Act."). DCPS failed to provide T.W. with a FAPE during his first two years as a student at Gibbs E.S., and DCPS continues to deny T.W. with a FAPE during this school year, effecting

---

merits, given that DCPS's failures have resulted in the absolute denial of an appropriate school placement for T.W., the irreparable harm to T.W. is substantial such that this prong would nonetheless be satisfied.

what has become an increasingly unsafe and untenable situation.  DCPS had the opportunity (and in fact the legal duty) to respond to Ms. Watson's concerns as outlined in the due process complaint and to convene a resolution session to resolve those concerns, but it failed to do so.

Subsequent to the highly dangerous incident involving the restroom fire on September 5, 2007, DCPS took no steps towards providing T.W. with an appropriate special education program and placement, instead suspending him from school for eight (8) days.  *See* Exhibit P-2.  Because DCPS has so patently and repeatedly denied T.W. a FAPE, it should not have additional opportunities to propose a placement for T.W., all at the expense of T.W.'s safety, well being, and education.  It is clear that The Children's Guild can provide T.W. with a FAPE and that T.W. will finally have an opportunity to make academic progress if placed there.  Consequently, Ms. Watson is likely to prevail in seeking placement at The Children's Guild for T.W. as an appropriate remedy.

**B.  Irreparable Harm Will Result Absent Injunctive Relief**

**1.    DCPS's denial of FAPE to T.W. will continue to cause T.W. irreparable harm.**

T.W. will continue to suffer irreparable harm at the hands of DCPS if the injunctive relief requested herein is not granted.  This Court previously determined that a school district's failure to place a student in an appropriate school, thereby denying a FAPE, constitutes irreparable injury:

> It appears that absent injunctive relief, [the students] will suffer the irreparable harm of lacking each day of their young lives an appropriate education, one that is sensitive to their particular disabilities, commensurate to their levels of understanding, and fulfilling of their immediate needs.

*Cox,* 498 F. Supp. at 829.

DCPS has failed to provide T.W. with an appropriate education since the time he was exited from his full-time special education placement in August 2005 and demonstrated educational deficits in the 2005-2006 school year.  Depriving a child of even one day of an appropriate education is sufficient to find irreparable harm.  *Blackman v. District of Columbia*, 277 F. Supp. 2d 71, 79 (D.D.C. 2003), citing *Cox,* 498 F. Supp. at 828.  Having gone more than two years without an appropriate education, the harm to T.W. has accumulated: he has spiraled to the point in which he engages in behavior dangerous to himself and others; he has suffered intensely from academic frustration, low self-esteem, and depression; and he has consistently achieved below grade level.  *See* Exhibits P-1; P-2; P-3; P-7; P-8; P-9; P-10.  Due to DCPS's repeated failures, T.W.'s deficits have only intensified, and he now immediately requires a full-time therapeutic special education placement.

Despite T.W.'s obvious need for special education services and a new placement, DCPS is failing to act and ignoring the many needs of this very young and fragile child.  Time is of the essence in providing T.W. with the necessary special education placement and services so that further irreversible harm will not result.  *See Blackman v. District of Columbia,* 185 F.R.D. 4, 7 (D.D.C. 1999) ("[T]o a young, growing person, time is critical.  While a few months in the life of an adult may be insignificant, at the rate at which a child develops and changes, especially one at the onset of biological adolescence with or without the special needs like those of our plaintiff, a few months can make a world of difference in the life of that child."); *see also Watson v. District of Columbia*, 522 F. Supp. 1102, 1111 (D.D.C. 1981) ("A month lost in the life of a child is forever

lost, an 'eternity,' while which type of education she should have received passes back and forth through examination and evaluation.").

Even after the incident of the fire in the school building, DCPS has responded only by suspending T.W. for as long as it can without constituting a legal change in placement. *See* Exhibit P-2; s*ee* 20 U.S.C. § 1415(k); 34 C.F.R. § 300.536. This course of action does nothing to address the underlying failure of serving T.W.'s clear special needs by keeping him at an inappropriate school placement. T.W. is likely to return from any suspension equally or more frustrated, disengaged, and prone to unsafe behaviors. This Court has recognized that a child without disabilities would suffer harm from being unable to attend school, but that "such harm is heightened for a disabled child with much greater need for daily structure and consistency." *Massey*, 400 F. Supp. at 74. The exclusion from the classroom as well as the formal suspension from school will contribute to the irreparable harm suffered, as T.W. will be denied all education services, including the specialized instruction and related services he requires. This irreversible harm to T.W. becomes more serious the longer T.W. remains without an appropriate educational placement.

**2.    T.W. will continue to suffer irreparable harm because Ms. Watson is financially unable to place T.W. at The Children's Guild and seek reimbursement thereafter.**

Where a school district fails to provide a child with FAPE, the Supreme Court has provided parents with the right to receive reimbursement for placing their children in private school placements. *School Comm. of the Town of Burlington, Mass v. Dept. of Educ. of Mass.*, 471 U.S. 359, 369 (1985). Congress subsequently codified this right in the IDEIA. *See* 20 U.S.C.A. §1412(a)(10)(c). If Ms. Watson had the financial means,

22

she could have personally funded T.W. at The Children's Guild and subsequently sought
reimbursement from DCPS. Surely, in providing parents with this right, Congress did not
intend to deny parents without adequate financial means a similar, immediate remedy
when the circumstances demand it. Without the financial means, Ms. Watson has no
choice but to seek immediate injunctive relief in order for T.W. to have an opportunity to
attend school and benefit from his education.[3] Because DCPS is causing irreparable
harm to T.W. and Ms. Watson is unable to fund T.W. at The Children's Guild on her own
and seek reimbursement later, the harm to T.W. will only continue to compound without
immediate judicial relief.

### 3.    T.W. will continue to suffer irreparable harm because there is no assurance that DCPS will abide by the procedural requirements of the IDEIA.

This Court has recognized that where a child has not been provided with a FAPE
and there is no assurance that DCPS is able to follow the procedural timelines required by
the IDEIA, the child will suffer irreparable harm if the injunction is not granted. *Massey,*
400 F. Supp. at 74. Here, because DCPS has repeatedly failed to follow the procedural
responsibilities and timelines required by the IDEIA, there is no telling how long T.W.
will remain without a FAPE. DCPS has failed to follow the procedural guidelines in
regards to evaluating and identifying T.W. as a child in need of special education, to
address Ms. Watson's concerns about T.W.'s placement, to respond appropriately and
timely to Ms. Watson's complaint, to convene a resolution session following the filing of

---

[3] Ms. Watson's inability to place T.W. at The Children's Guild and later seek reimbursement is especially
concerning, as The Children's Guild is unable to hold a spot for T.W. given the protracted due process
timelines. *See* Exhibit P-19. The potentially limited availability of space for T.W. at The Children's Guild
highlights the urgent need for a resolution that that will provide an appropriate placement and provides
additional justification for the granting of a temporary restraining order to prevent further irreparable harm
to T.W.

her due process complaint, and to respond to Ms. Watson's Motion for Default Judgment. T.W. should not be forced to continue to suffer harm while uncertainty about his education persists due to DCPS's disregard for the procedural requirements of the law.

When Ms. Watson pursued a due process hearing request against DCPS, the school district failed in its procedural responsibilities. The IDEIA requires that DCPS respond to a due process hearing request in writing within ten days, providing Ms. Watson with: (1) an explanation of why the school district refused to take the actions raised in the complaint, (2) a description of other options that were considered and the reasons why those options were rejected, (3) a description of the evaluation, procedure, assessment, record or report the school district used as the basis for the refused action, and (4) a description of the factors that are relevant to the school district's refusal. *See* 20 U.S.C. § 1415(c)(2)(B). Here, DCPS failed to provide Ms. Watson with a timely written response within ten days of receiving the due process hearing request, and its overdue written response was wholly insufficient: it was drafted by the school's special education coordinator and was devoid of any discussion regarding the core issues of the complaint. *See* Exhibit P-16.

The IDEIA also requires that DCPS convene a resolution session within fifteen days of receiving notice of the parent's complaint to provide the parent with an opportunity to discuss the complaint and the school district an opportunity to resolve the complaint. 20 U.S.C. § 1415(f)(1)(B)(i). Here, not only did DCPS fail to timely convene a resolution session within the first fifteen days after the filing of the complaint, DCPS failed altogether to convene a resolution session. *See* Exhibits P-1; P-15. Moreover, when Ms. Watson filed a Motion for Default Judgment based on DCPS's failure to timely

and appropriately provide a written response or convene a resolution session, DCPS

failed to respond to this Motion as well.  *See* Exhibits P-15; P-17.  In short, DCPS has

denied Ms. Watson any opportunity to resolve her complaints and enforce her rights time

and again.

The IDEIA clarifies that procedural violations can amount to a finding of a denial

of FAPE where the procedural inadequacies impeded the child's right to a FAPE or

caused a deprivation of educational benefit, or where the procedural violations

significantly impeded the parent's opportunity to participate in the decision-making

process regarding the provision of FAPE.  20 U.S.C. §1415(f)(3)(E)(ii).  Here, these

results contemplated by the IDEIA as amounting to the denial of a FAPE are present.

First, DCPS's procedural violations have impeded T.W.'s right to FAPE and deprived

him of any educational benefit.  T.W. continues to go without the special education he

requires and presently is receiving no educational services of any kind due to the class

exclusion and suspension.  Second, Ms. Watson has been impeded from the decision-

making process regarding T.W.'s education, as her concerns through the IEP process

were not addressed and her efforts to work with DCPS to resolve her complaint have

gone effectively unanswered.  *See Schaffer v. Weast*, 546 U.S. 49, 61 (2005) (asserting

Congress' intent under IDEIA to require due process that "guarantees parents and

children the procedural protections" that are in fact essential to the protection of the law's

substantive rights themselves).

Even if the procedural violations were not found by this Court to amount to a

denial of FAPE, it is well established that courts may order injunctive relief based on no

more than the failure to comply with IDEIA procedural safeguards.  *See Blackman,* 277

F. Supp. 2d (granting injunctive relief based on DCPS's failure to timely convene due process hearings). Here, DCPS has failed to fulfill multiple procedural obligations to Ms. Watson and her disabled son, undermining what the Supreme Court has identified as the "core" of the IDEIA's legal protections. *See Schaffer*, 546 U.S. at 53, 61 (finding that "the core of the statute . . . is the cooperative process that it establishes between parents and schools" and asserting the importance that the statute, "in fact, requires state authorities to organize hearings in a way that guarantees parents and children the procedural protections of the Act") Ms. Watson has attempted to avail herself of the administrative process, but DCPS did not engage with Ms. Watson in this process as required by law, leading to irreparable injury to T.W. T.W. is suffering tremendously as a student at Gibbs E.S. without the therapeutic, behavioral, and academic supports he needs. Moreover, T.W. will continue to suffer with each passing day he goes without a safe and appropriate educational setting. A temporary restraining order is immediately required in order to prevent any further irreparable harm to T.W caused by DCPS's multiple and ongoing substantive and procedural violations.

### C. There is No harm to DCPS if T.W. is Placed and Funded at The Children's Guild.

DCPS will suffer no harm if the motion for injunctive relief is granted. DCPS is obligated under federal and local law to provide disabled children with a FAPE; it has continually failed to do so in the present case. The law specifically allows for parents to place their children in private schools when the school system has failed to provide a FAPE to their child. 20 U.S.C. § 1415(f)(1)(B); D.C. Mun. Regs. Tit. 5, § 3018.3 (2003). As discussed above in Section II(A)(2), if the school system does not provide a child with a FAPE, private placement is proper if the education provided by the private school

placement is "reasonably calculated to enable the child to receive educational benefits." *Wirta*, 859 F. Supp. at 4, *citing Rowley*, 458 U.S. at 176.  Moreover, the law requires DCPS to place a child in a private school where DCPS cannot provide an appropriate public school placement for the child.  D.C. Mun. Regs. Tit. 5 § 3012; 3013.  To order DCPS to comply with the law creates no harm.

The only impact that the granting of this temporary restraining order could possibly have upon DCPS is budgetary.  This Court has recognized that granting a temporary restraining order that requires a school district to bear a financial expense in providing FAPE does not amount to hardship for the school district because Congress has squarely placed this obligation on the school district:

> Congress [has] determined that [the school district] must provide an appropriate educational program for each of its pupils.  When [the school district] is not to be in compliance with that congressional mandate, as suggested above, then an individualized program, albeit involving expense, must be produced to fulfill not the obvious compassionate necessities for these children but to uphold the congressional intent of devising that which purports to satisfy equal protection.

*Cox,* 498 F. Supp. at 830.

DCPS must fulfill its obligations and provide T.W. with a FAPE, regardless of any financial expense it will incur.  It is within DCPS's control to comply with the IDEIA and obviate the need for courts to order relief that will impact the school district's budget. *See Massey,* 400 F. Supp. at 74.  The remedy of private placement is appropriate and the financial cost to DCPS is minimal in comparison to the continued irreparable emotional, psychological, and academic harm T.W. will suffer if relief is denied.

**D.  The Public Interest Will Be Served by Granting the Injunctive Relief Requested.**

Finally, the public interest is best served by granting the injunctive relief requested.  In accordance with IDEIA and local laws, the school system is required to provide children with disabilities a FAPE.  Here, DCPS has utterly failed in its responsibilities.  Granting the relief requested by Ms. Watson ensures that T.W. will finally get the special education and related services to which he is entitled under the law.  Prior decisions by this Court have explicitly stated that the relevant public interest is that of students with special needs.  "'The public interest lies in the proper enforcement of … the IDEA and in securing the due process rights of special education students and their parents provided by statute.'  Furthermore, that public interest 'outweighs any asserted financial harm to DCPS.'" *Massey,* 400 F. Supp. at 75, quoting *Petties v. District of Columbia,* 238 F. Supp. 2d 88, 99 (D.D.C. 2002).  The public interest is furthered when the government adheres to the law and enforces its most vulnerable citizens' statutory rights.  The public interest will be served if T.W. is placed and funded at The Children's Guild, where he can begin receiving educational benefit after more than two years in an unsafe, untenable, and inappropriate educational setting.

**III. Placement of T.W. at The Children's Guild is the Appropriate Relief**

Judicial officers have the authority in IDEIA cases to issue any remedy necessary to ensure that a child receives the FAPE to which he or she is entitled.  *See Harris v. District of Columbia,* 1992 U.S. Dist. LEXIS 11831, 13-14 (D.D.C. 1992).  T.W. immediately requires the remedy requested, placement at The Children's Guild with transportation services to be provided, in order to ensure he receives a FAPE.  DCPS's administrative process will not prevent the immediate irreparable harm suffered by T.W., and nothing short of a preliminary injunction or temporary restraining order will ensure

that T.W. receives a FAPE. At this time, T.W. cannot safely attend school because his current school, Gibbs E.S., is inappropriate and cannot provide the supervision, accommodations, and services necessary to ensure his safety. Just as important, T.W. will continue to be denied the educational benefit to which he is legally entitled and that is necessary for him to make academic progress. The irreparable injury he is enduring is only compounding with each day he remains without an appropriate placement. T.W. cannot continue to wait on the administrative process to address his urgent need for an appropriate school placement; an immediate and appropriate resolution is of critical importance.

This Court has held that "a well recognized exception to the exhaustion requirement, in an instance where irreparable harm may accrue, satisfies the failure to pursue administrative remedies." *Cox,* 498 F. Supp. at 829. The administrative remedy in this matter is the issuance of a hearing officer's determination following a due process hearing, which is not required until seventy-five days after the due process complaint is received. 20 U.S.C. §1415(f)(B)(ii); D.C. Mun. Regs. Tit. 5 § 3030.1(d). Thus, if T.W. is forced to pursue DCPS's administrative process, T.W. will face the denial of FAPE for approximately thirty additional days and possibly even more if DCPS continues to fail in its obligations under the IDEIA; the irreparable harm to T.W. – made clear by his ongoing academic failures and literally incendiary threats to his safety and well being – would only continue to accrue. Only a preliminary injunction or temporary restraining order requiring that DCPS place and fund T.W. at The Children's Guild will ensure that T.W. receives a FAPE and effectively prevent T.W. from accruing additional injury.[4]

---

[4] When Ms. Watson filed for her complaint for a due process hearing, she sought placement for T.W. at The Children's Guild, with transportation services to be provided, and compensatory education services for

DCPS failed and continues to fail on a daily basis to provide T.W. with a FAPE. DCPS acted inappropriately and illegally when it removed T.W. entirely from his special education program and placement in August 2005.  Since then, DCPS has failed to create and implement an appropriate IEP that includes an appropriate placement and special education program for him.  When a school system fails in its duty to provide a child with FAPE, a private school placement is "proper under the Act" if the education provided by the private school is "reasonably calculated to enable the child to receive educational benefits."  *Wirta*, 895 F. Supp. at 4.  As outlined above, at The Children's Guild will provide T.W. full-time specialized instruction as well as the therapeutic, supportive, structured environment and counseling he requires in order to obtain a FAPE.  T.W. and Ms. Watson must not be made to wait indefinitely, as T.W. languishes academically and faces greater dangers similar to or even worse than the nearly explosive incident on September 5, 2007 that stemmed from his wholly inappropriate program and placement. T.W. will begin receiving a FAPE as soon as he begins attending The Children's Guild. Without this remedy, T.W., who has already been denied a FAPE for over two years, will continue to suffer in his emotional, behavioral and academic development.

## IV.    Rule LCvR 7(m) Statement

On September 17, 2007, undersigned counsel spoke via telephone with Robert Utiger, Esq. counsel for Defendant, in a good faith effort to discuss this motion and determine whether there is any opposition to the relief sought.  The parties were unable to agree to any resolution.  Robert Utiger, Esq expressed that Defendants could not agree to the relief sought herein at this time.

---

the period of time T.W. was denied a FAPE.  Outside T.W.'s immediate need for an appropriate placement, Ms. Watson reserves the right to pursue administrative remedies for any compensatory education services, if these issues still remain outstanding if and when T.W. is placed at The Children's Guild.

**V. Conclusion**.

For the foregoing reasons mentioned in this Memorandum, Ms. Watson satisfies the four-prong test for injunctive relief. Therefore, Ms. Watson respectfully requests that this Court grant her Motion and order Defendants to immediately place and fund T.W. at The Children's Guild, with transportation to be provided, along with all necessary special education and related services.

Respectfully submitted,

_____
Aaron J. Fischer, Esq.
D.C. Bar No. pending (admitted 9/10/07)
*Pro Bono* Counsel for Ms. Watson
The Children's Law Center
616 H Street, NW, Suite 300
Washington, DC 20001
202-467-4900, ext. 525
Fax: 202-552-7125
afischer@childrenslawcenter.org

_____
Tracy L. Goodman, Esq.
D.C. Bar No. 481088
Counsel for Ms. Watson
The Children's Law Center
616 H Street, NW – Suite 300
Washington DC, 20001
(202) 467-4900, X 503
(202) 467-4949 (fax)
tgoodman@childrenslawcenter.org

<u>Certification Pursuant to LCvR 83.2(g) and LCvR 83.2(j)</u>

I, Aaron J. Fischer, undersigned counsel, hereby certify that I am providing legal representation without compensation for Plaintiff, Dorothy Watson, in this matter, and that I am a member in good standing of the District of Columbia Bar.  Furthermore, I hereby certify that I have personal familiarity with the Local Rules for United States District Court for the District of Columbia.

I certify under penalty of perjury that the foregoing is true and correct.  Executed on September 19, 2007.

_____
Aaron J. Fischer, Esq.
D.C. Bar No. pending (admitted 9/10/07)
*Pro Bono* Counsel for Ms. Watson
The Children's Law Center
616 H Street, NW, Suite 300
Washington, DC 20001
202-467-4900, ext. 525
Fax: 202-552-7125
Afischer@childrenslawcenter.org

Certification Pursuant to LCvR 83.2(g) and LCvR 83.2(j)


I, Tracy L. Goodman, undersigned counsel, hereby certify that I am providing

legal representation without compensation for Plaintiff, T.W. Watson, in this matter, and

that I am a member in good standing of the District of Columbia Bar. Furthermore, I

hereby certify that I have personal familiarity with the Local Rules for United States

District Court for the District of Columbia.


I certify under penalty of perjury that the foregoing is true and correct. Executed

on September 19, 2007.


_____
Tracy L. Goodman, Esq.
D.C. Bar No. 481088
Counsel for Ms. Watson
The Children's Law Center
616 H Street, NW – Suite 300
Washington DC, 20001
(202) 467-4900, X 503
(202) 467-4949 (fax)
tgoodman@childrenslawcenter.org

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| T.W., a minor, | ) |
| By his parent and next friend, | ) |
| Ms. Dorothy Watson | ) |
| 1926 Rosedale Street, N.E. | ) |
| Washington D.C.  20002 | ) |
| | ) |
| and | ) |
| | ) |
| T.W. | ) |
| 1926 Rosedale Street, N.E. | ) |
| Washington, D.C. 20002 | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, | ) |
| A Municipal Corporation, | ) |
| One Judiciary Square | ) |
| 441 4th St., N.W. | ) |
| Washington, D.C.  20001, | ) |
| | ) |
| and | ) |
| | ) |
| Ms. Michelle Rhee, | ) |
| DCPS Chancellor | ) |
| District of Columbia Public Schools | ) |
| 825 North Capitol St., N.E. | ) |
| Washington, D.C.  20002 | ) |
| (In her official capacity) | ) |
| | ) |
| Defendants. | ) |

**CERTIFICATION OF PROVISION OF ALL PLEADINGS AND PAPERS PURSUANT**
**TO RULE LCvR 65.1**

Pursuant to LCvR Rule 65.1, I hereby certify copies of all pleadings and papers that have

been filed in the action to date have been provided by hand-delivery to the following parties on

September 26, 2007:

Linda Singer
Office of the Attorney General
441 4th Street, NW, 6th Floor
Washington, D.C. 20001

Tabitha Braxton
Office of the Secretary, Executive Office of the Mayor of the District of Columbia
1350 Pennsylvania Avenue, NW, Suite 419
Washington, D.C. 20004

George Valentine
Office of the General Counsel
D.C. Public Schools
825 North Capitol Street, N.E., 9th Floor
Washington D.C. 20002

Robert Utiger
Office of the Attorney General
441 4th Street NW, 6th Floor
Washington, DC 20001

_____
Aaron J. Fischer, Esq.
D.C. Bar No. pending (admitted 9/10/07)
*Pro Bono* Counsel for Ms. Watson
The Children's Law Center
616 H Street, NW, Suite 300
Washington, DC 20001
202-467-4900, ext. 525
Fax: 202-552-7125
Afischer@childrenslawcenter.org

<u>LIST OF EXHIBITS</u>
<u>FOR</u>
<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'</u>
<u>MOTION FOR PRELIMINARY INJUNCTION</u>

P-1     Declaration of Dorothy Watson
P-2     Notice of Student Disciplinary Action, Gibbs Elementary School, September 10, 2007
P-3     T.W. Report Cards for Kindergarten (2005-2006) and First Grade (2006-2007)
P-4     Due Process Complaint Notice, August 1, 2007
P-5     Individualized Education Plan, February 22, 2005
P-6     DCPS Completion of Services Form, August 4, 2005
P-7     Student Support Team SST Notes, 2005-06
P-8     Multi-Disciplinary Team Meeting Notes, March 22, 2007
P-9     Psycho-educational Evaluation by DCPS Psychologist, February 2007
P-10    Declaration of Ellie Giles, Expert in Special Education
P-11    Letter to Gibbs Elementary School, February 13, 2007
P-12    Individualized Education Plan and Meeting Notes, May 9, 2007
P-13    Extended School Year Verification of Service and Report Card, July 20, 2007
P-14    Student Hearing Office Scheduling Memorandum, August 6, 2007
P-15    Declaration of Aaron J. Fischer, Esq.
P-16    DCPS Response to Due Process Complaint by Gibbs Elementary School special
        education coordinator, August 20, 2007
P-17    Motion for Entry of Default Judgment, August 28, 2007
P-18    Acceptance Letter from The Children's Guild, August 9, 2007
P-19    Declaration of La Mar Williams, Director of Admissions, The Children's Guild

EXHIBIT

# DECLARATION OF DOROTHY WATSON IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Dorothy Watson declares and says as follows:

1.  I am the great-grandmother and adoptive parent of my son T.W., who is seven years old.

2.  I reside at 1926 Rosedale Street, NE, Washington, DC 20002.

3.  T.W. lives at the same residence as me.

4.  T.W. was placed in a full-time special education placement at National Children's Center for the 2004-2005 school year.

5.  During the 2004-2005 school year, his disability classification was "Developmental Delay."

6.  In August 2005, DCPS informed me that T.W. would no longer be eligible for special education; he was removed entirely from his full-time special education placement and program and placed in the regular education classroom at Gibbs Elementary School ("Gibbs ES").

7.  T.W. began attending Gibbs ES as a Kindergarten student in the 2005-2006 school year.

8.  During T.W.'s 2005-2006 school year, he struggled a lot with his academics as well as with his behavior at school.

9.  T.W.'s Kindergarten teacher expressed her concerns to me about his academic difficulties.

10. DCPS did not provide T.W. with evaluations for special education during T.W.'s 2005-2006 school year.

11. DCPS did not provide me with notice of my procedural safeguards under the IDEIA during T.W.'s 2005-2006 school year.

12. DCPS did not provide me with any written documentation of its refusal to initiate the special education evaluation or referral process for T.W. during T.W.'s 2005-2006 school year.

13. T.W. attended Gibbs ES as a first grade student during the 2006-2007 school year.

14. As a first grade student, T.W. would not listen to directions, frequently hid under the classroom tables, moved chairs, left the classroom on his own and entirely unsupervised, and even climbed on bathroom stalls, radiators, or tables.

15. On several occasions, he has wandered the school halls and playground without any teacher or staff person supervising him.

16. Because T.W.'s first grade teacher was often unable to calm T.W. down in the classroom and keep him on task, T.W.'s teacher would regularly send him to other classrooms and to the office.

17. T.W.'s first grade teacher expressed to me personally and at T.W.'s MDT/IEP meetings that she is unable to provide the appropriate instruction, supervision, and educational services to T.W. in her classroom given his special needs.

18. T.W. is often unable to remain in the classroom and therefore leaves on his own without permission.

19. On numerous occasions during the 2005-2006 and 2006-2007 school years, I have been called at work to come to the school in order to take T.W. home because the school is unable to manage T.W.'s behavioral problems.

20. Due to my concerns about T.W.'s behavioral, emotional, and academic difficulties, in December 2006, I requested that DCPS conduct special education evaluations for T.W.

21. I attended T.W.'s IEP meeting at Gibbs ES on May 9, 2007 with Aaron J. Fischer as my attorney.

22. At the IEP meeting on May 9, 2007, the special education coordinator stated that the school's special education program functions based on the inclusion model.

23. No one from DCPS at the IEP meeting on May 9, 2007 had knowledge about the special education program at Gibbs ES; the school's only special education teacher was not present for most of the meeting.

24. During the meeting on May 9, 2007, Mr. Fischer requested that the special education teacher be present at the meeting to describe the school's special education program. He eventually joined the IEP meeting for less than five minutes at the end of the meeting.

25. During this meeting, the special education teacher explained to the IEP team that he works with more than twenty special education students at all grade levels. In addition to the inclusion model, he generally serves all of these students – from the first to the sixth grade – in a large classroom setting.

26. The special education teacher has communicated to my attorney and me that because he works with such a large group of special education students at one time, he is unable to provide the appropriate level of attention to T.W given his special needs.

27. Based on this and other available information, the MDT/IEP team members – including the special education coordinator and DCPS psychologist – agreed that Gibbs ES was not an appropriate placement for T.W. given the combination of his special needs.

28. At that meeting, the DCPS psychologist recommended that T.W. be provided a different placement Specifically, the psychologist stated that T.W. needs a smaller educational setting and more behavioral supports.

29. The DCPS special education coordinator informed me that DCPS was offering placement at Gibbs ES.

30. I expressed my concerns that T.W. required a full-time special education placement that would be able to serve his learning disabilities and unique emotional and behavioral needs.

31. In spite of my concerns, DCPS refused to consider or offer any additional special education programs, placements, or services.

32. T.W. attended Miner Elementary School for the Extended School Year (ESY) program during the summer of 2007.

33. During T.W.'s ESY program at Miner Elementary School, DCPS could not provide the academic and educational supports necessary for T.W. to be able to do and complete his work and maintain appropriate behavior in the classroom. The program's coordinator recommended that T.W. required a full-time, therapeutic special education placement.

34. On August 27, 2007, T.W. entered second grade at Gibbs ES.

35. It is my understanding that Gibbs ES has kept T.W. in the special education coordinator's office during some school days this school year based on the fact that the school is unable to serve his needs and keep him safe in his classroom.

36. On September 5, 2007, I received a call from a staff person from Gibbs ES while I was at work. The school informed me that T.W. had left the classroom unsupervised and gone to the restroom by himself.

37. The staff person informed me that T.W. used a box of matches to ignite every roll of toilet paper in each stall on fire. Another student who observed this situation reported it to school staff.

38.  Due to the fire ignited by T.W., the entire school building was evacuated and substantial damage was done to the school restroom.

39.  Thankfully, T.W. was not physically injured during the incident, though he has been significantly affected emotionally and psychologically by this event; he was frightened by the fire setting and is upset about his actions and their consequences.

40.  The school principal informed me shortly after the incident that T.W. would be suspended from Gibbs ES for eight (8) days, starting September 14, 2007.

41.  DCPS did not communicate to me about any additional services, accommodations, or alternative placements that would be implemented in order to provide T.W. with an appropriate education and safe school environment given his special needs.

42.  I am extremely concerned about T.W.'s lack of educational progress since he began at Gibbs ES more than two years ago.

43.  I am extremely concerned about T.W.'s safety and well being at Gibbs ES, as he has repeatedly been placed in highly dangerous situations, including but not limited to climbing on school installations and furniture and starting fires, showing that he is not getting appropriate supervision, structure, and supports.

44.  It is clear to me that the staff at Gibbs ES cannot keep T.W. safe and free from harm.

45.  No DCPS representatives have contacted me to schedule a resolution session following my filing of a due process complaint on August 1, 2007.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on _____

_____
Dorothy Watson



**EXHIBIT**

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## FINDINGS AND RECOMMENDATIONS FROM
## STUDENT/PARENT CONFERENCE

Mildred E. Gibbs Elementary School
School
(202) 724-4573
Telephone

Signature of Principal
September 10, 2007
Date of Delivery
[ ] Certified Mail
[x] Hand Delivery

Student _____ Terrik Watson _____

Date of Birth   3/20/2000

Student's Grade _____ 2 _____       Male [ ] Female [X]

Ethnicity Code __Black__

Sp. Ed. Student: Yes [ X ] No [ ]   Disability code _LD_

LRE/Educational Setting:
Comp.Ed. Classroom

Parent/Guardian _____ Dorothy Watson _____

Address: 1926 Rosedale St., N.E., Washington, D.C. 20002

Home Telephone _____ (202)-399-2516 _____ Work Telephone __(202)225-7109__

Dear__ Ms. Watson _____ :
        Name of Parent/Guardian

As a result of the conference held pursuant to Board Rule 2505.4, __Terrik Watson__
                                                                      Name of Student
Shall be disciplined as follows:

[X] Excluded from __9/11/2007__ to _9-25-2007_ .
     Your child should return on 9-__ 2007.

[X] During this disciplinary period the student must report to:
    __Gibbs Elementary School__      __8AM-3:15PM (9/11-9/13 2007)__
        Name of School                    Program/Class/ Time Period

    at _500 19th Street N.E. Washington, DC 20002_ .
           Address

[x] During this disciplinary period, the student is placed on home suspension from
    _9/14/07 to 9/25/07_. An educational package will be provided to the student. Further
    instructional information will be provided by this office. If your child does not
    receive this information within four (4) school days of your receipt of this notice,
    please call
    __Ms. Kimberly R. Davis__ at __(202) 724-4573__ .

[ ] No disciplinary action will be taken. _____ is to return to school
    immediately.

Work Packet Enclosed   number of days suspended.

SHO 10:
August 2008



## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## NOTICE OF STUDENT DISCIPLINARY ACTION

### SUSPENSION LEVEL II

**Mildred E. Gibbs Elementary School**
School
**(202) 724-4573**
Telephone

Signature of Principal
**9/6/2007**
Date of Delivery
[ ] Certified Mail
[x] Hand Delivery

Student ___ **Terrik Watson** ___

Date of Birth **3/20/2000**

Student's Grade **2**    Male [X] Female []

Ethnicity Code ___ **Black**

Sp. Ed. Student: Yes [X] No []   Disability Code **LD**

LRE/Educational Setting:
Comp Ed. Classroom

Parent/Guardian ___ **Dorothy Watson** ___

Address: 1926 Rosedale St., N.E.  Washington, D.C. 20002

Home Telephone ___ **(202)399-2516** ___ Work Telephone ___ **202-225-7109** ___

Dear **Ms. Watson** :
Parent/Guardian

Please be advised that pursuant to Rules of the Board of Education, Section 2500, your son/daughter is being disciplined for violating the following section(s) of the Board Rules; 2503.2 (e) (Attempted or actual arson of any part of any DCPS building or property located within or upon DCPS premises or property.

Brief description of incident: ___ On September 5, Terrik caused arsenal combustion in the primary boy's bathroom using matches and toilet paper. ___
(State cause and indicate directly)

age 1 of 4
SHO 101
August 2005

_____
**Terrik Watson**
**Name of Student**

I am notifying you, in accordance with Bo___ d Rule Section 2505.3, that ___ Terrik Wa___n is to be suspended for ___ days, from _____ 9/11/07 ___ through 9/25/07 and r__turning on 9/26/07.

[ x ] A confer___e was held on _____ 9/10/07 _____ with ___ Terrik Watson ___.
                                    Date                    Name of Student

[ ] A conference has been scheduled on ___ ___ at _____, in the school office.                                         __ Time

Contact _____ _____ on _____ ___ to confirm attendance.
        (Na___ of Contact Person)    (Teleph__ ___ Number

## CHECK WHE_RE **APPROPRIATE**

[ x ] During this disciplinary time period ___ student must report to this school for in school suspension. ___s will take place from 9/11/0__ __rough 9/13/07.

[ ] During th__ __isciplinary time period th ___udent must report to the following alternative educational p__cement: _____ ___ located at _____
The telephone number is _____ ___.

[x] Because of the **seriousness of the offens___** __nd potential **harm to your child and others. I am** initiating a ___me **suspension in accordance** __h the Board **Rules. During this disciplinary time** period, the ___dent shall be placed on h__ __ suspension for **8** days from **9/14/07 through** 9/25/07. An e__cational packet will be pro__ __ to the student. **This office will provide further** instructional __ormation. If your child do__ __t receive **this information within (4) school days** of receipt of t__s notice, please call:

**Ms. Kimberly R. Davis** ___        __202__ __24-4573
                                      Tele___te Number

    This s__spension will not be made ___ part of the student's permanent record.    The princ_pal has __ormed the Student Disciplin ___y Hearing Office of this suspension.

    A co___ of **Chapter 25 of the Board** ___ __es is attached.

Page 2 of 4
SHO 10__
August 2005

EXHIBIT

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
**KINDERGARTEN PROGRESS REPORT**

(Page 1 of 3)

Student: _____ W.
ID#: _____
Teacher: Sskurns
School: Gibbs Elem.
SY 2005-2006

Parents: This report is to inform you of your child's progress so that we may work together in guiding his/her development.

**READING PREPARATION**

| | Sem 1 | Sem 2 |
|---|---|---|
| Names/Recognizes letters of the alphabet | P | P |
| Associates most letters with sounds | ✓ | ✓ |
| Seeks likenesses and differences in objects, in letters, in words | ✓ | ✓ |
| Names familiar signs, labels, book titles | | ✓ |
| Works from left to right | ✓ | ✓ |
| Names/Identifies basic colors | ✓ | ✓ |
| Recognizes name in print | ✓ | ✓ |
| Matches like/same objects | ✓ | ✓ |
| Finds the one that is different | ✓ | ✓ |
| Plays simple board games | | |
| Completes 10 to 12 piece interlocking puzzles | ✓ | ✓ |

**WRITING PREPARATION**

| | Sem 1 | Sem 2 |
|---|---|---|
| Aware of some purposes for writing | P | P |
| Attempts to print to convey own ideas | ✓ | ✓ |
| Writes using invented spelling | | ✓ |
| Enjoys/shares own writing | ✓ | ✓ |

**LISTENING & SPEAKING**

| | Sem 1 | Sem 2 |
|---|---|---|
| Listens attentively | ✓ | P |
| Follows directions | ✓ | ✓ |
| Hears likenesses/differences in sounds of letters | | ✓ |
| Tells the sounds made by letters | | ✓ |
| Retells nursery rhymes, short stories, short poems | | |
| Answers questions in sentences | ✓ | ✓ |
| Expresses ideas clearly in keeping with age | P | ✓ |
| Participates in class discussion | ✓ | ✓ |

**LITERATURE**

| | Sem 1 | Sem 2 |
|---|---|---|
| Names picture/story characters | | ✓ |

| | Sem 1 | Sem 2 |
|---|---|---|
| Has a sight-word vocabulary (up to 40 words) | P | P |
| Identifies main idea | ✓ | ✓ |
| Connects text with personal experiences | | ✓ |
| Enjoys "reading" picture books | ✓ | ✓ |

**SCIENCE/SOCIAL STUDIES**

| | Sem 1 | Sem 2 |
|---|---|---|
| Participates in care of living things | ✓ | ✓ |
| Recognizes/Describes seasons | N | P |
| Participates in guided experiments | ✓ | ✓ |
| Makes observations and discoveries about the environment/community | ✓ | ✓ |

**SPECIAL SERVICES** (Please check if applicable)

| | |
|---|---|
| ESL/Bilingual | |
| Special Education | |
| Speech & Language | |
| Other | |

**ATTENDANCE**

| | Advisories | | | |
|---|---|---|---|---|
| | 1 | 2 | 3 | 4 |
| Days of Instruction | 42 | 29 | 42 | 46 |
| Days Absent | 1 | 1 | 0 | 4 |
| Days Tardy | | | | |

**SCORING KEY**
P = Progressing Satisfactorily
N = Needs Support

**FOR INDIVIDUAL OBJECTIVES**
+ = Excellent
√ = Satisfactory
— = Unsatisfactory

TEACHER COMMENTS Attached

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
KINDERGARTEN PROGRESS REPORT

(Page 2 of 3).

Student: _____ W_____  Sept. 2006



**SCORING KEY**
P = Progressing Satisfactorily
N = Needs Support

**FOR INDIVIDUAL OBJECTIVES**
+ = Excellent
√ = Satisfactory
— = Unsatisfactory

**MATHEMATICS** — Sem 2

| | Sem 2 |
|---|---|
| Names/Recognizes shapes | |
| Matches items one-to-one | |
| Duplicates patterns | |
| Identifies sets with ten items | |
| Identifies numbers 1 through 12 | |
| Counts by rote to 50 | |
| Names wholes and parts of wholes | |
| Reads/Interprets simple graphs | |
| Orders/Sorts objects by specific characteristics (size, shape) | |
| Uses math terms (less, equal) | |
| Names hour on analog clock | |
| Identifies penny, nickel, dime, quarter | |
| Tells use of measuring devices (clock, calendar, ruler, thermometer) | |
| Compares objects by length, weight | |

**ART AND MUSIC** — Sem 2

| | Sem 2 |
|---|---|
| Identifies and uses line, shape, color, texture, form and direction | |
| Creates images that represent ideas and feelings through symbols | |
| Responds rhythmically and expressively to music | |
| Imitates dance | |
| Sings individually and in groups | |

**PHYSICAL DEVELOPMENT** — Sem 1, Sem 2

| | Sem 1 | Sem 2 |
|---|---|---|
| Manages fastenings (zips, ties) | | |
| Cuts on the line with preschool scissors | | |
| Holds and uses pencil with a mature pencil grasp | | |
| Prints full name | | |
| Copies simple geometric shapes | | |

**HEALTH/PHYSICAL EDUCATION**

| | |
|---|---|
| Walks down stairs alternating feet | |
| Skips and hops | |

**SOCIAL DEVELOPMENT** — Sem 1, Sem 2

| | Sem 1 | Sem 2 |
|---|---|---|
| Catches, bounces, throws ball | | |
| Displays age-appropriate health and safety practices | | |
| Tells full name | | |
| Tells address/telephone number | | |
| Tells age/birthday | | |
| Shares and takes turns | | |
| Displays self-discipline | | |
| Adjusts to new situations | | |
| Respects property of others | | |
| Names persons who make up family | | |
| Tells function of body parts | | |
| Completes actions in toileting | | |
| Shows responsibility for own things | | |
| Follows class rules | | |
| Gets along well with peers | | |

**WORK HABITS** — Sem 1, Sem 2

| | Sem 1 | Sem 2 |
|---|---|---|
| Works at task until complete | | |
| Seeks help when needed | | |
| Takes care of materials | | |
| Cleans up after work period | | |
| Asks questions | | |

Grade Next Year: 1st

TEACHER COMMENTS Attached



# District of Columbia Public Schools Report Card
SY _____ (Page three of three)
## TEACHER COMMENTS

Student Name: ████████                          Grade: B█████████

## First Advisory

*[handwritten text illegible]*

Teacher Signature _____    Date _____

## Second Advisory

*[handwritten text mostly illegible]* ...has demonstrated some academic progress in his level of performance in the areas of letter and number recognition. His classroom performance when he is on task... ...is unable to sustain and to stay on task and his inability to focus... ...relay in a group without requiring structure or something. His behavior of being redirected to demonstrate a tantrum... ...what a report is lacked.

Teacher Signature _____    Date 1-20-06

## Third Advisory

████ enjoys individual conferencing to discuss his feelings about his performance in school and other concerns. His verbal responses demonstrate that he is grasping concepts and he expresses pride in what he knows. He becomes frustrated when he is asked to conform to socially acceptable standards. He becomes verbally and physically combative. His aggressive actions compromise the safety of other students and disrupts the learning process. He does not take responsibility for his behavior and blames other students for his actions.

Teacher Signature S. Stevens    Date 3-24-06

## Fourth Advisory

████ demonstrates progress from his entry level performance. He performs better in small groups. He becomes overstimulated in large groups. Have him to read books, write stories and use numbers 1-100 in his everyday activities during the summer. Continue to encourage him to make good choices. I've enjoyed teaching him. Have a peaceful summer.

Teacher Signature S. Stevens    Date 6-14-06

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## 1st GRADE REPORT CARD
### SY 2006-2007

Page 1 of 3

Student Name: 
Student ID#:
Grade:

School:
Teacher:

**Keys:** **Overall Academic Progress Skills Within Subject Area**

4 = Advanced
s=Secure

3 = Proficient
d=Developing

2 = Basic
b=Beginning

1 = Below Basic
n=Not Introduced

| | Advisory | | | |
|---|---|---|---|---|
| | 1st | 2nd | 3rd | 4th |
| **READING/ENGLISH LANGUAGE ARTS (Overall)** | | | | |
| *Language Development* | | | | |
| Describes familiar objects, people, and events and their attributes with specific words and phrases | b | | | |
| Identifies base words (look) and their inflectional forms (e.g., looks, looked, looking) | | | | |
| *Beginning Reading* | | | | |
| Decodes regularly spelled one- and two-syllable words fluently in decodable text by applying the most common letter-sound correspondences, including the sounds represented by single letters (consonants and vowels); consonant blends; consonant digraphs; vowel digraphs and diphthongs | b | | | |
| Reads aloud grade -appropriate text fluently, accurately, and with comprehension | b | | | |
| Recognizes the distinguishing features of a sentence (e.g., capitalization, ending punctuation) | b | | | |
| *Informational Text* | | | | |
| Responds appropriately to questions based on facts in text heard or read | b | | | |
| *Literary Text* | | | | |
| Identifies elements of plot, character, and setting in a favorite story | | | | |
| Identifies differences between fiction and nonfiction and determines whether a literary selection is realistic or a fantasy | b | | | |
| *Writing* | | | | |
| Writes or dictates stories that have a beginning, middle, and end, and arranges ideas in a logical way | | | | |
| *English Language Conventions* | | | | |
| Identifies and employs correct usage of singular and plural regular nouns, contractions, and possessives | b | | | |
| **MATHEMATICS (Overall)** | 1 | | | |
| *Number Sense and Operations* | | | | |
| Counts, reads, and writes whole numbers to 110 and relates them to the quantities they represent (e.g., knows that 60 is bigger than 20) | b | | | |
| Represents equivalent forms of the same number through the use of physical models, diagrams, and expressions (e.g., 9 may be represented as 6 + 3 = 3, 10 − 1, 12 − 3) | b | | | |

| | Advisory | | | |
|---|---|---|---|---|
| | 1st | 2nd | 3rd | 4th |
| *Geometry* | | | | |
| Describes attributes and parts of two- and three dimensional shapes (e.g., length of sides and number of corners, edges, faces, and sides) | b | | | |
| *Measurement* | | | | |
| Makes and uses estimates of measurement, including time and weight | b | | | |
| *Data Analysis, Statistics and Probability* | | | | |
| Represents and compares data (e.g., largest, smallest, most often, least often) using tally charts, pictures, and bar graphs | b | | | |
| **SCIENCE (Overall)** | 1 | | | |
| Observes and measures that the sun supplies heat and light to the Earth and is necessary for most life | b | | | |
| Investigates and explains that air is a mixture of different gases that surrounds us and takes up space, and we feel its movement as wind | b | | | |
| Observes and describes that the way to make something move (faster or slower or in a different direction) is by giving it a push or a pull, which is called a force | b | | | |
| Describes and compares, objects in terms of number shape, texture, size, mass, color, and motion | b | | | |
| Recognizes that animals (including humans) and plants are living things that grow, reproduce, and need food, air, and water | b | | | |
| **SOCIAL STUDIES (Overall)** | 1 | | | |
| Locates Washington, D.C. on a map | | | | |
| Labels the continents, oceans, and major mountain ranges on a map | b | | | |
| States the meaning of U.S. national symbols, such as the American flag, the bald eagle, the White House, and the Statue of Liberty | b | | | |
| Identifies the current president of the United States, describes what presidents do, and explains that they are elected by the people | b | | | |
| Identifies how locations and climate affect economies and trade systems | b | | | |
| **MUSIC (Overall)** | | | | |
| Identifies music of various cultures and styles | | | | |

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## 1ST GRADE REPORT CARD
### SY 2006-2007

**Page 2 of 3**

Student Name: 
Student ID#:
Grade:

School:
Teacher:

**Keys:** Overall Academic Progress
Skills Within Subject Area

**4 = Advanced**
s=Secure

**3 = Proficient**
d=Developing

**2 = Basic**
b=Beginning

**1 = Below Basic**
n=Not Introduced

| | Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|---|

## WORK HABITS, PERSONAL & SOCIAL SKILLS
The following key is used:

| | |
|---|---|
| **I** | = Independently |
| **LP** | = With Limited Prompting |
| **FP** | = With Frequent Prompting |
| **R** | = Rarely |

### WORK HABITS

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| Follows directions | R | | | |
| Completes classwork on time | R | | | |
| Works well with others/cooperates | R | | | |
| Uses time wisely | R | | | |
| Completes and returns homework | R | | | |
| Participates in class discussion | R | | | |
| Makes an effort | R | | | |

### PERSONAL & SOCIAL SKILLS

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| Follows classroom rules | R | | | |
| Follows playground rules/school rules | R | | | |
| Respects the rights/property of others | R | | | |
| Listens while others speak | R | | | |
| Practices self-control | R | | | |

### ATTENDANCE

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| Days of Instruction | 45 | | | |
| Days Absent | 0 | | | |
| Days Tardy | 3 | | | |

| | Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|---|

## SUPPORT SERVICES (Checked where applicable. Additional comments from support staff are attached )

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| Resource: Reading | | | | |
| Resource: Mathematics | | | | |
| Special Education | | | | |
| Bilingual/ESL | | | | |

## REPORTING KEY
**For overall progress in subject area:**

**4 = Exceeds the standard (Advanced)**
Student takes initiative to exceed the standard; consistently produces excellent work; applying skills/concepts correctly; shows creativity and insight.

**3 = Meets the standard (Proficient)**
Student produces work that meets the standard; frequently produces work of high quality; applies skills/concepts correctly.

**2 = Approaches the standard (Basic)**
Student shows a basic working knowledge of skills/concepts; produces satisfactory work; usually applies skills/concepts correctly.

**1 = Does not meet the standard (Below Basic)**
Student does not show basic working knowledge of skills/concepts; seldom produces work of satisfactory quality.

**For skills/expectations within subject area:**

| | | |
|---|---|---|
| s | = | Secure |
| d | = | Developing |
| b | = | Beginning |
| n | = | Not Introduced |

**Grade Next Year** _____

SY 2007 – 2008

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**Elementary School Report Card**
**School Year 2006 - 2007**



Student Name _____
Student ID# _____
Grade: _____

**Teacher Comments**

**First Advisory** _____

As I have told you
by phone and in person,
_____ only wants to
draw. He has marked
up his practice book,
that is paper. Anything
that is paper. When
he has to stop, he throws
a tantrum. He has
broken crayons and
other things that are
meant for the class.

Teacher's Signature: *K. L. Oliver*

**Second Advisory** _____

Teacher's Signature: _____

**Third Advisory** _____

Teacher's Signature: _____

School: _____
Teacher: _____

**EXHIBIT**

P - 4

**State Educational Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**

# *Due Process Complaint Notice*

· The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a due process complaint notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

· Parents initiating a complaint must provide a completed due process complaint form to the Local Education Agency ("LEA"). For students in traditional public schools, nonpublic day school, or residential treatment facility, notice to the LEA shall be provided to the Office of the General Counsel, 825 N. Capitol St. NE, Washington, D.C. 20002, with a copy to the Student Hearing Office. If a charter school is a named party, the due process complaint must be provided to the principal or director of the charter school, with a copy to the Student Hearing Office.

· <u>Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice.</u> Therefore, please be thorough in providing the information requested.

· Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (**called a "Resolution Session"**) with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution sessions.**

· Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

· Policies and Procedures governing due process hearings are contained in federal and local law and the SHO SOP. You may obtain a copy of the SOP from the Student Hearing Office or any D.C. Public or Charter School without cost. The SOP is also at the DCPS website.

**A.**     <u>**Information About the Student:**</u>

Student Name:  ████ W████         Birth Date ████████

Address:  ████████████████
          Washington D.C.  20002

Home School:  Gibbs Elementary School

Revised May 1, 2006

Present School o   tendance: <u>Gibbs Elementary School</u>
Is this a charter school? _____   (If yes, you must also provide a copy of this notice to the charter school principal or director.)

Parent/Guardian of the Student: ████████████

Address (if different from the student's above): ___ <u>(same)</u> ___

Phone/Contact Number: (████████)   Fax Number (if applicable): _____

## B.   <u>Individual Making the Complaint/Request for Due Process Hearing:</u>

Name: ██████████

Complete Address: ██████████
<u>Washington D.C. 20002</u>

Phone: (h) ██████████   (w) ██████████   (Fax) _____   (e-mail) _____

Relationship to the Student:

☑ Parent            ☐ Legal Guardian
☐ Self/Student      ☐ Local Education Agency (LEA)        ☐ Parent Surrogate
                                                          ☐ Parent Advocate

## C.   <u>Legal Representative/Attorney (if applicable):</u>

Name: <u>Aaron J. Fischer, Esq.</u>

Address: <u>The Children's Law Center</u>
<u>616 H Street, NW – Suite 300</u>
<u>Washington DC, 20001</u>

Phone: (w) <u>(202) 467-4900, x 525</u>   (Fax) <u>(202) 552-7125</u>
Will attorney / Legal representative attend the resolution session? _____ (e-mail) <u>Afischer@childrenslawcenter.org</u>   ☑ Yes   ☐ No

## D.   <u>Complaint Made Against (check all that apply):</u>

☑ DCPS school (name of the school if different from page one) _____
☐ Charter school (name of the charter school if different from page one) _____
☐ Non-public school or residential treatment facility (name) _____
☐ Parent

## E.   <u>Resolution Session Between Parent and LEA:</u>

I understand that it is my right to have a resolution session to resolve this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive the resolution session to avoid having this meeting.)

☐ I wish to waive the Resolution Session.

## F.   <u>Mediation Process:</u>

IDEA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session. Mediation is also available prior to a due process hearing, but mediation may not be used to deny or delay a parent's right to a hearing on the parent's due process complaint. Please check all that apply.

☐ I am requesting ........diation as an alternative to the resolution session meeting.
☐ I am requesting mediation services only.
☑ I do not wish to use a mediator at this time.

# G. <u>Facts and Reasons for the Complaint:</u>

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions. Provide complete details about all the facts supporting your claims. (You may attach additional pages if needed):

1.    What is the nature of the problem, including the facts relating to the problem, that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

T___ W___ is a seven-year old student with learning disabilities and substantial special education needs. He was in fact a full-time special education student during his Pre-K school year (2004-05). DCPS inappropriately terminated his eligibility for special education before the 2005-06 school year. For the next two years, as T___ struggled increasingly in the classroom to make educational progress, DCPS did not identify him as a child with special needs. DCPS failed to provide T___ an Individualized Education Plan (IEP), even as there were numerous red flags in the classroom and repeated pleas for help from his great-grandmother and legal guardian, Dorothy Watson. T___ was found eligible for special education in March 2007, but DCPS has continued to fail to provide T___ an appropriate IEP, appropriate special education services, and an appropriate placement.

## I. DCPS inappropriately exited T___ from his full-time special education program and provided no special education services for two years.

T___ special needs were evident at a very young age. On June 11, 2004, when T___ was four years old, an MDT/IEP team found him eligible for special education, providing him with 30 hours/week of specialized instruction, with placement at National Children's Center. His classification was "Developmental Delay." Yet on August 4, 2005, DCPS inappropriately terminated T___ eligibility for special education services and exited T___ from special education entirely. Instead of continuing to provide full-time, intensive special education services, DCPS placed T___ in a regular education Kindergarten class at Gibbs Elementary School. Subsequently, his substantial special needs went unmet, resulting in little to no educational progress and recurring behavioral problems reflective of his frustration and depression.

As a Kindergarten student at Gibbs Elementary School, T___ immediately and repeatedly demonstrated the severity and extent of his special needs. In October 2005, his teacher, Ms. Stevens, reported that T___ behavior was "aggressive" and marked by his "refusal to participate" in classroom lessons and activities. In January 2006, his teacher noted that T___ is "easily distracted and his task performance is low," while "his reaction to being redirected is to demonstrate a tantrum." Ms. Stevens explicitly noted that "additional support is needed" for T___. The same month, Ms. Stevens' outlined extensive concerns for a Student Support Team, identifying that T___ "ignores verbal directions," "crawls on the floor," "refuses to participate in group activities," "demonstrates periods of being in a trance-like state," and shows "limited work production." In June 2006, she wrote that T___ "becomes overstimulated in large groups" and "performs better in small groups." In spite of these reports, DCPS failed to identify T___ as a student with special needs, to evaluate him, and to provide him with an appropriate educational placement and program during the 2005-06 school year.

The following year, SY 2006-2007, T___ struggled consistently on all first grade academic work. He would not do the reading or math assignments provided by the regular education teacher. Upon information and belief, the situation deteriorated in the regular education classroom to the point

that, on a few occasion... the school staff sent T███ to the special education teacher's room, even *before* he was evaluated and found eligible for special education. DCPS's failure to provide an appropriate educational program and placement also repeatedly resulted in dangerous situations for T███. Without an appropriate educational environment – including but not limited to specialized instruction and appropriate related services including counseling – T███ regularly refused to complete his work assignments and participate in the classroom activities. Instead, he frequently hid under the classroom tables, moved chairs, left the classroom on his own and unsupervised, and even climbed on bathroom stalls, radiators, or tables. These major threats to T███ safety highlight his need for a full-time special education placement that can serve both his learning disabilities and social/emotional needs.

## II. DCPS failed to timely and/or appropriately identify and evaluate T███ and provide an appropriate educational placement with the necessary specialized instruction and related services that Terrik requires in order to make educational progress.

On December 21, 2006, Ms. W███n requested an immediate referral for special education evaluations. An initial MDT meeting was convened on January 30, 2007. During the meeting, the regular education teacher reported that T███ would do work only when he was taken out of the regular education classroom and placed in a considerably smaller setting, generally with the school social worker or special education teacher. Based on T███ learning deficits and social/emotional problems, the team agreed to move forward with a psycho-educational evaluation and Functional Behavior Assessment. T███ classroom teacher and Ms. Watson completed Functional Behavior Assessments, but DCPS has failed to create a Behavior Intervention Plan for T███.

In February 2007, the DCPS psychologist conducted a psycho-educational evaluation, in which he identified T███ significant learning deficits. The evaluation report identifies that T███ reading and math skills are in the "Borderline" range, and that his "related skills" – including the ability to match and read a series of printed words, match words with pictures, read sentences, and solve basic addition and subtraction problems – "are extremely low." The DCPS psychologist also identified impaired social/emotional functioning. The evaluation affirms that T███ behavior – including having trouble staying seated, being overly active, acting impulsively, and being easily distracted – "are interfering with his learning process" and require "considerably more attention than it is getting" in his present placement.

During the referral and evaluation process, DCPS continued to fail to provide appropriate special education services for T███, compounding the protracted denial of FAPE for T███. Upon information and belief, the school removed T███ from class and sent him home on several occasions in the fall and winter of the 2006-07 school year; these exclusions were DCPS's inappropriate response to T███ behavioral and academic problems stemming from his disabilities. On or about February 12, 2007, in response to behavior that was a clear manifestation of T███ special needs and disabilities, the school suspended T███ for ten days. Parent's counsel contacted the school by letter to clarify that this ten-day suspension, along with the many class exclusions earlier in the year, would be a violation of the Individuals with Disabilities Education Act 2004. T███ ultimately served two days of this suspension before DCPS allowed him to return to school.

On March 22, 2007, T███ multi-disciplinary team convened and finally found T███ eligible for special education; his disability classification was Learning Disabled. The team also determined that a large classroom with numerous students is not appropriate for T███ given his academic and social/emotional issues, including his LD and ADHD diagnoses. The DCPS psycho-educational evaluation report recommended that T███ requires a "different physical placement ... i.e., either a different classroom where the opportunities for distraction are much less, or a different school where the opportunities for distraction are much less." DCPS has failed to provide such a placement.

**III. DCPS continues to fail to provide T___ an appropriate IEP, placement, and related services.**

Following the MDT meeting of March 22, 2007, DCPS twice canceled a scheduled IEP meeting to create an IEP for T___ effecting a further delay in the special education process. An initial IEP meeting was scheduled for April 13, 2007; DCPS canceled this meeting. After rescheduling this IEP meeting for April 20, 2007, DCPS canceled that meeting as well. Even as T___ continued to demonstrate substantial special needs in his academic program, no interim special education services were provided during this time. Finally, on May 9, 2007, an initial IEP meeting was held at Gibbs Elementary School. The IEP meeting did not include the legally-mandated participants, including the special education teacher, the school social worker, and an individual knowledgeable about the placement options for T___. Among those IEP team members who did attend the meeting – including the special education coordinator and DCPS psychologist – no one was able to provide information on the special education program at Gibbs Elementary School nor any other placement option. DCPS refused to offer any placement other than Gibbs for T___.

Ultimately, T___ IEP – with its insufficient hours of specialized instruction, lack of a Behavior Intervention Plan, and inappropriately drafted IEP goals and objectives –cannot provide T___ with the Free and Appropriate Public Education to which he is legally entitled. In response to the parent's stated disagreement with Gibbs as the placement, and despite the DCPS psychologist's and team's recommendations, the special education coordinator explained to the parent that he had no authority to offer or approve a placement outside of Gibbs Elementary School. Further, DCPS provided only 15 hours/week of specialized instruction, leaving T___ in the regular education classroom where he has made little to no academic progress and ultimately, denying him the full-time special educational placement he requires. DCPS also failed to create and implement a Behavior Implementation Plan as part of T___ IEP in spite of Ms. Watson's request to do so and the agreement of the team that one was necessary for T___. Finally, the IEP goals and objectives on his IEP are inappropriate. According to Gibbs' special education coordinator, they were drafted prior to the meeting by the school's special education teacher, who had limited knowledge of T___ profile and needs and was not present at the IEP meeting. Strikingly, T___ – who was present at the IEP meeting – completed some of the drafted short-term objectives (such as writing the numbers 1-25) *during the meeting*. The special education coordinator simply removed these objectives from Terrik's IEP. Without the appropriate and legally-mandated IEP team members in attendance, and without sufficient discussion about T___ need for a full-time special education placement that can serve his learning and social/emotional needs, DCPS failed to create an appropriate IEP for T___.

T___ has continued to demonstrate his extensive special needs, warranting a full-time special education program and placement. T___ participated in the Extended School Year program at Miner Elementary School during summer 2007. The program's social worker documented in her report that T___ did not demonstrate progress on multiple articulated goals. She noted that T___ "was not on task nor did he participate in any classroom instruction assignments." She further noted that when T___ was unable to succeed in a classroom activity in which he demonstrated some effort, he "regressed quickly: Hiding under the table, angry." An ESY classroom aide reported at the conclusion of the summer program that T___ had made no progress and refused to do any of his academic work. The program's coordinator indicated to Ms. W___ that T___ requires a "full-time therapeutic setting."

In sum, DCPS inappropriately exited T___ from special education on August 4, 2005, abruptly and wrongfully terminating his full-time special education program and placing him into regular education. For the next two school years, T___ made little to no progress in his regular education classroom at Gibbs Elementary School: DCPS neither provided an appropriate setting nor appropriate special education services, preventing T___ from receiving educational benefit and creating a dangerous environment for T___ given his special needs. T___ has continued to fail academically and to demonstrate increasingly serious social/emotional behaviors at school. Even when DCPS returned

T███ to special educ.  on at the parent's request on May 9, 2007, DCPS continued to fail to provide an appropriate educational placement and special education services for T███ to receive educational benefit. T█████ need for a full-time special education placement was identified, as reflected in his IEP during the 2004-05 school year. He will continue to fail in his present placement, which provides an insufficient level of special education services and a setting in which he has made essentially no progress for the last two years.

DCPS is on notice of any and all actions taken by DCPS and/or to which DCPS is a party, including but not limited to meetings held regarding T███ W█████ and any interventions taken by DCPS, after the filing of this due process complaint and prior to a due process hearing. Consequently, ████████████ T█████ legal guardian, reserves the right to litigate new legal issues and present relevant evidence, in relation to those actions taken by DCPS that change and/or add relevant facts to this due process complaint, at the due process hearing that arises out of this complaint.

2.     To the extent known to you at this time, how can this problem be resolved?

1)  DCPS will place and fund T████at an appropriate, full-time non-public special education program – such as The Children's Guild – that can serve the needs of children with learning disabilities and social/emotional needs, with transportation services to be provided by DCPS.  There is no DCPS program that is able to meet T███ special needs.

2)  DCPS will provide compensatory education services for the two years in which it failed to provide FAPE to T████

3.     Issues presented:

**The central issue to be addressed is the past and continuing failure of DCPS to provide T████ Watson with a Free and Appropriate Public Education. More specifically, the issues to be addressed include, but are not necessarily limited to the following:**

1)  Whether DCPS inappropriately exited T████ from special education on August 4, 2005.

2)  Whether DCPS failed to timely identify, locate, and/or appropriately evaluate T████ for special education eligibility.

3)  Whether DCPS failed to create an appropriate Individualized Education Plan for T████ to address his special education needs.

4)  Whether DCPS failed to provide T████ an appropriate educational placement to address his unique special needs.

5)  Whether DCPS wrongfully excluded T████ from class for more than ten days without conducting a manifestation meeting to determine whether the demonstrated behaviors are related to T██████ disability.

6)  Whether DCPS failed to create and implement an appropriate and/or timely Behavior Intervention Plan for T████

7)  Whether DCPS failed to include all necessary members of the MDT/IEP team in the IEP development process.

8) Whether DCPS has failed to convene and/or conduct appropriate and/or timely MDT/IEP meetings.

**H.**  **Estimated amount of time needed for the hearing**: 12 hours

Note: In the absence of a specified amount of time, the SHO schedules hearings in two hour blocks of time and will allocate two hours to conduct the hearing. Please indicate if you believe more than two hours will be needed.

**I.**  **Accommodations and Assistance Needed:**

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type)_____
- Special Communication (please describe the type)_____
- Special Accommodations for Disability (please be specific)_____
- Other _____

**J.**  **Waiver of Procedural Safeguards (Optional):**

☐ I (parent/guardian) waive receiving a copy of the procedural safeguards at this time. I understand that waiver of this right is optional and not a requirement for filing this Complaint.

**K.**  **Requirement to Consider Compensatory Education:**

If a hearing is held on a date that is past the date on which the Hearing Officer's Determination was required to be issued, there is a rebuttable presumption of harm and compensatory education must be an issue considered by the Hearing Officer during the hearing.

**L.**  **Parent or Local Educational Agency Signature and Affirmation:**

I affirm that the information provided on this form is true and correct.

_____
Signature of Parent or Guardian                              Date

_____
Signature of Representative of the Local Educational Agency        Date
(if hearing requested by a LEA)

**M.**  **Signature of Attorney/ Legal Representative:**

_____
Legal Representative / Advocate                              Date

Mail, fax or deliver this complaint notice to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
1150 5th Street, SE
Washington, DC 20003
Fax number: 202/698-3825

**EXHIBIT**

Gibbs
500 19th St. N.E.
724-4573

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### WASHINGTON, D.C.
### INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP Page 1 of

Additional Comments:

### I. IDENTIFICATION INFORMATION

Student Name, Last ███████  First ████  MI

Student ID ████████  Soc. Sec. No. ████████

Gender ☒ M ☐ F  Date of Birth ████████  Age: 4  Grade: ██

Ethnic Group: African American

Address 1926 Rosedale St NE
House No.  Street Name

Washington  DC  20006
City/Quadrant  State  Zip Code
Apartment #

☐ Non-attending

Attending School  NCC

☐ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Home School  Gibbs

Parent
Address of (if different from student): ███████████ #___ Rest

☐ Parent ☒ Guardian ☐ Surrogate
House No.  Street Name  Quad  Apt. No.  City

Telephone: Home ☎ 399-2576

Work 2/225-7109/2-225-7004

### II. CURRENT INFORMATION

Date of IEP Meeting: 2/22/05
Date of Last IEP Meeting: 6/11/04
Date of Most Recent Eligibility Decision:

Purpose of IEP Conference:
☐ Initial IEP  ☒ Review of IEP
☐ Requested Eval.  ☐ 3yr ReEval.

Indicate Level of Standardized Assessment:

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
|---|---|
| ESY | TRANSITION |

### III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | | | |
| Parent | " | | | |
| Home | " | | | |

To be completed by Office of Bilingual Education
English and Math Proficiency Assessment

Oral
Rdg / Written
Instrument
Date

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd SpEd Total | FREQUENCY Hr./Min O/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks/mos |
|---|---|---|---|---|---|
| Specialized Instruction | ✓ | 30 hr week | | 2/23/05 | 10 mo. |
| | | | | | |
| | | | | | |
| | | | | | |
| TOTAL | | Hours Per Week | | | |

### V. Disability(ies)
Developmental Delays

☐ (Check if setting is general Ed )

Percent of time in Specialized Instruction and Related Services
☐ 0-20%  ☐ 21-60%  ☒ 61-100%

Percent of time NOT in a Regular Education Setting

### VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below:

Monica Canns MACCC-SLP
Rochelle Sharps - Teacher
Phyllis Upton - Grandmother
Gregory Brochu LEA TS/M.

Monica Canns MACC-SLP
Rochelle Sharper
Phyllis Upton
Gregory Brochu

☐ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP and consent to the implementation of the services in the IEP. I have received a copy of this IEP.

☐ I DO NOT AGREE with the contents of this IEP.

Parent / Guardian Signature ███████  Date 2-22-05

District of Columbia Public Schools    07-031-2011    Division of Special Education

Student Name: _____
Student ID Number: 9108685  DOB 2/__

Managing School: NCC
Attending School: NCC

DCPS-IEP
Page 2 of 4

**VII. Present Educational Performance Levels in Areas Affected by the Disability**

Academic Areas: (Evaluator) Classroom Teacher/Michelle Sharpl

Additional Comments:

Math Strengths:
able to identify numbers 1-5
able to count 1-20

Impact of disability on educational performance in general education curriculum:
disability impacts on his ability to identify
numbers

Reading Strengths:
able to identify his first name

Impact of disability on educational performance in general education curriculum:
disability impacts an ability to write his
name

Score(s) When Available

Math Cal. _____
Math Rea. _____
See goal page: _____
Date: _____
Rdg. Com _____
Pdg. Basic _____
Written Ex. _____
See goal page: _____
Date: _____

**Communication (Speech & Language) (Evaluator)** Marea Carter MA CCC SLP Speech
Strengths:
____ is functioning within normal
range in speech/language receptive lang, total
receptive lang, expressive lang, articulation + fluence

Impact of disability on educational performance in general education curriculum:
No impact ____ is functioning within normal
limits etc. Discontinue Speech Therapy.

Score(s) When Available
Exp. Lang. WNL - UC
Rec. Lang. WNL - UC
Artic. WNL-UC
Voice WNL as 2/___
Fluency WNL
Exp. Voc. WNL
Rec. Voc. _____
See goal page: Met goal ___
Date: 2/__/__ from ___

**Motor/Health (Evaluator)**
Strengths:
N/A

Impact of disability on educational performance in general education curriculum:

Score(s)/Results
When Available

**Social Emotional Behavioral Areas: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

See goal page: _____
Date: _____
Score(s) When Available

**Cognitive/Adaptive Behavior (Evaluator)**
Strengths:
able to take his chair given verbal prompts

Impact of disability on educational performance in general education curriculum:

See goal page: _____
Date: _____
Score(s) When Available

**Prevocational Skills (Evaluator)**
Strengths:
N/A

Impact of disability on educational performance in general education curriculum:

See goal page: _____
Date: _____
Score(s) When Available

Student Name _____

Student ID Number _____    DOB _____

Managing School _____

Attending School  **NCC**

DCPS -IEP
Page 2 of 4

## VII. Present Educational Performance Levels In Areas Affected by the Disability

**Academic Areas: (Evaluator)**  Rochelle Sharps

Math Strengths:
is able to count 1-10 independently

Impact of disability on educational performance in general education curriculum:
deficits impact on ability to identify numbers

Reading Strengths:
is able to identify familiar objects

Impact of disability on educational performance in general education curriculum:
deficits impact on ability to match letters

**Communication (Speech & Language) (Evaluator)**  Monica Cennas MA CCC-SLP

Strengths:
Receptive and Expressive Language skills are within normal limits for a child

Impact of disability on educational performance in general education curriculum:
Mild Articulation Disorder impacts his ability to communicate effectively

**Motor/Health (Evaluator)**

Strengths:
Has good fine and gross motor skills

Impact of disability on educational performance in general education curriculum:

**Social Emotional Behavioral Areas: (Evaluator)**

Strengths:
greets staff in the morning
plays with peers

Impact of disability on educational performance in general education curriculum:
deficits impacts on ability to transition without tantrums

**Cognitive/Adaptive Behavior (Evaluator)**

Strengths:
is able to complete 8-10 piece puzzle

Impact of disability on educational performance in general education curriculum:
deficits impacts on ability to identify numbers and letters

**Prevocational Skills: (Evaluator)**

Impact of disability on educational performance in general education curriculum:

### Additional Comments:

Score(s) When Available
Math Cal. _____
Math Rea. _____
See goal page: _____
Date: _____

Rdg. Com _____
Rdg. Basic _____
Written Ex _____
See goal page: _____
Date: _____

Score(s) When Available
Exp. Lang.  WNL
Rec. Lang.  WNL
Artic.  MILD
Voice  WNL
Fluency  monitoring
Exp Voc  WNL
Rec Voc  WNL
See goal page: _____
Date:  Eval, 3/18/04

Score(s) Results When Available
_____
_____
_____

See goal page _____
Date _____

Score(s) When Available
_____
_____

See goal page: _____
Date: _____

Score(s) When Available
_____
_____

See goal page: _____
Date _____

Score(s) When Available
_____

See goal page _____
Date _____

District of Columbia Public Schools       07-22-2001       Division of Special Education       Accreditation       IEP Signature

Student Name
Student ID Number                    DOB

Managing School    N C C
Attending School    N C C

DCPS - IEP
Page 3 of 4

| VIII. SPECIALIZED SERVICES | Additional Comments: |

Area addressed by goal:    Pre-Academic          Goal Number    1

ANNUAL GOAL: Including mastery criteria

_____ will increase pre-Academic skills

Provider(s):    Classroom Teacher

Consider audience, behavior, condition, degree and evaluation

| SHORT-TERM OBJECTIVES (Include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| ① Will identify numbers 1-50 on 4/5 trials for 3 consecutive weeks | | quart |
| ② Will identify letters (A-Z) on 4/5 trials for 3 consecutive weeks | | |
| ③ Will write his first and last name on 4/5 trials for 3 consecutive weeks | | |
| ④ | | |
| | | |
| | | |
| | | |

EVALUATION PROCEDURES

Student Name ████ U. ████

Student ID Number ████    DOB ████

Managing School

Attending School    NCC

DCPS - IEP
Page 3 of 4

| VIII. SPECIALIZED SERVICES | Additional Comments: |

Area addressed by goal: Articulation

Goal Number: ☐

ANNUAL GOAL: (including mastery criteria)

████ will improve his articulation skills @ 90%

Provider(s) Speech Language Pathologist

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Produce "s" and "z" in isolation + syllables @ 90% accuracy. | | |
| Produce "s" and "z" in initial, medial, + final position + words at the word level @ 90% | | |
| Produce "s" and "z" in the initial, medial, + final position + words at the phrase/sentence level @ 90% | | |
| Produce "l" in isolation + syllables @ 90% | | |
| Produce "l" in initial, medial, + final position + words at word level @ 90% | | |
| Produce "l" in initial, medial, + final position + words at phrase/sentence level @ 90% | | |

EVALUATION PROCEDURE(S)

Formal    Chart    Test    Documented Observation    Report    Other ___

Student Name: _____
Student ID Number: _____    DOB: _____
Managing School: _____
Attending School: NCC

VIII. SPECIALIZED SERVICES    Additional Comments:

Area addressed by goal: Cognitive

Goal Number: _____

**ANNUAL GOAL** (including mastery criteria.)

Will increase cognitive skills

Provider(s)

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | | Evaluation Schedule |
|---|---|---|---|
| 1) Will identify Numbers 1-10 with 80% accuracy | | | |
| 2) Will identify letters A-Z with 80% accuracy | | | |
| 3) Will Trace letters A-Z with 80% accuracy | | | |
| 4) Will Trace numbers 1-10 with 80% accuracy | | | |
| 5) Will match lower case letter to upper case letters with 80% accuracy | | | |

**EVALUATION PROCEDURE S**

District of Columbia Public Schools    09-22-2001    Division of Special Education    Appendix A    IEP Page

Student Name

Student ID Number                    DOB

Managing School

Attending School    NCC

DCPS - EP
Page 3 of 4

| VIII. SPECIALIZED SERVICES | Additional Comments. |
|---|---|

Area addressed by goal    Social/Emotional

Goal Number

ANNUAL GOAL (including mastery criteria.)

Will increase social and attending skills
80% of the time

Provider(s): Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1) Will attend to task and or circle for 15 minutes on 4/5 days a week. | | Quarterly |
| 2) Will transition from play to work activity without tantrums on 4/5 for 3 consecutive days | | |
| | | |
| | | |
| | | |
| | | |

EVALUATION PROCEDURE(S)

Portfolio        Chart        Test        Documented Observation        Report        Other

Student Name

Student ID Number

DOB

Managing School

Attending School  NCC

VIII. SPECIALIZED SERVICES

Additional Comments.

Area addressed by goal.

DCPS - IEP
Page 3 of 4

ANNUAL GOAL: (including mastery criteria.)

Goal Number:

Will increase Adaptive skills

Provider(s): Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| ① Will tie his shoes on 4/5 - trials using ① physical prompts ② verbal prompts | | |
| | | |
| | | |
| | | |
| | | |
| | | |

EVALUATION PROCEDURE(S)

Portfolio    Log    Chart    Test    Documented Observation    Report    Other

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

Student Name

Student ID Number

DOB

Managing School

Attending School    NCC

DCPS - (E)
Page 4 of 4

**Additional Comments:**

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education?    Yes    No

Explanation for removal out of regular education classroom

## X. Supplementary Aids and Services
### Classroom Needs
(Do not name products or companies)

| | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/YYYY) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hrs Min | D/W/M | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for **testing**:

| | |
|---|---|
| Timing/Scheduling | None needed |
| Setting | |
| Presentation | |
| Response | |
| Equipment | |

## XI. STATE AND DISTRICT ASSESSMENTS

Level I    Tested with non-disabled peers under standard conditions without accommodations

Level II    Describe non-uniform conditions for level II)

Tested under non-standard conditions with permissible accommodations

Level V   Portfolio

Level III    Describe accommodations for level III
Tested under standard conditions with special accommodations

Level IV    Describe the alternative assessment

## XII. Areas Requiring Specialized Instruction and Related Services:

Reading

Mathematics    Physical/Sensory

Written Expression    Social Emotional

Other    Physical Development

None

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above

Transition

Vocational

Independent Living

Speech/Language

Modifications:

Language Arts/English

Social Sciences

Biological & Physical Sciences

Fine Arts

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| | | |
| | | |
| | | |

Modifications / Accommodation(s) to address the harmful effects

Location for Services    NCC

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    SP Page 4 of 4

**EXHIBIT**

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**SPECIAL EDUCATION SERVICES**

**COMPLETION OF SERVICES FORM**

STUDENT: ▮▮▮▮ W▮▮▮▮

ADDRESS: ▮▮▮▮▮▮

Street #    Street Name,    Quadrant    Apartment #

Washington DC 20006

City,    State,    Zip Code

Date: 8-4-05

SCHOOL: NCC - SE

ADDRESS: 3400 MLK Jr. Ave. SE.
Washington DC 20032

TELEPHONE: ▮▮▮▮

ID # ▮▮▮▮▮▮    DOB: ▮▮▮▮    GRADE:

TELEPHONE: 202-279-4900

A multidisciplinary team meeting is required in order to determine whether a student has completed special education and related services identified on the IEP, including the consideration of information from the evaluation (for which you provided consent) in the area(s) to be considered. Complete the sections below identifying the services.

## COMPLETION OF SERVICE(S) (Check all services that are being considered)

| | SERVICE | GOALS/ OBJ. COMP. | RESULTS OF EVALUATION | DATE |
|---|---|---|---|---|
| 1. | Speech-Language Therapy | Y    N | | |
| 2. | Orientation & Mobility | Y    N | | |
| 3. | Occupational Therapy | Y    N | | |
| 4. | Physical Therapy | Y    N | | |
| 5. | Counseling | Y    N | | |
| 6. | Adaptive PE | Y    N | | |
| 7. | Audiology | Y    N | | |
| 8. | Transportation | Y    N | | |
| 9. | Other (specify): _____ | Y    N | | |
| (10.) | Specialized Instruction: | (Y)    N | | |
| | _____ | Y    N | goals met & completed | 8/4/05 |
| | _____ | Y    N | | |
| | _____ | Y    N | | |

## Reason for Completion of Services:

Graduated    ✓ Completed Services    Aged Out    Transferred Out of District    Dropped Out

✓ Other: No longer elegible for special education services. To be exited.

☑ I agree with the proposed termination of the special education and related service(s) identified above.

☑ I have been provided with my procedural safeguards and questions answered. I understand that my consent is voluntary, and that I have the right to appeal the decision of the multidisciplinary team (MDT)

Signature: ▮▮▮▮▮▮▮

(Student if age of majority has been reached and the transfer of rights has been officially documented)

Date: 8/4/05

District of Columbia Public Schools    07-02-2001    Division of Special Education

COMPLETION OF SERVICES

EXHIBIT

▶ APPENDIX J

## District of Columbia
## Student Support Team (SST)
## Initial Meeting Report



3/7/06

**SST Members Present at Meeting**

Martha Ford

Maureen McDonough Berard

Luvita Stevens

Lillie Lyons

Reading Resource

Math Resource

Teacher

Social Worker

**Meeting Notes**

Please record information for each of the following SST activities. Include questions asked. (Not much information here.)

Team strengths - Creativity, artistic, likes to use his hands. He is an auditory + tactile learner. When not in the group, came in an IEP responsive to learning.

most critical - violence toward classmates, oppositional play, hiding, running in hall, not participating in group activities, ignores verbal directions.

That Tyrone will be able to be in the classroom and participate in a manner that is safe for both him and his classmates.

Tyrone loves to receive "Happy Faces" for behavior rewards. He responds to Art Activities, Recess, his after care worker.

Looked at IEP. Have Mr. Johnson meet Tyrone & Mr. Lyons and give suggestions. Mr. Lyons will see him on a daily basis.

contact grandmother for medical release forms. Mrs. Terry for IEP. Mr. Johnson to meet with Tyrone. Continue daily 4/1 hrs (Lyons). CFSA - school worker to be contacted.

For the District's Children

GIBBS ELEMENTARY SCH

▶ APPENDIX C
(continued)

**District of Columbia**
# Student Support Team (SST) Request Form
### Teacher Version

| Student Name | Date |
|---|---|
| T_____ W_____ | 1/24/06 |

## About the Student

| Reading Level | Math Level | Medication /Other Relevant Health Data |
|---|---|---|
| | | |

### Student Strengths (Check ✔ all that apply)

- ☐ Positive attitude
- ☐ Hard worker
- ☐ Trustworthy.
- ☐ Works well in groups.
- ☐ Respectful of authority.
- ☐ Motivated.
- ☐ Focused/goal directed.
- ☐ Organized.

- ☐ High expectations for self.
- ☐ Works well independently.
- ☐ Good sense of humor.
- ☐ Cooperates.
- ☐ Responsible.
- ☑ Transitions easily.
- ☑ Creative.
- ☐ Possesses leadership qualities.

- ☐ Handles conflict well.
- ☐ Athletic.
- ☐ Takes pride in appearance.
- ☐ Musically talented.
- ☑ Artistically inclined.
- ☐ Other _____
- ☐ Other _____

*works independently on the computer*

### Academic Concerns (Check ✔ all that apply)

- ☐ Grades declining.
- ☐ Disorganized.
- ☐ Slow rate of work.
- ☑ Incomplete assignments.
- ☑ Does not follow directions.
- ☐ Low rate of retention.

- ☐ Poor writing skill.
- ☐ Poor reading skill.
- ☐ Poor math skills.
- ☐ Poor study skills.
- ☐ Gives up easily.

- ☐ Does not work well independently.
- ☑ Does not work well with others.
- ☐ Other _____

### Behavioral Concerns (Check ✔ all that apply)

- ☑ Verbally disruptive.
- ☑ Physically disruptive.
- ☑ Physically aggressive.
- ☐ Verbally aggressive.
- ☐ Sexually aggressive.
- ☐ Victim of bullying.

- ☐ Bullies others.
- ☑ Destroys property.
- ☑ Easily distracted.
- ☐ Argumentative/defiant.
- ☐ Shy/withdrawn.
- ☐ Hostile when criticized.

- ☑ Attention seeking behavior.
- ☐ Steals/cheats/lies.
- ☑ Avoided by peers.
- ☑ Easily frustrated.
- ☐ Truant/tardy.
- ☐ Other _____

### Personal Concerns (Check ✔ all that apply)

- ☐ Body odor.
- ☐ Poor hygiene.
- ☐ Overweight/underweight.
- ☐ Appears sickly.
- ☐ Sleeps in class/lethargic.
- ☐ Agitated/nervous.

- ☐ Difficulty moving/uncoordinated.
- ☐ Complains of nausea/vomiting.
- ☐ Bloodshot eyes.
- ☐ Evidence of self mutilation.

- ☐ Burn marks.
- ☐ Smells of smoke or alcohol.
- ☐ Possession of drugs, alcohol, or paraphernalia.
- ☐ Other: _____



**District of Columbia**
# Student Support Team (SST) Request Form
### Teacher Version

Student Name: _____

Date: 1/24/06

## Classroom Interventions Previously Tried

What strategies have been used to address the student concern prior to the SST request?
(Check ✔ all that apply)

**Student Strengths**

| | How Long Tried? | Results? |
|---|---|---|
| ✔ Instructional accommodations Specify: | | has good auditory skills. He is able to process and retain information when he is manipulating materials or the work is hands on |
| ☐ Modified curriculum/demands | | |
| ☐ Materials modification Specify: | | |
| ☐ Alternative materials | | |
| ✔ Small group instruction | | |
| ✔ Tutoring | | Refuses to stay in it is too disruptive |
| ✔ Assistive technology | | |
| ✔ Daily guided reading | | works well with the computer limited feedback to literature discussions |
| ☐ Voyager extended day reading | | |
| ☐ Failure free reading | | |
| ☐ English is second language support | | |
| ☐ Daily behavior chart | | |
| ✔ Contract | | |
| ✔ Reward positive behavior | 1 week | stop conforming after 3 days Responsive to happy face incentive does not stay |
| ✔ Assigned seating | | |
| ☐ Rearrange physical setting | | |
| ☐ Peer mediation | | |
| ✔ Time out | | |
| ✔ Problem-solving conference | | goes under furniture, ignores directions to go communicate well and understands the impact of his behavior |
| ☐ Restitution | | |
| ✔ Parent conference | | |
| ✔ Attendance monitoring | | not effective in producing behavior changes |

# District of Columbia
## Student Support Team (SST) Request Form
### Teacher Version

**Contact Information**

Teacher Name
**L. Stevens**

Person Making the Request (if different)

Grade: **K**  Room: **126**  Other Teachers

Language Spoken at Home

**Learning and/or Behavioral Concerns** (Describe)

▆▆▆▆ consistently demonstrates disruptive behaviors that interferes with the learning process on a daily basis he demonstrates the following:

- verbal outbursts
- aggressive play
- oppositional behaviors
- difficulty staying in a defined space
- limited work production
- crawls on the floor
- climbs on the furniture

- runs in the hallway
- takes materials without permission
- refuses to clean up after working with materials
- ignores verbal directions
- refuses to participate in group activities (over)

**Where the Problem Occurs** (check ✔ all that apply)

- ✔ Classroom
- ✔ Playground/grounds
- ✔ Cafeteria
- ☐ Gym
- ✔ Hallway
- ☐ Bus
- ☐ Home
- ☐ Other



**District of Columbia**

# Student Support Team (SST) Request Form
### Teacher Version

APPENDIX C ◄

Student Name

Date

## Contact Information

Teacher Name

Person Making the Request (if different)

Grade | Room | Other Teachers

Language Spoken at Home

Parent Contacted Prior to this Request (contact numbers)
☐ Yes
☐ No

Parent Telephone - H, W & Mobile

## Learning and/or Behavioral Concerns (Describe)

Other Concerns
- abandoment issues
- retreats under furniture after being corrected
- demonstrates acts of violence during dramatic play
- leaves Classroom
- discussion of sexual activities
- previous IEP for speech - language
- demonstrates periods of being in a trance like state

## Where the Problem Occurs (Check ✓ all that apply)

☒ Classroom
☒ School grounds
☐ Cafeteria
☐ Gym
☐ Hallway
☐ Bus
☐ Home
☐ Other

T████ W████
Eligibility Meeting Notes 3/22/2007

T███ W████
Meeting to Discuss Eligibility
MDT Notes – March 22, 2007
Gibbs Elementary School



EXHIBIT

The MDT meeting for T███ W███ was held at Gibbs Elementary on March 22, 2007, at 2:30 pm. The meeting was attended by Dorothy Watson, Aaron Fischer (Ms. Watson's attorney, Children's Law Center), Tracy Goodman (Children's Law Center), Michael Wilson (Children's Law Center), Ms. Verdell (General Education Teacher), Mr. Andrew Johnson (Psychologist), and Aaron Terry (Special Education Coordinator).

Introductions were made, and Mr. Johnson reviewed his evaluation of T███ with the team. He highlighted that T████ overall cognitive skills are average for children his age, but that his academic achievement levels are below his age level and in fact in the Pre-K range. On the tests for cognitive ability, T███ was at a lower level than his peers in associative thinking, his ability to define specific words, and his comprehension and analytical skills. However, he is in the average range in the area of processing speed. T███ timed sub-test in coding, on which he did well, indicates that T███ has strong motivational skills.

Mr. Johnson explained that one aspect of T████ cognitive ability that is very low is his ability to hold information in his short-term memory. Another area in which he is very below average is in his ability to work with and think about math problems. He is not able to do well on academic subjects dealing with arithmetic. He will fall further behind his peers as he gets older if this area is not addressed properly.

On his achievement tests, T████ overall standard score on math subjects was 78, which has a grade equivalent of kindergarten. T███ is in the first grade. Mr. Johnson explained that T███ has problems with math reasoning, understanding graphs, as well as the ability to count money and tell time. He had a standard score of 71 on the math reading test, which represents a grade equivalent of Pre-K. T███ also struggled with sounding out the letters and words on the decoding test. He performed very poorly, at the kindergarten level, rather than at a first grade and five month-level.

Mr. Johnson noted that all of T████ academic achievement levels were below the level expected for a child of his cognitive level. His cognitive ability was average, with an overall IQ of 99. Mr. T███ noted that Terrik is expected to do first grade work, as the evaluation was conducted mid-way through his first grade year. Mr. Johnson agreed, explaining that T███ is significantly behind in several areas.

Ms. Watson suggested that T███ needs to be in a special school to address these problems. Mr. Johnson responded that the team is getting to that issue. Returning to his evaluation, he noted that T███ scores were unusually low in the areas of numerical operations, math reasoning, and spelling. Ms. Watson stated her concern about whether T███ knows how to put words into a sentence. She recognizes that he has problems adding, too. If you push him too hard, she explained, he complains that he has a headache, that something's wrong with him,

or that he is too tired to do the work. The team, including Ms. Verdell, agreed that T███ gets frustrated with his work and tries to find ways to get out of doing it.

Mr. Johnson walked the team through the comprehension pieces of his evaluation of T███, which included listening and reading comprehension. He shared the protocol and T███ answers with the team. In this area, listening comprehension was a relative strength. Ms. Verdell confirmed that listening comprehension is an area in which T███ seems to perform at an average level in her classroom.

Mr. Johnson turned to projective tests he conducted. On the Drawing test, Mr. Johnson found indications that T███ might have organic issues that are affecting how he functions. His unusually low scores on the WISC are indicative of this type of issue as well. T███ does demonstrate a tremendous amount of attention issues. He meets much of the criteria for ADHD, and may also be coping with a kind of mood disorder. Mr. Johnson explained that T███ did not meet all the criteria for the mood disorder, as he more closely fits an ADHD diagnosis. Mr. Johnson also did not make an ADHD diagnosis, based on the fact that T███ did not demonstrate the ADHD criteria all settings. For example, when T███ was taken out of his regular class and put in a smaller setting, he did significantly better at being calm, focused, and with controlling impulsivity. This finding contributes to his recommendation that T███ be moved to another educational setting and placement.

Mr. Johnson explained that T███ is a student who needs much more support in both academic skills and social/emotional issues. T███ may be coping with a kind of neurological impairment. Mr. Johnson recommended that T███ receive alternative methods of teaching to address his reading and arithmetic deficits. The teaching method should ensure that T███ uses all three of his senses – sight, feel (manipulating things), and hearing – simultaneously. T███ should also participate in counseling that addresses both his behavior and his cognitive thinking skills. He should discuss with the counselor how he is coping with problems so that the school and MDT can better address those issues with him.

Mr. Fischer asked whether the concern about the organic neurological issue warrants further testing. Mr. Johnson explained that such further testing would not yield results that are useful.

The team agreed that T███ is eligible for and in need of special education. Mr. Johnson emphasized that, given T███ weaknesses, the team should ensure that T███ gets the help he needs. Ms. Watson echoed that statement, expressing that T███ needs a lot of help at this point. The team then turned to the issue of classification. The team agreed that the LD classification was appropriate based on T███ classroom performance and the evaluation's findings. The team agreed that T███ has not been in a setting were he has been given the opportunity to learn and make academic progress. As a result, his behavioral problems may be a consequence of his frustrations in the classroom based on his learning disabilities. Appropriately addressing his learning disabilities should effect a positive impact on his behavior and social challenges. For these reasons, the team agreed that an ED classification is improper, finding LD appropriate at this time.

Ms. Watson noted that T████ doctor recently increased his ADHD medication dosage. Ms. Verdell stated that, for the past two weeks, T███ has been unusually quiet in her classroom. He still is having some behavioral problems, but it is possible that the medications are helping. Ms. Verdell also noted that Ms. Honeyman, another teacher, sometimes takes T███ out of the classroom, helping him write his name, copy numbers, and do other basic tasks. He does the work for her, but will not to the same work in Ms. Verdell's class. Ms. Honeyman takes students in very small groups, and this seems to be beneficial for T████.

The team determined that an LD classification was appropriate. T███ requires a supportive environment that uses multi-sensory learning. The social/emotional problems will be addressed through counseling and other specialized services to be determined at the next meeting. Mr. Johnson and Mr. Terry agree that this is a proper course of action at this point.

Ms. Verdell expressed her concerns about T████ academic progress this year, and the potential need to retain him in first grade. Mr. Terry said that these concerns would be addressed through the IEP; for example, work will be modified for him, and a summer school program can help him. Mr. Johnson added that, with an appropriate level of special education services, T███ will probably not be doing second grade work, as teachers will be helping him in each area based on his strengths and needs.

The team reviewed the fact that T███ used to be in full-time special education, classified with a Developmental Delay. The removal from special education was inappropriate. Mr. Terry noted that there are no records showing that he achieved his IEP goals prior to the termination of special education services. Mr. Terry also stated that T███ should receive a full-time special education placement. Mr. Johnson feels that T████ IEP must include one hour of counseling per week, adding that T███ would probably benefit from two hours of counseling per week.

Mr. Fischer asked whether any interim services can be provided starting as soon as possible. Ms. Lyons, the school counselor is out for one month, making it difficult to provide T███ with individual counseling services at his present placement. At the next meeting, Mr. Weismiller, the special ed coordinator, and Rosa Lee, the school counselor for special ed, will attend as well in order to develop the IEP. The next meeting is set for Friday, April 13, at 2 pm. Mr. Terry will send a draft IEP to Ms. Watson and Mr. Fischer before then.

**EXHIBIT**



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

**Office of Special Education**
825 North Capitol Street, N.E., 6ᵗʰ Floor
Washington, D.C. 20002-4232
202-442-4800, fax 202-442-5518
www.k12.dc.us

## Psycho-Educational Evaluation

**Name:**
**D.O.B.:**
**C.A.:** 6:10
**Teacher:** Ms. Verdell
**ID #:**

**Gender:** Male
**School:** Gibbs Elementary
**Grade:** 1st
**Phone:** (202) 399-2516
**D.O.E.:** (WISC-IV 02/09/07)
(WIAT-II 01/31/07)

**Examiner:** Andrew Johnson, M.A., L.P.C.
**Title:** Psychologist
**Lic/Certification:** Standard Certification

## REASON FOR REFERRAL

Although _____ has been evaluated in the past, he continues to experience behavioral difficulties at school that are impacting his learning. Caregivers would like an updated evaluation for him so we can have a more useful picture of his current functioning, and use the information gleaned from the evaluation to help determine the best educational program for him.

## BACKGROUND INFORMATION

Records indicate that _____ attended the National Children's Center (NCC) in Southeast Washington, D.C. where he was apparently participating in a program for children with developmental delays. Related August 2005 Multi- disciplinary Team (MDT) meeting notes indicate that _____ was no longer eligible for Special Education services, and would no longer receive the related specialized instruction.

_____ ...

2

There is a Children's National Medical Center "CN Treatment Record" that indicates that ████ was brought to the hospital for the flu, and some behavioral and developmental issues. The behavioral issues had to do with discipline, difficulty keeping skills, and some incidents where ████ was tying things around his neck, and animal's necks.

There is also an Individualized Educational Program (IEP) document for ████ that indicates that the date of his last IEP meeting was 2/22/06 when ████ was 4 years old. His primary disability classification is listed as "Developmental Delays" and he was supposed to receive 10 hours per week of specialized instruction. The services were supposed to continue for ten (10) months.

There is a MDT Student Evaluation Plan (SEP) document indicating that the MDT met on 1/30/07, and there is a "Confidential Report of Psycho educational reevaluation" that was completed on 3/11/05 when ████ was 4 years 11 months, attending NCC School. The results of that evaluation indicates that ████ cognitive abilities are average, and the test used to measure his pre-academic skills showed that those pre academic skills related to his math skills, reading skills, and writing skills, were in the average range.

## OBSERVATIONS

████ presented as a cooperative, pleasant student who had a positive attitude toward the testing/interview situation. He is right handed and holds a pencil relatively well when he writes and/or draws. Both fine and gross motor skills appear to be adequate. During testing, ████ seemed to address all of the test items as well as he could, and did not seem to spend too much time on things he was sure he did not know.

## TEST ADMINISTERED

Mental Status Exam (MSE)
Wechsler Intelligence Scale for
Children-Fourth Edition (WISC-IV)
Wechsler Individual Achievement Test (WIAT-II)
Bender Visual Motor Gestalt Test (BVMGT)
Draw A Person Test (DAP)
Behavior Assessment System for Children-2nd Edition (BASC-2)

3

## TEST RESULTS

The **Mental Status Exam (MSE)** was used to assess some attributes that the more formal tests do not measure, and to help provide support for, evidence of, and to help validate Terrik's mental state. These measures are also helpful in determining starting points for the more formal tests.

The initial indications of this test were that ▆▆▆▆▆▆ ability to focus on and attend to information is relatively good, and that his abstract reasoning and math skills are functioning, but this may be an area where he is having some difficulty.

▆▆▆▆▆ scored 50% on the short term memory exercise. Most 4 year old children do better on this. Initial indications were also that his word recognition skills may be as high as the 1st grade level, and his information repertoire may be lacking.

T▆▆▆ completed the sentence "I am happiest when ...", saying "I am a costume chicken with pink mushroom on tip". He completed the sentence "I am sad sometimes when ...", saying "When I can't watch TV or a play". And, he completed the sentence "Sometimes I get bothered by ...", saying "Mean bullies".

At the time ▆▆▆▆▆▆▆ outlook for the future could have been considered positive from the perspective in that he said that he would like to be a "computerizer" when he grows up, "because I like computers".

The **Wechsler Intelligence Scale for Children (WISC-IV)** is used to assess the general thinking and reasoning skills of children aged 6 years to 16 years. This test has five main scores: Verbal Comprehension score, Perceptual Reasoning score, Working Memory score, Processing Speed score, and Full Scale score.

The Verbal Comprehension score indicates how well ▆▆▆ did on tasks that required him to listen to questions and give spoken answers to the questions. These tasks evaluate his skills in understanding verbal information, thinking and reasoning with words, and expressing thoughts in words.

4

The Perceptual Reasoning score indicates how well he did on tasks that required him to examine and think about things such as designs and pictures, and to solve problems without using words. These tasks evaluate his skills in solving nonverbal problems, sometimes using eye-hand coordination, and working quickly and efficiently with visual information.

The Working Memory score indicates how well he did on tasks requiring him to learn and retain information in memory while utilizing the learned information to complete a task. These tasks measure his skills in attention, concentration, and mental reasoning. This skill is closely related to learning and achievement.

The Processing Speed score indicates how well ▮▮▮▮ did on tasks requiring him to quickly scan symbols and make judgments about them. These tasks measure his skills in speed of mental problem solving, attention, and eye-hand coordination. This skill may be important to his development in reading, and ability to think quickly in general.

The Full Scale score is derived from the combination of the Verbal Comprehension, Perceptual Reasoning, Working Memory, and Processing Speed scores. The WISC-IV Full Scale score is one way to view ▮▮▮▮▮▮▮ overall thinking and reasoning skills.

## Composite Scores Summary

| Scale | Sum of Scaled Scores | Composite Score | Percentile Rank | 95% Confidence Interval | Qualitative Description |
|---|---|---|---|---|---|
| Verbal Comprehension (VCI) | 23 | 87 | 19 | 81-95 | Low Average |
| Perceptual Reasoning (PRI) | 30 | 100 | 50 | 92-108 | Average |
| Working Memory (WMI) | 18 | 94 | 34 | 87-102 | Average |
| Processing Speed (PSI) | 27 | 121 | 92 | 110-127 | Superior |
| Full Scale (FSIQ) | 98 | 99 | 47 | 94-104 | Average |

This test shows that ▮▮▮▮▮▮ general cognitive ability is within the Average range of intellectual functioning, as measured by his Full Scale IQ score. His overall thinking and reasoning abilities exceed those of approximately 47% of children his age (FSIQ = 99). He performed much better on nonverbal than on verbal reasoning tasks. Such differences in performance, however, are not especially unusual among children in general.

5

"███████ verbal reasoning abilities as measured by the Verbal Comprehension Index are in the Low Average range and above those of only 19% of his peers (VCI = 87). The Verbal Comprehension Index is designed to measure verbal reasoning and concept formation. "███████ performed comparably on the verbal subtest contributing to the VCI, suggesting that these verbal cognitive abilities are similarly developed.

### Verbal Comprehension Subtest Score Summary (Total Raw Score to Scaled Score Conversions)

| Subtest | Raw Score | Scaled Score | Percentile Rank |
|---|---|---|---|
| Similarities | 8 | 8 | 25 |
| Vocabulary | 16 | 8 | 25 |
| Comprehension | 9 | 7 | 16 |
| (Information) | 10 | 9 | 37 |
| (Word Reasoning) | 10 | 11 | 63 |

███████ nonverbal reasoning abilities as measured by the Perceptual Reasoning Index are in the Average range and above those of approximately 50% of his peers (PRI = 100). The Perceptual Reasoning Index is designed to measure fluid reasoning in the perceptual domain with tasks that assess nonverbal concept formation, visual perception and organization, simultaneous processing, visual-motor coordination, learning, and the ability to separate figure and ground in visual stimuli.

██████ performance on the perceptual reasoning subtests contributing to the PRI is somewhat variable, although the magnitude of this difference in performance is not unusual among children his age. Examination of ██████ performance on individual subtests provides additional information regarding his specific nonverbal abilities.

### Perceptual Reasoning Subtest Score Summary (Total Raw Score to Scaled Score Conversions)

| Subtests | Raw Score | Scaled Score | Percentile Rank |
|---|---|---|---|
| Block Design | 8 | 8 | 25 |
| Picture Concepts | 11 | 10 | 50 |
| Matrix Reasoning | 15 | 12 | 75 |
| (Picture Completion) | 16 | 10 | 50 |

6

▓▓▓▓▓ ability to sustain attention, concentrate, and exert mental control is in the Average range. He performed better than approximately 34% of his agemates on this and (Working Memory Index = 94).

▓▓▓▓▓ performed much better on the Digit Span subtest (Scaled Score = 12) than on the Letter-Number Sequencing subtest (Scaled Score = 6). A direct assessment of his short-term auditory memory, performance on the Letter-Number Sequencing subtest requires attention, concentration, and mental control and can be influenced by the ability to correctly sequence information.

Mental control is the ability to attend to and hold information in short-term memory while performing some operation or manipulation with it and then to correctly produce the transformed information. ▓▓▓▓▓ difficulty in recalling long spans of digits backward is evidence of weak mental control. This weakness may impede the processing of complex information for him and slow new learning. Solving mathematical problems without pencil and paper also requires mental control.

**Working Memory Subtest Score Summary** (Total Raw Score to Scaled Score Conversions)

| Subtests | Raw Score | Scaled Score | Percentile Rank |
|---|---|---|---|
| Digit Span | 13 | 12 | 75 |
| Letter-Number Sequencing | 5 | 6 | 9 |
| (Arithmetic) | 7 | 6 | 9 |

▓▓▓▓▓ ability in processing simple or routine visual material without making errors is in the Superior range when compared to his peers. He performed better than approximately 92% of his peers on the processing speed tasks (Processing Speed Index = 121).

▓▓▓▓▓ performance on the subtests that comprise the PSI is quite variable; therefore, the PSI score should be interpreted with caution. He performed much better on Coding (Scaled Score = 16), which is more demanding of fine-motor skills, short-term memory, and learning ability, than on Symbol Search (Scaled Score = 11), which is more demanding of attention to detail and mental control.

Processing visual material quickly is an ability that ~~████~~ performs well as compared to his verbal and nonverbal reasoning ability. Processing speed is an indication of the rapidity with which ~~████~~ can mentally process simple or routine information without making errors. Good speed of simple information processing may free cognitive resources for the processing of more complex information, and ease new learning.

### Processing Speed Subtest Scores Summary (Total Raw Score to Scaled Score Conversions)

| Subtests | Raw Score | Scaled Score | Percentile Rank |
|---|---|---|---|
| Coding (CD) | 60 | 16 | 98 |
| Symbol Search (SS) | 24 | 11 | 63 |

## WISC-IV Subtest Scaled Score Profile



Vertical bar represents the Standard Error of Measurement.

| Subtest | Score | SEM | Subtest | Score | SEM |
|---|---|---|---|---|---|
| Similarities (SI) | 8 | 1.27 | Picture Completion (PCm) | 10 | 1.2 |
| Vocabulary (VC) | 8 | 1.27 | Digit Span (DS) | 12 | 1.2 |
| Comprehension (CO) | 7 | 1.34 | Letter-Number Sequencing (LN) | 9 | 0.95 |
| Information (IN) | 9 | 1.24 | Arithmetic (AR) | 6 | 1.12 |
| Word Reasoning (WR) | 11 | 1.37 | Coding (CD) | 16 | 1.59 |
| Block Design (BD) | 9 | 1.24 | Symbol Search (SS) | 11 | 1.37 |
| Picture Concepts (PCn) | 10 | 1.2 | | | |
| Matrix Reasoning (MR) | 12 | 0.99 | | | |

8

The Wechsler Individual Achievement Test (WIAT II) is an academic test that assesses the student's current level of functioning in specific academic areas. It indicates the age and grade level of the student, indicates specific areas of strengths and weakness, and helps provide some insight into how the student's academic achievement relates to the student's cognitive abilities.

**Summary of WIAT-II Subtest Scores**

| SUBTESTS* | RAW | STD | 90% INTERVAL | PR | NCE | S9 | AGE EQU | GRADE EQU |
|---|---|---|---|---|---|---|---|---|
| Word Reading | 42 | 87 | 84- 90 | 19 | 32 | 3 | 8.0 | K 8 |
| Reading Comprehension | 25** | 65 | 60- 70 | 1 | 1 | 1 | 6.0 | <1.0 |
| Pseudoword Decoding | 0 | 86 | 82- 90 | 18 | 30 | 3 | 4.0 | PraK5.0 |
| Numerical Operations | 6 | 78 | 67- 89 | 7 | 19 | 2 | 5.4 | K 2 |
| Math Reasoning | 9 | 71 | 63- 79 | 3 | 9 | 1 | 4.8 | PreK5 2 |
| Spelling | 6 | 80 | 73- 87 | 9 | 22 | 2 | 5.4 | K 5 |
| Listening Comprehension | 17 | 100 | 88- 112 | 50 | 50 | 5 | 6.8 | 1 2 |

* WIAT-II age-based normative information was used in the calculation of subtest and composite scores
** Represents Reading Comprehension weighted raw score.

_____ WIAT-II results show that he has a diverse set of skills on different aspect of reading. _____ Reading Composite score is 77. Related tasks required him to name alphabet letters, identify and generate letter sounds and rhyming words, and match and read a series of printed words, match words with pictures, read sentences, and correctly apply phonetic decoding rules when reading a series of nonsense words. Generally speaking, his skills are currently in the "Borderline" range. Approximately 94% of children his age outperform him in this area.

In overall mathematics skills _____ also performed in the Borderline range, as indicated by his Mathematics Composite standard score (72). His skills in this area are not at the level of approximately 97% of other students his age.

9

█████████ performance on tasks that required him to identify and write numbers, count, and solve basic addition and subtraction problems (Numerical Operations standard score = 78) is comparable to his performance on tasks that required him to understand basic number concepts, including unit and geometric measurement, and solve one-step word problems (Math Reasoning standard score = 71).

█████ performed in the Average range on tasks that required him to identify the picture that best represents an orally presented descriptor or generate a word that represents an orally picture as indicated by his listening Comprehension standard score (100). His skills in this area exceed that of approximately 50% of students his age.

On tasks that required him to write one's name and print letters that correspond to sounds and words █████ performed in the Low Average range. He achieved a Spelling standard score of 80. His skills in this area are not at the level of approximately 91% of other students his age.

So, ████ is having the most difficulty with reading and math. His related skills are extremely low. He is being able to solve a word or stated problem requiring single or multiple steps related to time, money, measurement is in the "Borderline" range, as are his skills in solving written math problems.

████ Spelling skills, and his skill in sounding out words, and in reading words should be considered "Low Average". When ████ is required to listen to a word or sentence and match what he hears to a picture, or when he is required to look at a picture and orally respond in order to demonstrate understanding, ████ skills were measured as being in the average range.

10

## WIAT-II Graph Of Subtest Standard Scores



| Subtest | SS | SEM | Subtest | SS | SEM |
|---|---|---|---|---|---|
| Word Reading (WR) | 87 | 1 | Spelling (SP) | 80 | 3 |
| Reading Comprehension (RC) | 65 | 2 | | | |
| Pseudoword Decoding (PD) | 86 | 2 | Listening Comprehension (LC) | 100 | 6 |
| Numerical Operations (NO) | 78 | 5 | | | |
| Math Reasoning (MR) | 71 | 3 | | | |

11

The **Bender Visual Motor Gestalt Test (BVMGT)** is used to help determine if the student's combined capability of adequately seeing and reproducing a variety of designs is functioning. It can help the examiner see if the student's perceptual/motor skills are adequate, and the examiner can make an inference as to whether or not the ability of the student to write is adequate.

▬▬ made eleven (11) errors on this test that could be scored. There were 3 Distortion errors, 3 Rotation errors, 2 Integration errors, a Disproportion error, and a Shape Lost error. Perseveration error, and a Shape Lost error. Eleven errors has a corresponding age equivalent score of between 5 years 4 months, to 5 years 5 months. The inference is that those visual motor skills that are related to ▬▬▬ ability to write, may be somewhat delayed, but not significantly so.

The **BVMGT** is also used as a neurological instrument to help determine the possibility of neurological difficulties, reading and learning disturbances, organic problems, and some other personality characteristics. The most prominent indicators in ▬▬▬ drawings are related to the possibility that he is coping with an organic problem. There are only two indicators pointing to his possibly coping with some emotional issues though, and ordinarily would not be mentioned. They are mentioned because of his observed behavior in the classroom, and related indicators seen in another projective test, i.e., the DAP.

The **Draw A Person Test (DAP)** is another projective test that can give the examiner insight into some personality characteristics that could be important for the student's good social/emotional functioning. There are not a lot of indicators in this drawing pointing to any particular pathological condition. There are a few indicators though, that point to the possibility that ▬▬▬ is coping with some emotional issues that may need to be addressed.

The **Behavior Assessment System for Children-2nd Edition (BASC-2)** is a rating scale, rather than a test, that helps provide insight into possible hyperactivity, attention, emotional problems, and insight into adaptive and mal-adaptive behaviors. The child's behavior is scrutinized form as many as three perspectives sometimes. Self, Teacher, and Parent. Information gleaned from this assessment is based on the respondent's, i.e., the parent, teacher, and/or child's rating of the person who is being assessed.

12

_____ teacher was the rater for this assessment. The reader should note that scores in the "Clinically Significant" range suggest a high level of maladjustment, while "Scores in the 'At Risk' range may identify a significant problem that may not be severe enough to require formal treatment or may identify the potential of developing a problem that needs careful monitoring."

_____ rating on the BASC-2 is such that most of his behavioral symptoms fall into either the "Clinically Significant", or the "At Risk" range of functioning. The ratings for _____ tended to be relatively high compared to the general population for a number of diagnostic considerations, including an Attention-Deficit/Hyperactivity Disorder, Conduct Disorder, Dysthymic (Mood) Disorder, and a Depressive Disorder.

The most frequent "Almost always" responses on this assessment are associated with the criteria for an Attention-Deficit/Hyperactivity Disorder where _____ almost always has trouble staying seated, bothers other children when they are working, is overly active, acts without thinking, and is easily distracted for example. The second most frequent "Almost always" responses are associated with the criteria for a "Dysthymic Disorder", where _____ almost always has a short attention span, loses his temper too easily, is easily upset, easily distracted, and is almost always negative about things.

## Summary and Conclusions

_____ reasoning, thinking, and problem solving abilities should be considered average. He has a WISC-4 Full Scale IQ score of 99. His IQ score, i.e. a representation of his intellectual functioning is misleading though. The IQ score is usually accepted as a reasonable predictor of the child's potential for educational success. Because of the unique pattern of scores presented in _____ cognitive test profile, it is more important to look at _____ four different cognitive clusters, and look at his individual subtest scores.

For example, _____ overall Processing Speed (PSI) score is in the "Superior" range with a corresponding standard score on the related test of 121. When he is required to accurately copy information in class, and when he is following letters, and words across a page, test results indicate that _____ is able to do that much better than most other children his age.

13

However, when █████ has to properly interpret real life situations, understand what he reads, hold information in short-term memory, manipulate that information and then effectively use the information, and adequately deal with arithmetic problems, most children █████ age outperform him in these areas. So, █████ has some specific cognitive attributes in areas that are most important to facilitate his learning in school, that are considerably lower than most other children his age.

From an academic perspective, all of █████ measured academic achievement levels are below the level expected for him, given his overall average cognitive functioning indicated by his WISC 4 FSIQ score of 99. This is not terribly surprising, given his unique cognitive attributes. When comparing his scores on the WIAT-II to the levels of achievement predicted for a student with his general cognitive ability, █████ displays difficulty with achievement in reading and in mathematics. He scored much lower on both the Reading Composite (actual score =77), and the Mathematics Composite (actual score = 72) than expected for a child with his general cognitive ability. An expected predicted scores were 99 for both reading and math. His

The difference between the predicted scores and actual scores are significant and highly unusual, and indicate specific weakness in tasks that required him to match words with pictures, read sentences and paragraphs and answer questions about what was read, and correctly apply phonemic decoding rules. The difference between the predicted scores and actual scores also indicate specific weakness in tasks that required him to understand basic number concepts, including unit and geometric measurement, and solve one-step word problems, and a weakness on tasks that require him to identify and write numbers, count, and solve basic addition and subtraction problems. These differences help **support** █████ **qualifying for** the District of Columbia Public School's **Special Education** Program **as a "Learning Disabled" student.**

Records indicate that █████ has experienced a number of challenges related to behavioral issues in school. This is an area that needs considerably more attention than is getting. Projective test indicators and an analysis/reading of █████ Behavior Assessment Scale for Children (BASC) support this notion. Some of █████ behaviors are interfering with his learning process.

14

# Recommendations

1. ▓▓▓▓▓ should participate in the school's **Special Education** program where he can get the added attention and alternative methods of teaching/learning put towards better developing some of his cognitive abilities, and specific aspects of his reading and arithmetic abilities.

    A. His ability to properly interpret real life situations, his ability to deal with arithmetic problems, and his better developing an aspect of his "Mental Control" should be specifically targeted for improvement.

    B. His academic levels in reading and mathematics should be specifically targeted for improvement.

2. In a **counseling** situation, have ▓▓▓▓▓ discuss with the counselor:

    A. Problems or social situations presented in pictures, filmstrips, books or games. If the counselor does not have his or her own instruments to address this, use **What Do You Think?** by Learning Works (a subsidiary at Creative Teaching Press) at P.O. Box 2723, Huntington Beach, CA 92647-0723, or at www.thelearningworks.com, 1-800-444-4287.

    B. Coping strategies for dealing with stressful situations. He should ultimately be able to relate two (2) different strategies for coping with each of two specific situations that produce a stressful situation for him.

3. For at least an hour per day, everyday, ▓▓▓▓▓ teacher should review with him **basic addition and subtraction facts**, using visual prompts and manipulatives.

15

4. For at least **an hour per day**, everyday, have ▮▮▮▮▮▮▮ practice the sounds that **groups of two and three letters** of the alphabet make.

   A. Have ▮▮▮▮▮▮▮ both **write and recite** the "Alphabet principal" so that he is able to explain the principle to someone else, using two examples that he "Makes up".

   B. For at least twenty (20) **minutes per day**, everyday, have ▮▮▮▮▮▮▮ **use 3 dimensional letters of the alphabet** where he is required to **say what sounds groups of two and three letters** of the alphabet that have been put together in random order **make**.

   C. It is *imperative* that he **feels, sees, and says** the sounds of the groups of letters, **simultaneously**. Please ask the school psychologist to demonstrate how this should be done.

5. For approximately twenty (20) minutes per day, everyday, have ▮▮▮▮▮ practice the following **exercises**:

   A. Repeat three numbers in correct sequence from the smallest to the largest after hearing a random series of numbers spoken that are between one and ten (e.g. 8, 2, 5: correct answer: 2, 5, 8).

   B. Repeat three letters in correct alphabetical sequence after hearing a set of three letters spoken that are not in alphabetical sequence (e.g.. a, i, d: correct answer: a, d, i).

   C. Note that the level of difficulty of these exercises can be adjusted, by increasing the number of letters or numbers, using both letters and numbers together, and/or by limiting the amount of time to complete the exercise.

16

6. Caregivers should consider a different physical placement for Terrik, i.e., either a different classroom where the opportunities for distraction are much less, or a different school where the opportunities for distraction are much less.

\* The reader should note that recommendations usually address a weakness, and people would generally rather do things that are easier for them, rather than harder for them. So, the nature of most of the recommendations here is that this is something that will be beneficial to Terrik, but is also likely to be difficult for Terrik, and therefore more difficult to have Terrik follow the recommendations.

The reader should also note that Terrik's rate of academic progress is directly correlated with how closely he follows these recommendations.

Andrew Johnson
School Psychologist
February 28, 2007
Phone: (202) 581-5339 Hm.
E-Mail: andrewjohnson7@hotmail.com

EXHIBIT

f-19

# DECLARATION OF ELLIE GILES IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Ellie Giles declares and says as follows:

1. My name is Ellie Giles.

2. I am an educational consultant in North Potomac, Maryland.

3. My educational background includes: B.A., Elementary Education – Florida State University; M.S., Special Education – Johns Hopkins University, second year Doctoral student, Educational Leadership – University of Phoenix.

4. I have worked with families and children with special needs for over 30 years.

5. I have worked in direct service to students, in terms of teaching, from kindergarten – 12th grade.

6. I currently hold the Maryland State Advance Professional Certification in teaching and administration for general education grades K-12, Special Education grades K-12, and Administration grades K-12. I meet all requirements for highly qualified status under NCLB.

7. I have been in practice as an educational consultant for the last fifteen (15) years.

8. Being an educational consultant means that I work with families who have children with special needs, and I look at the specific child's diagnostics, program and placement; I look at and interpret evaluations and attend IEP meetings and make recommendations for appropriate placement.

9. I have testified at administrative due process hearings ten (10) times and have been qualified as an expert in the field of special education at each of those hearings.

10. I read and reviewed the educational records pertaining to T.W. The documents I reviewed include: (a) IEP with IEP meeting notes, 5/9/07; (b) Completion of Services Form, with MDT meeting notes, 8/4/05; (c) IEP, with IEP meeting notes, 2/22/05; (d) IEP, 6/11/04; (e) First grade report card, Gibbs ES, SY 2006-2007; (f) Teacher Comments, Gibbs ES SY 2006-2007; (g) Kindergarten Progress Report, Gibbs ES, SY 2005-2006; (h) Teacher Comments, Gibbs ES, SY 2005-2006; (i) Student Support Team, Initial Meeting Report, 3/7/06; (j) Student Support Team Request Form, 1/24/06; (k) Psycho-Educational Evaluation, Andrew Johnson, DCPS psychologist, 2/28/07; (l) NICHQ Vanderbilt Assessment Follow-up, 10/6/06; (m) NICHQ Vanderbilt Assessment Follow-up, 12/19/05; (n) Psycho-Educational Evaluation, DCPS Psychologist, 3/18/05; (o) Speech Therapy

Functioning Review, DCPS, 2/22/05; (p) Speech and Language Evaluation, DCPS, 2/18/04; and (q) Occupational Therapy Evaluation, National Children's Center, 2/05/04.

11. I visited Gibbs Elementary School on September 5, 2007, in order to observe T.W. in the classroom and in his present educational program.

12. On September 5, 2007, I spoke with Aaron Terry, the special education coordinator at Gibbs Elementary School, about T.W.'s special needs as well as the special education program provided at Gibbs Elementary School.

13. Mr. Terry told me that Gibbs Elementary School is unable to provide an appropriate special education placement and program for T.W., given T.W.'s learning disabilities as well as emotional and behavioral issues.

14. During my visit to Gibbs Elementary School on September 5, 2007, I was unable to observe T.W. in the classroom due to the incident in which he had started a fire in the school restroom earlier that day.

15. Based on my review of T.W.'s educational records, my discussions with the special education coordinator at Gibbs Elementary School and other staff members, and my own expertise and experience in special education, T.W. requires a full-time special education placement that provides a small, self-contained learning environment with a low student-to-teacher ratio, a behavior intervention plan, counseling and support services, specialized instruction, and a program with an effective behavioral management component.

16. Additionally, T.W. requires individualized instructional strategies across content areas, which include multi-modality instruction, scaffold skills, opportunities for guided practice, and self-monitoring strategies to promote application and generalization of acquired skills.

17. T.W. also requires individualized opportunities for social processing in order to problem-solve social challenges and to acquire and apply self-regulating strategies.

18. Based on my review of T.W.'s educational records, my discussions with the special education coordinator at Gibbs Elementary School and other staff members, and my own expertise and experience in special education, I believe that T.W.'s IEP is inappropriate. It provides an insufficient number of hours of specialized instruction and related services, an inappropriate classroom setting, and a lack of a behavior intervention plan and behavioral management supports.

19. T.W.'s IEP states that the General Education Classroom cannot meet his service needs, as it will effect "continued school failure," and that the Combination General Education Classroom/Resource Room will not meet his service needs, as

it will effect "continued conflicts with peers." The IEP documents that a "full time therapeutic setting" is necessary to meet T.W.'s needs. Based on this appropriate assessment, T.W.'s special education program – including the number of special education hours – is inappropriate.

20. Based on T.W.'s special needs, as recognized on his IEP, T.W. cannot be appropriately placed in the part-time special education placement that DCPS has provided. Therefore, the IEP does not provide sufficient hours of specialized instruction and related services.

21. Furthermore, T.W.'s IEP fails to identify and document T.W.'s significant academic and social skill deficits.

22. T.W. requires an educational environment that assures physical safety through constant and structured supervision, emotional supports through daily and ongoing counseling and crisis support when needed, and individualized instructional strategies that monitors curriculum scope, pace, and sequence.

23. In addition, T.W. requires a structured and predictable school environment, including frequent motor breaks and attention enhancing strategies, where expectations are constant and consistent for all students across all learning environments in order to minimize distractions and transitions resulting in reduced learning frustrations and obstacles.

24. On September 5, 2007, I visited The Children's Guild at 5702 Sargent Road Chillum, MD 20782.

25. During my visit to The Children's Guild, I observed the classroom environment in which T.W. would be placed if he attended the school, the process by which students are transitioned, and the academic and behavioral supports provided by the school; I also spoke with staff at The Children's Guild about the special education program and its appropriateness for T.W.

26. The program at The Children's Guild is very comprehensive, infusing behavioral supports into the academic program in a natural and dignified manner.

27. The second grade class that T.W. would attend if placed at The Children's Guild includes six (6) students, supported by one teacher, one counselor, and two paraprofessionals who provide frequent individualized instruction.

28. The classroom at The Children's Guild utilizes technology to teach and to motivate students. Each student had an assigned computer and individualized tasks to be completed on the computer, which monitors ongoing progress and regulates the learning pace to accommodate the student's needs. This structure will allow T.W. to learn and make educational progress.

29. Classroom expectations at The Children's Guild are clear and positively impact students' behaviors. A positive behavior management system was consistently implemented across all school settings. In compliance with NCLB, the school implements researched-based reading and math programs and exposes students to grade level content as well as IEP-specific instruction.

30. Based on my review of T.W.'s educational records, my discussions with the special education coordinator at Gibbs Elementary School and other staff members, and my own expertise and experience in special education, I believe that Gibbs Elementary School cannot provide an appropriate special education program and placement for T.W. In my expert opinion, The Children's Guild can provide this environment as well as these necessary educational services.

31. Based on my review of T.W.'s educational records, my discussions with the special education coordinator at Gibbs Elementary School and other staff members, and my own expertise and experience in special education, I believe that DCPS cannot provide a safe educational setting to T.W. in which T.W. can make educational progress.

32. Based on my review of T.W.'s educational records, my discussions with the special education coordinator at Gibbs Elementary School and other staff members, and my own expertise and experience in special education, I believe that T.W. would receive educational benefit in a full-time placement like The Children's Guild.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on ⟨handwritten date⟩

Ellie Giles

# The CHILDREN'S LAW CENTER

EXHIBIT

P-11

## THE HEALTH ACCESS PROJECT AT CHILDREN'S NATIONAL MEDICAL CENTER

February 13, 2007

Kimberly Ridley Davis, Principal
Gibbs Elementary School
500 19th Street, NE
Washington, DC 20002

*Sent by fax to (202) 724-3996*

Re:　T█████ W█████, DOB █████████

Dear Ms. Ridley Davis:

I am writing in regards to Gibbs Elementary School's decision to suspend T████ W████ for ten school days, a suspension that began on Monday, February 12, 2007. I am the attorney for T████'s great-grandmother and legal guardian, Ms. Dorothy Watson. The suspension of T████ is categorically inappropriate and a violation of the Individuals with Disabilities Education Improvement Act (IDEIA). As you know, no disciplinary action may be effectuated unless it follows the procedures and protections set forth in Section 2505 of the D.C. Municipal Regulations. With this ten-day suspension, these procedures and protections were not afforded to T████ a child who clearly has a disability. Accordingly, this suspension is invalid and T████ should be permitted to return to school immediately.

T████ has been demonstrating special needs since he entered Gibbs. For over one and a half years, in spite of alarming teacher reports and extensive SST notes, T████ was never provided with evaluations, an IEP, and appropriate special education services. Instead, Gibbs has utilized a policy to send T████ home for the day on several occasions when he has acted out in an excessive or uncontrollable way. The school has taken this course of action on several occasions during the 2006-07 school year. There is no question that each of these occurrences must be considered an "exclusion from class," or a suspension from school.

Ms. Watson and I attended an MDT meeting at Gibbs on January 30, 2007, in order to begin the special education process, to identify what evaluations are necessary for T████, and to discuss the development of a Behavioral Intervention Plan. DCPS psychologist Andrew Johnson is presently completing evaluations, while T████'s teacher and counselor are executing a Functional Behavioral Assessment for T████. At the meeting, our recommendation to implement an interim plan for T████ was rejected by the team, which instead assured Ms. Watson that we would reconvene once the assessments were completed. Since then, T████ has continued to struggle in the classroom, and no services or interventions have begun. This fact is especially troubling when one considers that T████ was referred for special education well over one year ago.

Local and federal regulations make clear that this present suspension is improper and illegal. Federal law imposes strict requirements for children with disabilities who are removed from school for more than ten school days in the same school year; Gibbs has not met these requirements. The law provides that, subsequent to those ten days, a child with a disability must receive educational services consistent with his IEP and special needs. Under D.C. law, an "exclusion from class ... for more than ten (10) school days" shall trigger the requirement for a manifestation review by the MDT. 5 D.C.R. 2510(1). If the team determines that the child's conduct is a manifestation of the child's disability, DCPS "must take immediate steps to remedy those deficiencies." 34 C.F.R. § 300.530(e)(2).

*Because T▆▆▆ has been sent home on multiple occasions during the present school year in response to his conduct at school, this ten-day suspension will place T▆▆▆ well over the threshold of ten "exclusions from class" under federal and local law. Thus, the IDEA protections for a child with disabilities facing disciplinary action apply. Further, given that the behavior at issue with this excessive disciplinary action is the exact behavior that has indicated T▆▆▆'s need for special education services, there is no doubt that such behavior is a manifestation of T▆▆▆'s disability.*

While T▆▆▆ has not yet been found eligible for special education and related services, DCPS has had knowledge the he is a child with a disability for a period of time prior to the behavior that precipitated this disciplinary action." See 5 D.C.R. 2510(20). Under the regulations, DCPS had sufficient knowledge of T▆▆▆'s disability based on: 1) teachers' and other school personnel's ongoing concern – both written and oral – about T▆▆▆'s performance and unambiguous special needs; 2) the apparent need for special education services as demonstrated by T▆▆▆'s ongoing academic struggles and behavioral problems; and 3) our written expressions of concern about T▆▆▆ and written requests for evaluations and the implementation of special education services, dating back to December 21, 2006. See 5 D.C.R. 2510(21). Although without the completed evaluations from DCPS psychologist Mr. Johnson we do not have a full understanding of T▆▆▆'s specific disability, classification, and needs, there is no question in the minds of Ms. Watson, T▆▆▆'s teachers, Gibbs' staff, and the school's special education coordinator, that T▆▆▆ has substantial special needs. As a result, the above protections under the federal and local laws and regulations apply in the present case.

**Accordingly, it is absolutely essential that the ten-day suspension of T▆▆▆ be revoked immediately so that T▆▆▆ may return to school tomorrow morning, Wednesday, February 14.**

I do recognize the challenges of the present situation and appreciate your efforts on this matter. It is essential that we proceed in such a way that appropriately addresses T▆▆▆'s needs, which have gone unmet for far too long. Please do not hesitate to contact me, at (202) 467-4900, ext. 525, with any questions or concerns.

Sincerely,

Aaron J. Fischer
Staff Attorney

Cc:    -Aaron Terry, Gibbs Elementary Special Education Coordinator
       -William Wilhoyte, Assistant Superintendent, DCPS

---

**EXHIBIT**

P-12

DISTRIC F COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D C
INDIVIDUALIZED EDUCATIONAL PROGRAM

## 1 IDENTIFICATION INFORMATION

Student Name Last W▮▮▮▮

First T▮▮▮   MI

Student ID 9108685   Soc Sec No

Gender ☒M ☐F   Date of Birth ▮▮▮▮   Ethnic Group Black   Age 7   Grade 1st

Address ▮▮▮▮

☐ Non attending   City Washington   Quadrant D C   Apartment # Zip 20002

Attending School Gibbs Elementary   Home School Gibbs Elementary

☒Elem ☐Mid/JHS ☐SHS ☐CWS /

Parent Ms ▮▮▮▮ (Great - Grandmother)

Address of (if different from student)
(Same as above)   ☒ Parent ☐ Guardian ☐ Surrogate

House No Street Name
Telephone Home ▮▮▮▮   Quad No City   State Zip code

Work

### 11 CURRENT INFORMATION

Date of IEP Meeting 5/09/2007
Date of Last IEP Meeting N A
Date of Most Recent Eligibility Decision

Purpose of IEP Conference
☒Initial IEP ☐ Review of IEP
☐Requested Eval ☐3yr Re-Eval

Indicate Level of Standardized Assessment III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate boxes

| BEHAVIOR | TRANSPORTATION |
| ESY | TRANSITION |

### III LANGUAGE

| | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math proficiency assessment |
|---|---|---|---|---|---|
| Student | English | | | | |
| Parent | English | English | English | Native Lang | Oral |
| Home | English | English | English | Native Lang | Rdg Written |
| | English | English | English | Native Lang | Instrument |
| | | | | | Date |

## IV SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING | | | SEQUENCY | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr Min D/W/M | | | # wks /mos |
| Specialized Instruction | | 15 | 15 | Hrs | W | Special Education Teacher | 5/10/2007 | 10 months |
| Psychological Services | | 1 | 1 | Hrs | W | Psychologist/Social Worker | 5/10/2007 | 10 months |

**TOTAL** 16 **Hours Per Week**

## V Disability(ies)

Specific Learning Disability

☐ (Check if setting is general Ed )

Percent of time in Specialized Instruction and Related Services
☐ 0-20% ☒ 21-60% ☐ 61-100%

Percent of time NOT in a Regular Education Setting 49%

## VI IEP TEAM (Participants in the development of the IEP)

Ms D▮▮▮ W▮▮▮ (Guardian) ▮▮▮▮ W▮▮▮

Ms K Davis Principal

Mr R Weismiller, Sp Ed Teacher

Ms Verdell Grade 1 Teacher

Ms Lee Social Worker

Hymn Burke Attorney

Print and sign your name below

Mr A Johnson, School Psych.

Mr Aaron Terry, SEC

Michael Wilson

/ AGREE with the contents of this IEP I have had an opportunity to be involved in the development of this IEP I have received a copy of this IEP and consent to the implementation of the services in the IEP I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature

Student Name    W████

Student ID Number 9108685                    T████

DOB ████

Home School    Gibbs Elementary
Attending School    Gibbs Elementary

DCPS  EP
Page 2 of 4

## VII  Present Educational Performance Levels in Areas Affected by the Disability

**Academic Areas: (Evaluator)** Andrew Johnson, MA, LPC/Psych.

Additional Comments ☐

Math Strengths

Using whole numbers to describe quantities. Writing numbers to correspond with rote counting

Impact of disability on educational performance in general education curriculum

Will make learning more difficult.

Reading Strengths-

Recognizes some letters of the alphabet and a few sight words.

Impact of disability on educational performance in general education curriculum-

Will make learning more difficult.

**Communication (Speech & Language) (Evaluator)**
Strengths-

Impact of disability on educational performance in general education curriculum

**Motor/Health (Evaluator)**
Strengths

Impact of disability on educational performance in general education curriculum

**Social Emotional Behavioral Areas: (Evaluator)** Andrew Johnson, MA, LPC/Psych.
Strengths

Is sometimes cooperative and calm.

Impact of disability on educational performance in general education curriculum.

Will make learning more difficult.

**Cognitive/Adaptive Behavior: (Evaluator)** Andrew Johnson, MA, LPC/Psych.
Strengths

Some aspects of his processing speed is superior to most everyone else his age.

Impact of disability on educational performance in general education curriculum.

Will make learning more difficult.

**Prevocational Skills: (Evaluator)**
Strengths

Impact of disability on educational performance in general education curriculum.

---

**Score(s) When Available**

| | |
|---|---|
| Math Cal | GE  K2 |
| Math Rea | GE  PK |
| See goal page | 4 |
| Date | 01/31/2007 |
| Rdg Com | GE  10 |
| Rdg Basic | GE  K8 |
| Written Ex | NA  NA |
| See goal page | 2 |
| Date | 1/31/2007 |

**Score(s) When Available**

| | |
|---|---|
| Exp Lang | |
| Rec-Lang. | |
| Artic | |
| Voice | |
| Fluency | |
| Exp Voc | |
| Rec Voc | |
| See goal page | |
| Date | |

**Score(s) /Results When Available**

See goal page

Date

**Score(s) When Available**

NA

See goal page    1

Date    1/31/2007

**Score(s) When Available**

| | |
|---|---|
| VCI | 878 |
| PRI | 100 |
| FSIQ | 99 |

See goal page

Date

**Score(s) When Available**

See goal page

Date

Student Name  W███████     T█████                    HomeSchool  Gibbs Elementary
Student ID Number 9 █████            DOB ███████     Attending School  Gibbs Elementary

DCPS - IEP
Page 3 of 4

**VIII. SPECIALIZED SERVICES** ☐   Additional Comments ☐

Area addressed by goal  Social Emotional          Goal Number  1

**ANNUAL GOAL** (including mastery criteria )

T██████ will demonstrate gowth in social emotional functioning, as evidenced by mastery of the short term objectives by 80%

Provider(s)  Social Worker/Psychologist

Consider audience, behavior, condition, degree and evaluation.

**SHORT TERM OBJECTIVES** (include mastery criteria or benchmarks)

| Objective | Date Mastered | Evaluation Schedule |
|---|---|---|
| T████ will take risks in situations that are socially challenging (ie. presentation in front of the class, etc.) | | Monthly |
| T████ will demonstrate improved self - image as evidenced by increased participation in school activities, positive interaction with others and increased personal responsibility for behavior in 8 out of 10 opportunities. | | Monthly |
| T████ will distinguish between appropriate and inappropriate behaviors with minimal assistance from adult authority as measured in 8 out of 10 opportunities. | | Monthly |
| T████ will identify personal strengths and weakness when prompted by therapist in 8 out of 10 opportunities. | | Monthly |
| T████ will communicate personal feelings and perceptions of self in relation to to others with minimal prompting and assistance from the therapist in 8 out of 10 opportunities. | | Monthly |
| T████ will accurately describe social situations and demonstrate appropriate responses to these situations with minimal assistance from the therapist in 8 out of 10 opportunities. | | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio   ☒ Log   ☐ Chart   ☐ Test   ☒ Documented Observation   ☐ Report   ☐ Other

District of Columbia Public Schools        07-02-2001        Division of Special Education        Appendix - A        IEP Page 3 of 4

Student Name   W█████
Student ID Number █████

DOB █████

HomeSchool   Gibbs Elementary
Attending School   Gibbs Elementary

DCPS - IEP
Page 1 of 4

| VIII SPECIALIZED SERVICES | Additional Comments ☐ |

Area addressed by goal   Academics - Reading/Language Arts

Goal Number   2

ANNUAL GOAL (including mastery criteria)

T█████ will demonstrate improvement in reading skills by mastering the short term objectives as measured by formal and informal testing with 80% accuracy as measured within a grading period.

Provider(s) Special Education Teacher, General Education Teacher and Parent

Consider audience, behavior, condition, degree and evaluation

SHORT TERM OBJECTIVES (include mastery criteria or benchmarks)

| | Date Mastered | Evaluation Schedule |
|---|---|---|
| T█████ will recognize and recite the letters of the alphabet individually in 4 out of 5 attempts with 80% accuracy | | Monthly |
| T█████ will recognize basic vowel sounds to decode basic sight words in 4 out of 5 attempts with 80% accuracy | | Monthly |
| T█████ will listen to a short story and write one sentence and or draw a picture about the story in 4 out of 5 attempts within a grading period. | | Monthly |
| T█████ will use pictures to help recognize basic words (i.e. dog, cat, mop, etc.) within a grading period. | | Monthly |
| Given multisensory activities on the student's instructional level, T█████ will read and share thirty (30) books with pictures or book equivalents within a year. | | Monthly |
| T█████ will use the writing process (prewriting, drafting, revising, and publishing) to convey meaning with 80% accuracy | | Monthly |

EVALUATION PROCEDURE(S)

☒ Portfolio   ☐ Log   ☐ Chart   ☒ Test   ☒ Documented Observation   ☐ Report   ☐ Other

District of Columbia Public Schools        07-02-2001        Division of Special Education        Appendix - A        IEP Page 3 of 4

| Student Name | W_____ | T_____ | HomeSchool | Gibbs Elementary | |
| Student ID Number | _____ | DOB _____ | Attending School | Gibbs Elementary | DCPS - IEP Page 3 of 4 |

| VIII SPECIALIZED SERVICES | Additional Comments ☐ | |

Area addressed by goal: **Academics - Mathematics**     Goal Number ☐ 4

**ANNUAL GOAL (including mastery criteria)**

T_____ will demonstrate improvement in basic mathematic skills by mastering short term objectives by formal and informal testing with 80% accuracy

**Provider(s)** Special Education Teacher, General Education Teacher and Parent

Consider audience, behavior, condition, degree and evaluation

**SHORT TERM OBJECTIVES (include mastery criteria or benchmarks)**

| | Date Mastered | Evaluation Schedule |
|---|---|---|
| T_____ will complete simple one digit addition and subtraction of numbers from 1 to 10 without regrouping with 80% accuracy within a grading period | | Monthly |
| _____ will use whole numbers to describe quantities with 80% accuracy | | Monthly |
| T_____ will create and solve simple addition and subtraction problems both written and oral using whole numbers with 80% accuracy | | Monthly |
| T_____ will solve basic math problems involving money both numerically and written forms with 80% accuracy | | Monthly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

Student Name  W_____

Student ID Number _____          T_____          DOB _____

Managing School  Gibbs Elementary

Attending School  Gibbs Elementary

DCPS-IEP
Page 4 of 4

Additional Comments ☐

## IX LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education? ☐ Yes ☒ No

Explanation for removal out of regular education classroom

Student requires low student to teacher ratio student is significantly below grade level requires intensive or individualized instruction

## X  Supplementary Aids and Services
### Classroom Needs
(Do not name products or companies.)

| | SETTING | | | FREQUENCY | | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr / Min | DM/M | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Check and list modifications and/or accommodations for testing          ☐ None needed

Timing/Scheduling  Untimed Breaks, Extenden Time
Setting  Preferential seating reduced minimal distraction. Cooling off period
Presentation  Read directions/test to student/ verbal rec. of instruction
Response  Orally
Equipment  Calculator Manipulatives and Times Table Chart

## XI  STATE AND DISTRICT ASSESSMENTS

☐ Level I Tested with non-disabled peers under standard conditions without accommodations

☒ Level III (Describe non-uniform conditions for level I II) Tested under non-standard conditions with permissible accommodations

☐ Level V Portfolio

☐ Level II (Describe accommodations for level II) Tested under standard conditions with special accommodations

☐ Level IV (Describe the alternative assessment)

## XII  Areas Requiring Specialized Instruction and Related Services

☒ Reading
☒ Mathematics
☒ Written Expression
☐ Other
☐ None

☐ Physical/Sensory
☒ Social Emotional
☐ Physical Development

☐ Transition
☐ Vocational
☐ Independent Living
☐ Speech/Language

Modifications
☒ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above

## XIII  PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| General Education Classroom | Reject will not meet needs for service | Continued school failure. |
| Combination Gen. Ed./ Resource Room | Reject will not meet needs for service | Continued Conflicts with Peers |
| Out of General Education Setting | Accept will meet needs for service | Full Time Therapeutic Setting. |

Modification(s) Accommodation(s) to address the harmful effects

Specific scheduling to accomodate for related services, Psychological services

Location for Services _____

District of Columbia Public Schools          07-02-2001          Division of Special Education          Appendix - A          IEP Page 4 of 4

STATEMENT OF LEVEL OF SERVICE (PLPM)

School                     Principal              Special Education Coordinator
Gibbs ES        Ms. Kimberly Davis
5/9/2007          Mr. Terry                                          Mr. Terry
    T W                                              Ms. C. Helton
Ms. D          W            3            7   Grade    1st
                        (202)
                              Washington, DC  20002

X
                                    X

Combination Reg.Ed./ Sp. Ed. Classroom Setting

JUSTIFICATION FOR SETTING CONSIDERATION
(Submit IA/MDT Documentation)
SUPPORTIVE DATA/DOCUMENTATION
ACCOMMODATIONS, MODIFICATIONS                    DATA REQUIREMENTS

1) Extended Time – Response and
   Presentation
2) Time – Extension Presentation
3) Multiple Test Session - Equipment

MDT Initial IEP – 5/9/2007

Specific Meeting Place

CURRENT SETTING CONSIDERATIONS
SERVICE PROVIDER

X                              X                              X

DIRECTIONS

LEVEL OF NEED
X   Moderate

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES**

MDT

SCHOOL    Gibbs ES                          5/09/07

PARTICIPANTS (Sign Name)

Aaron Tent
Aaron Fischer
Andrew Johnson
Tracy Goodman
Michael Wilson

McKeg
SEC
Parents Atty
Psychologist
The Children's Law Center
The Children's Law Center

An MDT Intial IEP Follow Up Meeting was held on T██k today. Everyone introduced themselves. Mr. Wesmille, Sp. Ed. Teacher was not available at the meting, however he reviewed the drafted academic goals with the team.

Mr. Johnson – School Psychologist – Reviewed the Strengths and Weaknesses on T██k for page 2 of his IEP. Based n the evaluations and the Team collaborative decision T██k will receive 1 hour of Social Work Psych. Counseling per week. Specialized Instruction – He will receive 15 hours of Special Education Services or 49% of the time, not in Gen. Ed. His Level of Assessment will be Level III.

Ms. Verdell, Grade 1 Teacher - Stated that she has seen some improvement with his behavior. He also is completing some of his homework. Ms. Verdell also stated that she did not get the impression that T██k could not do the academic portion, but it was his behavior that was the problem.

The FBA will have to be completed at another meeting, since we do not have the worksheets returned to us.

The team discussed its concern of the setting in which T██k would receive spec. ed. instruction. Ms. Verdell said that T██k should be outside of her classroom and in a smaller setting - where he can receive individualized attention. No one at the meeting knows the amount of time T██k would receive inclusion vs. pull-out. The psychologist's recommendations state that T██k should be in a different educational setting. the team agrees that T██k is unable to receive appropriate instruction in his academic subject in the regular ed classroom T██k requires sufficient time - essentially all specialized instruction time - entirely outside the regular ed setting. Gibbs Elementary provides spec. ed. instruct....

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE: _____

**MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE: Initial IEP**

Page 2 of 2 (4C

STUDENT: T███ W███████

SCHOOL: ___ Gibbs ___

DATE 5/9/0t

Mr. Weismiller joined the meeting very briefly. He has 19-26 students in his spec ed class all day. There is no teacher's aide in the class. Mr. Johnson And the team agree that this is an inappropriate setting for T██████ given the recommendation for a smaller educational setting.

A. F

**EXHIBIT**

P-B

## VERIFICATION OF SERVICE

### Due July 19, 2007 (ESY)
### Due July 26, 2007 (Comp. Ed)

| | | | |
|---|---|---|---|
| Student | ▓▓▓▓▓▓ | DOB ▓▓ ▓▓ | Grade / |
| Summer School | ▓▓▓▓ | Home School ▓▓▓▓ | |
| Check one only: | Compensatory Education | ✓ Extended School Year | |

## Please attached the below listed items to this form.

_____ Compensatory Education Plan  and/or     ✓ Extended School Year Addendum

✓ Final Report Card

## COMPLETE FOR RENDERED SERVICES

All special education teachers and related service providers are to use the same VOS form per student.  Attach additional pages if necessary.  Use a separate form if a student is receiving both compensatory services and extended school year services.

| PROVIDER | SERVICE | TOTAL HOURS | DATE |
|---|---|---|---|
| E Hunt | 9:00am/central | 4 | 7/17/07 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Verification by Summer School Administrators

_____  Signature

07/20/07  Date

### Documentation to Verify Services
Attach the regular report card for students with a disability (SWAD) acquiring Carnegie Units behind the VOS and in front of the ESY or Comp. Ed. form and special education summer report card.

Attach the summer school report card behind the VOS in front of the ESY or Comp. Ed. form

Prepare two sets per student for distribution to the following:

- One set for the parent taken home by the student or mailed.
- One set sent to the home school addressed to the principal.

A copy of the verification of services (VOS) form for each student is to be submitted to the Office of Special Education by noon on July 20, 2006 (ESY) and July 24, 2006 (Comp. Ed).

# SUMMER SERVICE REPORT CARD

**Check the appropriate week:** —— Week 1 —— Week 2 —— Week 3 —— Week 4 —— Week 5

| STUDENT'S NAME | ████ | DOB 10/4/93 | GRADE 5 | SUMMER SCHOOL WHITE |
| --- | --- | --- | --- | --- |
| GOAL | | CURRICULUM CONNECTION | | SERVICE PROVIDER |

Increase self confidence

**Signal on task**

The student's participation ___ is X is not sufficient to demonstrate progress.

The student's participation ___ is X is not sufficient to demonstrate progress.

The student's participation is X is not sufficient to demonstrate progress.

| DATE | CODE | | |
| --- | --- | --- | --- |
| 6/29/07 | D/ | Days Present / Days Absent | The student's participation is X is not sufficient to demonstrate progress. for the 1st session. He was very quiet and shy but positively to the rules, expectations of the group session and - med loudly handy to follow the group's activity. |
| 7/6/07 | A | Days Present / Days Absent | The student's participation is X is not sufficient to demonstrate progress. the student alternu in safari was appropriate to follow the group's activity. |
| 7/12/07 | MP | Days Present / Days Absent | The student's participation is X is not sufficient to demonstrate progress. SW observed and he was not on task nor did he participate in any classroom instruction [████] |
| 7/13/07 | NP | Days Present / Days Absent | The student's participation X is X is not sufficient to demonstrate progress. SW observed in the classroom. ████ was on task and engaged in the game very well. His continuous took was high on task and at the end of the game he command regression ████ |
| 7/ | MP | Days Present / Days Absent | The student's participation ___ is ___ is not sufficient to demonstrate progress. ████ was in front of the crowd in math and at the end of the crowd ████ under the table, angry!! Rick [████]ing |

**PROGRESS CODES LISTED BELOW**

| A – Achieved | MP – Making Progress | EB – Emerging Breakthrough | NP – No Progress | N.A – Not Applicable at this Time |
| --- | --- | --- | --- | --- |
| The student has successfully completed the goal. | The student is making expected degree of progress. | The skill necessary for this [████] | The student is not making expected progress | The student has not begun [████] |

E. Hunt, MSW LCSW
E. Hunt, LCSW
MSW

EXHIBIT

P-14

# STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

In the Matter of:

W____, T.

Petitioner

Vs.

PUBLIC
Gibbs ES

Respondent

)
)
)
)
)
)
)
)
)
)
)

BEFORE A SPECIAL EDUCATION

HEARING OFFICER

DISTRICT OF COLUMBIA

PUBLIC SCHOOLS

# SCHEDULING MEMORANDUM

1.    A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint within 15 calendar days of receiving notice of the parents' complaint. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings.**

2.    The complaint notice was filed on **August 1, 2007**

3.    The deadline for the resolution meeting is **August 16, 2007** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A.    **_Prior Written Notice Not Issued by the Local Educational Agency_**.  If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, **within 10 days of receiving the complaint**, send to the parent a response that shall include:

1.    An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;

2.    A description of other options that the IEP Team considered and the reasons why those options were rejected;

3.    A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

Rev'd. 7/6/05

A description of the factors that is relevant to the agency's proposal or refusal.

B.    Prior written notice, if not already provided to the parent, must be sent by the Local Educational Agency to the complaining party no later than **August 11, 2007**.

C.    *Deficiency Notice*.  A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, <u>within 15 days of receiving the notice of the complaint</u>, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.    The deadline for filing a deficiency notice is **August 16, 2007**.

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence.  A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice.  The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law.  The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

EXHIBIT

P-15

## DECLARATION OF AARON FISCHER IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Aaron Fischer declares and says as follows:

1. I am an attorney serving as counsel for Dorothy Watson.

2. Dorothy Watson is the great-grandmother and adoptive mother of T.W.

3. T.W. is a seven year old special education student at Gibbs Elementary School.

4. I attended T.W.'s May 9, 2007 MDT/IEP meeting at Gibbs Elementary School.

5. At this meeting, DCPS failed to consider or offer any placement other than at Gibbs Elementary School.

6. All present IEP team members at the May 9, 2007 MDT/IEP meeting – including the special education coordinator and the DCPS psychologist – agreed that Gibbs Elementary School could not serve T.W.'s special needs.

7. I filed a due process complaint on behalf of Dorothy Watson on August 1, 2007.

8. I received no response, in writing or otherwise, from DCPS to the due process complaint for nineteen (19) days.

9. A response was faxed to me from Aaron Terry, the Special Education Coordinator at Gibbs Elementary School, on August 20, 2007.

10. DCPS never contacted me to schedule a dispute resolution session in this matter.

11. To date, no resolution session was ever held in this matter.

12. I filed a Motion for Default Judgment on behalf of Dorothy Watson on August 28, 2007.

13. To date, I received no response from DCPS to this Motion for Default Judgment.

14. No due process hearing has been scheduled in this matter.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on _____          _____

                                      Aaron J. Fischer, Esq.



**EXHIBIT**

P-16



# Gibbs ES – MEMO
**Mr. Aaron Terry, SEC**
**c/o Gibbs ES**
500 19th St., NE
Washington, DC 20002
Work. (202) 724 – 4573 OR (202) 939 – 4380
Cell: (301) 641 – 1410 FAX: (202) 724 – 3996
E-Mail:

**August 20, 2007**

**To:  Mr. Aaron Fischer, Ed. Attorney**
**c/o Children's Law Center**
616 H St., NW Suite 300
Washington, DC 20001 (**Via FAX:** (202) 467 – 4949)

**Subject:** Response To Complaint – T████ W██████

**Mr. Fischer, Ed. Attorney:**

In response to T███ W█████,

1) Student was EXITED from Sp. Ed. in 2005 by the Summer Assessment Team, PRIOR to coming to Gibbs ES and he was referred to our SST. Therefore DCPS Sp. Ed. Office at Gibbs ES was not responsible and cannot answer to why or when the process of the SST was delayed or never done.

2) As for the more than 10 Day Suspension  AGAIN this occurred PRIOR to the student being placed in Special Education in 2007.

3) As for the Placement, at the Initial 2007 ELIGIBILITY MEETING the DCPS Gibbs ES MDT Team, SPECIFICALLY stated that T███ was Emotionally Disturbed. BUT the attorney felt that our decision was "too drastic" OR they were not in agreement with the diagnosis, which is why the Functional Behavioral Assessment/FBA and Behavior Intervention Plan/BIP were never mentioned at the meetings. ALSO since T███ did not have any other serious OUTBURSTS in Gibbs ES after the IEP was implemented there was no reason for an FBA or BIP.

4) HOWEVER, we do know that T███ was hit by a car when not at school sometime towards the end of the school year. He was, "running across the street from his mother". DCPS knows of no follow up or intervention with community sources OR an outside agency independent of DCPS that was mentioned by the parent or attorney pertaining to this serious incident.

Sincerely,

Aaron Terry
**SEC - DCPS**

EXHIBIT
P-17

STATE EDUCATION AGENCY
DISTRICT OF COLUMBIA PUBLIC SCHOOLS

T███ W█████                                    §
_Petitioner_                                    §
                                                §
                                                §
v.                                              §
                                                §
T█████ of Columbia Public Schools              §
_Respondent_                                    §
                                                §
                                                §
                                                §

## MOTION FOR ENTRY OF DEFAULT JUDGMENT ON PETITIONER'S COMPLAINT AND REQUEST FOR REMEDY TO BE AWARDED, OR IN THE ALTERNATIVE REQUEST FOR AN EX PARTE HEARING ON REMEDY TO BE AWARDED

Petitioner D████ W███, parent and next friend of T███ W████, requests the entry of a decision by default against Respondent, District of Columbia Public Schools, for its failure to respond to Petitioner's complaint, pursuant to Rule 55 of the Federal Rules of Civil Procedure and § 401 of the DCPS Due Process Hearing Standard Operating Procedures. In support of this request, Petitioner relies upon the record in this case and the attached Memorandum of Points and Authorities submitted herein.

WHEREFORE, Petitioner requests that the Hearing Officer hold Respondent in default for its failure to comply with federally mandated requirements to timely and adequately respond to her Due Process Complaint and its failure to convene a Resolution Meeting consistent with D.C. Municipal Regulations. Petitioner further requests that the Hearing Officer award the full remedy requested in the complaint: 1) funding and placement by DCPS of T███ W████ at Children's Guild with transportation services to be provided and 2) appropriate compensatory education for the two-year denial of a Free and Appropriate Public Education. Alternatively, Petitioner request that the Hearing Officer hold an ex parte proceeding to determine the

appropriate remedy or treat all averments in the complaint as admitted and bar Respondent from presenting evidence contesting the claims, and other relief and sanctions as the Hearing Officer deems fit and proper.

Respectfully submitted,

Aaron J. Fischer, Esq. *
Attorney for Dorothy Watson
The Children's Law Center
616 H Street, NW – Suite 300
Washington DC, 20001
(202) 467-4900, X525
(202) 552-7125 (fax)
*Admitted in California; Eligible to practice in D.C. under Rule 49(c), under the supervision of Tracy L. Goodman

Tracy L. Goodman, Esq.
DC Bar #481088
The Children's Law Center
616 H Street, NW – Suite 300
Washington DC, 20001
(202) 467-4900, X503
(202) 467-4949 (fax)

STATE EDUCATION AGENCY
DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | §|
|---|---|
| T▇▇ W▇▇▇ | § |
| *Petitioner* | § |
| | § |
| | § |
| v. | § |
| | § |
| District of Columbia Public Schools | § |
| *Respondent* | § |
| | § |
| | § |
| | § |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR ENTRY OF DEFAULT JUDGMENT ON PETITIONER'S COMPLAINT AND REQUEST FOR REMEDY TO BE AWARDED, OR IN THE ALTERNATIVE REQUEST FOR AN EX PARTE HEARING ON REMEDY TO BE AWARDED

## SUMMARY OF ARGUMENT

Petitioner D▇▇ W▇▇▇, parent and next friend of minor child T▇▇ W▇▇, moves for this Hearing Officer to hold Respondent District of Columbia Public Schools (hereinafter DCPS) in default for: 1) Its failure to comply with the requirements to timely and adequately respond to Petitioner's Due Process Complaint pursuant to 20 U.S.C. § 1415(c)(2)(B)(i) and 34 C.F.R. § 300.508(e)(1), and 2) Its failure to comply with the requirements in conducting a Resolution Session pursuant to DCMR § 5-3030.1(a)(iii).

The finding of a default judgment is appropriate in light of Respondent's multiple failures that violate and undermine the procedural safeguards that are the *sine qua non* of the special education laws and regulations. The Supreme Court has explicitly recognized that "the importance Congress attached to [the] procedural safeguards cannot be gainsaid. It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures ... as it did upon the measurement of the resulting IEP against a substantive standard." Board of Educ. v. Rowley, 458 U.S. 176, 205-06 (1982). Courts in this jurisdiction

1

have found that a violation of the procedural requirement under special education law "can itself constitute the denial of a free appropriate education." Blackman v. District of Columbia, 277 F. Supp. 2d 71, 79 (D.D.C. 2003). *See also* Massey v. District of Columbia, 400 F. Supp. 2d 66, 75 (D.D.C. 2005) (asserting that "DCPS cannot be allowed to disregard the procedural requirements [under the IDEA], thereby failing to provide children with FAPEs"). Respondent's procedural violations have a prejudicial effect on Petitioner that is both palpable and significant. Specifically, Petitioner's efforts to gain information necessary either to resolve the dispute through a settlement or to prepare her case for a due process hearing are thwarted as a direct result of Respondent's violations.

Because Respondent has failed to timely and adequately respond to the Due Process Complaint and because Respondent has failed to fulfill the substantive and procedural requirements for holding a timely Resolution Session, Respondent must be considered an "essentially unresponsive party." *See* H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970); Cintec International Ltd. v. Parkes, 2006 U.S. Dist. LEXIS 45203, *3-4 (D.D.C. 2006). As a result of this unresponsiveness, Petitioner faces an indeterminate and interminable delay and continued uncertainty as to her rights. H.F. Livermore Corp., 432 F.2d at 691. While not all procedural violations are actionable, procedural failures that have "seriously hampered the parents' opportunity to participate" in the special education process are sufficient grounds to hold the school district legally accountable. *See* Lesesne v. District of Columbia, 447 F.3d 828, 834 (D.C. Cir. 2006) (quoting Roland M. v. Concord Sch. Comm., 910 F.2d 983, 994 (1st Cir. 1990). *See also* Massey, 400 F. Supp. 2d at 75 (holding for the parent based on DCPS's failures to hold a Resolution Session and to respond to parent's due

process complaint, emphasizing "IDEA's purpose of giving parents a greater role in the educational decisions impacting their children").

By failing to provide a timely and adequate written response and denying Ms. W▬ the opportunity to resolve the complaint through the Dispute Resolution Session process as required by law, DCPS has prevented Petitioner from meaningfully participating in the special education process. Such a denial is sadly consistent with the unresponsiveness and gross disregard that DCPS has also demonstrated in wrongly denying T▬ necessary special education services for the last two years. Thus, Petitioner requests that Respondent's failures in properly responding to her Complaint and in timely holding a Resolution Session – whether they are by device or by negligence – be deemed grounds for a default judgment against Respondent.

## FACTS AND PROCEDURAL HISTORY

In June 2004, T▬ was placed in special education, with 30 hours/week of specialized instruction. After one year of this full-time special education program, DCPS terminated T▬ eligibility for special education services and exited T▬ from special education entirely. DCPS inappropriately placed T▬ in a regular education classroom, denying him the full-time, intensive special education services his special needs require. As a result, T▬ has made little to no educational progress, his inappropriate placement has repeatedly resulted in highly dangerous situations for him, and his behavioral problems – largely reflective of his frustration, depression, and emotional needs – have continued and grown more serious.

As detailed in the Due Process Complaint, DCPS failed to provide T▬ with a Free and Appropriate Public Education (FAPE) for two school years, beginning when he was inappropriately exited from his full-time special education program on August 4, 2005 and

3

continuing until today, as DCPS has provided T⬛⬛ with a wholly inappropriate Individualized Education Program, dated May 9, 2007. Petitioner seeks a remedy for this protracted failure by DCPS: 1) funding and placement by DCPS of ⬛⬛⬛ Watson at Children's Guild with transportation services to be provided and 2) appropriate compensatory education for the two-year denial of a Free and Appropriate Public Education.

Ms. Watson filed a Due Process Complaint by hand delivery on August 1, 2007, serving a copy of the Complaint on DCPS's Office of General Counsel. *See* Due Process Complaint Notice, Petitioner's Exhibit 1. The Student Hearing Office faxed the Scheduling Memorandum to Petitioner's counsel on August 6, 2007, specifically setting forth the legally mandated deadline for DCPS to provide an answer to the complaint or prior written notice by August 11, 2007; the Resolution Session was to be held by August 16, 2007. *See* Scheduling Memorandum, Petitioner's Exhibit 2.

DCPS failed to provide a written response or prior written notice to Petitioner for nineteen (19) days – almost twice the legal maximum – and when it did issue a response on August 20, 2007, it failed to comply with the explicit legal requirements for that response. The response was written by the Special Education Coordinator at Gibbs Elementary School, who acknowledged that he "cannot answer to why or when the process of the SST was delayed or never done" and made no mention of the disputed IEP and placement. While this extremely brief response makes reference to some individual issues relating to the complaint, it does not provide an explanation of why the agency proposed or refused to take the actions raised by Petitioner, making no reference to the evaluations, records, and other factors that were relevant to DCPS's proposed or refused actions. *See* Response to Complaint, Petitioner's Exhibit 3. The core of Petitioner's due process complaint, asserting that T⬛⬛ requires a full-time special

4

education placement that can serve his extensive learning deficits and social/emotional needs and alleging that DCPS inappropriately exited ▮▮▮ from full-time special education and continues to deny FAPE, goes fundamentally unaddressed in DCPS's response. Also, DCPS failed to hold the legally required Resolution Session at all.

Based on these facts and the legal principles outlined below, Petitioner moves to hold DCPS in default based on two separate violations of federal and local law that have resulted in substantive harm to the parent.

## LEGAL ARGUMENT

A Hearing Officer has authority to "rule on motions and other issues at any stage of the proceedings." 34 C.F.R. § 300.181(h); *see also* DCPS Due Process Hearing Standard Operating Procedures § 401(C)(6). Further, the Hearing Officer has authority to "receive, rule on, exclude, or limit evidence at any stage of the proceedings." 34 C.F.R. § 300.181(g). When a party is "essentially unresponsive" and "the diligent party ... [faces] interminable delay and continued uncertainty as to rights," it is necessary to protect the diligent party from being unduly prejudiced by the unresponsive party's delays and failures to comply with procedural rules and safeguards. H.F. Livermore Corp., 432 F.2d at 691.

Accordingly, Petitioner respectfully requests that DCPS be found in default for its failure to comply with multiple substantive and procedural requirements designed both to facilitate the special education process and to protect the rights of students and parents. Due to Respondent's failures, Petitioner has been unable to gain information about what claims Respondent admits or denies, to understand what remedies Respondent might consider in reaching a settlement

agreement, to meaningfully participate in the resolution process, and to prepare sufficiently for the due process hearing.

**1. DCPS has failed to timely and adequately respond to Ms. W████ Due Process Complaint, preventing her from effectively pursuing a resolution to her complaint.**

DCPS should be held in default for its failure to comply with the requirements to respond to Petitioner's Due Process Complaint within ten days of receipt, pursuant to 20 U.S.C. § 1415(c)(2)(B)(i), 34 C.F.R. § 300.508(e)(1), and DCPS's own Due Process Hearing Standard Operating Procedures § 303(B). Furthermore, Respondent has failed to provide prior written notice to Petitioner, a requirement when the local educational agency "[r]efuses to initiate or change the identification, evaluation, or *educational placement of the child* or *the provision of FAPE to the child.*" 34 C.F.R. § 300.503(a)(2) (*emphasis added*). Under the federal regulations, if the local educational agency has not provided prior written notice to the parent regarding the subject matter of the Complaint, then it "must, within 10 days of receiving the due process complaint, send to the parent a response that includes:

(i) An explanation of why the agency proposed or refused to take the action raised in the due process complaint;

(ii) A description of other options that the IEP Team considered and the reasons why those options were rejected;

(iii) A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and

(iv) A description of the other factors that are relevant to the agency's proposed or refused action."

34 C.F.R. § 300.508(e)(1).

The Due Process Complaint was delivered to DCPS on August 1, 2007. Nineteen days passed before DCPS provided any written response. This failure is a clear violation of the

6

federally mandated procedural requirements, enacted so that parents of children with a disability can understand their rights and seek to vindicate those rights in a deliberate and timely way. *See* Schaffer v. Weast, 126 S. Ct. 528, 536-37 (asserting Congress' intent under IDEA to require due process that "guarantees parents and children the procedural protections" that are essential to the protection of substantive rights themselves).

DCPS's response, in addition to being untimely, is wholly inadequate. It fails to provide an explanation of why DCPS exited T███ from his full-time special education placement in August 2005 and an explanation of its recent decision to provide a part-time placement in the same academic setting in which T███ has failed for the last two years. It can be no excuse that the writer of the response, Gibbs Elementary School's Special Education Coordinator, "was not responsible and cannot answer" to the reasons for DCPS's actions. *See* Response to Complaint, Petitioner's Exhibit 3. Furthermore, the fundamental issue in Petitioner's due process complaint – specifically, the inappropriate Individualized Education Program and placement pursuant to the IEP meeting of May 9, 2007 – remains fundamentally unaddressed.

Without a timely and legally sufficient written response to the Complaint. Petitioner lacks important information that can contribute to efforts towards a resolution to her Complaint. Ms. W███ who has diligently pursued appropriate special education services for T███, has been denied her rights under the Individuals with Disabilities Education Act insofar as her efforts to utilize the statutory requirements to seek an appropriate resolution for DCPS's protracted failure to serve Terrik have been ignored. The appropriate remedy for these consequential failures by DCPS is to hold DCPS in default and move forward with providing a remedy to Petitioner.

Further, Rule 8 of the Federal Rules of Civil Procedure provides that averments that are not formally denied in a responsive pleading are to be treated as admitted or conceded. Fed. R.

7

Civ. P. R. 8(d). Accordingly, the Hearing Officer, at a minimum, should deem the averments in the complaint to be admitted by DCPS given its failure to timely and adequately respond. 34 C.F.R. § 300.181(h); DCPS Due Process Hearing Standard Operating Procedures § 401(C)(6).

**2. DCPS has failed to comply with the requirements for conducting a timely Resolution Session, stalling and thwarting Ms. Watson's efforts to achieve an appropriate resolution.**

DCPS should also be held in default for its failure to comply with the requirements regarding the Resolution Session, as provided in the District of Columbia Municipal Regulations. The regulations plainly provide that DCPS "shall convene a Resolution Session with the parents and the relevant member(s) of the IEP Team who have specific knowledge of the facts identified in the complaint. The Resolution Session ... (ii) shall include a representative of the agency who has decision making authority on behalf of such agency." DCMR § 5-3030.1(a)(iii).

By failing to make any efforts to convene a Dispute Resolution Session as required by special education law, DCPS has fundamentally deprived Ms. W█████ of her right as a parent to meaningfully participate in the process. She has been denied the opportunity to enforce her rights under the Individuals with Disabilities Education Act and to take affirmative steps with the school district to resolve her Complaint.

DCPS's failure to follow the legally mandated procedural requirements rises to the level of substantive harm. *See* Massey, 400 F. Supp. 2d at 71 (holding that the "statute obligates DCPS to hold a session within 15 days, period"). These failures cannot be viewed as "mere technical oversight[s]," as "[i]t is technical compliance with the law ... that give parents faith that their concerns will be addressed in accordance with Congress' intent." *Id.* at 72. Given DCPS's wholesale disregard for these requirements, the Hearing Officer should hold DCPS in

default and provide an appropriate remedy to the Petitioner's Due Process Complaint.  34 C.F.R. § 300.181(h); DCPS Due Process Hearing Standard Operating Procedures § 401(C)(6).

WHEREFORE, D██████ W█████, by and through undersigned counsel, moves to hold DCPS in default for failure to comply with the legal requirements to timely and adequately respond to her Due Process Complaint and to timely hold a Dispute Resolution Session, and to award the requested remedy of funding and placement by DCPS of T████ W█████ at Children's Guild with transportation services to be provided and the further remedy of appropriate compensatory education for two years' denial of a Free and Appropriate Public Education, or to hold an ex parte proceeding to determine the appropriate remedy, or in the alternative, treat all averments in the complaint as admitted and bar Respondent from presenting evidence contesting the claims, and other relief and sanctions as the Hearing Officer deems fit and proper.

Respectfully submitted,

_Aaron J. Fischer_
Aaron J. Fischer, Esq.*
Attorney for Dorothy Watson
The Children's Law Center
616 H Street, NW – Suite 300
Washington DC. 20001
(202) 467-4900, X 525
(202) 552-7125 (fax)
*Admitted in California, Eligible to practice in D.C. under Rule 49(c), under the supervision of Tracy L. Goodman

_Tracy Goodman_
Tracy L. Goodman, Esq.
DC Bar # 481088
The Children's Law Center
616 H Street, NW – Suite 300
Washington DC. 20001
(202) 467-4900, X 503
(202) 467-4949 (fax)

9



**EXHIBIT**

P-13

August 9, 2007

Aaron Fischer
Staff Attorney
The Children's Law Center
616 H Street, NW Suite 300
Washington, DC 20001

ADMINISTRATIVE OFFICE
6802 McClean Blvd
Baltimore, MD 21234-7260
Tel. 410-444-3800
Fax: 410-426-0612
www.childrensguild.org

SERVING CHILDREN IN
Anne Arundel County
Baltimore City
Prince George's County

BOARD OF TRUSTEES
Dennis Adams
Board Chair

Suzanne Pearce
Vice-Chair

Michael M. Gajewski, Jr.
Treasurer

Maria L. Noplock
Secretary

Brenda Dandy
Past Board Chair

Andrew L. Ross, Ph.D., LCSW-C
President

Judith Bonder
Jane M. Brauer
Michael Diliberto
Diane M. Eaton
Mindy Geppi
Janie Greenwood Harris
Stephen L. Hecht
Bonnie K. Hanawan
Pamela A. Kendall
Wingrove S. Lynton
John A. Murhey
James R. Novick
William Purcell
Paula Schaedlich
H. Robert Stephan
Michael Wodka
Neil R. G. Young

*Sent via facsimile 202.552.7125*

RE:   T█ W████
DOB: 3 20.00

Dear Mr. Fischer:

Thank you for the referral on student T█ W████ to be considered for placement at The Children's Guild in Chillum. I am pleased to announce that we would like to offer acceptance and placement to this student into our Day Program for the 2007-2008 academic school year.

This letter will serve as documentation that District of Columbia Public Schools will be financially responsible for this student. The original of this letter will be forwarded to you via the US Postal Service. If you should have any questions or require additional information, please feel free to call me at 301.853.7370.

Sincerely,

*LaMar Williams*

LaMar Williams
Director of Admissions

## LIST OF EXHIBITS
### FOR
## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

P-1    Declaration of Dorothy Watson
P-2    Notice of Student Disciplinary Action, Gibbs Elementary School, September 10, 2007
P-3    T.W. Report Cards for Kindergarten (2005-2006) and First Grade (2006-2007)
P-4    Due Process Complaint Notice, August 1, 2007
P-5    Individualized Educational Plan, February 22, 2005
P-6    DCPS Completion of Services Form, August 4, 2005
P-7    Student Support Team SST Notes, 2005-06
P-8    Multi-Disciplinary Team Meeting Notes, March 22, 2007
P-9    Psycho-educational Evaluation by DCPS Psychologist, February 2007
P-10   Declaration of Ellie Giles, Expert in Special Education
P-11   Letter to Gibbs Elementary School, February 13, 2007
P-12   Individualized Educational Plan and Meeting Notes, May 9, 2007
P-13   Extended School Year Verification of Services and Report Card, July 20, 2007
P-14   Student Hearing Office Scheduling Memorandum, August 6, 2007
P-15   Declaration of Aaron J. Fischer, Esq.
P-16   DCPS Response to Due Process Complaint by Gibbs Elementary School special education coordinator, August 20, 2007
P-17   Motion for Entry of Default Judgment, August 28, 2007
P-18   Acceptance Letter from The Children's Guild, August 9, 2007
P-19   Declaration of La Mar Williams, Director of Admissions, The Children's Guild

EXHIBIT

## DECLARATION OF DOROTHY WATSON IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Dorothy Watson declares and says as follows:

1.      I am the great-grandmother and adoptive parent of my son T.W., who is seven years old.

2.      I reside at 1926 Rosedale Street, NE, Washington, DC 20002.

3.      T.W. lives at the same residence as me.

4.      T.W. was placed in a full-time special education placement at National Children's Center for the 2004-2005 school year.

5.      During the 2004-2005 school year, his disability classification was "Developmental Delay."

6.      In August 2005, DCPS informed me that T.W. would no longer be eligible for special education; he was removed entirely from his full-time special education placement and program and placed in the regular education classroom at Gibbs Elementary School ("Gibbs ES").

7.      T.W. began attending Gibbs ES as a Kindergarten student in the 2005-2006 school year.

8.      During T.W.'s 2005-2006 school year, he struggled a lot with his academics as well as with his behavior at school.

9.      T.W.'s Kindergarten teacher expressed her concerns to me about his academic difficulties.

10.     DCPS did not provide T.W. with evaluations for special education during T.W.'s 2005-2006 school year.

11.     DCPS did not provide me with notice of my procedural safeguards under the IDEIA during T.W.'s 2005-2006 school year.

12.     DCPS did not provide me with any written documentation of its refusal to initiate the special education evaluation or referral process for T.W. during T.W.'s 2005-2006 school year.

13.     T.W. attended Gibbs ES as a first grade student during the 2006-2007 school year.

14. As a first grade student, T.W. would not listen to directions, frequently hid under the classroom tables, moved chairs, left the classroom on his own and entirely unsupervised, and even climbed on bathroom stalls, radiators, or tables.

15. On several occasions, he has wandered the school halls and playground without any teacher or staff person supervising him.

16. Because T.W.'s first grade teacher was often unable to calm T.W. down in the classroom and keep him on task, T.W.'s teacher would regularly send him to other classrooms and to the office.

17. T.W.'s first grade teacher expressed to me personally and at T.W.'s MDT/IEP meetings that she is unable to provide the appropriate instruction, supervision, and educational services to T.W. in her classroom given his special needs.

18. T.W. is often unable to remain in the classroom and therefore leaves on his own without permission.

19. On numerous occasions during the 2005-2006 and 2006-2007 school years, I have been called at work to come to the school in order to take T.W. home because the school is unable to manage T.W.'s behavioral problems.

20. Due to my concerns about T.W.'s behavioral, emotional, and academic difficulties, in December 2006, I requested that DCPS conduct special education evaluations for T.W.

21. I attended T.W.'s IEP meeting at Gibbs ES on May 9, 2007 with Aaron J. Fischer as my attorney.

22. At the IEP meeting on May 9, 2007, the special education coordinator stated that the school's special education program functions based on the inclusion model.

23. No one from DCPS at the IEP meeting on May 9, 2007 had knowledge about the special education program at Gibbs ES; the school's only special education teacher was not present for most of the meeting.

24. During the meeting on May 9, 2007, Mr. Fischer requested that the special education teacher be present at the meeting to describe the school's special education program. He eventually joined the IEP meeting for less than five minutes at the end of the meeting.

25. During this meeting, the special education teacher explained to the IEP team that he works with more than twenty special education students at all grade levels. In addition to the inclusion model, he generally serves all of these students – from the first to the sixth grade – in a large classroom setting.

26.  The special education teacher has communicated to my attorney and me that because he works with such a large group of special education students at one time, he is unable to provide the appropriate level of attention to T.W given his special needs.

27.  Based on this and other available information, the MDT/IEP team members – including the special education coordinator and DCPS psychologist – agreed that Gibbs ES was not an appropriate placement for T.W. given the combination of his special needs.

28.  At that meeting, the DCPS psychologist recommended that T.W. be provided a different placement Specifically, the psychologist stated that T.W. needs a smaller educational setting and more behavioral supports.

29.  The DCPS special education coordinator informed me that DCPS was offering placement at Gibbs ES.

30.  I expressed my concerns that T.W. required a full-time special education placement that would be able to serve his learning disabilities and unique emotional and behavioral needs.

31.  In spite of my concerns, DCPS refused to consider or offer any additional special education programs, placements, or services.

32.  T.W. attended Miner Elementary School for the Extended School Year (ESY) program during the summer of 2007.

33.  During T.W.'s ESY program at Miner Elementary School, DCPS could not provide the academic and educational supports necessary for T.W. to be able to do and complete his work and maintain appropriate behavior in the classroom. The program's coordinator recommended that T.W. required a full-time, therapeutic special education placement.

34.  On August 27, 2007, T.W. entered second grade at Gibbs ES.

35.  It is my understanding that Gibbs ES has kept T.W. in the special education coordinator's office during some school days this school year based on the fact that the school is unable to serve his needs and keep him safe in his classroom.

36.  On September 5, 2007, I received a call from a staff person from Gibbs ES while I was at work. The school informed me that T.W. had left the classroom unsupervised and gone to the restroom by himself.

37.  The staff person informed me that T.W. used a box of matches to ignite every roll of toilet paper in each stall on fire. Another student who observed this situation reported it to school staff.

38.    Due to the fire ignited by T.W., the entire school building was evacuated and substantial damage was done to the school restroom.

39.    Thankfully, T.W. was not physically injured during the incident, though he has been significantly affected emotionally and psychologically by this event; he was frightened by the fire setting and is upset about his actions and their consequences.

40.    The school principal informed me shortly after the incident that T.W. would be suspended from Gibbs ES for eight (8) days, starting September 14, 2007.

41.    DCPS did not communicate to me about any additional services, accommodations, or alternative placements that would be implemented in order to provide T.W. with an appropriate education and safe school environment given his special needs.

42.    I am extremely concerned about T.W.'s lack of educational progress since he began at Gibbs ES more than two years ago.

43.    I am extremely concerned about T.W.'s safety and well being at Gibbs ES, as he has repeatedly been placed in highly dangerous situations, including but not limited to climbing on school installations and furniture and starting fires, showing that he is not getting appropriate supervision, structure, and supports.

44.    It is clear to me that the staff at Gibbs ES cannot keep T.W. safe and free from harm.

45.    No DCPS representatives have contacted me to schedule a resolution session following my filing of a due process complaint on August 1, 2007.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on _____

_____
Dorothy Watson



EXHIBIT

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**FINDINGS AND RECOMMENDATIONS FROM**
**STUDENT/PARENT CONFERENCE**

Mildred E. Gibbs Elementary School
School

(202) 724-4573
Telephone

Signature of Principal
September 10, 2007
Date of Delivery
[ ] Certified Mail
[x] Hand Delivery

Student ____Terrik Watson____          Date of Birth  3/20/2000

Student's Grade ___2___     Male [ ] Female [X]     Ethnicity Code  Black

Sp. Ed. Student: Yes [ X ] No [ ]   Disability Code _ED_     LRE/Educational Setting:
Comp.Ed. Classroom

Parent/Guardian ___Dorothy Watson___

Address: 1926 Rosedale St., N.E., Washington D.C. 20002

Home Telephone  (202)-399-2516  Work Telephone  (202)225-7109

Dear  Ms. Watson  :
Name of Parent/Guardian

As a result of the conference held pursuant to Board Rule 2505.4,  Terrik Watson
Shall be disciplined as follows:                                    Name

[X] Excluded from  9/11/2007      to  9.25 2007 .
    Your child should return on 9   2007.

[X] During this disciplinary period the student must report to:
    __Gibbs Elementary School___      8AM-3:15PM (9/11-9/13 2007)
    Name of School                    Program/Class/ Time Period

    at _ 500 19th Street N.E. Washington, DC 20002 .
       Address

[x] During this disciplinary period, the student is placed on home suspension from
    9/14/07 to 9/25/07. An educational package will be provided to the student. Further
    instructional information will be provided by this office. If your child does not
    receive this information within four (4) school days of your receipt of this notice,
    please call
    Ms. Kimberly R. Davis          at  (202) 724-4573 .

[ ] No disciplinary action will be taken. _____is to return to school
    immediately.

Work Packet Enclosed  = number of days suspended.

SHO 10:
August 2008



## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## NOTICE OF STUDENT DISCIPLINARY ACTION

### SUSPENSION LEVEL II

**Mildred E. Gibbs Elementary School**
School
**(202) 724-4573**
Telephone

_Signature of Principal_
**9/6/2007**
Date of Delivery
[ ] Certified Mail
[x] Hand Delivery

Student ___**Terrik Watson**___

Date of Birth ___**3/20/2000**___

Student's Grade __**2**__     Male [X] Female []

Ethnicity Code____**Black**____

Sp. Ed. Student: Yes [X] No []   Disability Code __LD__

LRE/Educational Setting:
Comp Ed. Classroom

Parent Guardian ___**Dorothy Watson**___

Address: 1926 Rosedale St., N.E.  Washington, D.C. 20002

Home Telephone ___**(202)399-2516**___

Work Telephone ___**202-225-7109**___

Dear __**Ms. Watson**__:
Parent/Guardian

　　　Please be advised that pursuant to the Rules of the Board of Education, Section 2500, your son/daughter is being disciplined for violating the following section(s) of the Board **Rules;** **2503.2 (e)** (Attempted or actual arson of any part of any DCPS building or property located within or upon DCPS premises or property.

Brief description of incident:____On September 5, Terrik caused arsenal combustion in the primary boy's bathroom using matches and toilet paper.

(State how it affected the individually)

age 1 of 4
SHO 101
August 2005

Terrik Watson
**Name of Student**

I am notifying you, in accordance with Bo  d Rule Section 2505.3, that
___Terrik Wa  on__ is to be suspended for ___ days, from_____9/11/07_____ through
9/25/07 and returning on 9/26/07.

[ x ] A conference was held on _____9/10/07___  ___with__Terrik Watson__.
                                    Date                      Name of Student

[ ] A conference has been scheduled on ___  ___ at ___, in the school
       office.                                    Time

Contact _____ on _____  _____ to confirm attendance.
         (Name of Contact Person)    (Teleph   Number

## CHECK WHERE APPROPRIATE

[ x ]  During this disciplinary time period  student must report to this school for in school
suspension. This will take place from 9 11 0  hrough 9 13 07.

[ ] During this disciplinary time period th  student must report to the following alternative
educational placement: _____  _____ located at _____

The telephone number is _____

[x] Because of the seriousness of the offense  nd potential **harm to your child and others. I am**
initiating a home suspension in accordance  h the Board **Rules. During this disciplinary time**
period, the student shall be placed on ho  e suspension for **8** days from **9/14/07 through**
9/25/07. An educational packet will be prov  e to the student. This office will provide further
instructional information. If your child doe  of receive this information within (4) school days
of receipt of this notice, please call:

Ms. Kimberly R. Davis                         2021 724-4573
                                              Telephone Number

       This suspension will not be made  part of the student's permanent record. The
principal has informed the Student Discipli  y Hearing Office of this suspension.

       A copy of Chapter 25 of the Board   ules is attached.

Page 2 of 4
SHO 101
August 2005

**EXHIBIT**

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
KINDERGARTEN PROGRESS REPORT

(Page 1 of 3)

SY 2005-2006

Student: _____
ID#: _____
Teacher: A. Stevens
School: Gibbs Elem.

Parents: This report is to inform you of your child's progress so that we may work together in guiding his/her development.

## READING PREPARATION

|  | Sem 1 | Sem 2 |
|---|---|---|
| Names/Recognizes letters of the alphabet | | P |
| Associates most letters with sounds | | |
| Seeks likenesses and differences in objects, in letters, in words | | |
| Names familiar signs, labels book titles | | |
| Works from left to right | | |
| Names/Identifies basic colors | | |
| Recognizes name in print | | |
| Matches like/same objects | | |
| Finds the one that is different | | |
| Plays simple board games | | |
| Completes 10 to 12 piece interlocking puzzles | | |

## WRITING PREPARATION

|  | Sem 1 | Sem 2 |
|---|---|---|
| Aware of some purposes for writing | | P |
| Attempts to print to convey own ideas | | |
| Connects text with personal experiences | | |
| Enjoys "reading" picture books | | |
| Writes using invented spelling | | |
| Enjoys/shares own writing | | |
| Identifies main idea | | |
| Has a sight-word vocabulary (up to 40 words) | | |

## LISTENING & SPEAKING

|  | Sem 1 | Sem 2 |
|---|---|---|
| Listens attentively | P | P |
| Follows directions | | |
| Hears likenesses/differences in sounds of letters | | |
| Tells the sounds made by letter | | |
| Recalls nursery rhymes, short stories, short poems | | |
| Answers questions in sentences | | |
| Expresses ideas clearly in keeping with age | | |
| Participates in class discussion | | |

## LITERATURE

|  | Sem 1 | Sem 2 |
|---|---|---|
| Names picture/story character | | |

## SCIENCE/SOCIAL STUDIES

|  | Sem 1 | Sem 2 |
|---|---|---|
| Participates in care of living things | | |
| Recognizes/Describes seasons | | |
| Participates in guided experiments | | |
| Makes observations and discoveries about the environment/community | N | P |

## SPECIAL SERVICES (Please check if applicable)

| | |
|---|---|
| ESL/Bilingual | |
| Special Education | |
| Speech & Language | |
| Other | |

## ATTENDANCE

| | Advisories | | | |
|---|---|---|---|---|
| | 1 | 2 | 3 | 4 |
| Days of Instruction | 42 | 29 | 43 | 44 |
| Days Absent | 1 | 14 | 0 | 4 |
| Days Tardy | | | | |

## SCORING KEY

P = Progressing Satisfactorily
N = Needs Support

## FOR INDIVIDUAL OBJECTIVES

+ = Excellent
√ = Satisfactory
– = Unsatisfactory

TEACHER COMMENTS Attached



# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## KINDERGARTEN PROGRESS REPORT

Student: _____ 1st Aug 2006

(Page 2 of 3)

## MATHEMATICS

| | Sem 1 | Sem 2 |
|---|---|---|
| | N | P |
| Names/Recognizes shapes | | |
| Matches items one-to-one | | |
| Duplicates patterns | | |
| Identifies sets with ten items | | |
| Identifies numbers 1 through 12 | | |
| Counts by rote to 50 | | |
| Names wholes and parts of wholes | | |
| Reads/Interprets simple graphs | | |
| Orders/Sorts objects by specific characteristics (size, shape) | | |
| Uses math terms (less, equal) | | |
| Names hour on analog clock | | |
| Identifies penny, nickel, dime, quarter | | |
| Tells use of measuring devices (clock, calendar, ruler, thermometer) | | |
| Compares objects by length, weight | | |

## ART AND MUSIC

| | Sem 1 | Sem 2 |
|---|---|---|
| | N | P |
| Identifies and uses line, shape, color, texture, form and direction | | |
| Creates images that represent ideas and feelings through symbols | | |
| Responds rhythmically and expressively to music | | |
| Imitates dance | | |
| Sings individually and in groups | | |

## PHYSICAL DEVELOPMENT

| | Sem 1 | Sem 2 |
|---|---|---|
| | P | P |
| Manages fastenings (zips, ties) | | |
| Cuts on the line with preschool scissors | | |
| Holds and uses pencil with a mature pencil grasp | | |
| Prints full name | | |
| Copies simple geometric shapes | | |

## HEALTH/PHYSICAL EDUCATION

| | Sem 1 | Sem 2 |
|---|---|---|
| Walks down stairs alternating feet | | |
| Skips and hops | | |

## SOCIAL DEVELOPMENT

| | Sem 1 | Sem 2 |
|---|---|---|
| | N | N |
| Tells full name | | |
| Tells address/telephone number | | |
| Tells age/birthday | | |
| Shares and takes turns | | |
| Displays self-discipline | | |
| Adjusts to new situations | | |
| Respects property of others | | |
| Names persons who make up family | | |
| Tells function of body parts | | |
| Completes actions in toileting | | |
| Shows responsibility for own things | | |
| Follows class rules | | |
| Gets along well with peers | | |

## WORK HABITS

| | Sem 1 | Sem 2 |
|---|---|---|
| | N | N |
| Works at task until complete | | |
| Seeks help when needed | | |
| Takes care of materials | | |
| Cleans up after work period | | |
| Asks questions | | |

Catches, bounces, throws ball
Displays age-appropriate health and safety practices

Grade Next Year: 1st

TEACHER COMMENTS Attached

## SCORING KEY
P = Progressing Satisfactorily
N = Needs Support

FOR INDIVIDUAL OBJECTIVES
+ = Excellent
√ = Satisfactory
— = Unsatisfactory



**District of Columbia Public Schools Report Card**
SY [illegible] (Page three of three)
**TEACHER COMMENTS**

Student Name: [redacted]

Grade: [illegible]

**First Advisory**

[illegible]

Teacher Signature [illegible] Date 10-[illegible]-05

**Second Advisory**

[redacted] has demonstrated some [illegible] progress [illegible] performance in the areas of letter and number recognition. His classroom performance [illegible] small group [illegible] is [illegible]. He is an auditory and tactile learner and [illegible] to being [illegible] to demonstrate a [illegible] additional support is needed.

Teacher Signature [illegible] Date 1-20-06

**Third Advisory**

[redacted] enjoys individual conferencing to discuss his feelings about his performance in school and other concerns. His verbal responses demonstrate that he is grasping concepts and he expresses pride in what he knows. He becomes frustrated when he is asked to conform to socially acceptable standards. He becomes verbally and physically combative. His aggressive actions compromise the safety of other students and disrupts the learning process. He does not take responsibility for his behavior and blames other students for his actions.

Teacher Signature L. Stevens Date 3-24-06

**Fourth Advisory**

[redacted] demonstrates progress from his entry level performance. He performs better in small groups. He becomes overstimulated in large groups. Have him to read books, write stories and use numbers 1-100 in his everyday activities during the summer. Continue to encourage him to make good choices. I've enjoyed teaching him. Have a peaceful summer.

Teacher Signature L. Stevens Date 6-14-06

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## 1st GRADE REPORT CARD
### SY 2006–2007

Page 1 of 3



Student Name:
Student ID#:
Grade: 1st

School:
Teacher:

**Keys:**  **Overall Academic Progress**          4 = Advanced          3 = Proficient          2 = Basic          1 = Below Basic
**Skills Within Subject Area**          s=Secure          d=Developing          b=Beginning          n=Not Introduced

| | Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|---|
| **READING/ENGLISH LANGUAGE ARTS (Overall)** | | | | | |
| *Language Development* | | | | | |
| Describes familiar objects, people, and events and their attributes with specific words and phrases | | b | | | |
| Identifies base words (look) and their inflectional forms (e.g., looks, looked, looking) | | b | | | |
| *Beginning Reading* | | | | | |
| Decodes regularly spelled one- and two-syllable words fluently in decodable text by applying the most common letter-sound correspondences, including the sounds represented by single letters (consonants and vowels); consonant blends; consonant digraphs; vowel digraphs and diphthongs | | b | | | |
| Reads aloud grade -appropriate text fluently, accurately, and with comprehension | | b | | | |
| Recognizes the distinguishing features of a sentence (e.g., capitalization, ending punctuation) | | b | | | |
| *Informational Text* | | | | | |
| Responds appropriately to questions based on facts in text heard or read | | b | | | |
| *Literary Text* | | | | | |
| Identifies elements of plot, character, and setting in a favorite story | | b | | | |
| Identifies differences between fiction and nonfiction and determines whether a literary selection is realistic or a fantasy | | b | | | |
| *Writing* | | | | | |
| Writes or dictates stories that have a beginning, middle, and end, and arranges ideas in a logical way | | b | | | |
| *English Language Conventions* | | | | | |
| Identifies and employs correct usage of singular and plural regular nouns, contractions, and possessives | | b | | | |
| **MATHEMATICS (Overall)** | | 1 | | | |
| *Number Sense and Operations* | | | | | |
| Counts, reads, and writes whole numbers to 110 and relates them to the quantities they represent (e.g., knows that 60 is bigger than 20) | | b | | | |
| Represents equivalent forms of the same number through the use of physical models, diagrams, and expressions (e.g., 9 may be represented as 6 + 3 = 3 + 3, 10 − 1, 12 − 3) | | b | | | |

| | Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|---|
| *Geometry* | | | | | |
| Describes attributes and parts of two- and three dimensional shapes (e.g., length of sides and number of corners, edges, faces, and sides) | | b | | | |
| *Measurement* | | | | | |
| Makes and uses estimates of measurement, including time and weight | | b | | | |
| *Data Analysis, Statistics and Probability* | | | | | |
| Represents and compares data (e.g., largest, smallest, most often, least often) using tally charts, pictures, and bar graphs | | b | | | |
| **SCIENCE (Overall)** | | 1 | | | |
| Observes and measures that the sun supplies heat and light to the Earth and is necessary for most life | | b | | | |
| Investigates and explains that air is a mixture of different gases that surrounds us and takes up space, and we feel its movement as wind | | b | | | |
| Observes and describes that the way to make something move (faster or slower or in a different direction) is by giving it a push or a pull, which is called a force | | b | | | |
| Describes and compares, objects in terms of number shape, texture, size, mass, color, and motion | | b | | | |
| Recognizes that animals (including humans) and plants are living things that grow, reproduce, and need food, air, and water | | b | | | |
| **SOCIAL STUDIES (Overall)** | | 1 | | | |
| Locates Washington, D.C. on a map | | b | | | |
| Labels the continents, oceans, and major mountain ranges on a map | | b | | | |
| States the meaning of U.S. national symbols, such as the American flag, the bald eagle, the White House, and the Statue of Liberty | | b | | | |
| Identifies the current president of the United States, describes what presidents do, and explains that they are elected by the people | | b | | | |
| Identifies how locations and climate affect economies and trade systems | | b | | | |
| **MUSIC (Overall)** | | | | | |
| Identifies music of various cultures and styles | | | | | |

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## 1st GRADE REPORT CARD
### SY 2006-2007

Page 2 of 3

Student Name: _____
Student ID#: _____
Grade: _____



School: _____
Teacher: _____

**Keys:** Overall Academic Progress
Skills Within Subject Area

4 = Advanced
s=Secure

3 = Proficient
d=Developing

2 = Basic
b=Beginning

1 = Below Basic
n=Not Introduced

| | Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|---|
| **WORK HABITS, PERSONAL & SOCIAL SKILLS** | | | | | |

The following key is used:

I = Independently
LP = With Limited Prompting
FP = With Frequent Prompting
R = Rarely

| **WORK HABITS** | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| Follows directions | R | | | |
| Completes classwork on time | R | | | |
| Works well with others/cooperates | R | | | |
| Uses time wisely | R | | | |
| Completes and returns homework | R | | | |
| Participates in class discussion | R | | | |
| Makes an effort | R | | | |
| **PERSONAL & SOCIAL SKILLS** | | | | |
| Follows classroom rules | R | | | |
| Follows playground rules/school rules | R | | | |
| Respects the rights/property of others | R | | | |
| Listens while others speak | R | | | |
| Practices self-control | R | | | |
| **ATTENDANCE** | | | | |
| Days of Instruction | 45 | | | |
| Days Absent | 0 | | | |
| Days Tardy | 3 | | | |

| | Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|---|
| **SUPPORT SERVICES** *(Checked where applicable. Additional comments from support staff are attached )* | | | | | |
| Resource: Reading | | | | | |
| Resource: Mathematics | | | | | |
| Special Education | | | | | |
| Bilingual ESL | | | | | |

**REPORTING KEY**

**For overall progress in subject area:**

**4 = Exceeds the standard (Advanced)**
Student takes initiative to exceed the standard, consistently produces excellent work, applying skills/concepts correctly, shows creativity and insight.

**3 = Meets the standard (Proficient)**
Student produces work that meets the standard, frequently produces work of high quality, applies skills/concepts correctly.

**2 = Approaches the standard (Basic)**
Student shows a basic working knowledge of skills/concepts, produces satisfactory work, usually applies skills/concepts correctly.

**1 = Does not meet the standard (Below Basic)**
Student does not show basic working knowledge of skills/concepts, seldom produces work of satisfactory quality.

**For skills/expectations within subject area:**

s = Secure
d = Developing
b = Beginning
n = Not Introduced

**Grade Next Year** _____

SY 2007 – 2008

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
Elementary School Report Card
School Year 2006 - 2007



Student Name _____
Student ID# _____
Grade: _____

**Teacher Comments**

**First Advisory**

As I have told you by phone and in person, I only wants to draw. He has marked up his practice book at mark up anything that is on paper. When he has to stop, he throws a tantrum. He has broken crayons and other things that are meant for the class.

Teacher's Signature: K. L. Oliver

**Second Advisory**

Teacher's Signature:

**Third Advisory**

Teacher's Signature:

School:
Teacher:

EXHIBIT

**State Educational Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**

# *Due Process Complaint Notice*

· The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. <u>**A party may not have a due process hearing until the party, or the attorney representing the party, files a due process complaint notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**</u>

· Parents initiating a complaint must provide a completed due process complaint form to the Local Education Agency ("LEA"). For students in traditional public schools, nonpublic day school, or residential treatment facility, notice to the LEA shall be provided to the Office of the General Counsel, 825 N. Capitol St. NE, Washington, D.C. 20002, with a copy to the Student Hearing Office. If a charter school is a named party, the due process complaint must be provided to the principal or director of the charter school, with a copy to the Student Hearing Office.

· <u>Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice.</u> Therefore, please be thorough in providing the information requested.

· Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (**called a "Resolution Session"**) with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution sessions.**

· Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

· Policies and Procedures governing due process hearings are contained in federal and local law and the SHO SOP. You may obtain a copy of the SOP from the Student Hearing Office or any D.C. Public or Charter School without cost. The SOP is also at the DCPS website.

**A.    Information About the Student:**

Student Name: T███ W████

Birth Date: ████████

Address: ████████████████ ██
        Washington D.C. 20002

Home School: Gibbs Elementary School

Present School or ...endance: <u>Gibbs Elementary School</u>
Is this a charter school? _____ (If yes, you must also provide a copy of this notice to
the charter school principal or director.)

Parent/Guardian of the Student: ███████████

Address (if different from the student's above): ___<u>(same)</u>_____

Phone/Contact Number: (███████████ Fax Number (if applicable): _____

## B. <u>Individual Making the Complaint/Request for Due Process Hearing:</u>

Name: ███████████

Complete Address: ███████████
<u>Washington D.C.  20002</u>

Phone: (h) ███████  (w) ███████_____ (Fax) _____ (e-mail) _____

Relationship to the Student:

☒ Parent ☐ Legal Guardian
☐ Self/Student ☐ Local Education Agency (LEA) ☐ Parent Surrogate
☐ Parent Advocate

## C. <u>Legal Representative/Attorney (if applicable):</u>

Name: <u>Aaron J. Fischer, Esq.</u>

Address: <u>The Children's Law Center</u>
<u>616 H Street, NW – Suite 300</u>
<u>Washington DC, 20001</u>

Phone: (w) <u>(202) 467-4900, x 525</u> (Fax) <u>(202) 552-7125</u> (e-mail) <u>Afischer@childrenslawcenter.org</u>
Will attorney /Legal representative attend the resolution session? ☒ Yes ☐ No

## D. <u>Complaint Made Against (check all that apply):</u>

☒ DCPS school (name of the school if different from page one)_____
☐ Charter school (name of the charter school if different from page one)_____
☐ Non-public school or residential treatment facility (name) _____
☐ Parent _____

## E. <u>Resolution Session Between Parent and LEA:</u>

I understand that it is my right to have a resolution session to resolve this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive the resolution session to avoid having this meeting.)

☐ I wish to waive the Resolution Session.

## F. <u>Mediation Process:</u>

IDEA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session. Mediation is also available prior to a due process hearing, but mediation may not be used to deny or delay a parent's right to a hearing on the parent's due process complaint. Please check all that apply.

☐ I am requesting ____diation as an alternative to the resolution session meeting.
☐ I am requesting mediation services only.
☑ I do not wish to use a mediator at this time.

## G.    Facts and Reasons for the Complaint:

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions. Provide complete details about all the facts supporting your claims. (You may attach additional pages if needed):

1.    What is the nature of the problem, including the facts relating to the problem, that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

T▮▮ W▮▮▮▮ is a seven-year old student with learning disabilities and substantial special education needs. He was in fact a full-time special education student during his Pre-K school year (2004-05). DCPS inappropriately terminated his eligibility for special education before the 2005-06 school year. For the next two years, as T▮▮ struggled increasingly in the classroom to make educational progress, DCPS did not identify him as a child with special needs. DCPS failed to provide T▮▮ an Individualized Education Plan (IEP), even as there were numerous red flags in the classroom and repeated pleas for help from his great-grandmother and legal guardian, Dorothy Watson. T▮▮ was found eligible for special education in March 2007, but DCPS has continued to fail to provide T▮▮ an appropriate IEP, appropriate special education services, and an appropriate placement.

## I. DCPS inappropriately exited T▮▮ from his full-time special education program and provided no special education services for two years.

T▮▮ special needs were evident at a very young age. On June 11, 2004, when T▮▮ was four years old, an MDT/IEP team found him eligible for special education, providing him with 30 hours/week of specialized instruction, with placement at National Children's Center. His classification was "Developmental Delay." Yet on August 4, 2005, DCPS inappropriately terminated T▮▮ eligibility for special education services and exited T▮▮ from special education entirely. Instead of continuing to provide full-time, intensive special education services, DCPS placed T▮▮ in a regular education Kindergarten class at Gibbs Elementary School. Subsequently, his substantial special needs went unmet, resulting in little to no educational progress and recurring behavioral problems reflective of his frustration and depression.

As a Kindergarten student at Gibbs Elementary School, T▮▮ immediately and repeatedly demonstrated the severity and extent of his special needs. In October 2005, his teacher, Ms. Stevens, reported that T▮▮ behavior was "aggressive" and marked by his "refusal to participate" in classroom lessons and activities. In January 2006, his teacher noted that T▮▮ is "easily distracted and his task performance is low," while "his reaction to being redirected is to demonstrate a tantrum." Ms. Stevens explicitly noted that "additional support is needed" for T▮▮. The same month, Ms. Stevens' outlined extensive concerns for a Student Support Team, identifying that T▮▮ "ignores verbal directions," "crawls on the floor," "refuses to participate in group activities," "demonstrates periods of being in a trance-like state," and shows "limited work production." In June 2006, she wrote that T▮▮ "becomes overstimulated in large groups" and "performs better in small groups." In spite of these reports, DCPS failed to identify T▮▮ as a student with special needs, to evaluate him, and to provide him with an appropriate educational placement and program during the 2005-06 school year.

The following year, SY 2006-2007, T▮▮ struggled consistently on all first grade academic work. He would not do the reading or math assignments provided by the regular education teacher. Upon information and belief, the situation deteriorated in the regular education classroom to the point

that, on a few occasions, the school staff sent T█████ to the special education teacher's room, even *before* he was evaluated and found eligible for special education. DCPS's failure to provide an appropriate educational program and placement also repeatedly resulted in dangerous situations for T█████. Without an appropriate educational environment – including but not limited to specialized instruction and appropriate related services including counseling – T█████ regularly refused to complete his work assignments and participate in the classroom activities. Instead, he frequently hid under the classroom tables, moved chairs, left the classroom on his own and unsupervised, and even climbed on bathroom stalls, radiators, or tables. These major threats to T█████ safety highlight his need for a full-time special education placement that can serve both his learning disabilities and social/emotional needs.

**II. DCPS failed to timely and/or appropriately identify and evaluate T█████ and provide an appropriate educational placement with the necessary specialized instruction and related services that Terrik requires in order to make educational progress.**

On December 21, 2006, Ms. W█████ requested an immediate referral for special education evaluations. An initial MDT meeting was convened on January 30, 2007. During the meeting, the regular education teacher reported that T█████ would do work only when he was taken out of the regular education classroom and placed in a considerably smaller setting, generally with the school social worker or special education teacher. Based on T█████ learning deficits and social/emotional problems, the team agreed to move forward with a psycho-educational evaluation and Functional Behavior Assessment. T█████ classroom teacher and Ms. Watson completed Functional Behavior Assessments, but DCPS has failed to create a Behavior Intervention Plan for T█████.

In February 2007, the DCPS psychologist conducted a psycho-educational evaluation, in which he identified T█████ significant learning deficits. The evaluation report identifies that T█████ reading and math skills are in the "Borderline" range, and that his "related skills" – including the ability to match and read a series of printed words, match words with pictures, read sentences, and solve basic addition and subtraction problems – "are extremely low." The DCPS psychologist also identified impaired social/emotional functioning. The evaluation affirms that T█████ behavior – including having trouble staying seated, being overly active, acting impulsively, and being easily distracted – "are interfering with his learning process" and require "considerably more attention than it is getting" in his present placement.

During the referral and evaluation process, DCPS continued to fail to provide appropriate special education services for T█████, compounding the protracted denial of FAPE for T█████. Upon information and belief, the school removed T█████ from class and sent him home on several occasions in the fall and winter of the 2006-07 school year; these exclusions were DCPS's inappropriate response to T█████ behavioral and academic problems stemming from his disabilities. On or about February 12, 2007, in response to behavior that was a clear manifestation of T█████ special needs and disabilities, the school suspended T█████ for ten days. Parent's counsel contacted the school by letter to clarify that this ten-day suspension, along with the many class exclusions earlier in the year, would be a violation of the Individuals with Disabilities Education Act 2004. T█████ ultimately served two days of this suspension before DCPS allowed him to return to school.

On March 22, 2007, T█████ multi-disciplinary team convened and finally found T█████ eligible for special education; his disability classification was Learning Disabled. The team also determined that a large classroom with numerous students is not appropriate for T█████ given his academic and social/emotional issues, including his LD and ADHD diagnoses. The DCPS psycho-educational evaluation report recommended that T█████ requires a "different physical placement … i.e., either a different classroom where the opportunities for distraction are much less, or a different school where the opportunities for distraction are much less." DCPS has failed to provide such a placement.

**III. DCPS continues to fail to provide T████ an appropriate IEP, placement, and related services.**

Following the MDT meeting of March 22, 2007, DCPS twice canceled a scheduled IEP meeting to create an IEP for T████ effecting a further delay in the special education process. An initial IEP meeting was scheduled for April 13, 2007; DCPS canceled this meeting. After rescheduling this IEP meeting for April 20, 2007, DCPS canceled that meeting as well. Even as T████ continued to demonstrate substantial special needs in his academic program, no interim special education services were provided during this time. Finally, on May 9, 2007, an initial IEP meeting was held at Gibbs Elementary School. The IEP meeting did not include the legally-mandated participants, including the special education teacher, the school social worker, and an individual knowledgeable about the placement options for T████. Among those IEP team members who did attend the meeting – including the special education coordinator and DCPS psychologist – no one was able to provide information on the special education program at Gibbs Elementary School – no one was able to provide information on refused to offer any placement other than Gibbs for T████ nor any other placement option. DCPS

Ultimately, T████ IEP – with its insufficient hours of specialized instruction, lack of a Behavior Intervention Plan, and inappropriately drafted IEP goals and objectives –cannot provide T████ with the Free and Appropriate Public Education to which he is legally entitled. In response to the parent's stated disagreement with Gibbs as the placement, and despite the DCPS psychologist's and team's recommendations, the special education coordinator explained to the parent that he had no authority to offer or approve a placement outside of Gibbs Elementary School. Further, DCPS provided only 15 hours/week of specialized instruction, leaving T████ in the regular education classroom where he has made little to no academic progress and ultimately, denying him the full-time special educational placement he requires. DCPS also failed to create and implement a Behavior Implementation Plan as part of T████ IEP in spite of Ms. Watson's request to do so and the agreement of the team that one was necessary for T████. Finally, the IEP goals and objectives on his IEP are inappropriate. According to Gibbs' special education coordinator, they were drafted prior to the meeting by the school's special education teacher, who had limited knowledge of T████ profile and needs and was not present at the IEP meeting. Strikingly, T████ – who was present at the IEP meeting – completed some of the drafted short-term objectives (such as writing the numbers 1-25) *during the meeting*. The special education coordinator simply removed these objectives from Terrik's IEP. Without the appropriate and legally-mandated IEP team members in attendance, and without sufficient discussion about T████ need for a full-time special education placement that can serve his learning and social/emotional needs, DCPS failed to create an appropriate IEP for T████.

T████ has continued to demonstrate his extensive special needs, warranting a full-time special education program and placement. T████ participated in the Extended School Year program at Miner Elementary School during summer 2007. The program's social worker documented in her report that T████ did not demonstrate progress on multiple articulated goals. She noted that T████ "was not on task nor did he participate in any classroom instruction assignments." She further noted that when T████ was unable to succeed in a classroom activity in which he demonstrated some effort, he "regressed quickly: Hiding under the table, angry." An ESY classroom aide reported at the conclusion of the summer program that T████ had made no progress and refused to do any of his academic work. The program's coordinator indicated to Ms. W████ that T████ requires a "full-time therapeutic setting."

In sum, DCPS inappropriately exited T████ from special education on August 4, 2005, abruptly and wrongfully terminating his full-time special education program and placing him into regular education. For the next two school years, T████ made little to no progress in his regular education classroom at Gibbs Elementary School. DCPS neither provided an appropriate setting nor appropriate special education services, preventing T████ from receiving educational benefit and creating a dangerous environment for T████ given his special needs. T████ has continued to fail academically and to demonstrate increasingly serious social/emotional behaviors at school. Even when DCPS returned

T▇▇ to special educa▇▇on at the parent's request on May 9, 2007, DCPS continued to fail to provide an appropriate educational placement and special education services for T▇▇ to receive educational benefit. T▇▇ need for a full-time special education placement was identified, as reflected in his IEP during the 2004-05 school year. He will continue to fail in his present placement, which provides an insufficient level of special education services and a setting in which he has made essentially no progress for the last two years.

DCPS is on notice of any and all actions taken by DCPS and/or to which DCPS is a party, including but not limited to meetings held regarding T▇▇ W▇▇ and any interventions taken by DCPS, after the filing of this due process complaint and prior to a due process hearing. Consequently, ▇▇▇▇▇▇▇, T▇▇ legal guardian, reserves the right to litigate new legal issues and present relevant evidence, in relation to those actions taken by DCPS that change and/or add relevant facts to this due process complaint, at the due process hearing that arises out of this complaint.

   2.    To the extent known to you at this time, how can this problem be resolved?

1) DCPS will place and fund T▇▇ at an appropriate, full-time non-public special education program – such as The Children's Guild – that can serve the needs of children with learning disabilities and social/emotional needs, with transportation services to be provided by DCPS. There is no DCPS program that is able to meet T▇▇ special needs.

2) DCPS will provide compensatory education services for the two years in which it failed to provide FAPE to T▇▇.

   3.    Issues presented:

**The central issue to be addressed is the past and continuing failure of DCPS to provide T▇▇ Watson with a Free and Appropriate Public Education. More specifically, the issues to be addressed include, but are not necessarily limited to the following:**

1) Whether DCPS inappropriately exited T▇▇ from special education on August 4, 2005.

2) Whether DCPS failed to timely identify, locate, and/or appropriately evaluate T▇▇ for special education eligibility.

3) Whether DCPS failed to create an appropriate Individualized Education Plan for T▇▇ to address his special education needs.

4) Whether DCPS failed to provide T▇▇ an appropriate educational placement to address his unique special needs.

5) Whether DCPS wrongfully excluded T▇▇ from class for more than ten days without conducting a manifestation meeting to determine whether the demonstrated behaviors are related to T▇▇ disability.

6) Whether DCPS failed to create and implement an appropriate and/or timely Behavior Intervention Plan for T▇▇.

7) Whether DCPS failed to include all necessary members of the MDT/IEP team in the IEP development process.

8) Whether DCPS has failed to convene and/or conduct appropriate and/or timely MDT/IEP meetings.

## H. Estimated amount of time needed for the hearing: 12 hours

Note: In the absence of a specified amount of time, the SHO schedules hearings in two hour blocks of time and will allocate two hours to conduct the hearing. Please indicate if you believe more than two hours will be needed.

## I. Accommodations and Assistance Needed:

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

Interpreter (please specify the type)_____
Special Communication (please describe the type)_____
Special Accommodations for Disability (please be specific)_____
Other_____

## J. Waiver of Procedural Safeguards (Optional):

☐ I (parent/guardian) waive receiving a copy of the procedural safeguards at this time. I understand that waiver of this right is optional and not a requirement for filing this Complaint.

## K. Requirement to Consider Compensatory Education:

If a hearing is held on a date that is past the date on which the Hearing Officer's Determination was required to be issued, there is a rebuttable presumption of harm and compensatory education must be an issue considered by the Hearing Officer during the hearing.

## L. Parent or Local Educational Agency Signature and Affirmation:

I affirm that the information provided on this form is true and correct.

_____
Signature of Parent or Guardian                              Date

_____
Signature of Representative of the Local Educational Agency      Date
(if hearing requested by a LEA)

## M. Signature of Attorney/ Legal Representative:

_____
Legal Representative / Advocate                              Date

Mail, fax or deliver this complaint notice to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
1150 5th Street, SE
Washington, DC 20003
Fax number: 202/698-3825

**EXHIBIT**

Gibbs
500 19th St. NE
724-4523

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## WASHINGTON, D.C.
### INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP Page 1 of

Additional Comments:

## I. IDENTIFICATION INFORMATION

Student Name: Last ▆▆▆▆    First ▆▆▆▆    MI

Student ID ▆▆▆▆    Soc. Sec. No.

Gender ☒ M ☐ F    Date of Birth    Age: 4    Grade

Address 1924 Rosedale St    NE
House No    Street Name    Quadrant    Apartment No
Washington    DC    2000
City    State    Zip Code

Ethnic Group African American

☐ Non-attending

Attending School NCC    Home School Gibbs

☒ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Parent ▆▆▆▆ #1 West

Address of (if different from student):
☐ Parent ☒ Guardian ☐ Surrogate

Telephone: Home 2/399-2576    Work 2/225-7109/2-225-7004
House No    Street Name    Quad    Apt No    City    State    Zip Code

## II. CURRENT INFORMATION

Date of IEP Meeting: 2/22/05
Date of Last IEP Meeting: 6/11/04
Date of Most Recent Eligibility Decision:

Purpose of IEP Conference:
☐ Initial IEP    ☒ Review of IEP
☐ Requested Eval.    ☐ 3yr ReEval.

Indicate Level of Standardized Assessment:

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
| ESY | TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | | | |
| Parent | | | | |
| Home | | | | |

To be completed by Office of Bilingual Education
English and Math Proficiency Assessment

Oral
Rdg / Written
Instrument
Date

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION |
|---|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr./Min | D/W/M. | | | # wks /mos |
| Special Instruction | | ✓ | | 30 hr | week | | 2/23/05 | 10 mos |
| | | | | | | | | |
| | | | | | | | | |
| TOTAL | | | | | | | | |

Hours Per Week

## V. Disability(ies)
Developmental Delays

☐ (Check if setting is general Ed )

Percent of time in Specialized Instruction and Related Services
☐ 0-20%    ☐ 21-60%    ☒ 61-100%
Percent of time NOT in a Regular Education Setting

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below

Monica Conners MACCC-SLP
Rochelle Sharps - Teacher
Shyllis Wickson - Consultant
Gregory Brochu LEA-PSYM

Monica Conners MACC-SLP
Rochelle Sharps
Shyllis W [illegible]
Gregory Brochu

I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights in reference to special education.

Parent / Guardian Signature    Date 2-22-05

District of Columbia Public Schools    07-02-2001    Division of Special Education

Student Name _____

Student ID Number 7108685   DOB 3/28

Managing School NCC

Attending School NCC

DCPS IEP
Page 2 of 4

## VII. Present Educational Performance Levels in Areas Affected by the Disability

**Academic Areas: (Evaluator)** Classroom Teacher/Rochelle Sharp

Math Strengths:
able to identify numbers 1-5
able to count 1-20

Impact of disability on educational performance in general education curriculum:
disability impacts on his ability to identify
numbers

Reading Strengths:
able to identify his first name

Impact of disability on educational performance in general education curriculum:
disability has impact on ability to write his
name

**Additional Comments:**

Score(s) When Available

Math Cal. _____

Math Rea. _____

See goal page: _____

Date: _____

Rdg. Com _____

Rdg. Basic _____

Written Ex. _____

See goal page: _____

Date: _____

**Communication (Speech & Language) (Evaluator)** Marla Conners MACCC SP Speech

Strengths:
Kiara is functioning within normal
receptive language & speech range. Acting limits, Riel
Impact of disability on educational performance in general education curriculum:
this impact. expressive language and articulation + fluency

Kiara is functioning within normal
limits. Re: Discontinue Speech Therapy.

Score(s) When Available

Exp Lang. _____ -IIC

Rec. Lang. WNC -IIC

Artic. NC as 2/08

Voice NC as 2/08

Fluency WNL

Exp Voc WNL

Rec. Voc _____

See goal page _____

Date: 2/8-9  Met goal
from

**Motor/health (Evaluator)**
Strengths:

N/I

Impact of disability on educational performance in general education curriculum:

Score(s) /Results
When Available

_____
_____
_____
_____

**Social Emotional Behavioral Areas: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

See goal page _____

Date _____

Score(s) When Available

_____
_____
_____

**Cognitive Adaptive Behavior: (Evaluator)**
Strengths:
able to do his chores given verbal prompts

Impact of disability on educational performance in general education curriculum:

See goal page: _____

Date: _____

Score(s) When Available

_____
_____
_____

**Prevocational Skills (Evaluator)**
Strengths:

N/I

Impact of disability on educational performance in general education curriculum:

See goal page _____

Date _____

Score(s) When Available

_____
_____

Student Name: _____

Student ID Number: _____     DOB _____     Managing School _____

Attending School: N C C

## VII. Present Educational Performance Levels In Areas Affected by the Disability

DCPS-IEP
Page 3 of 4

Academic Areas: (Evaluator) **Rochelle Sharps**

**Math Strengths:**
is able to count 1-10 independently

Impact of disability on educational performance in general education curriculum
deficits impact on ability to identify
numbers

**Reading Strengths:**
is able to identify familiar objects

Impact of disability on educational performance in general education curriculum
deficits impact on ability to match letters

Communication (Speech & Language) (Evaluator) **Monica Connors MA CCC-SLP**
**Strengths:**
Receptive and Expressive Language skills
are within normal limits of his age for a child

Impact of disability on educational performance in general education curriculum
Mild Articulation Disorder impacts his
ability to communicate effectively

Motor/Health (Evaluator)
**Strengths:**
Has good fine and gross motor skills

Impact of disability on educational performance in general education curriculum

Social Emotional Behavioral Areas: (Evaluator)
**Strengths:**
greets staff in the morning
plays with peers
Impact of disability on educational performance in general education curriculum
deficits impacts on ability to transition
without tantrums

Cognitive/Adaptive Behavior (Evaluator)
**Strengths:**
is able to complete 8-10 piece puzzle

Impact of disability on educational performance in general education curriculum
deficits impacts on ability to identify numbers
and letters

Prevocational Skills (Evaluator)
**Strengths:**

Impact of disability on educational performance in general education curriculum

**Additional Comments:**

Score(s) When Available
Math Cal.: _____
Math Rea.: _____
See goal page: _____
Date: _____

Rdg. Com.: _____
Rdg. Basic: _____
Written Ex.: _____
See goal page: _____
Date: _____

Score(s) When Available
Exp. Lang.: WNL
Rec. Lang.: WNL
Artic.: MILD
Voice: WNL
Fluency: Monitoring
Exp. Voc.: WNL
Rec. Voc.: WNL
See goal page: _____
Date: Eval. 5/18/04

Score(s) Results
When Available
_____
_____
_____

See goal page: _____
Date _____

Score(s) When Available
_____
_____

See goal page: _____
Date: _____

Score(s) When Available
_____
_____

See goal page: _____
Date _____

Score(s) When Available
_____

See goal page: _____
Date _____

Student Name _____

Student ID Number _____   DOB _____

Managing School   N C C

Attending School   N C C

DCPS - IEP
Page 3 of 4

**VIII. SPECIALIZED SERVICES**   Additional Comments:

Area addressed by goal: _Pre-Academic_   Goal Number: 1

ANNUAL GOAL: including mastery criteria

_____ will increase pre-Academic skills

Provider(s): Classroom Teacher

Consider audience, behavior, condition, degree and evaluation

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| (1) Will identify numbers 1-50 on 4/5 trials for 3 consecutive weeks | | quart |
| (2) Will identify letters (A-Z) on 4/5 trials for 3 consecutive weeks | | |
| (3) Will write his first and last name on 4/5 trials for 3 consecutive weeks | | |
| (4) | | |
| | | |
| | | |
| | | |

EVALUATION PROCEDURES

Student Name ▓▓▓▓▓▓▓

Student ID Number ▓▓▓▓▓▓

DOB ▓▓▓▓▓

Managing School

Attending School     NCC

DCPS - IEP
Page 3 of 4

**VIII. SPECIALIZED SERVICES**    Additional Comments:

Area addressed by goal:    Articulation    Goal Number:

**ANNUAL GOAL:** (including mastery criteria)

▓▓▓▓▓ will improve his articulation skills @ 90%

Provider(s)  Speech Language Pathologist

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Produce "s" and "z" in isolation + syllables @ 90% accuracy. | | |
| produce "s" and "z" in initial, medial, final position & words at the word level @ 90% | | |
| produce "s" and "z" in the initial, medial, final position & words at the phrase/sentence level @ 90% | | |
| produce "e" in isolation + syllables @ 90% | | |
| produce "e" in initial, medial, + final position @ words at word level @ 90% | | |
| Produce "e" in initial, medial, + final position & words at phrase/sentence level @ 90% | | |

**EVALUATION PROCEDURE(S)**

Portfolio   Log   Chart   Test   Documented Observation   Report   Other

District of Columbia Public Schools     07-22-2001     Division of Special Education

| Student Name | | | | | | |
|---|---|---|---|---|---|---|
| Student ID Number | | | DOB | Managing School | | |
| | | | | Attending School    NCC | | |

**VIII. SPECIALIZED SERVICES**    Additional Comments

DCPS IEP
Page 3 of 4

Area addressed by goal:    Cognitive

Goal Number

**ANNUAL GOAL** (including mastery criteria)

Will increase cognitive skills

Provider(s)

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1) Will identifying Numbers 1-10 with 80% accuracy | | |
| 2) Will writing letters A-Z with 80% accuracy | | |
| 3) Will trace letters A-Z with 80% accuracy | | |
| 4) Will trace numbers 1-10 with 80% accuracy | | |
| 5) Will match lower case letter to upper case letters with 80% accuracy | | |

**EVALUATION PROCEDURE'S**

District of Columbia Public Schools    07-23-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

| Student Name | | | | | |
|---|---|---|---|---|---|
| Student ID Number | | DOB | | Managing School | |
| | | | | Attending School | NCC |

DCPS - EP
Page 3 of 4

| VIII. SPECIALIZED SERVICES | Additional Comments. |
|---|---|

Area addressed by goal: **Social/Emotional**

Goal Number

**ANNUAL GOAL** (including mastery criteria.)

Will increase social and attending skills
80% of the time

Provider(s): **Teacher**

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1) Will attend to task and on a circle for 15 minutes on 4/5 days a week. | | Quarterly |
| 2) Will transition from play to work activity without tantrum on 4/5 trials for 3 consecutive days | | |

EVALUATION PROCEDURE(S)

District of Columbia Public Schools      07-02-2001      Division of Special Education      Addendum A      EP Page 3 of 4

Student Name

Student ID Number

DOB

Managing School

Attending School   MCC

DCPS - IEP
Page 3 of 4

## VIII. SPECIALIZED SERVICES

Additional Comments:

Area addressed by goal:

Goal Number: [

**ANNUAL GOAL:** (including mastery criteria)

Will increase Adaptive skills

Provider(s): Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| ① Will tie his shoes on 4/5 - trials given ① physical prompts ② Verbal prompts | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

## EVALUATION PROCEDURE(S)

Portfolio    Log    Chart    Test

Documented Observation    Report    Other

Student Name

Student ID Number

DOB

Managing School

Attending School: _NCC_

DCPS - IE...
Page 4 of 4

**Additional Comments:**

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
## SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in _regular education_?    Yes    No

Explanation for removal out of regular education classroom

## X. Supplementary Aids and Services
### Classroom Needs
(Do not name products or companies.)

| | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hrs Min | D/W /M. | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for _testing_:

| Timing/Scheduling | None needed |
|---|---|
| Setting | |
| Presentation | |
| Response | |
| Equipment | |

## XI. STATE AND DISTRICT ASSESSMENTS

Level I  Tested with non-disabled peers under standard conditions without accommodations

Level III  Describe non-uniform conditions (or level II) Tested under non-standard conditions with permissible accommodations

Level V  Portfolio

Level II  Describe accommodations for level II Tested under standard conditions with accommodations

Level IV  Describe the alternative assessment

## XII. Areas Requiring Specialized Instruction and Related Services:

Reading

Mathematics

Written Expression

Other

None

Physical/Sensory

Social Emotional

Physical Development

Transition

Vocational

Independent Living

Speech/Language

Modifications:

Language Arts/English

Social Sciences

Biological & Physical Sciences

Fine Arts

Apply annual goals, objectives and/or modifications to address barriers in each area checked above

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| | | |
| | | |
| | | |

Modifications / Accommodations to address the harmful effects

Location for Services  _NCC_

District of Columbia Public Schools     07-02-2001     Division of Special Education     Attachment A     SE Page 4 of 4

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
WASHINGTON, D.C.
SPECIAL EDUCATION SERVICES

**COMPLETION OF SERVICES**
FORM

EXHIBIT

STUDENT: ▓▓▓▓ W▓▓▓▓

ADDRESS: ▓▓▓▓▓▓▓

Street #    Street Name    Quadrant   Apartment #

*Washington DC 20006*

City,    State,    Zip Code

TELEPHONE: ▓▓▓▓▓▓

ID # ▓▓▓▓▓▓   DOB: ▓▓▓▓    GRADE:

Date: *8-4-05*

SCHOOL:
ADDRESS: *NCC - SE*
*3400 MLK Jr. Ave. SE.*
*Washington DC 20032*
TELEPHONE: *202-279-4900*

A multidisciplinary team meeting is required in order to determine whether a student has completed special education and related services identified on the IEP, including the consideration of information from the evaluation (for which you provided consent) in the area(s) to be considered. Complete the sections below identifying the services.

## COMPLETION OF SERVICE(S) (Check all services that are being considered)

| | SERVICE | GOALS/OBJ. COMP. | | RESULTS OF EVALUATION | DATE |
|---|---|---|---|---|---|
| 1. | Speech-Language Therapy | Y | N | | |
| 2. | Orientation & Mobility | Y | N | | |
| 3. | Occupational Therapy | Y | N | | |
| 4. | Physical Therapy | Y | N | | |
| 5. | Counseling | Y | N | | |
| 6. | Adaptive PE | Y | N | | |
| 7. | Audiology | Y | N | | |
| 8. | Transportation | Y | N | | |
| 9. | Other (specify): ____ | Y | N | | |
| (10.) | Specialized Instruction: | (Y) | | | |
| | | Y | N | *goals met & completed* | *8/4/05* |
| | | Y | N | | |
| | | Y | N | | |

## Reason for Completion of Services:

Graduated    ✓ Completed Services    Aged Out    Transferred Out of District    Dropped Out

✓ Other   *No longer elegible for special education services. To be exited.*

[✓] I agree with the proposed termination of the special education and related service(s) identified above.

[✓] I have been provided with my procedural safeguards and questions answered. I understand that my consent is voluntary, and that I have the right to appeal the decision of the multidisciplinary team (MDT)

Signature: *▓▓▓▓▓*       Date: *8/4/05*

(Student if age of majority has been reached and the transfer of rights has been officially documented)

EXHIBIT

▶ APPENDIX J

**District of Columbia**
**Student Support Team (SST)**
**Initial Meeting Report**

▆▆ W▆▆▆▆▆            ▆▆▆▆▆            3/7/06

**SST Members Present at Meeting**

Martha Ford            Reading Resource
Maureen McDonough Berard  Math Resource
Juanita Stevens        teacher
Nellie Lyons           Social Worker

**Meeting Notes**

Please record information regarding the following: SST team members, include questions asked, decisions, determination etc.

T▆▆▆ strengths - Creativity, artistic, likes to use his hands
He is an auditory + tactile learner
responsive to learning when not in the group, (comes w/) an IEP

most critical - violence toward classmates
oppositional play, hiding, running in hall, not participating
in group activities, ignores verbal directions

That T▆▆▆ will be able to be in the classroom and
participate in a manner that is safe for both him and his
classmates.

T▆▆▆ loves to receive "Happy Faces" for behavior rewards. He responds
to Art Activities, Recess, his after care worker
and give suggestions. look @ IEP  Have Ms. Johnson meet w/ people
Ms Lyons will see him on a daily basis

contact grandmother for medical release forms, Ms Terry
Per IEP  Ms Johnson to meet w/ T▆▆▆  continue (daily w/ Ms Lyons)
CFSA - social worker to be contacted



**APPENDIX C** (continued)

**District of Columbia**

# Student Support Team (SST) Request Form
### Teacher Version

| Student Name | Date |
|---|---|
| ~~Tennile Watson~~ | 1/24/06 |

## About the Student

| Reading Level | Math Level | Medication/Other Relevant Health Data |
|---|---|---|
| | | |

### Student Strengths (Check ✔ all that apply)

| | | |
|---|---|---|
| ☐ Positive attitude | ☐ High expectations for self | ☐ Handles conflict well |
| ☐ Hard worker | ☐ Works well independently | ☐ Athletic |
| ☐ Trustworthy | ☐ Good sense of humor | ☐ Takes pride in appearance |
| ☐ Works well in groups | ☐ Cooperates | ☐ Musically talented |
| ☐ Respectful of authority | ☐ Responsible | ☑ Artistically inclined |
| ☐ Motivated | ☐ Transitions easily | ☐ Other: ___ |
| ☐ Focused/goal directed | ☑ Creative | ☐ Other: ___ |
| ☐ Organized | ☐ Possesses leadership qualities | works independantly on the computer |

### Academic Concerns (Check ✔ all that apply)

| | | |
|---|---|---|
| ☐ Grades declining | ☐ Poor writing skill | ☐ Does not work well independently |
| ☐ Disorganized | ☐ Poor reading skill | ☑ Does not work well with others |
| ☐ Slow rate of work | ☐ Poor math skills | ☐ Other ___ |
| ☑ Incomplete assignments | ☐ Poor study skills | |
| ☑ Does not follow directions | ☐ Gives up easily | |
| ☐ Low rate of retention | | |

### Behavioral Concerns (Check ✔ all that apply)

| | | |
|---|---|---|
| ☑ Verbally disruptive | ☐ Bullies others | ☑ Attention seeking behavior |
| ☑ Physically disruptive | ☑ Destroys property | ☐ Steals/cheats/lies |
| ☑ Physically aggressive | ☑ Easily distracted | ☑ Avoided by peers |
| ☐ Verbally aggressive | ☐ Argumentative/defiant | ☑ Easily frustrated |
| ☐ Sexually aggressive | ☐ Shy/withdrawn | ☐ Truant/tardy |
| ☐ Victim of bullying | ☐ Hostile when criticized | ☐ Other: ___ |

### Personal Concerns (Check ✔ all that apply)

| | | |
|---|---|---|
| ☐ Body odor | ☐ Difficulty moving/ uncoordinated | ☐ Burn marks |
| ☐ Poor hygiene | ☐ Complains of nausea/ vomiting | ☐ Smells of smoke or alcohol |
| ☐ Overweight/underweight | | ☐ Possession of drugs, alcohol, or paraphernalia |
| ☐ Appears sickly | ☐ Bloodshot eyes | ☐ Other: ___ |
| ☐ Sleeps in class/lethargic | ☐ Evidence of self mutilation | |
| ☐ Agitated/nervous | | |

# District of Columbia
# Student Support Team (SST) Request Form
## Teacher Version

**Student Name**

Date: 1/14/06

## Classroom Interventions Previously Tried

What strategies have been used to address the student concern prior to the SST request?
(Check ✔ all that apply)

| Student Strengths | How Long Tried? | Results? |
|---|---|---|
| ✔ Instructional accommodations Specify: | | _____ has good auditory skills. He is able to process and retain information when he is manipulating materials. Written work is limited |
| ☐ Modified curriculum/demands | | |
| ☐ Materials modification Specify: | | |
| ☐ Alternative materials | | |
| ✔ Small group instruction | | |
| ✔ Tutoring | | Refuses to stay with group |
| ✔ Assistive technology | | Too disruptive |
| ✔ Daily guided reading | | _____ works well with the computer |
| ☐ Voyager extended day reading | | Limited feedback to literature discussions |
| ☐ Failure free reading | | |
| ☐ English as second language     EPS | | |
| ✔ Daily behavior chart | | |
| ✔ Contract | | |
| ✔ Reward positive behavior | 1 week | stop conforming after 3 day |
| ✔ Assigned seating | | Responsive to happy face incentive |
| ☐ Rearrange physical setting | | Does not stay |
| ☐ Peer mediation | | |
| ✔ Time out | | goes under furniture w/o |
| ✔ Problem-solving conference | | ignores directions to communicate well and understands the impact of his behavior |
| ☐ Restitution | | |
| ✔ Parent conference | | |
| ✔ Attendance monitoring | | not effective in preventing behavior changes |



## District of Columbia
# Student Support Team (SST) Request Form
### Teacher Version

APPENDIX G

Student Name
T_____ W_____

Date: 1/24/06

## Contact Information

Teacher Name
L. Stevens

Person Making the Request (if different)

| Grade | Room | Other (Grade) | Language spoken at Home |
|-------|------|--------------|------------------------|
| K | 126 | | |

Parent Guardian or Surrogate Parent Name

Parent Telephone (H, W, Mobile)

## Learning and/or Behavioral Concerns (Describe)

T_____ consistently demonstrates disruptive behaviors that interferes with the learning process. On a daily basis he demonstrates the following:
· verbal outburst      · runs in the hallway
· aggressive play      · takes materials without
· oppositional behaviors    permission
· difficulty staying in   · refuses to clean-up
  a defined space         after working with
· limited work production   materials
  crawls on the floor    · ignores verbal directions
  climbs on the furniture  · refuses to participate
                            in group activities (over)

## Where the Problem Occurs (Check ✓ all that apply)

☑ Recreation
☑ School grounds
☑ Cafeteria
☐ Gym

☑ Hallway
☐ Bus
☐ Home
☐ Other



**District of Columbia**
# Student Support Team (SST) Request Form
**Teacher Version**

Student Name _____    Date _____

## Contact Information

Teacher Name _____    Person Making the Request (if different) _____

Grade ____  Room ____  Other Teachers _____    Language Spoken at Home _____

Parent Contacted Prior to SST Request (Parent Version)
☐ Yes
☐ No

Parent Telephone (H, W, Mobile) _____

## Learning and/or Behavioral Concerns (Describe)

Other Concerns
- abandoment issues
- retreats under furniture after being corrected
- demonstrates acts of violence during dramatic play
- leaves classroom
- discussion of sexual activities
- previous IEP for speech + language
- demonstrates periods of being in a trance like state

## Where the Problem Occurs (check ✔ all that apply)

☑ Classroom
☑ School grounds
☐ Cafeteria
☐ Gym
☐ Hallway
☐ Bus
☐ Home
☐ Other _____

T⬛ W⬛
Meeting to Discuss Eligibility
MDT Notes – March 22, 2007
Gibbs Elementary School



The MDT meeting for T⬛ W⬛ was held at Gibbs Elementary on March 22, 2007, at 2:30 pm. The meeting was attended by Dorothy Watson, Aaron Fischer (Ms. Watson's attorney, Children's Law Center), Tracy Goodman (Children's Law Center), Michael Wilson (Children's Law Center), Ms. Verdell (General Education Teacher), Mr. Andrew Johnson (Psychologist), and Aaron Terry (Special Education Coordinator).

Introductions were made, and Mr. Johnson reviewed his evaluation of T⬛ with the team. He highlighted that T⬛ overall cognitive skills are average for children his age, but that his academic achievement levels are below his age level and in fact in the Pre-K range. On the tests for cognitive ability, T⬛ was at a lower level than his peers in associative thinking, his ability to define specific words, and his comprehension and analytical skills. However, he is in the average range in the area of processing speed. T⬛ timed sub-test in coding, on which he did well, indicates that T⬛ has strong motivational skills.

Mr. Johnson explained that one aspect of T⬛ cognitive ability that is very low is his ability to hold information in his short-term memory. Another area in which he is very below average is in his ability to work with and think about math problems. He is not able to do well on academic subjects dealing with arithmetic. He will fall further behind his peers as he gets older if this area is not addressed properly.

On his achievement tests, T⬛ overall standard score on math subjects was 78, which has a grade equivalent of kindergarten. T⬛ is in the first grade. Mr. Johnson explained that T⬛ has problems with math reasoning, understanding graphs, as well as the ability to count money and tell time. He had a standard score of 71 on the math reading test, which represents a grade equivalent of Pre-K. T⬛ also struggled with sounding out the letters and words on the decoding test. He performed very poorly, at the kindergarten level, rather than at a first grade and five month-level.

Mr. Johnson noted that all of T⬛ academic achievement levels were below the level expected for a child of his cognitive level. His cognitive ability was average, with an overall IQ of 99. Mr. T⬛ noted that Terrik is expected to do first grade work, as the evaluation was conducted mid-way through his first grade year. Mr. Johnson agreed, explaining that T⬛ is significantly behind in several areas.

Ms. Watson suggested that T⬛ needs to be in a special school to address these problems. Mr. Johnson responded that the team is getting to that issue. Returning to his evaluation, he noted that T⬛ scores were unusually low in the areas of numerical operations, math reasoning, and spelling. Ms. Watson stated her concern about whether T⬛ knows how to put words into a sentence. She recognizes that he has problems adding, too. If you push him too hard, she explained, he complains that he has a headache, that something's wrong with him,

1

or that he is too tired to do the work. The team, including Ms. Verdell, agreed that T███ gets frustrated with his work and tries to find ways to get out of doing it.

Mr. Johnson walked the team through the comprehension pieces of his evaluation of T███, which included listening and reading comprehension. He shared the protocol and T███ answers with the team. In this area, listening comprehension was a relative strength. Ms. Verdell confirmed that listening comprehension is an area in which T███ seems to perform at an average level in her classroom.

Mr. Johnson turned to projective tests he conducted. On the Drawing test, Mr. Johnson found indications that T███ might have organic issues that are affecting how he functions. His unusually low scores on the WISC are indicative of this type of issue as well. T███ does demonstrate a tremendous amount of attention issues. He meets much of the criteria for ADHD, and may also be coping with a kind of mood disorder. Mr. Johnson explained that T███ did not meet all the criteria for the mood disorder, as he more closely fits an ADHD diagnosis. Mr. Johnson also did not make an ADHD diagnosis, based on the fact that T███ did not demonstrate the ADHD criteria all settings. For example, when T███ was taken out of his regular class and put in a smaller setting, he did significantly better at being calm, focused, and with controlling impulsivity. This finding contributes to his recommendation that T███ be moved to another educational setting and placement.

Mr. Johnson explained that T███ is a student who needs much more support in both academic skills and social/emotional issues. T███ may be coping with a kind of neurological impairment. Mr. Johnson recommended that T███ receive alternative methods of teaching to address his reading and arithmetic deficits. The teaching method should ensure that T███ uses all three of his senses – sight, feel (manipulating things), and hearing – simultaneously. T███ should also participate in counseling that addresses both his behavior and his cognitive thinking skills. He should discuss with the counselor how he is coping with problems so that the school and MDT can better address those issues with him.

Mr. Fischer asked whether the concern about the organic neurological issue warrants further testing. Mr. Johnson explained that such further testing would not yield results that are useful.

The team agreed that T███ is eligible for and in need of special education. Mr. Johnson emphasized that, given T███ weaknesses, the team should ensure that T███ gets the help he needs. Ms. Watson echoed that statement, expressing that T███ needs a lot of help at this point. The team then turned to the issue of classification. The team agreed that the LD classification was appropriate based on T███ classroom performance and the evaluation's findings. The team agreed that T███ has not been in a setting were he has been given the opportunity to learn and make academic progress. As a result, his behavioral problems may be a consequence of his frustrations in the classroom based on his learning disabilities. Appropriately addressing his learning disabilities should effect a positive impact on his behavior and social challenges. For these reasons, the team agreed that an ED classification is improper, finding LD appropriate at this time.

T█████ W██████
Eligibility Meeting Notes 3/22/2007

Ms. Watson noted that T█████ doctor recently increased his ADHD medication dosage. Ms. Verdell stated that, for the past two weeks, T████ has been unusually quiet in her classroom. He still is having some behavioral problems, but it is possible that the medications are helping. Ms. Verdell also noted that Ms. Honeyman, another teacher, sometimes takes T████ out of the classroom, helping him write his name, copy numbers, and do other basic tasks. He does the work for her, but will not to the same work in Ms. Verdell's class. Ms. Honeyman takes students in very small groups, and this seems to be beneficial for T█████.

The team determined that an LD classification was appropriate. T████ requires a supportive environment that uses multi-sensory learning. The social/emotional problems will be addressed through counseling and other specialized services to be determined at the next meeting. Mr. Johnson and Mr. Terry agree that this is a proper course of action at this point.

Ms. Verdell expressed her concerns about T█████ academic progress this year, and the potential need to retain him in first grade. Mr. Terry said that these concerns would be addressed through the IEP; for example, work will be modified for him, and a summer school program can help him. Mr. Johnson added that, with an appropriate level of special education services, T████ will probably not be doing second grade work, as teachers will be helping him in each area based on his strengths and needs.

The team reviewed the fact that T████ used to be in full-time special education, classified with a Developmental Delay. The removal from special education was inappropriate. Mr. Terry noted that there are no records showing that he achieved his IEP goals prior to the termination of special education services. Mr. Terry also stated that T████ should receive a full-time special education placement. Mr. Johnson feels that T██████ IEP must include one hour of counseling per week, adding that T████ would probably benefit from two hours of counseling per week.

Mr. Fischer asked whether any interim services can be provided starting as soon as possible. Ms. Lyons, the school counselor is out for one month, making it difficult to provide T████ with individual counseling services at his present placement. At the next meeting, Mr. Weismiller, the special ed coordinator, and Rosa Lee, the school counselor for special ed, will attend as well in order to develop the IEP. The next meeting is set for Friday, April 13, at 2 pm. Mr. Terry will send a draft IEP to Ms. Watson and Mr. Fischer before then.

3

EXHIBIT



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

Office of Special Education
825 North Capitol Street, N.E. 6ᵗʰ Floor
Washington, D.C. 20002-4232
202-442-4800 fax 202-442-5518
www.k12.dc.us

## Psycho-Educational Evaluation

**Name:**
**D.O.B.:**                           **Gender:** Male
**C.A.:** 6-10                        **School:** Gibbs Elementary
**Teacher:** Ms. Verdel               **Grade:** 1st
**ID #:**                             **Phone:** (202) 399-2516
                                       **D.O.E.:** (WISC-IV 02/09/07)
                                                   (WIAT-II 01/31/07)

**Examiner:** Andrew Johnson, M.A., L.P.C.
**Title:** Psychologist
**Lic/Certification:** Standard Certification

### REASON FOR REFERRAL

Although ▓▓▓▓ has been evaluated in the past, he continues to experience behavioral difficulties at school that are impacting his learning. Caregivers would like an updated evaluation for him so we can have a more useful picture of his current functioning, and use the information gleaned from the evaluation to help determine the best educational program for him.

### BACKGROUND INFORMATION

Records indicate that ▓▓▓▓ attended the National Children's Center (NCC) in Southeast Washington, D.C. where he was apparently participating in a program for children with developmental delays. Related August 2005 Multi-Disciplinary Team (MDT) meeting notes indicate that ▓▓▓▓ was no longer eligible for Special Education services, and would no longer receive the related specialized instruction.

MDT meeting notes refer to a parent report that ▓▓▓▓ that ▓▓▓▓ "... is referred to for breaks, which is a sign that his A" ... and that "... his academic, cognitive, and adaptive skills fall in the normal range". Team reports that ▓▓▓▓ should have been exited from services and that he needed to be "... has exited no children (as we are who are not disabled)".

2

There is a Children's National Medical Center "CNC Treatment Record" that indicates that ██████ was brought to the hospital for the flu, and some behavioral and developmental issues. The behavioral issues had to do with discipline, difficulty keeping still, and some incidents where ██████ was tying things around his neck, and animal's necks.

There is also an Individualized Educational Program (IEP) document for ██████ that indicates that the date of his last IEP meeting was 2/22/05 when ██████ was 4 years old. His primary disability classification is listed as "Developmental Delays" and he was supposed to receive 30 hours per week of specialized instruction. The services were supposed to continue for ten (10) months.

There is a MDT Student Evaluation Plan (SEP) document indicating that the MDT met on 1/30/07, and there is a "Confidential Report of Psycho educational reevaluation" that was completed on 3/11/05 when ██████ was 4 years 11 months, attending NCC School. The results of that evaluation indicates that ██████ cognitive abilities are average, and the test used to measure his pre-academic skills showed that those pre academic skills related to his math skills, reading skills, and writing skills, were in the average range.

## OBSERVATIONS

██████ presented as a cooperative, pleasant student who had a positive attitude toward the testing/interview situation. He is right handed and holds a pencil relatively well when he writes and/or draws. Both fine and gross motor skills appear to be adequate. During testing, ██████ seemed to address all of the test items as well as he could, and did not seem to spend too much time on things he was sure he did not know.

## TEST ADMINISTERED

Mental Status Exam (MSE)
Wechsler Intelligence Scale for
Children-Fourth Edition (WISC-IV)
Wechsler Individual Achievement Test (WIAT-II)
Bender Visual Motor Gestalt Test (BVMGT)
Draw A Person Test (DAP)
Behavior Assessment System for Children-2nd Edition (BASC-2)

3

## TEST RESULTS

The **Mental Status Exam (MSE)** was used to assess some attributes that the more formal tests do not measure, and to help provide support for, evidence of, and to help validate Terrik's mental state. These measures are also helpful in determining starting points for the more formal tests.

The initial indications of this test were that ██████'s ability to focus on and attend to information is relatively good, and that his abstract reasoning and math skills are functioning, but this may be an area where he is having some difficulty.

██████ scored 50% on the short term memory exercise. Most 4 year old children do better on this. Initial indications were also that his word recognition skills may be as high as the 1st grade level, and his information repertoire may be lacking.

██████ completed the sentence "I am happiest when ...", saying "I am a costume chicken with pink mushroom on top". He completed the sentence "I am sad sometimes when ...", saying "When I can't watch TV or a play". And, he completed the sentence "Sometimes I get bothered by ...", saying "Mean bullies".

At the time ██████'s outlook for the future could have been considered positive from one perspective in that he said that he would like to be a "computerist" when he grows up, "because I like computers".

The **Wechsler Intelligence Scale for Children (WISC-IV)** is used to assess the general thinking and reasoning skills of children aged 6 years to 16 years. This test has five main scores: Verbal Comprehension score, Perceptual Reasoning score, Working Memory score, Processing Speed score, and Full Scale score.

The Verbal Comprehension score indicates how well ██████ did on tasks that required him to listen to questions and give spoken answers to the questions. These tasks evaluate his skills in understanding verbal information, thinking and reasoning with words, and expressing thoughts in words.

4

The Perceptual Reasoning score indicates how well he did on tasks that required him to examine and think about things such as designs and pictures, and to solve problems without using words. These tasks evaluate his skills in solving nonverbal problems, sometimes using eye-hand coordination, and working quickly and efficiently with visual information.

The Working Memory score indicates how well he did on tasks requiring him to learn and retain information in memory while utilizing the learned information to complete a task. These tasks measure his skills in attention, concentration, and mental reasoning. This skill is closely related to learning and achievement.

The Processing Speed score indicates how well ▅▅▅▅ did on tasks requiring him to quickly scan symbols and make judgments about them. These tasks measure his skills in speed of mental problem solving, attention, and eye-hand coordination. This skill may be important to his development in reading, and ability to think quickly in general.

The Full Scale score is derived from the combination of the Verbal Comprehension, Perceptual Reasoning, Working Memory, and Processing Speed scores. The WISC-IV Full Scale score is one way to view ▅▅▅▅ overall thinking and reasoning skills.

## Composite Scores Summary

| Scale | Sum of Scaled Scores | Composite Score | Percentile Rank | 95% Confidence Interval | Qualitative Description |
|---|---|---|---|---|---|
| Verbal Comprehension (VCI) | 23 | 87 | 19 | 81-95 | Low Average |
| Perceptual Reasoning (PRI) | 30 | 100 | 50 | 92-108 | Average |
| Working Memory (WMI) | 18 | 94 | 34 | 87-102 | Average |
| Processing Speed (PSI) | 27 | 121 | 92 | 110-127 | Superior |
| Full Scale (FSIQ) | 98 | 99 | 47 | 94-104 | Average |

This test shows that ▅▅▅▅ general cognitive ability is within the Average range of intellectual functioning, as measured by his Full Scale IQ score. His overall thinking and reasoning abilities exceed those of approximately 47% of children his age (FSIQ = 99). He performed much better on nonverbal than on verbal reasoning tasks. Such differences in performance, however, are not especially unusual among children in general.

5

████ verbal reasoning abilities as measured by the Verbal Comprehension Index are in the Low Average range and above those of only 19% of his peers (VCI = 87). The Verbal Comprehension Index is designed to measure verbal reasoning and concept formation. ████ performed comparably on the verbal subtest contributing to the VCI, suggesting that these verbal cognitive abilities are similarly developed.

### Verbal Comprehension Subtest Score Summary (Total Raw Score to Scaled Score Conversions)

| Subtest | Raw Score | Scaled Score | Percentile Rank |
|---|---|---|---|
| Similarities | 8 | 8 | 25 |
| Vocabulary | 16 | 8 | 25 |
| Comprehension | 9 | 7 | 16 |
| (Information) | 10 | 9 | 37 |
| (Word Reasoning) | 10 | 11 | 63 |

████ nonverbal reasoning abilities as measured by the Perceptual Reasoning Index are in the Average range and above those of approximately 50% of his peers (PRI = 100). The Perceptual Reasoning Index is designed to measure fluid reasoning in the perceptual domain with tasks that assess nonverbal concept formation, visual perception and organization, simultaneous processing, visual-motor coordination, learning, and the ability to separate figure and ground in visual stimuli.

████ performance on the perceptual reasoning subtests contributing to the PRI is somewhat variable, although the magnitude of this difference in performance is not unusual among children his age. Examination of ████ performance on individual subtests provides additional information regarding his specific nonverbal abilities.

### Perceptual Reasoning Subtest Score Summary (Total Raw Score to Scaled Score Conversions)

| Subtests | Raw Score | Scaled Score | Percentile Rank |
|---|---|---|---|
| Block Design | 8 | 8 | 25 |
| Picture Concepts | 11 | 10 | 50 |
| Matrix Reasoning | 15 | 12 | 75 |
| (Picture Completion) | 16 | 10 | 50 |

6

_____ ability to sustain attention, concentrate, and keep mental control is in the Average range. He performed better than approximately 34% of his agemates on that area (Working Memory Index = 94)

_____ performed much better on the Digit Span subtest (Scaled Score = 12) than on the Letter-Number Sequencing subtest (Scaled Score + 6). A direct assessment of his short-term auditory memory, performance on the letter-Number Sequencing subtest requires attention, concentration, and mental control and can be influenced by the ability to correctly sequence information.

Mental control is the ability to attend to and hold information in short-term memory while performing some operation or manipulation with it and then to correctly produce the transformed information. _____ difficulty in recalling long spans of digits backward is evidence of weak mental control. This weakness may impede the processing of complex information for him and slow new learning. Solving mathematical problems without pencil and paper also requires mental control.

### Working Memory Subtest Score Summary (Total Raw Score to Scaled Score Conversions)

| Subtests | Raw Score | Scaled Score | Percentile Rank |
|---|---|---|---|
| Digit Span | 13 | 12 | 75 |
| Letter-Number Sequencing | 5 | 6 | 9 |
| (Arithmetic) | 7 | 6 | 9 |

_____ ability in processing simple or routine visual material without making errors is in the Superior range when compared to his peers. He performed better than approximately 92% of his peers on the processing speed tasks (Processing Speed Index = 121).

_____ performance on the subtests that comprise the PSI is quite variable; therefore, the PSI score should be interpreted with caution. He performed much better on Coding (Scaled Score = 16), which is more demanding of fine-motor skills, short-term memory, and learning ability, than on Symbol Search (Scaled Score = 11), which is more demanding of attention to detail and mental control.

Processing visual material quickly is an ability that _____ performs well as compared to his verbal and nonverbal reasoning ability. Processing speed is an indication of the rapidity with which _____ can mentally process simple or routine information without making errors. Good speed of simple information processing may free cognitive resources for the processing of more complex information, and ease new learning.

### Processing Speed Subtest Scores Summary (Total Raw Score to Scaled Score Conversions)

| Subtests | Raw Score | Scaled Score | Percentile Rank |
|---|---|---|---|
| Coding (CD) | 60 | 16 | 98 |
| Symbol Search (SS) | 24 | 11 | 63 |

### WISC-IV Subtest Scaled Score Profile



Vertical bar represents the Standard Error of Measurement.

| Subtest | Score | SEM | Subtest | Score | SEM |
|---|---|---|---|---|---|
| Similarities (SI) | 8 | 1.27 | Picture Completion (PCm) | 10 | 1.2 |
| Vocabulary (VC) | 9 | 1.27 | Digit Span (DS) | 12 | 1.3 |
| Comprehension (CO) | 7 | 1.34 | Letter-Number Sequencing (LN) | 8 | 1.36 |
| Information (IN) | 9 | 1.24 | Arithmetic (AR) | 6 | 1.3 |
| Word Reasoning (WR) | | 1.37 | Coding (CD) | 16 | 1.2 |
| Block Design (BD) | 8 | 1.24 | Symbol Search (SS) | 11 | 1.7 |
| Picture Concepts (PCn) | 10 | 1.2 | | | |
| Matrix Reasoning (MR) | 12 | 0.99 | | | |

8

The Wechsler Individual Achievement Test (WIAT (I)) is an academic test that assesses the student's current level of functioning in specific academic areas. It indicates the age and grade level of the student, indicates specific areas of strengths and weakness, and helps provide some insight into how the student's academic achievement relates to the student's cognitive abilities.

**Summary of WIAT-II Subtest Scores**

| SUBTESTS* | RAW | STD | 90% INTERVAL | PR | NCE | S9 | AGE EQU | GRADE EQU |
|---|---|---|---|---|---|---|---|---|
| Word Reading | 42 | 87 | 84- 90 | 19 | 32 | 3 | 8.0 | K 8 |
| Reading Comprehension | 25** | 65 | 60- 70 | 1 | 1 | 1 | 6.0 | <1.0 |
| Pseudoword Decoding | 0 | 86 | 82- 90 | 18 | 30 | 3 | 6.0 | PreK5.0 |
| Numerical Operations | 6 | 78 | 67- 89 | 7 | 19 | 2 | 4.0 | K.2 |
| Math Reasoning | 9 | 71 | 63- 79 | 3 | 9 | 1 | 5.4 | PreK5.2 |
| Spelling | 6 | 80 | 73- 87 | 9 | 22 | 2 | 4.8 | K 5 |
| Listening Comprehension | 17 | 100 | 88- 112 | 50 | 50 | 5 | 6.8 | 1.2 |

* WIAT-II age-based normative information was used in the calculation of subtest and composite scores.
** Represents Reading Comprehension weighted raw score.

⬛⬛⬛⬛ WIAT-II results show that he has a diverse set of skills on different aspect of reading. ⬛⬛⬛ Reading Composite score is 77. Related tasks required him to name alphabet letters, identify and generate letter sounds and rhyming words, and match and read a series of printed words, match words with pictures, read sentences, and correctly apply phonetic decoding rules when reading a series of nonsense words. Generally speaking, his skills are currently in the "Borderline" range. Approximately 94% of children his age outperform him in this area.

In overall mathematics skills ⬛⬛⬛⬛ also performed in the Borderline range, as indicated by his Mathematics Composite standard score (72). His skills in this area are not at the level of approximately 97% of other students his age.

9

[name] performance on tasks that required him to identify and write numbers, count, and solve basic addition and subtraction problems (Numerical Operations standard score = 78) is comparable to his performance on tasks that required him to understand basic number concepts, including unit and geometric measurement, and solve one-step word problems (Math Reasoning standard score = 71).

[name] performed in the Average range on tasks that required him to identify the picture that best represents an orally presented descriptor or generate a word that matches the picture as indicated by his Listening Comprehension standard score (100). His skills in this area exceed that of approximately 50% of students his age.

On tasks that required him to write one's name and print letters that correspond to sounds and words [name] performed in the Low Average range. He achieved a Spelling standard score of 80. His skills in this area are not at the level of approximately 91% of other students his age.

So, [name] is having the most difficulty with reading and math. His related skills are extremely low. His being able to solve a word or stated problem requiring single or multiple steps related to time money, measurement, as in the "Borderline" range, as are his skills in solving written math problems.

[name] spelling skills, and his skill in sounding out words, and in reading words should be considered "low Average". When [name] is required to listen to a word or sentence and match what he hears to a picture, or when he is required to look at a picture and orally respond in order to demonstrate understanding, [name] skills were measured as being in the average range.

10



WIAT-II Graph Of Subtest Standard Scores

| Subtest | SS | SEM | Subtest | SS | SEM |
|---|---|---|---|---|---|
| Word Reading (WR) | 87 | 1 | Spelling (SP) | 30 | 3 |
| Reading Comprehension (RC) | 65 | 2 | | | |
| Pseudoword Decoding (PD) | 86 | 2 | Listening Comprehension (LC) | 00 | 6 |
| Numerical Operations (NO) | 78 | 5 | | | |
| Math Reasoning (MR) | 71 | 3 | | | |

The **Bender Visual Motor Gestalt Test (BVMGT)** is used to help determine if the student's combined capability of adequately seeing and reproducing a variety of designs is functioning. It can help the examiner see if the student's perceptual/motor skills are adequate, and the examiner can make an inference as to whether or not the ability of the student to write is adequate.

█████ made eleven (11) errors on this test that could be scored. There were 3 Distortion errors, 3 Rotation errors, 2 Integration errors, a Disproportion error, and a Shape Lost error. Perseveration error, and a Shape Lost error. Eleven errors has a corresponding age equivalent score of between 5 years 4 months, to 5 years 5 months. The inference is that those visual motor skills that are related to █████ ability to write, may be somewhat delayed, but not significantly so.

The BVMGT is also used as a neurological instrument to help determine the possibility of neurological difficulties, reading and learning disturbances, organic problems, and some other personality characteristics. The most prominent indicators in █████ drawings are related to the possibility that he is coping with an organic problem. There are only two indicators pointing to his possibly coping with some emotional issues though, and ordinarily would not be mentioned. They are mentioned because of his observed behavior in the classroom, and related indicators seen in another projective test, i.e., the DAP.

The **Draw A Person Test (DAP)** is another projective test that can give the examiner insight into some personality characteristics that could be important for the student's good social/emotional functioning. There are not a lot of indicators in this drawing pointing to any particular pathological condition. There are a few indicators though, that point to the possibility that █████ is coping with some emotional issues that may need to be addressed.

The **Behavior Assessment System for Children-2nd Edition (BASC-2)** is a rating scale, rather than a test, that helps provide insight into possible hyperactivity, attention, emotional problems, and insight into adaptive and mal adaptive behaviors. The child's behavior is scrutinized from as many as three perspectives sometimes, Self, Teacher, and Parent. Information gleaned from this assessment is based on the respondent's, i.e., the parent, teacher, and/or child's rating of the person who is being assessed.

12

████████ teacher was the rater for this assessment. The reader should note that scores in the "Clinically Significant" range suggest a high level of maladjustment, while "Scores in the 'At Risk' range may identify a significant problem that may not be severe enough to require formal treatment or may identify the potential of developing a problem that needs careful monitoring."

████████ rating on the BASC-2 is such that most of his behavioral symptoms fall into either the "Clinically Significant", or the "At Risk" range of functioning. The ratings for ████ tended to be relatively high compared to the general population for a number of diagnostic considerations, including an Attention-Deficit/Hyperactivity Disorder, Conduct Disorder, Dysthymic (Mood) Disorder, and a Depressive Disorder.

The most frequent "Almost always" responses on this assessment are associated with the criteria for an Attention-Deficit/Hyperactivity Disorder where ████ almost always has trouble staying seated, bothers other children when they are working, is overly active, acts without thinking, and is easily distracted for example. The second most frequent "Almost always" responses are associated with the criteria for a "Dysthymic Disorder", where ████ almost always has a short attention span, loses his temper too easily, is easily upset, easily distracted, and is almost always negative about things.

## Summary and Conclusions

████████ reasoning, thinking, and problem solving abilities should be considered average. He has a WISC-4 Full Scale IQ score of 99. His IQ score, i.e. a representation of his intellectual functioning is misleading though. The IQ score is usually accepted as a reasonable predictor of the child's potential for educational success. Because of the unique pattern of scores presented in ████ cognitive test profile, it is more important to look at ████ four different cognitive clusters, and look at his individual subtest scores.

For example, ████████ overall Processing Speed (PSI) score is in the "Superior" range with a corresponding standard score on the related test of 121. When he is required to accurately copy information in class, and when he is following letters, and words across a page, test results indicate that ████ is able to do that much better than most other children his age.

13

However, when ▮▮▮▮▮ has to properly interpret real life situations, understand what he reads, hold information in short-term memory, manipulate that information and then effectively use the information, and adequately deal with arithmetic problems, most children ▮▮▮▮▮ age outperform him in these areas. So, ▮▮▮▮▮ has some specific cognitive attributes in areas that are most important to facilitate his learning in school, that are considerably lower than most other children his age.

From an academic perspective, all of ▮▮▮▮▮ measured academic achievement levels are below the level expected for him, given his overall average cognitive functioning, as indicated by his WISC 4 FSIQ score of 99. This is not terribly surprising, given his unique cognitive attributes. When comparing his scores on the WIAT-II to the levels of achievement predicted for a student with his general cognitive ability, ▮▮▮▮▮ displays difficulty with achievement in reading and in mathematics. He scored much lower on both the Reading Composite (actual score =77) and the Mathematics Composite (actual score = 72) than expected for a child with his general cognitive ability. An on predicted scores were 99 for both reading and math. His

The difference between the predicted scores and actual scores are significant and highly unusual, and indicate specific weakness in tasks that required him to match words with pictures, read sentences and paragraphs and answer questions about what was read, and correctly apply phonemic decoding rules. The difference between the predicted scores and actual scores also indicate specific weakness in tasks that required him to understand basic number concepts, including unit and geometric measurement, and solve one-step word problems, and a weakness on tasks that require him to identify and write numbers, count, and solve basic addition and subtraction problems. These differences help **support** ▮▮▮▮▮ **qualifying for** the District of Columbia Public School's **Special Education** Program **as a "Learning Disabled" student.**

Records indicate that ▮▮▮▮▮ has experienced a number of challenges related to behavioral issues in school. This is an area that needs considerably more attention than ▮▮▮ is getting. Projective test indicators and an analysis/results of "▮▮▮▮▮ Behavior Assessment Scale for Children (BASC)" support this notion. Some of ▮▮▮▮▮ behaviors are interfering with his learning process.

14

# Recommendations:

1. "█████ should participate in the school's **Special Education** program where he can get the added attention and alternative methods of teaching/learning put towards better developing some of his cognitive abilities, and specific aspects of his reading and arithmetic abilities.

   A. His ability to properly interpret real life situations, his ability to deal with arithmetic problems, and his better developing an aspect of his "Mental Control" should be specifically targeted for improvement.

   B. His academic levels in reading and mathematics should be specifically targeted for improvement.

2. In a **counseling** situation, have T█████ discuss with the counselor:

   A. Problems or social situations presented in pictures filmstrips, books or games. If the counselor does not have his or her own instruments to address this, use **What Do You Think?** by Learning Works (a subsidiary of Creative Teaching Press) at P.O. Box 2723, Huntington Beach, CA 92647-0723, or at www.thelearningworks.com, 1-800-444-4287.

   B. Coping strategies for dealing with stressful situations. He should ultimately be able to relate two (2) different strategies for coping with each of two specific situations that produce a stressful situation for him.

3. For at least an hour per day, everyday, T█████ teacher should review with him basic **addition and subtraction facts** using visual prompts and manipulatives.

15

4. For at least **an hour per day, everyday,** have ▮▮▮▮▮ practice the sounds that **groups of two and three letters of** the alphabet make.

   A. Have ▮▮▮▮▮ both **write and recite** the **"Alphabet principal"** so that he is able to explain the principle to someone else, using two examples that he "Makes up".

   B. For at least twenty (20) **minutes per day,** everyday, have ▮▮▮▮▮ use **3 dimensional letters of the alphabet** where he is required to **say what sounds** groups of two and three letters of the alphabet that have been put together in random order **make.**

   C. It is **imperative** that he **feels, sees,** and **says** the sounds of the groups of letters, **simultaneously.** Please ask the school psychologist to demonstrate how this should be done.

5. For approximately twenty (20) minutes per day, everyday, have ▮▮▮▮▮ practice the following exercises:

   A. Repeat three numbers in correct sequence from the smallest to the largest after hearing a random series of numbers spoken that are between one and ten (e.g. 8, 2, 5; correct answer: 2, 5, 8).

   B. Repeat three letters in correct alphabetical sequence after hearing a set of three letters spoken that are not in alphabetical sequence (e.g., a, i, d; correct answer: a, d, i).

   C. Note that the level of difficulty of these exercises can be adjusted, by increasing the number of letters or numbers, using both letters and numbers together, and/or by limiting the amount of time to complete the exercise.

16

6. Caregivers should consider a different physical placement for ▮▮▮▮▮, i.e., either a different classroom where the opportunities for distraction are much less, or a different school where the opportunities for distraction are much less.

\* The reader should note that recommendations usually address a weakness, and people would generally rather do things that are easier for them, rather than harder for them. So, the nature of most of the recommendations here is that this is something that will be beneficial to Terrik, but is also likely to be difficult for Terrik, and therefore more difficult to have Terrik follow the recommendations.

The reader should also note that Terrik's rate of academic progress is directly correlated with how closely he follows these recommendations.

Andrew Johnson
School Psychologist
February 28, 2007
Phone: (202) 581-5333 Hm.
E-Mail: andrewjohnson73@hotmail.com

## DECLARATION OF ELLIE GILES IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Ellie Giles declares and says as follows:

1. My name is Ellie Giles.

2. I am an educational consultant in North Potomac, Maryland.

3. My educational background includes: B.A., Elementary Education – Florida State University; M.S., Special Education – Johns Hopkins University, second year Doctoral student, Educational Leadership – University of Phoenix.

4. I have worked with families and children with special needs for over 30 years.

5. I have worked in direct service to students, in terms of teaching, from kindergarten – 12th grade.

6. I currently hold the Maryland State Advance Professional Certification in teaching and administration for general education grades K-12, Special Education grades K-12, and Administration grades K-12. I meet all requirements for highly qualified status under NCLB.

7. I have been in practice as an educational consultant for the last fifteen (15) years.

8. Being an educational consultant means that I work with families who have children with special needs, and I look at the specific child's diagnostics, program and placement; I look at and interpret evaluations and attend IEP meetings and make recommendations for appropriate placement.

9. I have testified at administrative due process hearings ten (10) times and have been qualified as an expert in the field of special education at each of those hearings.

10. I read and reviewed the educational records pertaining to T.W. The documents I reviewed include: (a) IEP with IEP meeting notes, 5/9/07; (b) Completion of Services Form, with MDT meeting notes, 8/4/05; (c) IEP, with IEP meeting notes, 2/22/05; (d) IEP, 6/11/04; (e) First grade report card, Gibbs ES, SY 2006-2007; (f) Teacher Comments, Gibbs ES SY 2006-2007; (g) Kindergarten Progress Report, Gibbs ES, SY 2005-2006; (h) Teacher Comments, Gibbs ES, SY 2005-2006; (i) Student Support Team, Initial Meeting Report, 3/7/06; (j) Student Support Team Request Form, 1/24/06; (k) Psycho-Educational Evaluation, Andrew Johnson, DCPS psychologist, 2/28/07; (l) NICHQ Vanderbilt Assessment Follow-up, 10/6/06; (m) NICHQ Vanderbilt Assessment Follow-up, 12/19/05; (n) Psycho-Educational Evaluation, DCPS Psychologist, 3/18/05; (o) Speech Therapy

Functioning Review, DCPS, 2/22/05; (p) Speech and Language Evaluation, DCPS, 2/18/04; and (q) Occupational Therapy Evaluation, National Children's Center, 2/05/04.

11. I visited Gibbs Elementary School on September 5, 2007, in order to observe T.W. in the classroom and in his present educational program.

12. On September 5, 2007, I spoke with Aaron Terry, the special education coordinator at Gibbs Elementary School, about T.W.'s special needs as well as the special education program provided at Gibbs Elementary School.

13. Mr. Terry told me that Gibbs Elementary School is unable to provide an appropriate special education placement and program for T.W., given T.W.'s learning disabilities as well as emotional and behavioral issues.

14. During my visit to Gibbs Elementary School on September 5, 2007, I was unable to observe T.W. in the classroom due to the incident in which he had started a fire in the school restroom earlier that day.

15. Based on my review of T.W.'s educational records, my discussions with the special education coordinator at Gibbs Elementary School and other staff members, and my own expertise and experience in special education, T.W. requires a full-time special education placement that provides a small, self-contained learning environment with a low student-to-teacher ratio, a behavior intervention plan, counseling and support services, specialized instruction, and a program with an effective behavioral management component.

16. Additionally, T.W. requires individualized instructional strategies across content areas, which include multi-modality instruction, scaffold skills, opportunities for guided practice, and self-monitoring strategies to promote application and generalization of acquired skills.

17. T.W. also requires individualized opportunities for social processing in order to problem-solve social challenges and to acquire and apply self-regulating strategies.

18. Based on my review of T.W.'s educational records, my discussions with the special education coordinator at Gibbs Elementary School and other staff members, and my own expertise and experience in special education, I believe that T.W.'s IEP is inappropriate. It provides an insufficient number of hours of specialized instruction and related services, an inappropriate classroom setting, and a lack of a behavior intervention plan and behavioral management supports.

19. T.W.'s IEP states that the General Education Classroom cannot meet his service needs, as it will effect "continued school failure," and that the Combination General Education Classroom/Resource Room will not meet his service needs, as

it will effect "continued conflicts with peers." The IEP documents that a "full time therapeutic setting" is necessary to meet T.W.'s needs. Based on this appropriate assessment, T.W.'s special education program – including the number of special education hours – is inappropriate.

20. Based on T.W.'s special needs, as recognized on his IEP, T.W. cannot be appropriately placed in the part-time special education placement that DCPS has provided. Therefore, the IEP does not provide sufficient hours of specialized instruction and related services.

21. Furthermore, T.W.'s IEP fails to identify and document T.W.'s significant academic and social skill deficits.

22. T.W. requires an educational environment that assures physical safety through constant and structured supervision, emotional supports through daily and ongoing counseling and crisis support when needed, and individualized instructional strategies that monitors curriculum scope, pace, and sequence.

23. In addition, T.W. requires a structured and predictable school environment, including frequent motor breaks and attention enhancing strategies, where expectations are constant and consistent for all students across all learning environments in order to minimize distractions and transitions resulting in reduced learning frustrations and obstacles.

24. On September 5, 2007, I visited The Children's Guild at 5702 Sargent Road Chillum, MD 20782.

25. During my visit to The Children's Guild, I observed the classroom environment in which T.W. would be placed if he attended the school, the process by which students are transitioned, and the academic and behavioral supports provided by the school; I also spoke with staff at The Children's Guild about the special education program and its appropriateness for T.W.

26. The program at The Children's Guild is very comprehensive, infusing behavioral supports into the academic program in a natural and dignified manner.

27. The second grade class that T.W. would attend if placed at The Children's Guild includes six (6) students, supported by one teacher, one counselor, and two paraprofessionals who provide frequent individualized instruction.

28. The classroom at The Children's Guild utilizes technology to teach and to motivate students. Each student had an assigned computer and individualized tasks to be completed on the computer, which monitors ongoing progress and regulates the learning pace to accommodate the student's needs. This structure will allow T.W. to learn and make educational progress.

29. Classroom expectations at The Children's Guild are clear and positively impact students' behaviors. A positive behavior management system was consistently implemented across all school settings. In compliance with NCLB, the school implements researched-based reading and math programs and exposes students to grade level content as well as IEP-specific instruction.

30. Based on my review of T.W.'s educational records, my discussions with the special education coordinator at Gibbs Elementary School and other staff members, and my own expertise and experience in special education, I believe that Gibbs Elementary School cannot provide an appropriate special education program and placement for T.W. In my expert opinion, The Children's Guild can provide this environment as well as these necessary educational services.

31. Based on my review of T.W.'s educational records, my discussions with the special education coordinator at Gibbs Elementary School and other staff members, and my own expertise and experience in special education, I believe that DCPS cannot provide a safe educational setting to T.W. in which T.W. can make educational progress.

32. Based on my review of T.W.'s educational records, my discussions with the special education coordinator at Gibbs Elementary School and other staff members, and my own expertise and experience in special education, I believe that T.W. would receive educational benefit in a full-time placement like The Children's Guild.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on 9/17/07

Ellie Giles

# The CHILDREN'S LAW CENTER

**EXHIBIT**
P-11

---

## THE HEALTH ACCESS PROJECT AT CHILDREN'S NATIONAL MEDICAL CENTER

February 13, 2007

Kimberly Ridley Davis, Principal
Gibbs Elementary School
500 19th Street, NE
Washington, DC 20002

*Sent by fax to (202) 724-3996*

Re: T█████ W██████, DOB ████████

Dear Ms. Ridley Davis:

I am writing in regards to Gibbs Elementary School's decision to suspend T████ W████ for ten school days, a suspension that began on Monday, February 12, 2007. I am the attorney for T███'s great-grandmother and legal guardian, Ms. Dorothy Watson. The suspension of T███ is categorically inappropriate and a violation of the Individuals with Disabilities Education Improvement Act (IDEIA). As you know, no disciplinary action may be effectuated unless it follows the procedures and protections set forth in Section 2505 of the D.C. Municipal Regulations. With this ten-day suspension, these procedures and protections were not afforded to T███, a child who clearly has a disability. Accordingly, this suspension is invalid and T███ should be permitted to return to school immediately.

T███ has been demonstrating special needs since he entered Gibbs. For over one and a half years, in spite of alarming teacher reports and extensive SST notes, T███ was never provided with evaluations, an IEP, and appropriate special education services. Instead, Gibbs has utilized a policy to send █████ home for the day on several occasions when he has acted out in an excessive or uncontrollable way. The school has taken this course of action on several occasions during the 2006-07 school year. There is no question that each of these occurrences must be considered an "exclusion from class," or a suspension from school.

Ms. Watson and I attended an MDT meeting at Gibbs on January 30, 2007, in order to begin the special education process, to identify what evaluations are necessary for T████, and to discuss the development of a Behavioral Intervention Plan. DCPS psychologist Andrew Johnson is presently completing evaluations, while T███'s teacher and counselor are executing a Functional Behavioral Assessment for T███. At the meeting, our recommendation to implement an interim plan for T███ was rejected by the team, which instead assured Ms. Watson that we would reconvene once the assessments were completed. Since then, T███ has continued to struggle in the classroom, and no services or interventions have begun. This fact is especially troubling when one considers that T███ was referred for special education well over one year ago.

---

Local and federal regulations make clear that this present suspension is improper and illegal. Federal law imposes strict requirements for children with disabilities who are removed from school for more than ten school days in the same school year; Gibbs has not met these requirements. The law provides that, subsequent to those ten days, a child with a disability must receive educational services consistent with his IEP and special needs. Under D.C. law, an "exclusion from class ... for more than ten (10) school days" shall trigger the requirement for a manifestation review by the MDT. 5 D.C.R. 2510(1). If the team determines that the child's conduct is a manifestation of the child's disability, DCPS "must take immediate steps to remedy those deficiencies." 34 C.F.R. § 300.530(e)(2).

*Because T████ has been sent home on multiple occasions during the present school year in response to his conduct at school, this ten-day suspension will place T████ well over the threshold of ten "exclusions from class" under federal and local law. Thus, the IDEIA protections for a child with disabilities facing disciplinary action apply. Further, given that the behavior at issue with this excessive disciplinary action is the exact behavior that has indicated T████'s need for special education services, there is no doubt that such behavior is a manifestation of T████'s disability.*

While T████ has not yet been found eligible for special education and related services, DCPS has had knowledge the he is a child with a disability for a period of time prior to the behavior that precipitated this disciplinary action.* See 5 D.C.R. 2510(20). Under the regulations, DCPS had sufficient knowledge of T████'s disability based on: 1) teachers' and other school personnel's ongoing concern – both written and oral – about T████'s performance and unambiguous special needs; 2) the apparent need for special education services as demonstrated by T████'s ongoing academic struggles and behavioral problems; and 3) our written expressions of concern about T████ and written requests for evaluations and the implementation of special education services, dating back to December 21, 2006. See 5 D.C.R. 2510(21). Although without the completed evaluations from DCPS psychologist Mr. Johnson we do not have a full understanding of T████'s specific disability, classification, and needs, there is no question in the minds of Ms. Watson, T████'s teachers, Gibbs' staff, and the school's special education coordinator, that T████ has substantial special needs. As a result, the above protections under the federal and local laws and regulations apply in the present case.

**Accordingly, it is absolutely essential that the ten-day suspension of T████ be revoked immediately so that T████ may return to school tomorrow morning, Wednesday, February 14.**

I do recognize the challenges of the present situation and appreciate your efforts on this matter. It is essential that we proceed in such a way that appropriately addresses T████'s needs, which have gone unmet for far too long. Please do not hesitate to contact me, at (202) 467-4900, ext. 525, with any questions or concerns.

Sincerely,

Aaron J. Fischer
Staff Attorney

Cc:    -Aaron Terry, Gibbs Elementary Special Education Coordinator
       -William Wilhoyte, Assistant Superintendent, DCPS

**EXHIBIT**
P-12

DISTRIC    F COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D C
INDIVIDUALIZED EDUCATIONAL PROGRAM

## 1 IDENTIFICATION INFORMATION

Student Name Last W█████     First T█████     MI

Student ID 9108085     Soc Sec No     Age 7     Grade 1st

Gender ☒M ☐F  Date of Birth ████     Ethnic Group Black

Address ████     House No    treet Name     ████ ████

☐ Non-attending     Washington     City     D C     20002
     Quadrant  Apartment #     State    Zip code

Attending School Gibbs Elementary     Home School Gibbs Elementary

☒Elem ☐Mid/JHS ☐SHS ☐CWS /

Parent Ms █████ W█████ (Great - Grandmother)

Address (if different from student)     ☒ Parent  ☐ Guardian  ☐ Surrogate

House No Street Name     City     State    Zip code

Telephone Home (█████)    Work

## 11 CURRENT INFORMATION

Date of IEP Meeting 5/09/2007
Date of Last IEP Meeting     N/A
Date of Most Recent Eligibility Decision

Purpose of IEP Conference
☒ Initial IEP     ☐ Review of IEP
☐ Requested Eval     ☐ 3yr Re-Eval

Indicate Level or Standardized Assessment
III

ADDENDA TO BE ATTACHED AS NEEDED!
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTA ON |
| ESY | TRANSITION |

Additional Comments

## III LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | | | | |
| Parent | English | English | English | Native Lang | Oral |
| Home | English | English | English | Native Lang | Rdg Written |
| | English | English | English | Native Lang | Instrument |
| | | | | | Date |

## IV SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd SpEd Total | FREQUENCY Hr Min DW/M | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks/mos |
|---|---|---|---|---|---|
| Specialized Instruction | 5   15   15 | Hrs    W | Special Education Teacher | 5/10/2007 | 10  months |
| Psychological Services | 1    1 | Hrs    W | Psychologist/Social Worker | 5/10/2007 | 10  months |

TOTAL    10 Hours Per Week

## V Disability(ies)

Specific Learning Disability

☐ (Check if setting is general Ed )

Percent of time in Specialized Instruction and Related Services
☐ 0-20%  ☒ 21-60%  ☐ 61-100%

Percent of time NOT in a Regular Education Setting  49%

## VI IEP TEAM (Participants in the development of the IEP)

Ms D█████ W█████ (Guardian) D█████ W█████

Ms K Davis Principal

Mr R Weismiller, Sp Ed Teacher

Ms Verdell Grade 1 Teacher

Ms Lee Social Worker

Print and sign your name below

Mr A Johnson, School Psych

Mr Aaron Terry, SEC _____

Michael Wil█████ _____

_____

/ AGREE with the contents of this IEP I have had an opportunity to be involved in the development of this IEP I have received a copy of this
IEP and consent to the implementation of the services in this IEP I have received a copy of the procedural safeguards and parent rights
pertaining to special education.
    Parent/Guardian Signature

Date

Student Name    W▊▊▊▊

Student ID Number 9108685

T▊▊▊

DOB ▊▊▊▊

Home School    Gibbs Elementary

Attending School    Gibbs Elementary

DCPS  FP
Page 2 of 4

## VII  Present Educational Performance Levels in Areas Affected by the Disability

**Academic Areas: (Evaluator)** Andrew Johnson, MA, LPC/Psych.

Additional Comments ☐

**Math Strengths**

| | | |
|---|---|---|
| Using whole numbers to describe quantities. Writing numbers to correspond with rote counting | | |

Impact of disability on educational performance in general education curriculum

Will make learning more difficult.

**Reading Strengths-**

Recognizes some letters of the alphabet and a few sight words.

Impact of disability on educational performance in general education curriculum-

Will make learning more difficult.

**Communication (Speech & Language) (Evaluator)**
Strengths-

Impact of disability on educational performance in general education curriculum

**Motor/Health (Evaluator)**
Strengths

Impact of disability on educational performance in general education curriculum

**Social Emotional Behavioral Areas: (Evaluator)** Andrew Johnson, MA, LPC Psych
Strengths

Is sometimes cooperative and calm.

Impact of disability on educational performance in general education curriculum.

Will make learning more difficult.

**Cognitive/Adaptive Behavior: (Evaluator)** Andrew Johnson, MA, LPC/Psych.
Strengths

Some aspects of his processing speed is superior to most everyone else his age.

Impact of disability on educational performance in general education curriculum.

Will make learning more difficult.

**Prevocational Skills  (Evaluator)**
Strengths

Impact of disability on educational performance in general education curriculum.

### Score(s) When Available

| | | |
|---|---|---|
| Math Cal | GE | K2 |
| Math Rea | GE | PK |
| See goal page | 4 | |
| Date | 01/31/2007 | |
| Rdg Com | GE | 10 |
| Rdg Basic | GE | K8 |
| Written Ex | NA | NA |
| See goal page | 2 | |
| Date | 1/31/2007 | |

### Score(s) When Available

| | |
|---|---|
| Exp Lang | |
| Rec-Lang. | |
| Artic | |
| Voice | |
| Fluency | |
| Exp Voc | |
| Rec Voc | |
| See goal page | |
| Date | |

### Score(s) /Results When Available

See goal page

Date

### Score(s) When Available

NA

See goal page    1

Date    1/31/2007

### Score(s) When Available

| | |
|---|---|
| VCI | 878 |
| PRI | 100 |
| FSIQ | 89 |

See goal page

Date

### Score(s) When Available

See goal page

Date

Student Name  W██████

Student ID Number ) ██████

T██████

DOB ██████

HomeSchool  Gibbs Elementary

Attending School  Gibbs Elementary

DCPS - IEP
Page 3 of 4

## VIII. SPECIALIZED SERVICES  ☐ Additional Comments ☐

Area addressed by goal  Social Emotional

Goal Number   1

**ANNUAL GOAL** (including mastery criteria )

I██████ will demonstrate gowth in social emotional functioning, as evidenced by mastery of the short term objectives by 80%

Provider(s) Social Worker Psychologist

Consider audience, behavior, condition, degree and evaluation

| SHORT TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| T██████ will take risks in situations that are socially challenging (ie. presentation in front of the class, etc.) | | Monthly |
| T██████ will demonstrate improved self-image as evidenced by increased participation in school activities, positive interaction with others and increased personal responsibility for behavior in 8 out of 10 opportunities | | Monthly |
| T██████ will distinguish between appropriate and inappropriate behaviors with minimal assistance from adult authority as measured in 8 out of 10 opportunities | | Monthly |
| T██████ will identify personal strengths and weakness when prompted by therapist in 8 out of 10 opportunities | | Monthly |
| T██████ will communicate personal feelings and perceptions of self in relation to to others with minimal prompting and assistance from the therapist in 8 out of 10 opportunities | | Monthly |
| T██████ will accurately describe social situations and demonstrate appropriate responses to these situations with minimal assistance from the therapist in 8 out of 10 opportunities | | Monthly |

## EVALUATION PROCEDURE(S)

☐ Portfolio  ☒ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☐ Other

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

Student Name  W_____ T_____
Student ID Number _____    DOB _____    HomeSchool  Gibbs Elementary
Attending School  Gibbs Elementary

DCPS - IEP
Page 3 of 4

| VIII SPECIALIZED SERVICES | Additional Comments ☐ |

Goal Number : [ 2

Area addressed by goal  Academics - Reading/Language Arts

**ANNUAL GOAL** (including mastery criteria )

T_____ will demonstrate improvement in reading skills by mastering the short term objectives as measured by formal and informal testing with 80% accuracy as measured within a grading period.

Provider(s) Special Education Teacher, General Education Teacher and Parent

Consider audience, behavior, condition, degree and evaluation

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| T_____ will recognize and recite the letters of the alphabet individually in 4 out of 5 attempts with 80% accuracy | | Monthly |
| T_____ will recognize basic vowel sounds to decode basic sight words in 4 out of 5 attempts with 80% accuracy | | Monthly |
| T_____ will listen to a short story and write one sentence and or draw a picture about the story in 4 out of 5 attempts within a grading period. | | Monthly |
| T_____ will use pictures to help recognize basic words (i.e. dog, cat, mop, etc.) within a grading period. | | Monthly |
| Given multisensory activities on the student's instructional level, T_____ will read and share thirty (30) books with pictures or book equivalents within a year | | Monthly |
| T_____ will use the writing process (prewriting, drafting, revising, and publishing) to convey meaning with 80% accuracy | | Monthly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

Student Name  W████

Student ID Number ████████  F████  DOB ████████  HomeSchool  Gibbs Elementary

Attending School  Gibbs Elementary

DCPS - IEP
Page 3 of 4

VIII  SPECIALIZED SERVICES    Additional Comments ☐

Area addressed by goal  Academics - Mathematics    Goal Number  4

**ANNUAL GOAL  (including mastery criteria )**

F████ will demonstrate improvement in basic mathematic skills by mastering short term objectives by formal and informal testing with 80% accuracy

**Provider(s)** Special Education Teacher, General Education Teacher and Parent

Consider audience, behavior, condition, degree and evaluation

**SHORT TERM OBJECTIVES (include mastery criteria or benchmarks)**

| Short Term Objective | Date Mastered | Evaluation Schedule |
|---|---|---|
| T████ will complete simple one digit addition and subtraction of numbers from 1 to 10 without regrouping with 80% accuracy within a grading period | | Monthly |
| ████ will use whole numbers to describe quantities with 80% accuracy | | Monthly |
| T████ will create and solve simple addition and subtraction problems both written and oral using whole numbers with 80% accuracy | | Monthly |
| T████ will solve basic math problems involving money both numerically and written forms with 80% accuracy | | Monthly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

Student Name  W█████
Student ID Number █████████        T█████
                                    DOB █████████

Managing School  Gibbs Elementary
Attending School  Gibbs Elementary

DCPS - IEP
Page 4 of 4

Additional Comments: ☐

## IX LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
### SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education?  ☐ Yes ☒ No

Explanation for removal out of regular education classroom

Student requires low student to teacher ratio student is significantly below grade level requires intensive or individualized instruction

## X  Supplementary Aids and Services
### Classroom Needs
(Do not name products or companies )

| | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr / Min | DM/M | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing    ☐ None needed

Timing/Scheduling  Untimed Breaks, Extended Time
Setting  Preferential seating reduced minimal distraction. Cooling off period
Presentation  Read directions/test to student/ verbal rec. of instruction
Response  Orally
Equipment  Calculator Manipulatives and Times Table Chart

## XI STATE AND DISTRICT ASSESSMENTS

☐ Level I Tested with non-disabled peers under standard conditions without accommodations.

☒ Level III (Describe non-uniform conditions for level III)
Tested under non-standard conditions with permissible accommodations

☐ Level V Portfolio

☐ Level II (Describe accommodations for level II)
Tested under standard conditions with special accommodations

☐ Level IV (Describe the alternative assessment)

## XII  Areas Requiring Specialized Instruction and Related Services

☒ Reading
☒ Mathematics
☒ Written Expression
☐ Other
☐ None

☐ Physical/Sensory
☒ Social Emotional
☐ Physical Development

☐ Transition
☐ Vocational
☐ Independent Living
☐ Speech/Language

Modifications:
☒ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above

## XIII  PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| General Education Classroom | Reject will not meet needs for service | Continued school failure |
| Combination Gen. Ed./ Resource Room | Reject will not meet needs for service | Continued Conflicts with Peers |
| Out of General Education Setting | Accept will meet needs for service | Full Time Therapeutic Setting. |

Modification(s) Accommodation (s) to address the harmful effects

Specific scheduling to accomodate for related services, Psychological services

Location for Services [                    ]

District of Columbia Public Schools        07-02-2001        Division of Special Education        Appendix - A        IEP Page 4 of 4

CURRENT LEVEL OF SERVICE (continued)

Gibbs ES
5/9/2007

Principal
Mr. Terry

Ms. Kimberly Davis

Special Education Coordinator
Mr. Terry

Mr. Terry
W

Ms. D    W

7    Grade    1st

Ms. C. Helton

(202)

Washington, DC  20002

X

X

Combination Reg. Ed./ Sp. Ed. Classroom Setting

JUSTIFICATION FOR SETTING CONSIDERATION
(Submit IA/MDT Documentation)
SUPPORTIVE DATA/DOCUMENTATION

ACCOMMODATIONS, MODIFICATIONS                    DATA REQUIRED

1) Extended Time – Response and Presentation

2) Time – Extension Presentation

3) Multiple Test Session - Equipment

MDT Initial IEP – 5/9/2007

Specific Meeting Place

# CURRENT SETTING CONSIDERATIONS

SERVICE PROVIDER

X

X

X

DIRECTIONS

LEVEL OF NEED
X    Moderate

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**MEETING NOTES**

MDT

T___ Wa___

SCHOOL   Gibbs ES

5/09/07

PARTICIPANTS (Sign Name)

P___ W___
Aaron Tang
Aaron Fischer
Andrew Johnson
Tracy Goodman
Michael Wilson

Cedric I___
M___ Z___

Inc Reg
SEC
Parent's Atty.
Psychologist
The Childrens Law Center
The Children's Law Center

An MDT Intial IEP Follow Up Meeting was held on T___ today. Everyone introduced themselves. Mr. Wesmille, Sp. Ed. Teacher was not available at the meting, however, he reviewed the drafted academic goals with the team.

Mr. Johnson – School Psychologist – Reviewed the Strengths and Weaknesses on T___ for page 2 of his IEP. Based n the evaluations and the Team collaborative decision T___ will receive 1 hour of Social Work Psych. Counseling per week. Specialized Instruction – He will receive 15 hours of Special Education Services or 49% of the time, not in Gen. Ed His Level of Assessment will be Level III.

Ms. Verdell, Grade 1 Teacher - Stated that she has seen some improvement with his behavior He also is completing some of his homework. Ms. Verdell also stated that she did not get the impression that T___ could not do the academic portion, but it was his behavior that was the problem

The FBA will have to be completed at another meeting, since we do not have the worksheets returned to us.

The team discussed its concern of the setting in which T___ would receive spec. ed. instruction. Ms. Verdell said that T___ should be outside of her classroom and in a smaller setting - where he can receive individualized attention. No one at the meeting knows the amount of time T___ would receive inclusion vs. pull-out. The psychologist's recommendations state that T___ should be in a different educational setting. the team agrees that T___ is unable to receive appropriate instruction - in his academic subject in the regular ed classroom T___ requires sufficient time - essentially all specialized instruction time - entirely outside the regular ed setting. Gibbs Elementary provides spec ed instruct___ ___

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE: _____

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE: Initial IEP

Page 2 of 2 (4C

NAME: T███ W█████

SCHOOL  Gibbs          DATE  5/9/0t

Mr. Weismiller joined the meeting very briefly. He has 19-26 students in his spec ed class all day. There is no teacher's aide in the class. Mr. Johnson and the team agree that this is an inappropriate setting for T█████ given the recommendation for a smaller educational setting.

A. F

**EXHIBIT**
P-13

# VERIFICATION OF SERVICE

### Due July 19, 2007 (ESY)
### Due July 26, 2007 (Comp. Ed)

| Student | ▓▓▓▓▓▓ | ▓▓▓▓▓ | DOB | ▓▓▓▓▓ | | |
|---------|--------|-------|-----|-------|---|---|
| Summer School | ▓▓▓▓ ES | | Home School | ▓▓▓▓▓ | Grade | / |

Check one only: _____ Compensatory Education     ✓ Extended School Year

## Please attached the below listed items to this form.

_____ Compensatory Education Plan  and/or     ✓ Extended School Year Addendum

✓ Final Report Card

## COMPLETE FOR RENDERED SERVICES

All special education teachers and related service providers are to use the same VOS form per student.  Attach additional pages if necessary.  Use a separate form if a student is receiving both compensatory services and extended school year services.

| PROVIDER | SERVICE | TOTAL HOURS | DATE |
|----------|---------|-------------|------|
| E Hunt | Goal/Emotional | 4 | 7/19/07 |
| | | | |
| | | | |
| | | | |
| | | | |

Verification by Summer School Administrators

_____        07/20/07
Signature                              Date

### Documentation to Verify Services

Attach the regular report card for students with a disability (SWAD) acquiring Carnegie Units behind the VOS and in front of the ESY or Comp. Ed. form and special education summer report card.

Attach the summer school report card behind the VOS in front of the ESY or Comp. Ed. form.

Prepare two sets per student for distribution to the following:

- One set for the parent taken home by the student or mailed.
- One set sent to the home school addressed to the principal.

A copy of the verification of services (VOS) form for each student is to be submitted to the Office of Special Education by noon on July 20, 2006 (ESY) and July 24, 2006 (Comp. Ed).

SUMMER SERVICE REPORT CARD

(_____ SCHOOLS)

Check the appropriate week:

_____ Week 1    _____ Week 2    _____ Week 3    _____ Week 4    _____ Week 5

| STUDENT'S NAME | DOB 10/14/96 | GRADE 1st | SUMMER SCHOOL _____ |
|---|---|---|---|
| GOAL | CURRICULUM CONNECTION | | SERVICE PROVIDER |

Increase self confidence

GOAL: _____ (blacked out)

Elliott, MSW (LCSW)

CURRICULUM CONNECTION: _____

The student's participation _____ is X is not sufficient to demonstrate progress.

| DATE | CODE | | |
|---|---|---|---|
| DATE of 2/9/07 | N/A | Days Present / Days Absent | The student's participation _____ is _____ is not sufficient to demonstrate progress. |
| DATE 7/6/07 | MP | Days Present / Days Absent | The student's participation was positively to the rules/expectations of the group session and he was able to the 1st session. He listened and responded positively to the rules/expectations of the group session |
| DATE 7/12/07 | NP | Days Present / Days Absent | The student's participation is X is not sufficient to demonstrate progress. Column span was appropriate and med really hard to follow the groups activity. |
| DATE 7/13/07 | NP | Days Present / Days Absent | The student's participation is X is not sufficient to demonstrate progress. Stu observed and he was not on task nor did no participate in any classroom instruction lessons |
| DATE | MP | Days Present / Days Absent | The student's participation is X is not sufficient to demonstrate progress. The classroom game very well, it's confidence level was high until the time end of the game when he got very upset (cry out uncontrollably, screaming, kicking and acting angry) |

PROGRESS CODES LISTED BELOW

| A – Achieved | MP – Making Progress | EB – Emerging Breakthrough | NP – No Progress | N.A – Not Applicable at this Time |
|---|---|---|---|---|
| The student has successfully completed the goal. | The student is making expected degree of progress. | The skill necessary for this expected progress | The student is not making expected progress | The student has not begun |

EXHIBIT

P-14

# STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

In the Matter of:

| | |
|---|---|
| | ) BEFORE A SPECIAL EDUCATION |
| | ) |
| Watson, T. | ) |
| Petitioner | ) |
| Vs. | ) HEARING OFFICER |
| | ) |
| PUBLIC | ) |
| Gibbs ES | ) |
| | ) |
| | ) DISTRICT OF COLUMBIA |
| Respondent | ) |
| | ) PUBLIC SCHOOLS |

# SCHEDULING MEMORANDUM

1.    A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint <u>within 15 calendar days of receiving notice of the parents' complaint</u>. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings.**

2.    The complaint notice was filed on **August 1, 2007**

3.    The deadline for the resolution meeting is **August 16, 2007** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A.    ***Prior Written Notice Not Issued by the Local Educational Agency***.  If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, <u>within 10 days of receiving the complaint</u>, send to the parent a response that shall include:

1.    An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;

2.    A description of other options that the IEP Team considered and the reasons why those options were rejected;

3.    A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

Rev'd. 7/6/05

A description of the factors that is relevant to the agency's proposal or refusal.

B.   Prior written notice, if not already provided to the parent, must be sent by the Local Educational Agency to the complaining party no later than **August 11, 2007.**

C.   _Deficiency Notice._   A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, within 15 days of receiving the notice of the complaint, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.   The deadline for filing a deficiency notice is **August 16, 2007.**

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence. A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice. The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law. The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

Rcv'd. 7/6/05

EXHIBIT

P - 1.5

## DECLARATION OF AARON FISCHER IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Aaron Fischer declares and says as follows:

1. I am an attorney serving as counsel for Dorothy Watson.

2. Dorothy Watson is the great-grandmother and adoptive mother of T.W.

3. T.W. is a seven year old special education student at Gibbs Elementary School.

4. I attended T.W.'s May 9, 2007 MDT/IEP meeting at Gibbs Elementary School.

5. At this meeting, DCPS failed to consider or offer any placement other than at Gibbs Elementary School.

6. All present IEP team members at the May 9, 2007 MDT/IEP meeting – including the special education coordinator and the DCPS psychologist – agreed that Gibbs Elementary School could not serve T.W.'s special needs.

7. I filed a due process complaint on behalf of Dorothy Watson on August 1, 2007.

8. I received no response, in writing or otherwise, from DCPS to the due process complaint for nineteen (19) days.

9. A response was faxed to me from Aaron Terry, the Special Education Coordinator at Gibbs Elementary School, on August 20, 2007.

10. DCPS never contacted me to schedule a dispute resolution session in this matter.

11. To date, no resolution session was ever held in this matter.

12. I filed a Motion for Default Judgment on behalf of Dorothy Watson on August 28, 2007.

13. To date, I received no response from DCPS to this Motion for Default Judgment.

14. No due process hearing has been scheduled in this matter.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on _____

_____
Aaron J. Fischer, Esq.

EXHIBIT

P-16



# Gibbs ES – MEMO
**Mr. Aaron Terry, SEC**
**c/o Gibbs ES**
500 19th St., NE
Washington, DC 20002
Work. (202) 724 – 4573 OR (202) 939 – 4380
Cell (301) 641 – 1410 FAX. (202) 724 – 3996
E-Mail:

**August 20, 2007**

**To:   Mr. Aaron Fischer, Ed. Attorney**
**c/o Children's Law Center**
616 H St., NW Suite 300
Washington, DC 20001 (**Via FAX:** (202) 467 – 4949)

**Subject:** Response To Complaint – T█████ W█████

**Mr. Fischer, Ed. Attorney:**

In response to T████ W█████;

1) Student was EXITED from Sp. Ed. in 2005 by the Summer Assessment Team. PRIOR to coming to Gibbs ES and he was referred to our SST. Therefore DCPS Sp. Ed. Office at Gibbs ES was not responsible and cannot answer to why or when the process of the SST was delayed or never done.

2) As for the more than 10 Day Suspension. AGAIN this occurred PRIOR to the student being placed in Special Education in 2007.

3) As for the Placement, at the Initial 2007 ELIGIBILITY MEETING the DCPS Gibbs ES MDT Team, SPECIFICALLY stated that T███R was Emotionally Disturbed. BUT the attorney felt that our decision was "too drastic" OR they were not in agreement with the diagnosis, which is why the Functional Behavioral Assessment/FBA and Behavior Intervention Plan/BIP were never mentioned at the meetings. ALSO since T███R did not have any other serious OUTBURSTS in Gibbs ES after the IEP was implemented there was no reason for an FBA or BIP.

4) HOWEVER, we do know that Te██ was hit by a car when not at school sometime towards the end of the school year. He was, "running across the street from his mother". DCPS knows of no follow up or intervention with community sources OR an outside agency independent of DCPS that was mentioned by the parent or attorney pertaining to this serious incident.

Sincerely,

Aaron Terry
**SEC - DCPS**

EXHIBIT
P-17

STATE EDUCATION AGENCY
DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | |
|---|---|
| T██ W██████ | §§§§§ |
| *Petitioner* | §§ |
| v. | § |
| | §§ |
| District of Columbia Public Schools | §§ |
| *Respondent* | §§ |
| | § |

## MOTION FOR ENTRY OF DEFAULT JUDGMENT ON PETITIONER'S COMPLAINT AND REQUEST FOR REMEDY TO BE AWARDED, OR IN THE ALTERNATIVE REQUEST FOR AN EX PARTE HEARING ON REMEDY TO BE AWARDED

Petitioner D████ W███, parent and next friend of T███ W███, requests the entry of a decision by default against Respondent, District of Columbia Public Schools, for its failure to respond to Petitioner's complaint, pursuant to Rule 55 of the Federal Rules of Civil Procedure and § 401 of the DCPS Due Process Hearing Standard Operating Procedures. In support of this request, Petitioner relies upon the record in this case and the attached Memorandum of Points and Authorities submitted herein.

WHEREFORE, Petitioner requests that the Hearing Officer hold Respondent in default for its failure to comply with federally mandated requirements to timely and adequately respond to her Due Process Complaint and its failure to convene a Resolution Meeting consistent with D.C. Municipal Regulations. Petitioner further requests that the Hearing Officer award the full remedy requested in the complaint: 1) funding and placement by DCPS of T███ W███ at Children's Guild with transportation services to be provided and 2) appropriate compensatory education for the two-year denial of a Free and Appropriate Public Education. Alternatively, Petitioner request that the Hearing Officer hold an ex parte proceeding to determine the

appropriate remedy or treat all averments in the complaint as admitted and bar Respondent from presenting evidence contesting the claims, and other relief and sanctions as the Hearing Officer deems fit and proper.

Respectfully submitted,

Aaron J. Fischer, Esq.*
Attorney for Dorothy Watson
The Children's Law Center
616 H Street, NW – Suite 300
Washington DC, 20001
(202) 467-4900, X525
(202) 552-7125 (fax)
*Admitted in California; Eligible to practice in D.C. under Rule 49(c), under the supervision of Tracy L. Goodman

Tracy L. Goodman, Esq.
DC Bar #481088
The Children's Law Center
616 H Street, NW – Suite 300
Washington DC, 20001
(202) 467-4900, X503
(202) 467-4949 (fax)

STATE EDUCATION AGENCY
DISTRICT OF COLUMBIA PUBLIC SCHOOLS

|  |  |  |
|---|---|---|
| T███ W██████ | § | |
| *Petitioner* | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| <u>District of Columbia Public Schools</u> | § | |
| *Respondent* | § | |
| | § | |
| | § | |
| | § | |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR ENTRY OF DEFAULT JUDGMENT ON PETITIONER'S COMPLAINT AND REQUEST FOR REMEDY TO BE AWARDED, OR IN THE ALTERNATIVE REQUEST FOR AN EX PARTE HEARING ON REMEDY TO BE AWARDED</u>

## SUMMARY OF ARGUMENT

Petitioner D████ W█████, parent and next friend of minor child T███ W█████, moves for this Hearing Officer to hold Respondent District of Columbia Public Schools (hereinafter DCPS) in default for: 1) Its failure to comply with the requirements to timely and adequately respond to Petitioner's Due Process Complaint pursuant to 20 U.S.C. § 1415(c)(2)(B)(i) and 34 C.F.R. § 300.508(e)(1), and 2) Its failure to comply with the requirements in conducting a Resolution Session pursuant to DCMR § 5-3030.1(a)(iii).

The finding of a default judgment is appropriate in light of Respondent's multiple failures that violate and undermine the procedural safeguards that are the *sine qua non* of the special education laws and regulations. The Supreme Court has explicitly recognized that "the importance Congress attached to [the] procedural safeguards cannot be gainsaid. It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures ... as it did upon the measurement of the resulting IEP against a substantive standard." <u>Board of Educ. v. Rowley</u>, 458 U.S. 176, 205-06 (1982). Courts in this jurisdiction

1

have found that a violation of the procedural requirement under special education law "can itself constitute the denial of a free appropriate education." Blackman v. District of Columbia, 277 F. Supp. 2d 71, 79 (D.D.C. 2003). *See also* Massey v. District of Columbia, 400 F. Supp. 2d 66, 75 (D.D.C. 2005) (asserting that "DCPS cannot be allowed to disregard the procedural requirements [under the IDEA], thereby failing to provide children with FAPEs"). Respondent's procedural violations have a prejudicial effect on Petitioner that is both palpable and significant. Specifically, Petitioner's efforts to gain information necessary either to resolve the dispute through a settlement or to prepare her case for a due process hearing are thwarted as a direct result of Respondent's violations.

Because Respondent has failed to timely and adequately respond to the Due Process Complaint and because Respondent has failed to fulfill the substantive and procedural requirements for holding a timely Resolution Session, Respondent must be considered an "essentially unresponsive party." *See* H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970); Cintec International Ltd. v. Parkes, 2006 U.S. Dist. LEXIS 45203, *3-4 (D.D.C. 2006). As a result of this unresponsiveness, Petitioner faces an indeterminate and interminable delay and continued uncertainty as to her rights. H.F. Livermore Corp., 432 F.2d at 691. While not all procedural violations are actionable, procedural failures that have "seriously hampered the parents' opportunity to participate" in the special education process are sufficient grounds to hold the school district legally accountable. *See* Lesesne v. District of Columbia, 447 F.3d 828, 834 (D.C. Cir. 2006) (quoting Roland M. v. Concord Sch. Comm., 910 F.2d 983, 994 (1st Cir. 1990). *See also* Massey, 400 F. Supp. 2d at 75 (holding for the parent based on DCPS's failures to hold a Resolution Session and to respond to parent's due

process complaint, emphasizing "IDEA's purpose of giving parents a greater role in the educational decisions impacting their children").

By failing to provide a timely and adequate written response and denying Ms. W█████ the opportunity to resolve the complaint through the Dispute Resolution Session process as required by law, DCPS has prevented Petitioner from meaningfully participating in the special education process. Such a denial is sadly consistent with the unresponsiveness and gross disregard that DCPS has also demonstrated in wrongly denying T█████ necessary special education services for the last two years. Thus, Petitioner requests that Respondent's failures in properly responding to her Complaint and in timely holding a Resolution Session – whether they are by device or by negligence – be deemed grounds for a default judgment against Respondent.

## FACTS AND PROCEDURAL HISTORY

In June 2004, T█████ was placed in special education, with 30 hours/week of specialized instruction. After one year of this full-time special education program, DCPS terminated T█████ eligibility for special education services and exited T█████ from special education entirely. DCPS inappropriately placed T█████ in a regular education classroom, denying him the full-time, intensive special education services his special needs require. As a result, T█████ has made little to no educational progress, his inappropriate placement has repeatedly resulted in highly dangerous situations for him, and his behavioral problems – largely reflective of his frustration, depression, and emotional needs – have continued and grown more serious.

As detailed in the Due Process Complaint, DCPS failed to provide T█████ with a Free and Appropriate Public Education (FAPE) for two school years, beginning when he was inappropriately exited from his full-time special education program on August 4, 2005 and

3

continuing until today, as DCPS has provided T████ with a wholly inappropriate Individualized Education Program, dated May 9, 2007. Petitioner seeks a remedy for this protracted failure by DCPS: 1) funding and placement by DCPS of T████ Watson at Children's Guild with transportation services to be provided and 2) appropriate compensatory education for the two-year denial of a Free and Appropriate Public Education.

Ms. Watson filed a Due Process Complaint by hand delivery on August 1, 2007, serving a copy of the Complaint on DCPS's Office of General Counsel. *See* Due Process Complaint Notice, Petitioner's Exhibit 1. The Student Hearing Office faxed the Scheduling Memorandum to Petitioner's counsel on August 6, 2007, specifically setting forth the legally mandated deadline for DCPS to provide an answer to the complaint or prior written notice by August 11, 2007; the Resolution Session was to be held by August 16, 2007. *See* Scheduling Memorandum, Petitioner's Exhibit 2.

DCPS failed to provide a written response or prior written notice to Petitioner for nineteen (19) days – almost twice the legal maximum – and when it did issue a response on August 20, 2007, it failed to comply with the explicit legal requirements for that response. The response was written by the Special Education Coordinator at Gibbs Elementary School, who acknowledged that he "cannot answer to why or when the process of the SST was delayed or never done" and made no mention of the disputed IEP and placement. While this extremely brief response makes reference to some individual issues relating to the complaint, it does not provide an explanation of why the agency proposed or refused to take the actions raised by Petitioner, making no reference to the evaluations, records, and other factors that were relevant to DCPS's proposed or refused actions. *See* Response to Complaint, Petitioner's Exhibit 3. The core of Petitioner's due process complaint, asserting that T████ requires a full-time special

4

education placement that can serve his extensive learning deficits and social/emotional needs and alleging that DCPS inappropriately exited ████ from full-time special education and continues to deny FAPE, goes fundamentally unaddressed in DCPS's response. Also, DCPS failed to hold the legally required Resolution Session at all.

Based on these facts and the legal principles outlined below, Petitioner moves to hold DCPS in default based on two separate violations of federal and local law that have resulted in substantive harm to the parent.


**LEGAL ARGUMENT**

A Hearing Officer has authority to "rule on motions and other issues at any stage of the proceedings." 34 C.F.R. § 300.181(h); *see also* DCPS Due Process Hearing Standard Operating Procedures § 401(C)(6). Further, the Hearing Officer has authority to "receive, rule on, exclude, or limit evidence at any stage of the proceedings." 34 C.F.R. § 300.181(g). When a party is "essentially unresponsive" and "the diligent party ... [faces] interminable delay and continued uncertainty as to rights," it is necessary to protect the diligent party from being unduly prejudiced by the unresponsive party's delays and failures to comply with procedural rules and safeguards. H.F. Livermore Corp., 432 F.2d at 691.

Accordingly, Petitioner respectfully requests that DCPS be found in default for its failure to comply with multiple substantive and procedural requirements designed both to facilitate the special education process and to protect the rights of students and parents. Due to Respondent's failures, Petitioner has been unable to gain information about what claims Respondent admits or denies, to understand what remedies Respondent might consider in reaching a settlement

agreement, to meaningfully participate in the resolution process, and to prepare sufficiently for the due process hearing.

**1. DCPS has failed to timely and adequately respond to Ms. W█████ Due Process Complaint, preventing her from effectively pursuing a resolution to her complaint.**

DCPS should be held in default for its failure to comply with the requirements to respond to Petitioner's Due Process Complaint within ten days of receipt, pursuant to 20 U.S.C. § 1415(c)(2)(B)(i), 34 C.F.R. § 300.508(e)(1), and DCPS's own Due Process Hearing Standard Operating Procedures § 303(B). Furthermore, Respondent has failed to provide prior written notice to Petitioner, a requirement when the local educational agency "[r]efuses to initiate or change the identification, evaluation, or *educational placement of the child* or *the provision of FAPE to the child.*" 34 C.F.R. § 300.503(a)(2) (*emphasis added*). Under the federal regulations, if the local educational agency has not provided prior written notice to the parent regarding the subject matter of the Complaint, then it "must, within 10 days of receiving the due process complaint, send to the parent a response that includes:

> (i) An explanation of why the agency proposed or refused to take the action raised in the due process complaint;
>
> (ii) A description of other options that the IEP Team considered and the reasons why those options were rejected;
>
> (iii) A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and
>
> (iv) A description of the other factors that are relevant to the agency's proposed or refused action."

34 C.F.R. § 300.508(e)(1).

The Due Process Complaint was delivered to DCPS on August 1, 2007. Nineteen days passed before DCPS provided any written response. This failure is a clear violation of the

6

federally mandated procedural requirements, enacted so that parents of children with a disability can understand their rights and seek to vindicate those rights in a deliberate and timely way. *See* Schaffer v. Weast, 126 S. Ct. 528, 536-37 (asserting Congress' intent under IDEA to require due process that "guarantees parents and children the procedural protections" that are essential to the protection of substantive rights themselves).

DCPS's response, in addition to being untimely, is wholly inadequate. It fails to provide an explanation of why DCPS exited T█████ from his full-time special education placement in August 2005 and an explanation of its recent decision to provide a part-time placement in the same academic setting in which T████ has failed for the last two years. It can be no excuse that the writer of the response, Gibbs Elementary School's Special Education Coordinator, "was not responsible and cannot answer" to the reasons for DCPS's actions. *See* Response to Complaint, Petitioner's Exhibit 3. Furthermore, the fundamental issue in Petitioner's due process complaint – specifically, the inappropriate Individualized Education Program and placement pursuant to the IEP meeting of May 9, 2007 – remains fundamentally unaddressed.

Without a timely and legally sufficient written response to the Complaint, Petitioner lacks important information that can contribute to efforts towards a resolution to her Complaint. Ms. W████ who has diligently pursued appropriate special education services for T████, has been denied her rights under the Individuals with Disabilities Education Act insofar as her efforts to utilize the statutory requirements to seek an appropriate resolution for DCPS's protracted failure to serve Terrik have been ignored. The appropriate remedy for these consequential failures by DCPS is to hold DCPS in default and move forward with providing a remedy to Petitioner.

Further, Rule 8 of the Federal Rules of Civil Procedure provides that averments that are not formally denied in a responsive pleading are to be treated as admitted or conceded. Fed. R.

Civ. P. R. 8(d). Accordingly, the Hearing Officer, at a minimum, should deem the averments in the complaint to be admitted by DCPS given its failure to timely and adequately respond. 34 C.F.R. § 300.181(h); DCPS Due Process Hearing Standard Operating Procedures § 401(C)(6).

**2. DCPS has failed to comply with the requirements for conducting a timely Resolution Session, stalling and thwarting Ms. Watson's efforts to achieve an appropriate resolution.**

DCPS should also be held in default for its failure to comply with the requirements regarding the Resolution Session, as provided in the District of Columbia Municipal Regulations. The regulations plainly provide that DCPS "shall convene a Resolution Session with the parents and the relevant member(s) of the IEP Team who have specific knowledge of the facts identified in the complaint. The Resolution Session … (ii) shall include a representative of the agency who has decision making authority on behalf of such agency." DCMR § 5-3030.1(a)(iii).

By failing to make any efforts to convene a Dispute Resolution Session as required by special education law, DCPS has fundamentally deprived Ms. W████ of her right as a parent to meaningfully participate in the process. She has been denied the opportunity to enforce her rights under the Individuals with Disabilities Education Act and to take affirmative steps with the school district to resolve her Complaint.

DCPS's failure to follow the legally mandated procedural requirements rises to the level of substantive harm. *See* Massey, 400 F. Supp. 2d at 71 (holding that the "statute obligates DCPS to hold a session within 15 days, period"). These failures cannot be viewed as "mere technical oversight[s]," as "[i]t is technical compliance with the law … that give parents faith that their concerns will be addressed in accordance with Congress' intent." *Id.* at 72. Given DCPS's wholesale disregard for these requirements, the Hearing Officer should hold DCPS in

default and provide an appropriate remedy to the Petitioner's Due Process Complaint. 34 C.F.R. § 300.181(h); DCPS Due Process Hearing Standard Operating Procedures § 401(C)(6).

WHEREFORE, D██████ W█████, by and through undersigned counsel, moves to hold DCPS in default for failure to comply with the legal requirements to timely and adequately respond to her Due Process Complaint and to timely hold a Dispute Resolution Session, and to award the requested remedy of funding and placement by DCPS of T██████ W█████ at Children's Guild with transportation services to be provided and the further remedy of appropriate compensatory education for two years' denial of a Free and Appropriate Public Education, or to hold an ex parte proceeding to determine the appropriate remedy, or in the alternative, treat all averments in the complaint as admitted and bar Respondent from presenting evidence contesting the claims, and other relief and sanctions as the Hearing Officer deems fit and proper.

Respectfully submitted,

Aaron J. Fischer, Esq. *
Attorney for Dorothy Watson
The Children's Law Center
616 H Street, NW – Suite 300
Washington DC. 20001
(202) 467-4900, X 525
(202) 552-7125 (fax)
*Admitted in California; Eligible to practice in D C. under
Rule 49(c), under the supervision of Tracy L. Goodman

Tracy L. Goodman, Esq.
DC Bar # 481088
The Children's Law Center
616 H Street, NW – Suite 300
Washington DC. 20001
(202) 467-4900, X 503
(202) 467-4949 (fax)

9



EXHIBIT

P-13

August 9, 2007

Aaron Fischer
Staff Attorney
The Children's Law Center
616 H Street, NW  Suite 300
Washington, DC  20001

ADMINISTRATIVE OFFICE
6802 McClean Blvd
Baltimore, MD 21234-7260
Tel. 410-444-3800
Fax. 410-426-0612
www.childrensguild.org

SERVING CHILDREN IN
Anne Arundel County
Baltimore City
Prince George's County

BOARD OF TRUSTEES
Dennis Adams
Board Chair

Suzanne Pearce
Vice-Chair

Michael M. Gajewski, Jr.
Treasurer

Marie L. Nuplock
Secretary

Brenda Dandy
Past Board Chair

Andrew L. Ross, Ph.D., LCSW-C
President

Judith Bender
Jane M. Brewer
Michael Diliberto
Diane M. Eaton
Mindy Geppi
Janis Greenwood Harris
Stephen L. Hecht
Bonnie K. Henneson
Pamela A. Kendall
Wingrove S. Lynton
John A. Mackey
James R. Novick
William Purnell
Paula Schnedlich
H Robert Stephan
Michael Wodka
Neil R. G. Young

*Sent via facsimile 202.552.7125*

RE:    T███ W███████
DOB:   3.20.00

Dear Mr. Fischer:

Thank you for the referral on student T███ W███████ to be considered for placement at The Children's Guild in Chillum. I am pleased to announce that we would like to offer acceptance and placement to this student into our Day Program for the 2007-2008 academic school year.

This letter will serve as documentation that District of Columbia Public Schools will be financially responsible for this student. The original of this letter will be forwarded to you via the US Postal Service. If you should have any questions or require additional information, please feel free to call me at 301.853.7370.

Sincerely,

*LaMar Williams*

LaMar Williams
Director of Admissions

EXHIBIT

P-19

No. 0104    P. 2

Sep. 17. 2007  3:32PM

## DECLARATION OF LAMAR WILLIAMS IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Lamar Williams declares and says as follows:

1. I am the Director of Admissions at The Children's Guild.

2. I know and am familiar with T.W.

3. I met T.W. and his adoptive mother, Dorothy Watson, at The Children's Guild on July 25, 2007.

4. At that time, I interviewed T.W. and Ms. Watson for possible placement of T.W. at The Children's Guild and provided them with a tour of The Children's Guild.

5. I have reviewed a variety of documentation regarding T.W., including T.W.'s February 2007 psycho-educational evaluation and May 9, 2007 IEP and MDT/IEP meeting notes.

6. A pre-admissions team, including myself, the principal, the school psychiatrist, and the director of clinical services met and determined that The Children's Guild can provide an appropriate education to T.W.

7. The Children's Guild issued a notice of acceptance to T.W. on August 9, 2007.

8. The Children's Guild aims to provide unique special education programs, stimulating environments, and integrated approaches to educating children with emotional and behavioral challenges.

9. The Children's Guild provides a full-time special education program for children who have emotional, behavioral, and learning problems.

10. The Children's Guild serves children who have a classification of learning disabled, emotional disturbance, multiple disabilities, or in a separate program, autism.

11. The Children's Guild also serves children who have secondary disabilities, such as Attention Deficit Hyperactivity Disorder, other health impairments, and speech and language impairments.

12. The Children's Guild in Chillum serves children ages five through fourteen years old.

13. If T.W. attends the Children's Guild, he will be grouped in a classroom with peers his age. There will never be more than twelve (12) students in T.W.'s classroom.

14. T.W.'s classroom will be taught by two special education certified teachers.  The classroom environment provides a small student-to-teacher ratio that will allow T.W. to receive the specialized instruction he needs to make educational progress.

15. T.W.'s therapist will be an integral part of the teaching team and work closely with T.W. both in the classroom and in his individual and group therapy.

16. T.W.'s therapy will be integrated into the classroom instruction and curriculum.

17. T.W.'s therapist will work with him to achieve his individualized goals in the classroom setting, and work with the teachers to ensure that his therapeutic and academic needs are being addressed.

18. The therapists and teachers will meet each day after school to discuss the issues that arise for T.W. throughout the course of the day, and to ensure that as a team, they are appropriately addressing T.W.'s needs.

19. T.W.'s therapist will be available whenever needed throughout the school day, including in a time of crisis.

20. The presence and involvement of T.W.'s therapist in the classroom will help to prevent and curb T.W.'s self-injurious behaviors.

21. All staff are trained in crisis de-escalation.

22. The Children's Guild has a multi-sensory de-escalation room where T.W. can go to re-group if needed.

23. The multi-sensory de-escalation room is supervised by our therapeutic staff and is designed to include energy outlets that involve sensory integration.

24. The Children's Guild also has a psychiatrist on staff and offers psychiatric services and medication management if needed.

25. The Children's Guild has a school wide behavioral program called Positive Behavior Intervention Supports (PBIS).

26. PBIS provides students with positive reinforcement and a token economy to promote positive behaviors.

27. The Children's Guild has a literacy team comprised of instructors trained to facilitate reading programs.

28. The Children's Guild offers extensive multi-sensory instruction, which T.W. will be able to receive.

29. Each child has an individual computer and each classroom has a Smart Board, which allows the teacher to incorporate the computers into academic lessons for the whole class.

30. With a computer integrated into his curriculum, T.W. will be able to develop keyboarding and word processing skills.

31. The Children's Guild can provide T.W. with any specialized instruction, supports, or services he may require to address his learning disabilities.

32. The Children's Guild can meet T.W.'s needs as a child with emotional and behavioral problems.

33. The Children's Guild can provide T.W. with individual and/or group counseling onsite, consistent with his IEP.

34. The Children's Guild will be able to implement T.W.'s IEP; a 30-day IEP review will be completed once he is enrolled at the school to ensure that he is provided with a all necessary and appropriate instruction and related services.

35. The Children's Guild can provide T.W. with speech/language therapy if needed.

36. The Children's Guild can provide T.W. with occupational therapy if needed.

37. Based on my knowledge of T.W., T.W.'s IEP, and the evaluations that have been conducted for him, The Children's Guild is an appropriate placement for T.W.

38. T.W. has been accepted to The Children's Guild for the current 2007-2008 school year.

39. It is possible that T.W. may lose his spot at The Children's Guild for the 2007-2008 school year if he is not immediately placed at our school.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on  9.17.07                                    LaMar Williams

                                                        LaMar Williams