## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DOLORES WATSON,<br>Great-Grandmother and Next Friend of<br>of T.W., a Minor,[1]<br><br>    Plaintiff,<br><br>        v.<br><br>DISTRICT OF COLUMBIA,<br>A municipal corporation, *et al.,*<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 07-1716 (EGS) |

## DEFENDANTS' OPPOSITION TO THE PLAINTIFF'S
## MOTION FOR TEMPORARY RESTRAINING ORDER

## INTRODUCTION

The Defendants, by counsel, respectfully oppose the Plaintiff's September 20,

2007, Motion for Temporary Restraining Order on the grounds that the Plaintiff has

failed to exhaust her administrative remedies before filing the present case.[2]  The Plaintiff

has brought this case pursuant to the Individuals with Disabilities Education

Improvement Act of 2004, 20 U.S.C. §§ 1400 *et seq*. ("IDEIA").  However, the Plaintiff

did not utilize her administrative remedies—a statutory requirement for subject matter

jurisdiction in this Court—before filing her case in this Court.  Therefore, this Court does

not have proper jurisdiction, and this case must be dismissed.

Moreover, even ignoring this threshold fatal deficiency, the Plaintiff has failed to

satisfy the four-pronged test for a grant of the injunctive relief requested here.

---

[1] The minor will be referred to only by his initials, T.W., pursuant to LCvR 5.4(f)(2).
[2] The Defendants reserve their right to object to the temporary restraining order on other grounds, but due
to time constraints, the Defendants here primarily focus on the jurisdictional issue.

## ARGUMENT

I.     **Having failed to exhaust administrative remedies, the Plaintiff
       cannot properly invoke this Court's jurisdiction.**

A.     **Statutory Framework**

Under the IDEIA, disabled students are entitled to a free, appropriate public education ("FAPE").  20 U.S.C § 1412(a)(1).  Once a student is suspected of a disability, the school system (local education agency) must determine whether that child is eligible to receive special education and related services.  20 U.S.C § 1414(a).  A multidisciplinary team ("MDT"), consisting of the student's parents, teachers, and other educational specialists, meet and confer in a collaborative process to consider relevant functional, developmental and academic information about the student to determine eligibility.  20 U.S.C § 1414(b).

If the student is deemed eligible, the team then will create an individualized education program ("IEP") designed to provide the student with a FAPE.  20 U.S.C. § 1414(d)(1)(B).  The IEP is the written statement from the meeting that includes, among other things, goals and instructional objectives, services to be provided, projections regarding the dates when such services will be offered, and criteria for evaluating whether instructional objectives are being met.  20 U.S.C. § 1414(d)(1)(A); 20 U.S.C. § 1401(14).  The IEP team also must make decisions regarding the student's educational placement.  20 U.S.C. § 1412(a)(5)(A).

Should the parent disagree with a determination of an IEP team, he or she may challenge that determination in a due process hearing before an independent hearing officer.  20 U.S.C. § 1415(c)(2) and (f).  After the conduct of that administrative hearing,

if a party is aggrieved by the decision issued by the hearing officer, he or she may then seek review of that decision in this Court. 20 U.S.C. § 1415 (i)(2)(A).

**B.    The Plaintiff has failed to utilize the administrative remedies available under the IDEIA.**

This Court does not have subject matter jurisdiction because the Plaintiff is not "aggrieved" by a decision reached by a hearing officer at the conclusion of an administrative due process hearing. Indeed, as discussed below, no such hearing has been held, and the Plaintiff in this action is actively frustrating the conduct of such a hearing and the ability of DCPS to implement the IDEIA.

**1.    The IDEIA prescribes administrative processes for dealing with the issues raised here.**

The IDEIA provides specific procedures whereby challenges to District of Columbia Public Schools ("DCPS") educational determinations (concerning such matters as eligibility of students for special education services, IEPs, and school placement decisions) are to be addressed. 20 U.S.C. § 1415. The administrative process described in the statute, if fully employed, results in an evidentiary administrative hearing before an impartial hearing officer, at the conclusion of which a Hearing Officer's Decision ("HOD") is issued. 20 U.S.C. § 1415(f). Such an HOD contains findings of fact and conclusions concerning the disputed matters.

Only if the student's parent or guardian is "aggrieved" by the HOD is judicial review of the HOD by this Court proper. The grant of jurisdiction to this Court is found at 20 U.S.C. § 1415 (i)(2)(A):

> Any party aggrieved by the findings and decision made [in an administrative due process hearing] . . . shall have the right to bring a civil action with respect to the [administrative] complaint . . . which action may be

> brought . . . in a district court of the United States, without
> regard to the amount in controversy.

Accordingly, to establish an entitlement to court review under the IDEIA, the Plaintiff

must at least aver that necessary administrative processes have been employed, a HOD

has been issued, the plaintiff is a party aggrieved by that HOD, and the action challenges

the propriety of the HOD.

The importance of requiring exhaustion of administrative remedies prior to

judicial review was expressed in *Cox v. Jenkins*, 278 U.S. App. D.C. 312, 317 (D.C. Cir.

1989) ("a party must pursue all avenues of administrative redress…before seeking

judicial review"), citing *McKart v. United States,* 395 U.S. 185, 193-95, (1969):

> [I]t prevents courts from interrupting the administrative
> process permanently; it allows the agency to apply its
> specialized expertise to the problem; it gives the agency
> an opportunity to correct its own errors; it ensures that
> there will be a complete factual record for the court to
> review; and it prevents the parties from undermining
> the agency by deliberately flouting the administrative
> process.

When plaintiffs fail to exhaust their administrative remedies under the IDEIA, the court

will dismiss their claim for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P.

12(b)(1). *Moss v. Smith*, 794 F. Supp. 11 (D.D.C. 1992). The *Moss* Court found that the

plaintiff was required to exhaust her administrative remedies under the IDEIA prior to

filing suit because the administrative remedies available were neither futile nor

inadequate. *Id.*; *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) ("[f]ailure

to exhaust administrative remedies deprives a district court of subject matter

jurisdiction"). And no such assertion–much less a showing–of futility or inadequacy has

been made here.

In fact, on August 1, 2007, the Plaintiff filed her due process complaint notice to challenge T.W.'s disability classification, IEP, and placement.[3]  Complaint, Attachment A.  According to the IDEIA, after the expiration of the 30-day resolution period, the timeline for scheduling a due process hearing commences.  20 U.S.C. § 1415(f)(1)(B)(ii).  A hearing must convene and a final HOD must be issued within 45 days from the expiration of the 30-day resolution period.  34 C.F.R. § 300.515.  The 30-day resolution period in the present matter ended on August, 31, 2007, and the 45-day deadline for issuance of a decision is October 15, 2007.

On September 18, 2007, the Student Hearing Office ("SHO") sent Plaintiff's counsel a notice of hearing.  Defendant's Exhibit 1.  The notice indicated that the due process hearing would convene on October 4, 2007, at 9:00 a.m., and on October 5, 2007, at 9:00 a.m.  *Id.*[4]  Those hearing dates are well within the 45-day period.

As an aside, it should be noted that the Plaintiff could have sought an expedited hearing pursuant to the SHO Standard Operating Procedures § 1007; and/or the parties could have jointly waived the 30-day resolution period pursuant to the SHO Standard Operating Procedures § 400.1(c).  The Plaintiff, however, chose to do neither, preferring to immediately seek this Court's intervention.

As to the Plaintiff's hearing request, on September 20, the Plaintiff's counsel notified the SHO that Plaintiff had limited availability on October 4, 2007, and was not available at all on October 5, 2007.  Defendant's Exhibit 2.  On September 21, the SHO

---

[3] While the August 1, 2007, due process complaint notice did not contemplate the recent disciplinary problem in which T.W. set the school bathroom on fire earlier this month, the Plaintiff may amend her pending complaint notice to address that issue.  The IDEIA allows for the amending of the administrative complaint two ways: (1) if the other party consents in writing and is given the opportunity to resolve the matter, or (2) if the hearing officer grants permission, but not later than five days before the hearing.  20 U.S.C. § 1415(c)(2)(E).

[4] The hearing is scheduled for two days because the Plaintiff requested 12 hours in her due process complaint notice.  Complaint, Attachment A.

issued a new Notice of Hearing, re-setting the hearing for October 4, 2007, and October 9, 2007.  Defendant's Exhibit 3.   In addition to the designated hearing dates, the SHO offered two earlier sets of dates, through the undersigned counsel, which were rejected by the Plaintiff's counsel: (1) September 27, 2007 and September 28, 2007, and (2) October 2, 2007, and October 3, 2007.[5]

The Plaintiff also mentions that there has been no ruling on her August 28, 2007 Motion for Entry of Default Judgment, suggesting that this is somehow inappropriate. TRO Motion, at 11-12.  But the Plaintiff goes on to state that "[t]he Student Hearing Office informed the petitioner … that no decision would be issued until the due process hearing was scheduled, at which point a Hearing Officer would be assigned."  *Id.*, at 11. This is an accurate statement of the usual course of action at the SHO—a hearing officer is assigned to a case once a due process hearing is scheduled.  This makes sense because the case could be resolved during the mandatory resolution period, ending the need for any hearing officer involvement.

Clearly, there has been no showing by the Plaintiff that utilizing the administrative procedures would be futile.  As such, this Court should not interfere with the normal course of action.  The Plaintiff wrongly asks this Court to make educational decisions in the first instance without any administrative record.  In her due process complaint notice, Plaintiff asks for 12 hours for her hearing (hearings are scheduled in two hour blocks).  Complaint, Attachment A.  But she then asks this Court to decide disability classification and placement in an emergency hearing situation without a record on an expedited basis without any real showing that the administrative process would be futile.

---

[5] The SHO also offered October 10, 2007 as a possible hearing date.

Given that the administrative procedures are already being utilized and that a hearing has been set (and earlier dates for the hearing were rejected), not only is the Court without jurisdiction to entertain this action, there is simply no practical reason for this Court's involvement.

### 2.      Plaintiff has frustrated DCPS' efforts to comply with the IDEIA.

The Plaintiff has not worked to resolve this matter.  In fact, she has frustrated the efforts of DCPS to schedule a timely hearing by not making herself available for the scheduled dates, all the while telling this Court that this is an "emergency situation." Defendant's Exhibits 1-3.

On September 20, 2007, concerned that T.W. would return to school on September 26, 2007, without any behavioral supports in place for him, Special Education Coordinator Aaron Terry of Gibbs Elementary School attempted to schedule a MDT meeting to discuss T.W.'s needs.  Plaintiff's counsel, by letter dated September 20, 2007, *refused to meet* because of the present court action.  Defendant's Exhibit 4.  Despite this refusal, on September 25, 2007, Mr. Terry sent Plaintiff's counsel and his client a meeting notice, inviting them to attend a MDT meeting that same day.  Defendant's Exhibit 5.  Plaintiff's counsel again refused to meet, citing his previous letter. Defendant's Exhibit 6.

As such, Mr. Terry was forced to convene the meeting without them.  Defendant's Exhibit 7.  At the meeting, Mr. Terry, the school psychologist, and the student's teacher determined that upon return to the school on September 26, 2007, T.W. will have additional supervision.  *Id.*  For example, he will be escorted to the bathroom, lunch and the school office, and he will be supervised during lunch and recess.  *Id.*

As indicated in the Plaintiff's pleadings, the student set the school bathroom on fire earlier this month (and a month *after* the Plaintiff filed her due process complaint notice). Therefore, it is completely appropriate and timely for the school to react to this new situation by scheduling a meeting to re-assess the student's current needs. T.W. was suspended for eight days, and will return to school on September 26, 2007. TRO Motion, Exhibit 2. By refusing to meet with DCPS during this key time period, Plaintiff's counsel and his client have squandered an opportunity to resolve this matter prior to the scheduled due process hearing and prior to an emergency hearing in this Court.

Furthermore, DCPS complied with the IDEIA in response to the fire incident. It timely held a "manifestation determination" meeting, finding that the conduct of T.W. was *not* a product (or "manifestation") of the student's disability, as required under the IDEIA. 20 U.S.C. § 1415(k). Defendant's Exhibit 8. This decision could have been challenged by the Plaintiff in a due process hearing—but the Plaintiff has not done so. The IDEIA specifically allows a parent or guardian who disagrees with a manifestation determination to request a due process hearing on an expedited basis. 20 U.S.C. § 1415(k)(3) and (4). Even though the fire incident was not related to the student's disability, Mr. Terry attempted to convene a meeting to discuss the student's current needs. This simply is not a situation where DCPS is doing nothing.

A request to a court for equitable relief does not entitle the Plaintiff to create an emergency situation where one does not exist. To prevent DCPS from carrying out its IDEIA obligations is to contribute to the harm of the student.

**II.    For the above reasons, the Plaintiff fails to meet the four factors required for a granting of a motion for temporary restraining order.**

In order to obtain emergency injunctive relief, the plaintiff must satisfy *each* prong of the following four-part test, by demonstrating: (1) a substantial likelihood of success on the merits; (2) irreparable injury in the absence of an injunction; (3) less injury to the non-moving party than the moving party if an injunction is ordered; and (4) that injunctive relief is consistent with the public interest. *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998).

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) (emergency injunctive relief "is an extraordinary remedy that should be granted only when the party seeking relief, by a clear showing, carries the burden of persuasion.") (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (interim injunctive relief is "an extraordinary and drastic remedy")).

While a strong showing on one of the four factors may make up for a weaker showing on another, *Serono Labs.*, 158 F.3d at 1318, a particularly weak showing on one factor may be more than the other factors can "compensate" for. *Taylor v. RTC*, 56 F.3d 1497, 1506 (D.C. Cir. 1995), *amended on other grounds on reh'g.*, 66 F.3d 1226 (D.C. Cir. 1995).

In the present case, the Plaintiff has failed to make a satisfactory showing on *any* of the four factors; hence, her demand for emergency injunctive relief should be denied.

A.    **The Plaintiff fails to establish a substantial likelihood of success on the merits.**

The Plaintiff has little chance of success on the merits of this case because DCPS has complied with the IDEIA.  The Plaintiff apparently argues that the recent incident in which the student set the school bathroom on fire demonstrates the need for this Court's involvement.  However, procedures are in place, pursuant to the IDEIA and the local rules, for handling such situations, and DCPS properly followed those procedures.  Because DCPS recommended a Level II suspension of eleven days,[6] it was required to make a manifestation determination before enforcing the suspension—i.e., DCPS must determine whether or not the conduct at issue is a product of a disability identified under IDEIA.  20 U.S.C. § 1415(k).  DCPS here promptly convened a meeting, and determined that the student's behavior was *not* a manifestation of his disability.  Defendant's Exhibit 8.

Under the IDEIA, if a student with a disability "violates any rule or code that applies to all children," then a meeting must be conducted within 10 days to determine the relationship between the student's actions and the student's disability.  20 U.S.C. § 1415 (k)(4)(A)(ii).  The student's parent, a DCPS representative, and relevant members of the student's IEP team—such as the student's teacher and/or social worker—should be present at this meeting, and must decide whether or not the student's behavior was a manifestation of his or her disability.  20 U.S.C. § 1415 (k)(4)(B).

---

[6] The DCPS disciplinary regulations designate Level I and Level II infractions as grounds for disciplinary actions.  5 DCMR § 2503.  Level I infractions are grounds for suspension for ten days or less.  5 DCMR § 2503.1.  Level II infractions are more serious, and are grounds for suspension for no less than ten days and no more than two semesters.  5 DCMR § 2503.2.

In the present case, a multidisciplinary team—including two school social workers, the principal, the psychologist, the student's special education teacher, and the special education coordinator—determined that the student's behavior was not a manifestation of his disability. Defendant's Exhibit 8. Therefore, the suspension was appropriate and DCPS need not re-examine the student's special education program at this time. Notably, the Plaintiff has not requested a due process hearing to challenge DCPS' September 7, 2007, determination that the behavior was not a manifestation of the student's learning disability to a hearing officer, as she is permitted to do.[7] Clearly, the Plaintiff is not likely to prevail on the merits, given DCPS' documented decision regarding his behavior and disability, and her failure to challenge that decision.

Also, prior to the recent manifestation determination meeting, on May 9, 2007, an IEP team convened and developed an initial IEP for the student, with which the parent did not agree. Defendant's Exhibit 9. While the Plaintiff takes issue with the placement and classification of the student therein, DCPS again has documented its decision-making process and complied with the IDEIA. Defendant's Exhibit 9.[8] Simply put, the Plaintiff cannot show a substantial likelihood of success on the merits because DCPS has complied with the IDEIA.

B.    **The Plaintiff has failed to establish irreparable harm as a matter of law.**

The Plaintiff has failed to make any showing of irreparable harm and therefore her demand for emergency injunctive relief must fail.

---

[7] A parent or guardian who disagrees with a manifestation determination may request a due process hearing on an expedited basis. 20 U.S.C. § 1415(k)(3) and (4).

[8] Additionally, on March 22, 2007, a team met to review a February 28, 2007, Psycho-Educational Evaluation by the school psychologist, which recommends special education services. Defendant's Exhibit 10.

An essential prerequisite to injunctive relief is a sufficient showing by the plaintiff that she will suffer irreparable harm if the injunctive relief is not granted. *See*, *e.g.*, *Davenport v. International Brotherhood of Teamsters,* 166 F.3d 356, 360 (D.C. Cir. 1999); *see also Sampson v. Murray*, 415 U.S. 61, 88–90 (1974).

At a minimum, a plaintiff seeking emergency injunctive relief must make a threshold showing of irreparable injury. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) ("we require the moving party to demonstrate at least 'some injury . . . .'") (citing, *inter alia, Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C. Cir. 1989) (preliminary injunction properly denied "where moving party may have been 'likely to succeed' but did not carry burden of showing irreparable harm, since 'the basis of injunctive relief in the federal courts has always been irreparable harm.'") (quoting *Sampson*, 415 U.S. at 88 and *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506 (1959))).

The Plaintiff makes no competent showing of any injury, much less *irreparable* injury. The student is currently out of the school on suspension, and will not return to school until September 26, 2007. His dangerous action has been dealt with appropriately, and there is nothing further for this Court to do. Again, DCPS made a decision that the student's action was not related to his disability and that the student understood the consequences of his behavior. Defendant's Exhibit 8. Consequently, the Court may deny the Plaintiff's request for emergency injunctive relief without considering any other factors. *CityFed*, 58 F.3d at 747. *See also PhRMA v. Walsh*, 538 U.S. 644, 671 (2003) (plaintiff "cannot obtain a preliminary injunction simply by showing minimal or quite 'modest' harm") (*Breyer, J., concurring*).

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985), sets forth the guiding principles for determining whether irreparable harm exists: (1) the injury must be both *certain* and *great*, not something merely feared as likely to occur at some indefinite time; (2) the injury must be of such imminence that there is a "clear and present" need for relief to prevent it; and (3) economic loss is insufficient to constitute irreparable harm unless the plaintiff's very existence is threatened. *See also Sampson*, 415 U.S. at 88–90.

All of the threatened harms alleged by the Plaintiff are entirely speculative. *See, e.g.*, *Nat'l Assn. of Psychiatric Health Sys. v. Shalala*, 120 F.Supp.2d 33, 44 & n.9 (D.D.C. 2000) (preliminary injunction denied where plaintiffs "offer[ed] no concrete, reliable evidence to support their contentions of irreparable harm.").

To the extent the Plaintiff claims her rights under the IDEIA have been violated, she has similarly failed to meet her burden. *See, e.g., Wagner v. Taylor*, 836 F.2d 566, 577 n. 76 (D.C.Cir.1987) ("[I]n cases involving a claim by movant of interference with protected freedoms or other constitutional rights, . . . the finding of irreparable injury cannot meaningfully be rested on a mere contention of a litigant."); *Veitch v. Danzig*, 135 F.Supp.2d 32, 37 (D.D.C. 2001) (violation of constitutional rights is not itself an irreparable harm) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Ashland Oil, Inc. v. FTC*, 409 F.Supp. 297, 307 (D.D.C. 1976) ("[T]he required showing of irreparable injury is not eliminated simply by virtue of a claim alleging violation of statutory or constitutional rights."), *aff'd*, 548 F.2d 977 (D.C.Cir.1976).

There is nothing remotely "imminent" here in the broad sense of the word; nothing has happened yet or may occur in the immediate future requiring *emergency* injunctive relief. The Plaintiff seeks to force a specific result prior to the completion of

the mandated process, which process may still give the Plaintiff precisely the relief she seeks.

Further, the Plaintiff herself has not treated this matter as if the student was facing imminent injury.  She and her counsel rejected an offer by the Student Hearing Office to schedule the hearing for this week—September 27, 2007, and September 28, 2007.  Also, the Plaintiff, through her counsel, also rejected an attempt by the special education coordinator to convene a meeting prior to the student's return to the school on September 26, 2007.  Defendant's Exhibit 4.

The Plaintiff fails to make any showing of irreparable harm and therefore her request for a preliminary injunction must fail.

> C.     **The balance of equities favors denying injunctive relief.**

In effect, the Plaintiff here seeks to enjoin the DCPS hearing officer from proceeding with an established process of substantial local importance, and to require a pre-determined outcome for that process.  The balance of equities tips decidedly in favor of the Defendants where the Plaintiff essentially is asking this Court to issue a mandatory injunction before an impartial hearing officer has made *any* final administrative decision.  In other words, the Plaintiff seeks an immediate grant of the ultimate relief sought in the administrative litigation, just beginning.

An injunction would substantially injure the District of Columbia, its citizens, and the administrative process. "[A]ny time a State [or local government] is enjoined by a court from effectuating statutes enacted by the representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*,

434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). *See also Greene*, 806 A.2d at 223 (quoting *New Motor Vehicle Bd.*).

If the Plaintiff's relief were to be granted, the door would be opened to allow every applicant unhappy with (potential) DCPS decisions to bypass the mandated process. To allow this type of challenge would undermine this important administrative proceeding. Any "aggrieved party" would be able to ignore preliminary decisions with which it disagreed and go straight into federal court. Clearly, this is not what Congress intended when it enacted the IDEIA.

Moreover, a preliminary injunction here would *not* preserve the status quo, but would require DCPS to take *affirmative steps* to prevent the mandated administrative processes from going forward. As such, a preliminary injunction would be a "mandatory injunction" requiring the Plaintiff to meet a *higher* standard than the typical four-part test for the usual "prohibitory" injunction. *Veitch*, 135 F.Supp.2d 32, 35 & n.2 (D.D.C. 2001) (citing, *inter alia, University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) and *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969)).

The Plaintiff must therefore show "clearly" that he is entitled to immediate relief or that "extreme or very serious damage" will result from the denial of the emergency injunction. *Veitch*, 135 F.Supp.2d at 35 n.2 (quoting *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2nd Cir. 1997)). The Plaintiff, however, has failed to show that she is clearly entitled to immediate relief and has not shown any "extreme or very serious damage" in the absence of emergency injunctive relief.

In these circumstances, the District of Columbia enjoys the balance of the equities in its favor.

D.    __The public interest favors the District.__

The public interest favors denying the Plaintiff's request for a preliminary injunction.  In essence, the Plaintiff asserts that she is not bound by the same process that applies to every other guardian or parent of a child with a disability.

Allowing the Plaintiff to avoid that mandated process would turn the statutory scheme on its head.  The public interest demands more than the Plaintiff's self-interest.

## CONCLUSION

As demonstrated above, this Court does not have subject matter jurisdiction.  The Plaintiff wrongly asks this Court to circumvent the usual review by a hearing officer, despite the availability of that process and the specific, limited designation by the IDEIA of this Court's jurisdiction.  Moreover, even if jurisdiction were assumed, the Plaintiff fails to satisfy any of the four factors necessary for a grant of emergency injunctive relief. Thus, this Court should deny the Plaintiff's motion for temporary restraining order, and dismiss this case.

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
September 26, 2007                    E-mail: Eden.Miller@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DOLORES WATSON, <br> Great-Grandmother and Next Friend of <br> T.W., a Minor, <br><br>     Plaintiff, <br><br>         v. <br><br> DISTRICT OF COLUMBIA, <br> A municipal corporation, *et al.,* <br><br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   Civil Action No. 07-1716 (EGS) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**<u>ORDER</u>**

Upon consideration of the Plaintiff's Motion for Temporary Restraining Order, the Defendant's opposition thereto, and the record therein, it is, on this _____ day of September, 2007, hereby:

**ORDERED THAT** the Plaintiff's Motion is **DENIED**; and it is

**FURTHER ORDERED THAT** the case is **DISMISSED WITH PREJUDICE** because this Court lacks subject matter jurisdiction.

_____
United States District Judge Emmet G. Sullivan

*Watson v. District of Columbia*
Civil Action No. 07-1716 (EGS)

## INDEX OF EXHIBITS

**Exhibit**          **Document Description**                                                    **Page**

**Exhibit 1**        SHO Hearing Notices, dated 9/18/07……………………………1

**Exhibit 2**        Letter from A. Fischer to SHO re: Hearing Dates,…………….. 4
                     dated 9/20/07

**Exhibit 3**        Revised SHO Hearing Notices, dated 9/21/07……………………6

**Exhibit 4**        Letter from A. Fischer to A. Terry re: Proposed Meeting……...9
                     for T.W., dated  9/20/07

**Exhibit 5**        Meeting Notice from A. Terry to A. Fischer, dated 9/25/07…….11

**Exhibit 6**        Email from A. Fischer to A. Terry re: Meeting Notice,………... 14
                     dated 9/25/07

**Exhibit 7**        MDT Meeting Notes, dated 9/25/07…………………………………16

**Exhibit 8**        Manifestation Determination Meeting, dated 9/7/07…………… 19

**Exhibit 9**        Documents re: the 5/9/07, Meeting……………………………22

                     • Initial IEP for T.W…………………………………………...23

                     • Initial Placement………………………………………… 31

                     • MDT Meeting Notes…………………………………………34

**Exhibit 10**       MDT Meeting Notes, dated 3/22/07..……………………………36

                     • Psycho-Educational Evaluation, dated 2/28/07…………..38

Exhibit 1

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
1150 5th Street, S. E.
1st Floor
Washington, D.C. 20003
PHONE: (202) 698-3819
FAX: (202) 698-3825



### HEARING NOTICE

| MEMORANDUM VIA: [√] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO:     Parent (or Representative): A. Fischer                Fax No.: **(202) 552-7125**

        LEA Legal Counsel:    **OGC**                         **(202)  442-5098**

RE:      W▇▇▇, T▇▇▇                                and (LEA) DOB: ▇▇/2000
         Student's Name

FROM:    SHARON NEWSOME
         Special Education Student Hearing Office Coordinator

DATE SENT:      **9/18/07**

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on 8/7/07. Please be advised that the hearing has been scheduled for:

DATE:        **10/4/07**        **Day 1**

TIME:        **9:00, 11:00, 1:00 & 3:00**

AT:          1150 5th  Street, S. E. , Washington, D.C. 20003
             1st  Floor

ASSIGNED HEARING OFFICER: _____

[ ]  THIS IS A FINAL NOTICE OF HEARING: If you wish to request a continuance of this hearing, you must submit your request to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances are made *exclusively* by the Hearing Officer, and cannot be made by SHO administrative staff.  Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above

[√]  THIS IS A PROVISIONAL NOTICE OF HEARING: The SHO was unable to accommodate any of your proposed dates  If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer  If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you.  Disclosure of evidence and witnesses to the opposing party is required at least **five business days** prior to the hearing with copies to the Special Education Student Hearing Office.

2

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE

1150 5th Street, S. E.
1st Floor
Washington, D.C. 20003
PHONE: (202) 698-3819
FAX: (202) 698-3825



HEARING NOTICE

MEMORANDUM VIA: [ √ ] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:  Parent (or Representative): A. Fischer          Fax No.: (202) 552-7125

LEA Legal Counsel:  OGC
                                                        (202) 442-5098

RE:  W█████, T█████                     and (LEA) DOB: ███/2000
     Student's Name

FROM:  SHARON NEWSOME
       Special Education Student Hearing Office Coordinator

DATE SENT:  9/18/07

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on 8/1/07. Please be advised that the hearing has been scheduled for:

DATE:  10/5/07    **Day 2**

TIME:  9:00, 11:00 AM

AT:  1150 5th Street, S. E., Washington, D.C. 20003
     1st Floor

ASSIGNED HEARING OFFICER: _____

[ ] **THIS IS A FINAL NOTICE OF HEARING:** If you wish to request a continuance of this hearing, you must submit your request to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances are made *exclusively* by the Hearing Officer, and cannot be made by SHO administrative staff. Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[√] **THIS IS A PROVISIONAL NOTICE OF HEARING:** The SHO was unable to accommodate any of your proposed dates. If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer. If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you. Disclosure of evidence and witnesses to the opposing party is required at least **five business days** prior to the hearing with copies to the Special Education Student Hearing Office.

3

Exhibit 2



# THE HEALTH ACCESS PROJECT AT CHILDREN'S NATIONAL MEDICAL CENTER

September 20, 2007

Student Hearing Office
Sheila Hall, Director of Operations
825 North Capitol Street, NE
Washington, DC 20002

*Sent by facsimile to (202) 698-3825*

Re: ~~Hearing Notice, T███ W████, DOB ███/2000~~

Dear Ms. Hall:

    We have received the Provisional Hearing Notice to schedule the Due Process Hearing for T███ W████ on October 4 and 5, 2007. Parent and counsel will be able to attend the October 4 hearing date, but *only* for the 9-11, 11-1, and 1-3 time slots; we will be unavailable for the scheduled 3-5 time slot. We are *not* available at all on October 5, 2007.

    I am available for a teleconference on September 21, between 12 pm and 2 pm. Alternatively, Ms. Watson and I are available for the Due Process Hearing on the following dates:

    1) Tuesday, October 9, 2007;
    2) Wednesday, October 10, 2007; or
    3) Thursday, October 11, 2007;

    As you may know, given the seriousness and urgency of this matter, a complaint and motions for a preliminary injunction and temporary restraining order were filed in federal district court on September 19, 2007.

    Thank you for your assistance in this matter. If you have any questions or concerns, please do not hesitate to call me at (202) 467-4900, ext. 525.

Sincerely,

*Aaron J. Fischer*

Aaron J. Fischer
Attorney for Ms. Dorothy Watson

Cc: Office of General Counsel, DCPS (442-5098)
Eden Miller, Office of the Attorney General (724-3625)

Exhibit 3

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
### STUDENT HEARING OFFICE
1150 5th Street, S. E.
1st Floor
Washington, D.C. 20003
PHONE: (202) 698-3819
FAX: (202) 698-3825



### HEARING NOTICE

| MEMORANDUM VIA: [√] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO      Parent (or Representative): A. Fisher          Fax No.: (202) 552-7125

LEA Legal Counsel:    **OGC**                          (202) 442-5098

RE:    ▓▓▓▓▓▓▓                                and (LEA) DOB:
       Student's Name

FROM:    SHARON NEWSOME
         Special Education Student Hearing Office Coordinator

DATE SENT:    **9/21/07**                              **REVISED COPY**

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on.
Please be advised that the hearing has been scheduled for:

DATE:    10/4/07                              **Revised Time Only**

TIME:    9:00, 11:00 & 1:00

AT:    1150 5th  Street, S. E. , Washington, D.C. 20003
       1st Floor

ASSIGNED HEARING OFFICER: _____

[ ] THIS IS A FINAL NOTICE OF HEARING: If you wish to request a continuance of this hearing, you must submit your request to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances are made *exclusively* by the Hearing Officer, and cannot be made by **SHO** administrative staff.  Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[√] THIS IS A PROVISIONAL NOTICE OF HEARING: The SHO was unable to accommodate any of your proposed dates.  If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer.  If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you.  Disclosure of evidence and witnesses to the opposing party is required at least **five business days** prior to the hearing with copies to the Special Education Student Hearing Office.

7

# District of Columbia Public Schools
### *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
1150 5th Street, S. E.
1st Floor
Washington, D.C. 20003
PHONE: (202) 698-3819
FAX: (202) 698-3825



### HEARING NOTICE

| MEMORANDUM VIA: [√] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO:   Parent (or Representative): **A. Fisher**     Fax No.:  (202)  552-7125

     LEA Legal Counsel:   **OGC**         (202)  442-5098

RE:     ▓▓▓▓▓▓▓     and (LEA)  DOB:
     Student's Name

FROM:   **SHARON NEWSOME**
     Special Education Student Hearing Office Coordinator

                                               **REVISED COPY**

DATE SENT:   **9/21/07**

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on.
Please be advised that the hearing has been scheduled for:

     DATE:     **10/9/07**                <u>Resch'd  f/ 10/5/07</u>

     TIME:     9:00, 11:00 & 1:00

     AT:     1150 5th Street, S. E. , Washington, D.C. 20003
           1st Floor

     ASSIGNED HEARING OFFICER: _____.

[ ] THIS IS A FINAL NOTICE OF HEARING: If you wish to request a continuance of this hearing, you must submit your request to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances are made *exclusively* by the Hearing Officer, and cannot be made by SHO administrative staff.  Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[√] THIS IS A PROVISIONAL NOTICE OF HEARING: The SHO was unable to accommodate any of your proposed dates.  If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer.  If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you.  Disclosure of evidence and witnesses to the opposing party is required at least <u>five business days</u> prior to the hearing with copies to the Special Education Student Hearing Office.

8

Exhibit 4

# The CHILDREN'S LAW CENTER

## THE HEALTH ACCESS PROJECT AT CHILDREN'S NATIONAL MEDICAL CENTER

September 20, 2007

Aaron Terry – Special Education Coordinator
Gibbs Elementary School
500 19th Street, NE
Washington, DC 20002

*Sent by facsimile to (202) 724-3996*

Re: T███ W█████, DOB ███/2000

Dear Mr. Terry:

    I received your voice mail of September 20, 2007 regarding T████ W█████. As you are aware, a due process complaint was filed with the DCPS Student Hearing Office on August 1, 2007, and a hearing is in the process of being scheduled. Further, this case is now in federal District Court, given the urgency and seriousness of T████ present situation. Accordingly, a meeting at the school to discuss T████ classification would not resolve the issues set forth in the complaint and District Court filings. Based on the present circumstances, the only appropriate resolution to this case would, at a minimum, require immediate placement at The Children's Guild, as this school placement would provide T████ with the educational program and services as well as the safe setting that T████ requires.

    When you called me on Tuesday, September 18, 2007, you discussed with me T████ recent fire-setting incident at Gibbs Elementary School as well as T████ special needs and profile. You indicated that Gibbs cannot provide a safe and appropriate placement for T████, and discussed the importance of taking the steps necessary to move T████ to a school placement that can ensure his safety and provide an appropriate educational setting for him as soon as possible. I appreciate your ongoing efforts to obtain such a resolution.

    If you have any questions or concerns, please do not hesitate to call me at (202) 467-4900, ext. 525.

Sincerely,

*Aaron J. Fischer*
Aaron J. Fischer
Attorney for Ms. Dorothy Watson

Cc: Office of General Counsel, DCPS (442-5098)
Eden Miller, Office of the Attorney General (724-3625)

Exhibit 5



# CLEVELAND ELEMENTARY SCHOOL

Two FAX:
2/552-7125
and
2/727-3625

*From the Desk of:* ___Aaron Terry___

To: Mr. Aaron Fischer, Staff-Attny and Mr. Eden Miller, Esq. OGC-DCPS

Number of pages including cover:___2___

CC: Ms. Miller, Esq. OGC DCPS

Notes: __Mr. Fischer, Staff-Attny__

We would like to have Ms. Watson and you
participate at this meeting for Strategies
for T█████ W█████ today as previously mentioned. (AW)

Contact me at __2/939-4380___ if necessary..



12

☒
☐
☐
☐

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**

**WASHINGTON, D.C.**

**CONFIRMATION OF MEETING NOTICE**

Date: 9/25/2007

Ms. Watson
_Parent / Guardian Name_

RE: ▮▮▮▮▮▮▮▮

1926 Rosedale St          NE
_Street #   Street                    Quad   Apt. No._

SCHOOL: Gibbs Elementary

Washington          DC 20002
_City                          State    Zip Code_

ID NO. 9108685

DOB: ▮▮▮▮▮▮▮▮

Dear   Ms. Watson

A multidisciplinary team (MDT) meeting is scheduled to discuss the status of your child's educational needs. Your participation is essential, and we look forward to your valuable input. Your child's meeting is scheduled as follows:

Date: 9/25/07   Time: 1:30pm   Place/Location: Gibbs ES
500 19th St NE
Washington, DC 20002

The purpose and details of the meeting are printed below. You and the school may have additional individuals attend the meeting who have knowledge or special expertise regarding your child. Invited participants are listed under MDT members.

**\*The purpose of this meeting is to:**

☐ **\*\*develop/review IEP (including consideration of extended school year (ESY) services
☐ **\*\*review evaluation or reevaluation information
☐ develop the student evaluation plan (SEP)
☐ discuss documented levels of service
☐ discuss consent for evaluations
☐ discuss termination of service(s)

☐ discuss placement
☐ determine manifestation
☐ discuss eligibility
☐ discuss transfer
☒ discuss Personal Health Information (PHI)

☐ **\*\*discuss CompEd
☐ \*consider transition services need
☐ discuss quarterly review
☒ behavior plan review
☐ discuss request for evaluation(s)

☐ **\*\*review records to support the completion of services as follows:

☐ Graduated        ☐ Certification of IEP        ☐ Aged Out        ☐ Deceased        ☐ Moved out of Jurisdiction
☐ Completion of IEP Requirements        ☐ Dropped Out        ☐ Other:

**\*\*Placement will be discussed.**

MDT Members:   ☒ Principal or Designee        ☒ General Education Teacher        ☒ Psychologist
               ☒ Parent                      ☒ Special Education Teacher        ☒ Other: Attorney
               ☒ LEA Representative           ☐ Speech and Language
               ☐ Student                      ☒ Social Worker

Parents may bring individuals to participate in the MDT meeting. These participants should have knowledge or special expertise regarding the child. The following individuals invited by parent:

If the purpose of the meeting includes consideration of a transition plan, your child is invited to attend and a representative of the following agency(ies) may be invited, if appropriate
\*                                              \*

Any questions you may have concerning your child's program will be discussed at the above meeting. A copy of the Procedural Safeguards for parents is enclosed for your information. If the school can be of assistance to you, please contact   Mr. Terry                                    at   (202) 724-4573                      (school telephone number).

Sincerely,

Exhibit 6

## Miller, Eden (OAG)

| | |
|---|---|
| **From:** | Aaron Fischer [AFischer@ChildrensLawCenter.org] |
| **Sent:** | Tuesday, September 25, 2007 2:47 PM |
| **To:** | Terry, Aaron J. |
| **Cc:** | Miller, Eden (OAG); george.valentine@k12.dc.us |
| **Subject:** | T███W████ |
| **Attachments:** | T███W████ Sept. 20 2007.pdf |

Mr. Terry,

I received the Manifestation Meeting documentation you faxed yesterday. Thank you for your swift reply. I have also received the Meeting Notice that proposes a meeting for tomorrow at 1:30 pm. Given the short notice, Ms. Watson will not be able to attend given her work schedule. What is more, please see the attached letter I sent to you last week. Once again, given the present circumstances regarding major concerns about ████'s safety and his continued academic failure, the only appropriate resolution requires immediate placement at The Children's Guild, which can provide ████ with the educational program and services as well as the safe setting that he requires based on his special needs.

Sincerely yours,

Aaron J. Fischer, Esq.
Skadden Fellow/Staff Attorney - Health Access Project
The Children's Law Center
616 H Street, NW - Suite 300
Washington, DC 20001

P - (202) 467-4900, ext. 525
F - (202) 552-7125
AFischer@childrenslawcenter.org

Aaron J. Fischer, Esq.
Skadden Fellow/Staff Attorney - Health Access Project
The Children's Law Center
616 H Street, NW - Suite 300
Washington, DC 20001

P - (202) 467-4900, ext. 525
F - (202) 552-7125
AFischer@childrenslawcenter.org

15

9/25/2007

Exhibit 7

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

MDT

MDT REFERRAL DATE: _____

STUDENT: T█████ W█████          SCHOOL: M.E. Gibbs ES          DATE: 9/25/07

PARTICIPANTS: (Print Name)

Andrew Johnson
Agron Terry
Ruth Williams

PARTICIPANTS: (Sign Name)

_(signature)_
_(signature)_
Ruth Williams

POSITION

Psychologist
SEC
Teacher - Gr. 2

An MDT Team Meeting was held on T█████ W█████ this afternoon to develop strategies or Plan of Action for T█████ return to school tomorrow. The guardian, Mr. Watson and her attorney were not available at the meeting despite Confirmation or letter of Notification that their presence is needed. Ms. Williams, 2nd grade Teacher stated that she has not worked with him for very long this school year. However she does have a quiet area in the classroom and a cooling off area for students. Currently, Ms. Williams, escorts her students to the restroom on the 2nd Floor, since First Floor Bathroom is closed due to fire at this time.

WASHINGTON, DC

MDT REFERRAL DATE: _____

**MULTIDISCIPLINARY TEAM (MDT)**
**CONTINUATION MEETING NOTES**
MEETING TYPE: Manifestation Determination

Page: 1 of 2

STUDENT: T█████ W█████      SCHOOL: Gibbs      DATE: _____

Ms. Williams will escort Student to lunch and he will be supervised by Lunch Duty Monitors including Recess.

Also he will sit with his group during class time, like the other Students. If student needs to use restroom in the afternoon he will be escorted to the bathroom. At the end of the school day student will be escorted to the office since he catches the bus to after school program not at Gibbs ES, daily.

End of Notes - Aaron Team, Sec

Exhibit 8

# MANIFESTATION DETERMINATION

## SETTING THE STAGE

In carrying out a manifestation determination review, the *MDT must consider, in terms of the behavior in subject to disciplinary action, all relevant information, including:

- Evaluation and diagnostic results or other relevant information supplied by the parent;
- Observation/anecdotal records of the student;
- IEP and placement of the student;
- Functional Behavior Assessment and/or Behavior Intervention Plan
- The current IEP and placement were appropriate and the special education services, supplemental aides and services, and behavior intervention were provided consistent with the IEP & placement

If the manifestation determination of the MDT is "NO" to either statement below, then the behavior must be considered a manifestation of the student's disability.

1) The student understood the impact and consequences of the behavior subject to disciplinary action;

    _X_ YES    ___ NO

2) The student had the ability to control the behavior subject to disciplinary action.

    _X_ YES    ___ NO

The determination of the MDT is that the behavior is:

___ a manifestation of the disability

_X_ not a manifestation of the disability. (Transfer records to general education for Chapter 25 procedures)

## NEXT STEPS

Note: ~~█████████~~

All District of Columbia Public Schools' students are given due process rights relative to student discipline in Chapter 25 of the District Columbia Municipal Regulation, Title Five (DCMR). The DCMR Title Five document is located in all public libraries and in the main office of District of Columbia Public Schools.

## MANIFESTATION DETERMINATION (Cont.)

District of Columbia Municipal Regulations, Chapter 25 requires parental notification prior to any action taken against the student. In addition, a pre-suspension parent conference with the student is required within two school days of the infraction. Infractions fall in the following categories:

Level 1 — Ten days or less
Level 2 — Eleven to twenty-four days*
Level 3 — Twenty-five or more days*

*Requires Authorization from the Student Hearing Office

IDEA '97 requires a manifestation determination review by the MDT immediately, if possible, but in no case later than ten school days after the date on which the decision to take disciplinary action is made. The review must be conducted by the MDT in a meeting.

*Although IDEA allows up to ten days for a manifestation determination (MDT meeting), DCPS requires a pre-conference within two days of the infraction.

Committee Recommendation(s):

Level 2 - 11 Days (A)

① Student has received 8 Days of In-house Suspension
② 8 Days Out of School Suspension

| Signatures | Title | YES | NO |
|---|---|---|---|
| Rosa Rea Lee Rosa E. Lee MSW LICSW | Social Worker | ✓ | |
| _[signature]_ | Psychologist | ✓ | |
| _[signature]_ | SPECIAL ED. TEACHER | ✓ | |
| _[signature]_ | Social Worker | ✓ | |
| _[signature]_ | PRINCIPAL | ✓ | |
| _[signature]_ Sp. Ed. Coord. | | ✓ | (N/A) |

Special Education Adherence Guide – School Year 2001-2002

76

21

Exhibit 9

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

| DCPS - IEP Page: of 4 |
| --- |

Additional Comments: ☐

## 1. IDENTIFICATION INFORMATION

| 11. CURRENT INFORMATION |
| --- |

Date of IEP Meeting: **5/09/2007**

Student Name: Last **Watson**          First **Tenia**          MI

Date of Last
IEP Meeting:          N/A

Student ID **9108685**     Soc. Sec. No.          Age: 7      Grade 1st

Date of Most Recent
Eligibility Decision:

Gender: ☒M ☐F   Date of Birth ****/00    Ethnic Group **Black**

Purpose of IEP Conference:

☒ Initial IEP          ☐ Review of IEP
☐ Requested Eval.     ☐ 3yr Re-Eval.

Address   1926      Rosedale Street      N.E.  # 1
House No.          Street Name          Quadrant  Apartment #

Washington          D.C.      20002
City          State  Zip Code

☐ Non-attending

Attending School **Gibbs Elementary**      Home School **Gibbs Elementary**

Indicate Level of Standardized Assessment:
III

☒ Elem.  ☐ Mid/JHS  ☐ SHS  ☐CWS /

Parent   **Ms. Dorothy Watson (Great - Grandmother)**

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

Address of (if different from student):   ☒ Parent  ☐ Guardian  ☐ Surrogate
(Same as above)

House No. Street Name          Quad  Apt. No.  City          State  Zip Code
Telephone: Home **(202) 399 - 2516**      Work

| BEHAVIOR | TRANSPORTATION |
| --- | --- |
| ESY | TRANSITION |

| III. LANGUAGE | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
| --- | --- | --- | --- | --- | --- |
| Student | English | English | English | Native Lang. | Oral |
| Parent | English | English | English | Native Lang. | Rdg./ Written |
| Home | English | English | English | Native Lang. | Instrument: |
| | | | | | Date: |

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd SpEd Total | | | FREQUENCY Hr./ Min O/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks./mos |  |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Specialized Instruction | | 15 | 15 | Hrs  W | Special Education Teacher | 5/10/2007 | 10 | months |
| Psychological Services | | 1 | 1 | Hrs.  W | Psychologist/Social Worker | 5/10/2007 | 10 | months |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| TOTAL | | | 16 | Hours Per Week | | | | |

### V. Disability(ies)

Specific Learning Disability

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20%  ☒ 21-60%  ☐ 61-100%

Percent of time NOT in a Regular Education Setting   49%

### VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Ms. Dorothy Watson (Guardian) *Dorothy Watson*

Ms. K. Davis Principal

Mr. R. Weismiller, Sp. Ed. Teacher

Ms. Verdell, Grade 1 Teacher,

Ms. Lee, Social Worker

Aaron Fischer, Attorney

Mr. A. Johnson, School Psyh.

Mr. Aaron Terry, SEC

Michael Witman

Tracy Goodman, *The Children's Law Center*

**I AGREE** with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.
Parent/Guardian Signature          Date

23

| Student Name | W▒▒▒▒▒ | T▒▒▒▒ | Home School | Gibbs Elementary | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 9108685 | DOB ▒▒/▒▒/2000 | Attending School | Gibbs Elementary | Page 2 of 4 |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

Additional Comments: ☐

**Academic Areas: (Evaluator)** Andrew Johnson, MA.,LPC/Psych.

Math Strengths:

Using whole numbers to describe quantities. Writing numbers to correspond with rote counting.

Impact of disability on educational performance in general education curriculum:

Will make learning more difficult.

Reading Strengths:

Recognizes some letters of the alphabet and a few sight words.

Impact of disability on educational performance in general education curriculum:

Will make learning more difficult.

| Score(s) When Available | | |
|---|---|---|
| Math Cal. | GE | K2 |
| Math Res. | GE | PK |
| See goal page: | 4 | |
| Date: | 01/31/2007 | |
| Rdg. Com | GE | 10 |
| Rdg. Basic | GE | K8 |
| Written Ex. | NA | NA |
| See goal page: | 2 | |
| Date: | 1/31/2007 | |

**Communication (Speech & Language) (Evaluator)**

Strengths-

Impact of disability on educational performance in general education curriculum:

| Score(s) When Available | | |
|---|---|---|
| Exp.Lang. | | |
| Rec-Lang. | | |
| Artic | | |
| Voice | | |
| Fluency | | |
| Exp. Voc. | | |
| Rec. Voc. | | |
| See goal page: | | |
| Date: | | |

**Motor/Health (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

| Score(s) /Results When Available | | |
|---|---|---|
| | | |
| | | |
| | | |
| See goal page: | | |
| Date: | | |

**Social Emotional Behavioral Areas: (Evaluator)** Andrew Johnson, MA.,LPC/Psych.

Strengths:

Is sometimes cooperative and calm.

Impact of disability on educational performance in general education curriculum:

Will make learning more difficult.

| Score(s) When Available | | |
|---|---|---|
| NA | | |
| See goal page: | 1 | |
| Date: | 1/31/2007 | |

**Cognitive/Adaptive Behavior: (Evaluator)** Andrew Johnson, MA.,LPC/Psych.

Strengths:

Some aspects of his processing speed is superior to most everyone else his age.

Impact of disability on educational performance in general education curriculum:

Will make learning more difficult.

| Score(s) When Available | | |
|---|---|---|
| VCI | 878 | |
| PRI | 100 | |
| FSIQ | 99 | |
| See goal page: | | |
| Date: | | |

**Prevocational Skills: (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

| Score(s) When Available | | |
|---|---|---|
| | | |
| | | |
| | | |
| See goal page: | | |
| Date: | — | |

District of Columbia Public Schools        07-02-2001        Division of Special Education        Appendix A        IEP Page 2 of 4

24

| Student Name | W_____ | T_____ | HomeSchool | Gibbs Elementary | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 9108685 | DOB ___/2000 | Attending School | Gibbs Elementary | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | | Goal Number: 2 |
|---|---|---|---|

Area addressed by goal: **Academics - Reading/Language Arts**

ANNUAL GOAL: (including mastery criteria.)

T_____ will demonstrate improvement in reading skills by mastering the short term objectives as measured by formal and informal testing with 80% accuracy as measured within a grading period.

Provider(s): Special Education Teacher, General Education Teacher and Parent

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| T_____ will recognize and recite the letters of the alphabet individually in 4 out of 5 attempts with 80% accuracy. | | Monthly |
| T_____ will recognize basic vowel sounds to decode basic sight words in 4 out of 5 attempts with 80% accuracy. | | Monthly |
| T_____ will listen to a short story and write one sentence and or draw a picture about the story in 4 out of 5 attempts within a grading period. | | Monthly |
| T_____ will use pictures to help recognize basic words, (i.e. dog, cat, mop, etc.) within a grading period. | | Monthly |
| Given multisensory activites on the student's instructional level, T_____ will read and share thirty (30) books with pictures or book equivalents within a year. | | Monthly |
| T_____ will use the writing process (prewriting, drafting, revising, and publishing) to convey meaning with 80% accuracy. | | Monthly |

EVALUATION PROCEDURE(S)

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

| Student Name | W_____ | T____ | Home School | Gibbs Elementary | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 9108685 | DOB __/__/2000 | Attending School | Gibbs Elementary | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: 3 |
|---|---|---|

Area addressed by goal: **Academics - Writing/Language Arts**

**ANNUAL GOAL: (including mastery criteria.)**

T____ will demonstrate intructional growth with 80% accuracy in writing as measured by formal and informal testng, within a grading period.

**Provider(s):** Special Education Teacher, General Education Teacher and Parent

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| T____ will write all sentences on a straight line in 4 out of 5 attempts with 80% accuracy.. | | Monthly |
| T____ will write four word sentences in 4 out of 5 attempts with 80% accuracy. | | Monthly |
| T____ will write his personal data weekly ( birthdate, address, phone number and name), in 4 out of 5 attempts with 80% accurracy. | | Monthly |
| T____ will write the correct day of the week on his paper in 4 out of 5 attempts with 80% accuracy. | | Monthly |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

| Student Name | W_____ | T____ | HomeSchool | Gibbs Elementary | DCPS - IEP |
| Student ID Number | 9108685 | DOB __/__/2000 | Attending School | Gibbs Elementary | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | . | Goal Number: 4 |

Area addressed by goal: **Academics - Mathematics**

**ANNUAL GOAL: (including mastery criteria.)**

T___ will demonstrate improvement in basic mathematic skills by mastering short term objectives by formal and informal testing with 80% accuracy.

Provider(s): Special Education Teacher, General Education Teacher and Parent

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| T___ will complete simple one digit addition and subtraction of numbers from 1 to 10 without regrouping with 80% accuracy within a grading period. | | Monthly |
| T___ will use whole numbers to describe quatities with 80% accuracy. | | Monthly |
| T___ will create and solve simple addition and subtraction problems both written and oral using whole numbers with 80% accuracy. | | Monthly |
| T___ will solve basic math problems involving money both numerically and written forms with 80% accuracy. | | Monthly |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other

| Student Name | Wa̲██ | Ta̲██ | HomeSchool | Gibbs Elementary | | DCPS - IEP |
|---|---|---|---|---|---|---|
| Student ID Number | 9108685 | DOB | █/2000 | Attending School | Gibbs Elementary | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | - Goal Number: 1 |
|---|---|---|

Area addressed by goal: Social Emotional

**ANNUAL GOAL: (Including mastery criteria.)**

T██ will demonstrate gowth in social emotional functioning, as evidenced by mastery of the short term objectives by 80%.

Provider(s): Social Worker/Psychologist

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (Include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| T██ will take risks in situations that are socially challenging (ie. presentation in front of the class, etc.) | | Monthly |
| T██ will demonstrate improved self - image as evidenced by increased participation in school activities, positive interaction with others and increased personal responsibility for behavior in 8 out of 10 opportunities. | | Monthly |
| T██ will distinguish between appropriate and inappropriate behaviors with minimal assistance from adult authority as measured in 8 out of 10 opportunities. | | Monthly |
| T██ will identify personal strengths and weakness when prompted by therapist in 8 out of 10 opportunities. | | Monthly |
| T██ will communicate personal feelings and perceptions of self in relation to to others with minimal prompting and assistance from the therapist in 8 out of 10 opportunities. | | Monthly |
| T██ will accurately describe social situations and demonstrate appropriate responses to these situations with minimal assistance from the therapist in 8 out of 10 opportunities. | | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio ☒ Log ☐ Chart ☐ Test ☒ Documented Observation ☐ Report ☐ Other _____

| Student Name W___ T___ | | Managing School Gibbs Elementary | DCPS - IEP |
| Student ID Number 9108685 | DOB __/__/2000 | Attending School Gibbs Elementary | Page 4 of 4 |

Additional Comments: ☐

## IX LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education?   Yes ☐   No ☒

Explanation for removal out of regular education classroom.

Student requires low student to teacher ratio student is significantly below grade level requires intensive or individualized instruction.

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
| | GenEd | SpEd | Total | Hr./ Min | DM/M. | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing:   ☐ None needed

| Timing/Scheduling: | Untimed Breaks; Extended Time |
| Setting: | Preferential seating reduced minimal distraction. Cooling off period |
| Presentation: | Read directions/test to student/ verbal rec. of instruction |
| Response: | Orally |
| Equipment: | Calculator,Manipulatives and Times Table Chart |

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I Tested with non-disabled peers under standard conditions without accommodations.

☒ Level III (Describe non-uniform conditions for level 111) Tested under non-standard conditions with permissible accommodations

☐ Level V Portfolio:

☐ Level II (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

☒ Reading
☒ Mathematics
☒ Written Expression
☐ Other:
☐ None

☐ Physical/Sensory
☒ Social Emotional
☐ Physical Development

☐ Transition
☐ Vocational
☐ Independent Living
☐ Speech/Language

Modifications:
☒ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
| General Education Classroom | Reject will not meet needs for service | Continued school failure. |
| Combination Gen. Ed / Resource Room | Accept will meet needs for service | Time away from non - disabled peers. |
| Out of General Education Setting | Reject will not meet needs for service | Impact on self esteem. |

Modification(s) /Accommodation (s) to address the harmful effects:

Location for Services

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 4 of 4

29

## DOCUMENTED LEVEL OF SERVICE (DLOS)
Complete and attach to MDT/IEP meeting notes

| School | Gibbs ES | Principal | Ms. Kimberly Davis | Special Education Coordinator | Mr. Terry |
|---|---|---|---|---|---|
| Date 5/9/2007 | Case Manager | Mr. Terry | Technical Support Supervisor | | Ms. C. Helton |

Student T___ W___ DOB ___/2000 Age 7 Grade 1st IDₐ SSN#

Parent Ms. Dorothy Watson   Telephone (H) (202) 399-2516   (W)

Address _____ Washington, DC 20002   State _ Zip Code

REFERRAL SOURCE (Check)  ☐ 120 Day  ☒ Recert  ☐ IHO  ☐ SA  ☐ MA

☐ Nonpublic  ☐ Residential  ☐ Citywide  ☐ Court  ☒ Local School  ☐ Other

Previous least restrictive environment (LRE Setting)   **Combination Reg Ed / Sp. Ed. Classroom Setting**

---

### JUSTIFICATION FOR SETTING CONSIDERATION
(Submit TAT/MDT Documentation)
### SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/ MODIFICATIONS | 3. DATA REQUIREMENTS |
|---|---|
| | Current IEP ........................................ Yes ☒ No ☐ |
| | Signatures of required participants (MDT notes) .. Yes ☒ |
| | Intervention Behavior Plan ..................... Yes ☐ |
| 1) Extended Time – Response and Presentation | Copies of current class work and homework assignments . Yes ☒ |
| | Medical Reports ............................ Yes ☒ No ☐ |
| 2) Time – Extension Presentation | Clinical Reports ........................... Yes ☒ No ☐ |
| | Psychiatric Reports ........................ Yes ☒ No ☐ |
| 3) Multiple Test Session - Equipment | Medication ................................ Yes ☐ No ☒ |
| | Attendance Record ............................ Yes ☒ |
| | Copies of most recent evaluation(s) .......... Yes ☒ |

| 4. Results of all interventions (TAT, MDT, etc. and attach meeting notes.) | 5. Resources needed for program implementation |
|---|---|
| MDT Initial IEP – 5/9/2007 | Specific Meeting Place |

---

### 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school (Determined through the IEP team.) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented need) |
|---|---|---|---|
| 1 | ☐ in general education setting | ☐ general education with consultation from special education staff | ☐ between 0% and 30% of service time |
| 2 | ☒ combination general education and resource classroom | ☒ combination of general education, special educators and related service providers | ☒ between 31 % and 80% of service time |
| 3 | ☐ out of general education classroom | ☐ special education and related service services | ☐ between 61 % and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children in those services and activities (300.104) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings)

### Check the level of need as indicated
### DIRECTIONS:

If two or three boxes are checked in the Row 1, check LOW.
If two or three boxes are checked in the Row 2, check MODERATE.
If two or three boxes are checked in the Row 3, check HIGH.

If one box is checked in each row, check either MODERATE or HIGH, depending on the need of the student.

### 7. LEVEL OF NEED
☐ LOW   ☒ MODERATE   ☐ HIGH

07-03-2001   Attention: Technical Support Supervisor / PERM Compliance Team

30



### DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### WASHINGTON, D.C.

**INITIAL PLACEMENT**

Student ___T___k___ Wa___ DOB __/__/00 Age 7 Meeting Date 5/9/07
Address 926 Rosedale R.N.E. 1, DC Telephone (W) 2/399-2516 (H) _____

Dear Parent:

You have been provided a copy of the "Procedural Safeguards – Parents Rights" booklet. We would like to remind you at this time that:

- granting consent is a voluntary action on your part;
- this consent may be revoked at any time although the school district is required to take all necessary action to provide appropriate service(s) and may be required t initiate due process procedures to obtain consent; and
- by granting consent in writing, you are agreeing to the process indicated below.

**X** Initial Placement

After development of an IEP, the MDT, with the parent, determined that your child will receive special education and related services at ___GIBBS ES(QC)___ school, for:

___ 0% - 20%,    X 21% - 60%, or    ___ 61% - 100%,

### Parent Response Section:

I give permission for District of Columbia Public Schools to proceed with the initial placement for my child.

_Dorothy Watson_                              5/9/07
Parent/Guardian Signature                        Date

DISTRICT OF COLUMBIA PUBLIC SCHOOL
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM (MDT)

Prior to Action Notice

Check Purpose:
☑ Initial Evaluation
☑ Initial Placement
☐ Reevaluation
  ☐ Change in Category Exit
  ☐ Related Service Add
  ☐ Related Service
  ☐ Change in Placement
  ☐ Annual
  ☐ Other

Date **5/09/2007**

Student **T____ W____**  DOB ____2007

School **Gibbs ES**

Current Disability Category **Learning Disabled**

Setting **Combination Reg. Ed./Sp. Ed. Setting**

Dear **Ms. Dorothy Watson**

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.

Therefore, you are being notified of the following proposed changes:
☑ Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
☐ Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
☐ Other _____

A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)

☐ Your child is not eligible for special education service(s).
☑ Your child is eligible or continues to be eligible to receive special education services as a student with **Learning Disabled**
☐ Your child will begin receiving _____ as a related service(s).
☐ Your child will no longer receive _____ as a related service(s).
☐ Your child's category of disability is being changed from _____ to _____
☐ Your child's alternative placement on continuum (next setting) is being changed,
  from _____ to _____
☐ Your child is no longer eligible and will be exited from the special education program.
☐ Other: _____

Location of Services _____

Description and Explanation of agency action proposed or refused.

Based on documentation, the MDT proposed Combination Gen. Ed./Sp. Ed. Resource Room to meet students academic needs.

Description of other options considered and reason for rejection of each action

Full Time Reg. Ed. and Out of Gen. Ed. Classrooms are rejected Student requires Resource Room in Order to access General Education Curriculum.

Other relevant factors to the decision- **Classroom Observations**

MDT Members: ☑ Principal or Designee  ☑ General Education Teacher  ☑ Psychologist
☑ Parent  ☑ Special Education Teacher  ☐ Other: _____
☑ Student  ☐ Speech and Language
☑ Social Worker  ☑ *LEA & Interpreter (*may be one)

*Parents may bring individuals to participate in the MDT meeting. These participants should have knowledge or special expertise regarding the child. The following individuals invited by parent: _____

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the Procedural Safeguards for parents, which are enclosed for your information.
If I can be of assistance to you, or have questions regarding the Procedural Safeguards,
please contact **Mr. Terry** at **(202) 727 - 8633** (school telephone number).

See attachments for – EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

MDT Prior to Action Notice
07-02-2001

1

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION
MULTIDISCIPLINARY TEAM
(MOT)

Student _____ DOB ____ Age 7 Grade 1 10 9/08/05

☐ **Kinetic Family Drawing** - a projective drawing technique measuring one's perception of her family and her role within the family. Date of Report _____

☐ **Rorschach Psychodiagnostic Test** - a projective measure y which one's responses to inkblots reveal personality structure, ego strengths and reality testing in ages 3 and older. Date of Report _____

☐ **Goodenough-Harris Drawing Test** -a projective drawing procedure measuring intellectual perceptual-motor maturity and personality through the use of drawings of self and a member of the opposite sex in ages 3 to 15.11 years. Date of Report _____

☐ **Conner's Parent and Teacher Rating Scales** - a paper-and-pencil instrument measuring problem behaviors of children and adolescents as reported by the child's teacher, parents, or alternate care-giver. Date of Report _____

☐ **The Vineland Adaptive Behavior Scales** - assesses adaptive and social competency skills. Date of Report _____

☐ **Test of Language Development Primary - Revised (TOLD-P)** - measures primary language proficiency and specific strengths and weaknesses in language skills. Date of Report _____

☐ **Kaufman Assessment Battery for Children** - assesses the ability to solve problems using simultaneous and sequential metal processes in four global areas: Sequential Processing, Simultaneous Processing, Mental Processing, and Achievement. Date of Report _____

☐ **Preschool Language Scale** - measures auditory comprehension and verbal ability skills. Date of Report _____

☐ **Oral Peripheral Speech Examination** - a procedure to determine whether the examinee can appropriately use the lips, tongue, mouth, etc. Date of Report _____

☐ **Clinical Evaluation of Language Fundamentals - III** - assesses the child's language functioning including processing and production. Date of Report _____

☐ **Expressive One Word Picture Vocabulary Test** - assesses the child's single word expressive vocabulary. Date of Report _____

☐ **Receptive One Word Picture Vocabulary Test** assesses the child's single word receptive vocabulary. Date of Report _____

☐ **Goldman-Fristoe Test of Articulation** - assesses the production of consonants in simple and complex contexts. Date of Report _____

☐ **Peabody Picture Vocabulary Test-Revised** - individually administered, multiple choice test measuring nonverbal, receptive vocabulary. Date of Report _____

☐ **Fisher-Logemann Test of Articulation Competence** - assesses articulation proficiency with single sounds, consonant blends, and vowel production. Date of Report _____

☐ **Classroom Observation** - assesses present functioning of the student within the classroom environment.

Free or Low Cost Legal Services

Neighborhood Legal Services
701 4' Street, N.E.
Washington, D.C. 20001
202-682-2700 (NW)
202-682-2723 (NE)
Fax 202-682-0588

Neighborhood Legal
Services 1213 Good Hope
Road, S.E. Washington, D.C.
20020 202-678-2000
Fax 202-889-3374

University Legal Services
300 I Street, N.E.
Washington, D.C. 20002
202-547-0198
Fax 202-547-2662

The Children's Law Center Inc. 1050
Connecticut Avenue, N.W. Suite 1200·
Washington Square
Washington, D.C. 20036-5317
202-467-4900
Fax 202-467-4949

National Coalition for Students
with Disabilities
10560 Main Street, Suite 417
Fairfax, VA 22030
703-267-4588    (fax) 703-267-6992

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

MDT | MDT REFERRAL DATE: _____

STUDENT: T██████ W██████     SCHOOL: Gibbs ES     DATE: 5/09/07

| PARTICIPANTS: (Print Name) | PARTICIPANTS. (Sign Name) | POSITION |
|---|---|---|
| Dorothy Watson | | In c Ke 9 |
| Aaron Teng | | SEC |
| Aaron Fischer | | Parents Atty |
| Andrew Johnson | | Psychologist |
| Tracy Goodman | | Childrens Law Center |
| Michael Weber | | The Children's Law Cntr |

An MDT Intial IEP Follow Up Meeting was held on T██████ today. Everyone introduced themselves. Mr. Wesmille, Sp. Ed. Teacher was not available at the meting, however, he reviewed the drafted academic goals with the team.

Mr. Johnson – School Psychologist – Reviewed the Strengths and Weaknesses on T██████ for page 2 of his IEP. Based n the evaluations and the Team collaborative decision T██████ will receive 1 hour of Social Work Psych. Counseling per week. Specialized Instruction – He will receive 15 hours of Special Education Services or 49% of the time, not in Gen. Ed. His Level of Assessment will be Level III.

Ms. Verdell, Grade 1 Teacher - Stated that she has seen some improvement with his behavior. He also is completing some of his homework. Ms. Verdell also stated that she did not get the impression that T██████ could not do the academic portion, but it was his behavior that was the problem.

The FBA will have to be completed at another meeting, since we do not have the worksheets returned to us. - Ms Aaron Fischer Attorney for

The team discussed its concern of the setting in which T██████ would receive spec. ed. instruction. Ms. Verdell said that T██████ should be outside of her classroom and in a smaller setting where he can receive individualized attention. No one at the meeting knows the amount of time T██████ would receive inclusion vs. pull-out. The psychologist's recommendations state that T██████ should be in a different educational setting. The team agrees that T██████ is unable to receive appropriate instruction

in his academic subjects in the regular ed classroom. T██████ requires sufficient time - essentially all specialized instruction time - entirely outside the regular ed setting. Gibbs Elementary provides spec ed instruction through inclusion which is inappropriate spec ed instruction that includes substantial

34

DISTRICT OF COLUMBIA PUBLIC SC___OLS
WASHINGTON, DC

MDT REFERRAL DATE: _____

**MULTIDISCIPLINARY TEAM (MDT)**
**CONTINUATION MEETING NOTES** .
MEETING TYPE: <u>Initial IEP</u>

Page: ~~2~~ of ~~2~~ (ACC)

STUDENT: T___ W___            SCHOOL:  Gibbs            DATE: 5/9/07

Mr. Weismiller joined the meeting very briefly. He
has 19-26 students in his spec ed class all day.
There is no teacher's aide in the class. Mr. Johnson
and the team agree that this is an inappropriate
setting for T___ given the recommendation for a
smaller educational setting.

AJF

Exhibit 10

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**MEETING NOTES**

MDT REFERRAL DATE _____

| MDT |
|-----|

STUDENT: T___ W___     SCHOOL: Gibbs ES        DATE: 3/22/07

PARTICIPANTS: (Print Name)        PARTICIPANTS: (Sign Name)        POSITION

| Khadijah Verdell | Khadijah Verdell | Gen. Ed. Teach. |
| Michael Wilt | | Children's LawCenter |
| Dorothy Wider | D. Evans | Company guardian/grat-mom |
| Aaron Finder | Aaron J. Finder | Parent Attorney |
| Ray Goodman | R. Goodman | Children's Law Center |
| Andrew Jeffrey | | Psychology |
| Aaron Terry | | SEC |

An MDT Review of Psycho – Educational Evaluation was held on T___ W___ today.
Everyone introduced themselves. Mr. Johnson reviewed his Evaluation on T___. Based on the
report, T___ is functioning below grade level academically. In particular his math skills are very
low. He is also showing behavior problems that interfere with his academic progress.   Based
on the report T___ is eligible for Special Education Services as a Learning Disabled Student
The Team. An Initial IEP Meeting will be scheduled for April 13, 2007 at 2:00pm.  The Team
agrees to speak to the Interim School Counselor, Mrs. Miller for Individual Counseling for T___.

# CONFIDENTIAL

T' ▬▬▬▬▬ J. W ▬▬▬▬▬

### Psycho-educational

### EVALUATION



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

Office of Special Education
825 North Capitol Street, N.E., 6th Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

Psycho-Educational Evaluation

Name: T████ J. W██████       Gender: Male
D.O.B.: ███████/00           School: Gibbs Elementary
C.A.: 6-10                   Grade: 1st
Teacher: Ms. Verdell         Phone: (202) 399-2516
ID #: 9108685                D.O.E.: (WISC-IV 02/09/07)
                                     (WIAT-II 01/31/07)

Examiner: Andrew Johnson, M.A., L.P.C.
Title: Psychologist
Lic/Certification: Standard Certification

## REASON FOR REFERRAL

Although T████ has been evaluated in the past, he continues
to experience behavioral difficulties at school that are
impacting his learning. Caregivers would like an updated
evaluation for him so we can have a more useful picture of
his current functioning, and use the information gleaned from
the evaluation to help determine the best educational program
for him.

## BACKGROUND INFORMATION

Records indicate that T████ attended the National Children's
Center (NCC) in Southeast Washington, D.C. where he was
apparently participating in a program for children with
developmental delays. Related August 2005 Multi-disciplinary
Team (MDT) meeting notes indicate that T████ was no longer
eligible for Special Education services, and would no longer
receive the related specialized instruction.

MDT meeting notes refer to a recent report that indicated
that T████ " ... required some breaks, which is typical for
his age", and that " ... all academic, cognitive, and
adaptive skills fall in the normal range". Team members
agreed that T████ should have been exited from the program
and that he needed to be " ... exposed to children his own age
who are non disabled".

39

2

There is a Children's National Medical Center "CHC Treatment Record" that indicates that T██████ was brought to the hospital for the flu, and some behavioral and developmental issues. The behavioral issues had to do with discipline, difficulty keeping still, and some incidents where T█████ was tying things around his neck, and animal's necks.

There is also an Individualized Educational Program (IEP) document for T██████ that indicates that the date of his last IEP meeting was 2/22/05 when T█████ was 4 years old. His primary disability classification is listed as "Developmental Delays" and he was supposed to receive 30 hours per week of specialized instruction. The services were supposed to continue for ten (10) months.

There is a MDT Student Evaluation Plan (SEP) document indicating that the MDT met on 1/30/07, and there is a "Confidential Report of Psycho educational reevaluation" that was completed on 3/11/05 when T█████ was 4 years 11 months, attending NCC School. The results of that evaluation indicates that T███████ cognitive abilities are average, and the test used to measure his pre-academic skills showed that those pre academic skills related to his math skills, reading skills, and writing skills, were in the average range.

### OBSERVATIONS

T█████ presented as a cooperative, pleasant student who had a positive attitude toward the testing/interview situation. He is right handed and holds a pencil relatively well when he writes and/or draws. Both fine and gross motor skills appear to be adequate. During testing, T█████ seemed to address all of the test items as well as he could, and did not seem to spend too much time on things he was sure he did not know.

### TEST ADMINISTERED

Mental Status Exam (MSE)
Wechsler Intelligence Scale for
Children-Fourth Edition (WISC-IV)
Wechsler Individual Achievement Test (WIAT-II)
Bender Visual Motor Gestalt Test (BVMGT)
Draw A Person Test (DAP)
Behavior Assessment System for Children-2nd Edition (BASC-2)

3

## TEST RESULTS

The Mental Status Exam (MSE) was used to assess some attributes that the more formal tests do not measure, and to help provide support for, evidence of, and to help validate T█████ mental state. These measures are also helpful in determining starting points for the more formal tests.

The initial indications of this test were that T█████ ability to focus on and attend to information is relatively good, and that his abstract reasoning and math skills are functioning, but this may be an area where he is having some difficulty.

T█████ scored 50% on the short-term memory exercise. Most 6 year old children do better on this. Initial indications were also that his word recognition skills may be as high as the 1st grade level, and his information repertoire may be lacking.

T█████ completed the sentence "I am happiest when ...", saying "I am a costume chicken with pink mushroom on top". He completed the sentence "I am sad sometimes when ...", saying "When I can't watch TV or a play". And, he completed the sentence "Sometimes I get bothered by ...", saying "Mean bullies".

At the time, T█████ outlook for the future could have been considered positive from one perspective in that he said that he would like to be a "Computerist" when he grows up, "because I like computers".

The Wechsler Intelligence Scale for Children (WISC-IV) is used to assess the general thinking and reasoning skills of children aged 6 years to 16 years. This test has five main scores: Verbal Comprehension score, Perceptual Reasoning score, Working Memory score, Processing Speed score, and Full Scale score.

The Verbal Comprehension score indicates how well T█████ did on tasks that required him to listen to questions and give spoken answers to the questions. These tasks evaluate his skills in understanding verbal information, thinking and reasoning with words, and expressing thoughts as words.

4

The Perceptual Reasoning score indicates how well he did on
tasks that required him to examine and think about things
such as designs and pictures, and to solve problems without
using words.  These tasks evaluate his skills in solving
nonverbal problems, sometimes using eye-hand coordination,
and working quickly and efficiently with visual information.

The Working Memory score indicates how well he did on tasks
requiring him to learn and retain information in memory while
utilizing the learned information to complete a task.  These
tasks measure his skills in attention, concentration, and
mental reasoning.  This skill is closely related to learning
and achievement.

The Processing Speed score indicates how well T_____ did on
tasks requiring him to quickly scan symbols and make
judgments about them.  These tasks measure his skills in
speed of mental problem solving, attention, and eye-hand
coordination.  This skill may be important to his
development in reading, and ability to think quickly in
general.

The Full Scale score is derived from the combination of the
Verbal Comprehension, Perceptual Reasoning, Working Memory,
and Processing Speed scores.  The WISC-IV Full Scale score is
one way to view T_____ overall thinking and reasoning
skills.

Composite Scores Summary

| Scale | Sum of Scaled Scores | Composite Score | Percentile Rank | 95% Confidence Interval | Qualitative Description |
|---|---|---|---|---|---|
| Verbal Comprehension (VCI) | 23 | 87 | 19 | 81-95 | Low Average |
| Perceptual Reasoning (PRI) | 30 | 100 | 50 | 92-108 | Average |
| Working Memory (WMI) | 18 | 94 | 34 | 87-102 | Average |
| Processing Speed (PSI) | 27 | 121 | 92 | 110-127 | Superior |
| Full Scale (FSIQ) | 98 | 99 | 47 | 94-104 | Average |

This test shows that T_____ general cognitive ability is
within the Average range of intellectual functioning, as
measured by his Full Scale IQ score.  His general thinking
and reasoning abilities exceed those of approximately 47% of
children his age (FSIQ = 99).  He performed much better on
nonverbal than on verbal reasoning tasks.  Such differences
in performance, however, are not especially unusual among
children in general.

5

T█████ verbal reasoning abilities as measured by the Verbal Comprehension Index are in the Low Average range and above those of only 19% of his peers (VCI = 87). The Verbal Comprehension Index is designed to measure verbal reasoning and concept formation. T█████ performed comparably on the verbal subtest contributing to the VCI, suggesting that these verbal cognitive abilities are similarly developed.

**Verbal Comprehension Subtest Score Summary** (Total Raw Score to Scaled Score Conversions)

| Subtest | Raw Score | Scaled Score | Percentile Rank |
|---|---|---|---|
| Similarities | 8 | 8 | 25 |
| Vocabulary | 16 | 8 | 25 |
| Comprehension | 9 | 7 | 16 |
| (Information) | 10 | 9 | 37 |
| (Word Reasoning) | 10 | 11 | 63 |

T█████ nonverbal reasoning abilities as measured by the Perceptual Reasoning Index are in the Average range and above those of approximately 50% of his peers (PRI = 100). The Perceptual Reasoning Index is designed to measure fluid reasoning in the perceptual domain with tasks that assess nonverbal concept formation, visual perception and organization, simultaneous processing, visual-motor coordination, learning, and the ability to separate figure and ground in visual stimuli.

T█████ performance on the perceptual reasoning subtests contributing to the PRI is somewhat variable, although the magnitude of this difference in performance is not unusual among children his age. Examination of T█████ performance on individual subtests provides additional information regarding his specific nonverbal abilities.

**Perceptual Reasoning Subtest Score Summary** (Total Raw Score to Scaled Score Conversions)

| Subtests | Raw Score | Scaled Score | Percentile Rank |
|---|---|---|---|
| Block Design | 8 | 8 | 25 |
| Picture Concepts | 11 | 10 | 50 |
| Matrix Reasoning | 15 | 12 | 75 |
| (Picture Completion) | 16 | 10 | 50 |

6

T████ ability to sustain attention, concentrate, and exert mental control is in the Average range. He performed better than approximately 34% of his age-mates in this are (Working Memory Index = 94).

T████ performed much better on the Digit Span subtest (Scaled Score = 12) than on the Letter-Number Sequencing subtest (Scaled Score + 6). A direct assessment of his short-term auditory memory, performance on the Letter-Number Sequencing subtest requires attention, concentration, and mental control and can be influenced by the ability to correctly sequence information.

Mental control is the ability to attend to and hold information in short-term memory while performing some operation or manipulation with it and then to correctly produce the transformed information. T█████ difficulty in recalling long spans of digits backward is evidence of weak mental control. This weakness may impede the processing of complex information for him and slow new learning. Solving mathematical problems without pencil and paper also requires mental control.

Wechsler Memory Subtest Score Summary (Digit Num Scale to Scaled Score Conversion)

| Subtests | Raw Score | Scaled Score | Percentile Rank |
|---|---|---|---|
| Digit Span | 13 | 12 | 76 |
| Letter-Number Sequencing | 5 | 6 | 9 |
| (Arithmetic) | 7 | 6 | 9 |

T█████ ability in processing simple or routine visual material without making errors is in the Superior range when compared to his peers. He performed better than approximately 92% of his peers on the processing speed tasks (Processing Speed Index = 121).

T██████ performance on the subtests that comprise the PSI is quite variable; therefore, the PSI score should be interpreted with caution. He performed much better of Coding (Scaled Score = 16), which is more demanding of fine-motor skills, short-term memory, and learning ability, than on Symbol Search (Scaled Score = 11), which is more demanding of attention to detail and mental control.

7

Processing visual material quickly is an ability that T██████ performs well as compared to his verbal and nonverbal reasoning ability. Processing speed is an indication of the rapidity with which T██████ can mentally process simple or routine information without making errors. Good speed of simple information processing may free cognitive resources for the processing of more complex information, and ease new learning.

**Processing Speed Subtest Scores Summary** (Total Raw Score to Scaled Score Conversions)

| Subtests | Raw Score | Scaled Score | Percentile Rank |
|---|---|---|---|
| Coding (CD) | 60 | 16 | 98 |
| Symbol Search (SS) | 24 | 11 | 63 |



**WISC-IV Subtest Scaled Score Profile**

Vertical bar represents the Standard Error of Measurement.

| Subtest | Score | SEM | Subtest | Score | SEM |
|---|---|---|---|---|---|
| Similarities (SI) | 8 | 1.27 | Picture Completion (PCm) | 10 | 1.2 |
| Vocabulary (VC) | 8 | 1.27 | Digit Span (DS) | 12 | 1.12 |
| Comprehension (CO) | 7 | 1.34 | Letter-Number Sequencing (LN) | 8 | 0.86 |
| Information (IN) | 8 | 1.24 | Arithmetic (AR) | 6 | 1.12 |
| Word Reasoning (WR) | 11 | 1.37 | Coding (CD) | 16 | 1.59 |
| Block Design (BD) | 8 | 1.24 | Symbol Search (SS) | 11 | 1.37 |
| Picture Concepts (PCn) | 10 | 1.2 | | | |
| Matrix Reasoning (MR) | 12 | 0.99 | | | |

45

8

The Wechsler Individual Achievement Test (WIAT-II) is an academic test that assesses the student's current level of functioning in specific academic areas. It indicates the age and grade level of the student, indicates specific areas of strengths and weakness, and helps provide some insight into how the student's academic achievement relates to the student's cognitive abilities.

### Summary of WIAT-II Subtest Scores

| SUBTESTS* | RAW | STD | 95% INTERVAL | PR | NCE | S9 | AGE EQU | GRADE EQU |
|---|---|---|---|---|---|---|---|---|
| Word Reading | 42 | 87 | 84-90 | 19 | 32 | 3 | 8:0 | K:8 |
| Reading Comprehension | 26** | 65 | 60-70 | 1 | 1 | 1 | <6:0 | <1:0 |
| Pseudoword Decoding | 0 | 66 | 62-90 | 18 | 30 | 3 | 4:0 | PreK6:0 |
| Numerical Operations | 6 | 78 | 67-89 | 7 | 19 | 2 | 5:4 | K:2 |
| Math Reasoning | 9 | 71 | 63-79 | 3 | 9 | 1 | 4:8 | PreK5:2 |
| Spelling | 6 | 80 | 73-87 | 9 | 22 | 2 | 6:4 | K:5 |
| Listening Comprehension | 17 | 100 | 86-112 | 50 | 50 | 5 | 6:8 | 1:2 |

* WIAT-II age-based normative information was used in the calculation of subtest and composite scores.
** Represents Reading Comprehension weighted raw score.

T_____ WIAT-II results show that he has a diverse set of skills on different aspect of reading. T_____ Reading Composite score is 77. Related tasks required him to name alphabet letters, identify and generate letter sounds and rhyming words, and match and read a series of printed words, match words with pictures, read sentences, and correctly apply phonetic decoding rules when reading a series of nonsense words. Generally speaking, his skills are currently in the "Borderline" range. Approximately 94% of children his age outperform him in this area.

In overall mathematics skills T_____ also performed in the Borderline range, as indicated by his Mathematics Composite standard score (72). His skills in this area are not at the level of approximately 97% of other students his age.

9

T█████ performance on tasks that required him to identify and write numbers, count, and solve basic addition and subtraction problems (Numerical Operations standard score = 78) is comparable to his performance on tasks that requires him to understand basic number concepts, including unit and geometric measurement, and solve one-step word problems (Math Reasoning standard score = 71).

T█████ performed in the Average range on tasks that required him to identify the picture that best represents an orally presented descriptor or generate a word that matches the picture as indicated by his Listening Comprehension standard score (100). His skills in this area exceed that of approximately 50% of students his age.

On tasks that required him to write one's name and print letters that correspond to sounds and words T█████ performed in the Low Average range. He achieved a Spelling standard score of 80. His skills in this area are not at the level of approximately 91% of other students his age.

So, T█████ is having the most difficulty with reading and math. His related skills are extremely low. His being able to solve a word or stated problem requiring single or multiple steps related to time money, measurement, is in the "Borderline" range, as are his skills in solving written math problems.

T█████ spelling skills, and his skill in sounding out words, and in reading words should be considered "Low Average". When T█████ is required to listen to a word or sentence and match what he hears to a picture, or when he is required to look at a picture and orally respond in order to demonstrate understanding, T█████ skills were measured as being in the average range.

47

10

## WIAT-II Graph Of Subtest Standard Scores



| Subtest | SS | SEM | Subtest | SS | SEM |
|---|---|---|---|---|---|
| Word Reading (WR) | 87 | 1 | Spelling (SP) | 80 | 3 |
| Reading Comprehension (RC) | 65 | 2 | | | |
| Pseudoword Decoding (PD) | 86 | 2 | Listening Comprehension (LC) | 100 | 8 |
| Numerical Operations (NO) | 78 | 6 | | | |
| Math Reasoning (MR) | 71 | 3 | | | |

11

The Bender Visual Motor Gestalt Test (BVMGT) is used to help determine if the student's combined capability of adequately seeing and reproducing a variety of designs is functioning. It can help the examiner see if the student's perceptual/motor skills are adequate, and the examiner can make an inference as to whether or not the ability of the student to write is adequate.

T███ made eleven (11) errors on this test that could be scored. There were 3 Distortion errors, 3 Rotation errors, 2 Integration errors, a Disproportion error, Perseveration error, and a Shape Lost error. Eleven errors has a corresponding age equivalent score of between 5 years 4 months, to 5 years 5 months. The inference is that those visual motor skills that are related to T██████ ability to write, may be somewhat delayed, but not significantly so.

The BVMGT is also used as a neurological instrument to help determine the possibility of neurological difficulties, reading and learning disturbances, organic problems, and some other personality characteristics. The most prominent indicators in T███████ drawings are related to the possibility that he is coping with an organic problem. There are only two indicators pointing to his possibly coping with some emotional issues though, and ordinarily would not be mentioned. They are mentioned because of his observed behavior in the classroom, and related indicators seen in another projective test, i.e., the DAP.

The Draw A Person Test (DAP) is another projective test that can give the examiner insight into some personality characteristics that could be important for the student's good social/emotional functioning. There are not a lot of indicators in this drawing pointing to any particular pathological condition. There are a few indicators though, that point to the possibility that T█████ is coping with some emotional issues that may need to be addressed.

The Behavior Assessment System for Children-2nd Edition (BASC-2) is a rating scale, rather than a test, that helps provide insight into possible hyperactivity, attention, emotional problems, and insight into adaptive and mal adaptive behaviors. The child's behavior is scrutinized from as many as three perspectives sometimes, Self, Teacher, and Parent. Information gleaned from this assessment is based on the respondent's, i.e., the parent, teacher, and/or child's rating of the person who is being assessed.

49

12

T█████ teacher was the rater for this assessment.  The
reader should note that scores in the "Clinically
Significant" range suggest a high level of maladjustment,
while "Scores in the 'At Risk' range may identify a
significant problem that may not be severe enough to require
formal treatment or may identify the potential of developing
a problem that needs careful monitoring."

T█████ rating on the BASC-2 is such that most of his
behavioral symptoms fall into either the "Clinically
Significant", or the "At Risk" range of functioning.  The
ratings for T████ tended to be relatively high compared to
the general population for a number of diagnostic
considerations, including an Attention-Deficit/Hyperactivity
Disorder, Conduct Disorder, Dysthymic (Mood) Disorder, and a
Depressive Disorder.

The most frequent "Almost always" responses on this
assessment are associated with the criteria for an Attention-
Deficit/Hyperactivity Disorder where T████ almost always has
trouble staying seated, bothers other children when they are
working, is overly active, acts without thinking, and is
easily distracted for example.  The second most frequent
"Almost always" responses are associated with the criteria
for a "Dysthymic Disorder", where T████ almost always has a
short attention span, loses his temper too easily, is easily
upset, easily distracted, and is almost always negative about
things.

Summary and Conclusions

T█████ reasoning, thinking, and problem solving abilities
should be considered average.  He has a WISC-4 Full Scale IQ
score of 99.  His IQ score, i.e. a representation of his
intellectual functioning is misleading though.  The IQ score
is usually accepted as a reasonable predictor of the child's
potential for educational success.  Because of the unique
pattern of scores presented in T██████ cognitive test
profile, it is more important to look at T██████ four
different cognitive clusters, and look at his individual
subtest scores.

For example, T██████ overall Processing Speed (PSI) score is
in the "Superior" range with a corresponding standard score
on the related test of 121.  When he is required to
accurately copy information in class, and when he is
following letters, and words across a page, test results
indicate that T████ is able to do that much better than most
other children his age.

13

However, when T█████ has to properly interpret real life situations, understand what he reads, hold information in short-term memory, manipulate that information and then effectively use the information, and adequately deal with arithmetic problems, most children T█████ age outperform him in these areas. So, T█████ has some specific cognitive attributes in areas that are most important to facilitate his learning in school, that are considerably lower than most other children his age.

From an academic perspective, all of T█████ measured academic achievement levels are below the level expected for him, given his overall average cognitive functioning, indicated by his WISC-4 FSIQ score of 99. This is not terribly suprising, given his unique cognitive attributes. When comparing his scores on the WIAT-II to the levels of achievement predicted for a student with his general cognitive ability, T█████ displays difficulty with achievement in reading and in mathematics. He scored much lower on both the Reading Composite (actual score =77), an on the Mathematics Composite (actual score = 72) than expected for a child with his general cognitive ability. His predicted scores were 99 for both reading and math.

The difference between the predicted scores and actual scores are significant and highly unusual, and indicate specific weakness in tasks that required him to match words with pictures, read sentences and paragraphs and answer questions about what was read, and correctly apply phonemic decoding rules. The difference between the predicted scores and actual scores also indicate specific weakness in tasks that required him to understand basic number concepts, including unit and geometric measurement, and solve one-step word problems, and a weakness on tasks that require him to identify and write numbers, count, and solve basic addition and subtraction problems. These differences help support T█████ qualifying for the District of Columbia Public School's Special Education Program as a "Learning Disabled" student.

Records indicate that T█████ has experienced a number of challenges related to behavioral issues in school. This is an area that needs considerably more attention than it is getting. Projective test indicators and an analysis/results of T█████ Behavior Assessment Scale for Children (BASC-2) support this notion. Some of T█████ behaviors are interfering with his learning process.

51

14

# Recommendations

1. T████ should participate in the school's **Special Education** program where he can get the added attention and alternative methods of teaching/learning put towards better developing some of his cognitive abilities, and specific aspects of his reading and arithmetic abilities.

    A. His ability to properly interpret real life situations, his ability to deal with arithmetic problems, and his better developing an aspect of his "Mental Control" should be specifically targeted for improvement.

    B. His academic levels in reading and mathematics should be specifically targeted for improvement.

2. In a counseling situation, have T████ discuss with the counselor:

    A. Problems or social situations presented in pictures, filmstrips, books or games. If the counselor does not have his or her own instruments to address this, use What Do You Think? by Learning Works (a subsidiary of Creative Teaching Press) at P.O. Box 2723, Huntington Beach, CA 92647-0723, or at www.thelearningworks.com, 1-800-444-4287.

    B. Coping strategies for dealing with stressful situations. He should ultimately be able to relate two (2) different strategies for coping with each of two specific situations that produce a stressful situation for him.

3. For at least an hour per day, everyday, T████ teacher should review with him basic addition and subtraction facts, using visual prompts and manipulatives.

15

4. For at least an hour per day, everyday, have T▓▓▓▓
practice the sounds that groups of two and three letters of
the alphabet make.

   A. Have T▓▓▓▓ both write and recite the "Alphabet
      principal" so that he is able to explain the principle
      to someone else, using two examples that he "Makes up".

   B. For at least twenty (20) minutes per day, everyday,
      have T▓▓▓▓ use 3 dimensional letters of the alphabet
      where he is required to say what sounds groups of two
      and three letters of the alphabet that have been put
      together in random order make.

   C. It is _imperative_ that he feels, sees, and says the
      sounds of the groups of letters, simultaneously.
      Please ask the school psychologist to demonstrate how
      this should be done.

5. For approximately twenty (20) minutes per day, everyday,
have T▓▓▓▓ practice the following exercises:

   A. Repeat three numbers in correct sequence from the
      smallest to the largest after hearing a random series
      of numbers spoken that are between one and ten (e.g.,
      8, 2, 5: correct answer: 2, 5, 8).

   B. Repeat three letters in correct alphabetical sequence
      after hearing a set of three letters spoken that are
      not in alphabetical sequence (e.g., a, j, d: correct
      answer: a, d, j).

   C. Note that the level of difficulty of these exercises
      can be adjusted, by increasing the number of letters or
      numbers, using both letters and numbers together,
      and/or by limiting the amount of time to complete the
      exercise.

16

6. Caregivers should consider a different physical placement
for T██████, i.e., either a different classroom where the
opportunities for distraction are much less, or a different
school where the opportunities for distraction are much less.


* The reader should note that recommendations usually address a
  weakness, and people would generally rather do things that are easier
  for them, rather than harder for them. So, the nature of most of the
  recommendations here is that this is something that will be beneficial
  to T██████, but is also likely to be difficult for T██████, and
  therefore more difficult to have T██████ follow the recommendations.

The reader should also note that T██████ rate of academic progress is
directly correlated with how closely he follows these recommendations.


Andrew Johnson
School Psychologist
February 28, 2007
Phone: (202) 581-5339 Hm.
E-Mail: andrewjohnson70@hotmail.com

54