UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| T.W., a Minor,<br>By parent and next friend<br>MS. DOROTHY WATSON,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br>A municipal corporation, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 07-1716 (EGS)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER

### I. Introduction

Plaintiffs, by counsel, reply to Defendants' Opposition to Plaintiffs' Motion for a Temporary Restraining Order, reasserting that this Court retains subject matter jurisdiction in the present case. Plaintiffs also respectfully oppose Defendant's assertions that Plaintiffs do not meet the four-pronged test for a grant of the injunctive relief requested. At its core, this case is distinctive from the other IDEIA cases cited by Defendant because: 1) the level and scope of procedural and substantive violations by DCPS have effected what is a serious and urgent situation and 2) the true seriousness and urgency of the situation have forced Plaintiffs to take the "extraordinary" step of seeking relief in the form of a preliminary injunction and temporary restraining order in this Court. Moreover, Defendants have misconstrued and misrepresented several facts of the case, which Plaintiffs seek to clarify and reiterate with this reply.

1

## II. Plaintiffs appropriately invoke this Court's jurisdiction

Subject matter jurisdiction is retained in this matter because exhaustion of administrative remedies would be futile and/or inadequate, and irreparable harm is being perpetrated by Defendants on T.W. on a daily basis. This Court has in fact asserted subject matter jurisdiction in cases substantially similar to the case presently before the Court. *See Massey v. District of Columbia*, 400 F. Supp. 2d 66 (D.D.C. 2005); *Cox v. Brown*, 498 F. Supp. 823, 827 (D.D.C. 1980). While those judicial decisions recognize that the "futile or inadequate" standard to overcome the exhaustion requirement is "difficult to meet," *Massey*, 400 F. Supp 2d at 70, they also provide important guidance as to when exhaustion is not required. To wit, when DCPS fails to comply with the mandates of the law, which include a "panoply of [due process] rights to children and their parents or guardians," it would

> ...def[y] comprehension to find congressional intent in this statute which would result in the denial of equitable relief to the vulnerable in an instance when the plaintiffs have been able to demonstrate the substantial likelihood [of success on the merits] ... and where patent irreparable harm will occur absent prompt judicial relief.

*Cox*, 498 F. Supp. at 827.

Even more plainly, this Court has found jurisdiction based on a set of dispositive facts nearly *identical* to those present for T.W. *See Massey v. District of Columbia*, 400 F. Supp. 2d 66 (D.D.C. 2005). Specifically, the court in *Massey* asserted subject matter jurisdiction by holding that the "futile or inadequate" standard was met when "[f]irst, DCPS ... failed to provide [the student] an appropriate placement ... [s]econd, DCPS failed to hold the resolution session in a timely matter ... [and t]hird DCPS failed to respond to the hearing request in the substance required by the statute. *Id.* at 70. Each of

these failures is among those documented by Plaintiffs. The *Massey* court was unequivocal in its assessment of how these failures should apply to the exhaustion requirement that Defendants so vigorously rely upon:

> Because of DCPS' repeated failures to follow unambiguous terms of the law and to acknowledge and correct its mistakes, this Court cannot find that DCPS' process for administrative relief would be adequate. DCPS has provided this Court no basis on which to infer it is taking seriously the [Plaintiffs'] claims, nor to trust that it will be able to follow the IDEA in addressing those claims.

*Id.* at 71-72.

In the present case, DCPS has clearly failed in each of the three areas identified by the *Massey* court. First, Plaintiffs have provided extensive evidence demonstrating that DCPS has failed to provide an appropriate placement for T.W. for more than two years, and continues to fail today to provide T.W. with even a safe educational placement. *See* Exhibits P-1; P-3; P-4; P-5; P-7; P-10. Second, Defendants failed to hold the resolution session at all. Third, Defendants failed to respond to the complaint in a timely and legally sufficient manner. *See* Exhibits P-14; 15; and 16. Plaintiffs filed a due process complaint notice on August 1, 2007, challenging T.W.'s IEP and placement. *See* Exhibit P-4. Plaintiffs then waited for the legally mandated resolution session to occur within the required 15 days;[1] plaintiffs also waited for the legally mandated written response to the due process complaint within the required 10 days. DCPS failed to comply with either of these requirements. The written response – when it was delivered well beyond the statutory deadline – was wholly and utterly inadequate, as it failed to address the core issues of the complaint or to comply with any of the explicit

---

[1] Contrary to Defendants' assertion that Plaintiffs could have moved to waive the 30-day resolution period pursuant to SHO Standard Operating Procedures § 400.1(c), such a waiver is only possible if *both* parties agree to waive the resolution period. Because DCPS was unresponsive during this time, obtaining such a waiver was impossible for the plaintiff.

3

requirements to provide: (1) an explanation of why the school district refused to take the actions raised in the complaint, (2) a description of other options that were considered and the reasons why those options were rejected, (3) a description of the evaluation, procedure, assessment, record or report the school district used as the basis for the refused action, and (4) a description of the factors that are relevant to the school district's refusal. *See* 20 U.S.C. § 1415 (c)(2)(B); Exhibit P-16. The Supreme Court has opined that these procedural requirements are of comparable importance to any procedural – and even substantive – protection in the IDEIA.[2] *See Schaffer v. Weast*, 546 U.S. 49, 61 (2005). It is compliance with these procedural safeguards that "gives parents faith that their concerns will be addressed in accordance with Congress' intent." *See Massey*, 400 F. Supp. 2d at 72; *see also Blackman v. District of Columbia*, 277 F. Supp. 2d 71, 78 (D.D.C. 2003). When DCPS has repeatedly failed to pay sufficient attention to Plaintiffs' good faith efforts to utilize administrative avenues, this Court should be highly suspicious about contentions that the administrative process will adequately and timely function or that the exceptions to the exhaustion requirement should not apply.[3]

---

[2] In an effort to vindicate the due process rights that have been effectively ignored by DCPS, Plaintiffs filed a Motion for Entry of Default Judgment on August 28, 2007. *See* Exhibit P-17. Defendants argue that plaintiffs should be neither surprised nor aggrieved by the fact that the Office of General Counsel and the Student Hearing Office have neither responded to nor ruled on this Motion one month later, *long* after the expiration of the 30-day resolution period that Defendants claim make taking action on such a Motion unnecessary.

[3] Defendants' claim that "there is simply no practical reason for this Court's involvement" ignores the continued failure of DCPS to comply with *any* procedural due process requirement thus far as well as the serious and urgent issue of a seven-year old child who is presently in a school placement that not only categorically denies him the Free and Appropriate Public Education to which he is entitled, but also effects a *highly* dangerous environment for himself, school staff, and other students.

4

### III. Defendants' claim that "Plaintiff has frustrated DCPS' efforts to comply with the IDEIA" is disingenuous

Plaintiffs have made consistent and diligent efforts to resolve this urgent matter in a timely way. Of even greater significance, the parent has made every effort to obtain an appropriate educational placement for her son ever since he was exited from special education prior to the 2005-06 school year. *See* Exhibits P-1; P-3; and P-6. Defendants choose to ignore its own repeated failures to respond to Plaintiffs' efforts to resolve the due process complaint through the legally mandated guidelines.

The incidents Defendants set forth as evidence that plaintiffs have frustrated DCPS' efforts include the MDT meeting of September 25, 2007, to discuss a "behavior plan review" and "Personal Health Information," Defendants' Exhibit 5, and a Manifestation Determination meeting of September 7, 2007 to which neither Plaintiff nor Plaintiffs' counsel were invited by means of legally required written notice that provides the date and time of the meeting. As to the MDT meeting of September 25, 2007, Plaintiffs' counsel informed all parties that this meeting was inappropriate, as it did nothing to address the parent's complaint regarding the inappropriate IEP and placement; the notice itself indicated that only a "behavior plan review" and "Personal Health Information" would be discussed, when the parent's complaint clearly states that the only appropriate resolution would, at a minimum, demand immediate placement in an appropriate educational setting such as The Children's Guild, as T.W. urgently requires a special education program and placement that ensures his safety and well being as well as provides him with educational benefit. What is more, Defendant provided a Meeting Notice to the MDT meeting of September 25, 2007 less than four hours before the meeting was to be convened. *See* Defendant's Exhibit 5. With the parent already at her

job and unable to adjust her schedule on such short notice, counsel informed all parties that the parent would be unable to attend the meeting. *See* Defendant's Exhibit 6.

As to the manifestation meeting of September 7, 2007, also cited by Defendants on this issue, DCPS did not inform Plaintiffs' counsel about the meeting and Plaintiffs' counsel did not find out about the meeting until September 24, 2007, when the school's special education coordinator mentioned it to Plaintiffs' educational consultant. The required written notice was never provided to the parent or to Plaintiffs' counsel.[4]

In sum, Defendants' claims that Plaintiffs have frustrated DCPS' efforts and even "contribute[d] to the harm of the student" distort the reality of this serious and urgent situation. The extensive harm to T.W. is the product of DCPS' wrongful decision to exit him from a full-time special education placement in August 2005, its failure to provide any special education services at all for nearly two years in spite of numerous red flags that he required considerable services and supports, and its continued failure to provide an appropriate special education placement and program that can serve T.W.'s extensive academic and social/emotional needs. These failures and violations have caused harm to T.W. for years, and the situation has reached a tipping point in which T.W. faces imminent danger *each day* he remains in his present classroom setting. Meanwhile, as Plaintiffs have attempted to utilize the IDEIA's administrative process to vindicate their rights and resolve their complaint and, at long last, to obtain a safe and appropriate educational setting for T.W., Defendants have not met a *single* statutory requirement or deadline. In the meantime, the situation has become so dangerous and so untenable that Plaintiffs should not be forced to wait and to trust that DCPS will comply with the IDEIA

---

[4] Notably, the manifestation meeting is not at issue in Plaintiffs' complaint and motion for injunctive relief, nor is it relevant to the issue of T.W.'s present educational placement and its ability to provide for his and others' safety and well being.

6

by timely resolving the complaint through the administrative process. Plaintiffs have established the futility and inadequacy of the administrative process, as T.W. remains in a state of crisis for lack of an appropriate educational setting.

### IV. Plaintiffs have met each factor in the four-pronged test for granting a motion for temporary restraining order

Plaintiffs reiterate that they have met the four-prong test for granting a temporary restraining order: In order to be granted injunctive relief, a plaintiff must show that: (1) it is likely to prevail on the merits of the appeal; (2) without the relief requested it will suffer irreparable injury; (3) the issuance of the injunction would not substantially harm other interested parties; and (4) the public interest lies with the granting of the injunction. *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F.2d 921, 925 (D.C. Cir. 1958); *see also Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). Defendants provide little evidence or reasoning that these four factors are not met.

First, in responding to Plaintiffs' claims that they have a substantial likelihood of success on the merits, Defendants emphasize the outcome of the manifestation meeting of September 7, 2007, ignoring the core issues of the complaint. No substantive argument is made to refute Plaintiffs' claim that they have a substantial likelihood of success on the merits of its claims that include but are not limited to: 1) that DCPS has denied and continues to deny T.W. a Free and Appropriate Public Education; 2) that DCPS has failed to provide an appropriate special education placement and program to serve T.W.'s special needs; 3) that DCPS has denied T.W. and Dorothy Watson their procedural rights

under the IDEIA. *See* Exhibit P-4. There is ample evidence in the record that Plaintiffs have a substantial likelihood of success on the merits.

Second, Defendants briefly argue that the balance of the equities favor denying injunctive relief. The primary basis for this contention – that is, that this would "open the door" to "every applicant unhappy with (potential) DCPS decisions to bypass the mandated process" – defies logic. The facts supporting plaintiffs' motion for injunctive relief are based in large part on *Defendants' **own** repeated failures to comply with any of the procedural requirements that make up the administrative process.* If and when these procedural requirements are met, injunctive relief would be neither appropriate nor necessary.

Third, Defendants' claim that the public interest favors the District, as Plaintiffs' efforts "turn the statutory scheme on its head." Such an assertion also defies logic and ignores past holdings in this jurisdiction that assert unequivocally that, when DCPS disregards the procedural requirements that are the foundation of the administrative process, injunctive relief serves the public interest and is an appropriate means of relief.

Finally, Plaintiffs have clearly established that irreparable harm will continue to come to T.W. if this injunction is not granted. Defendants attempt to refute the irreparable harm prong required for granting injunctive relief, but Defendants fail to address the substantial case law in this jurisdiction regarding the application of this prong in the special education context. *See, e.g., Blackman v. District of Columbia*, 277 F. Supp. 2d 71, 79 (D.D.C. 2003); *Cox*, 498 F. Supp. at 828; *Blackman v. District of Columbia*, 185 F.R.D. 4, 7 (D.D.C. 1999); *Watson v. District of Columbia*, 522 F. Supp. 1102, 1111 (D.D.C. 1981); *Massey v. District of Columbia*, 400 F. Supp. 2d 66 (D.D.C.

2005). Defendant also misstates that T.W. was out of school due to the extended class exclusion until September 26, when in fact the exclusion ended on Tuesday, September 25, 2007.[5]

The triggering incident for this exclusion – the fire that did considerable damage to the school bathroom and required a full evacuation and a fire department response – is ample evidence of the irreparable harm that will occur without injunctive relief from this Court. As further evidence, on T.W.'s first day back at the school on September 26, 2007, following the class exclusion, upon information and belief, he was removed from the classroom twice for impulsive and dangerous behavior that included throwing books and other classroom objects and climbing on classroom lockers. Further, upon information and belief, he was allowed to roam the school's hallways without staff supervision, playing with circuit breaker switches and wires that are (inexplicably) accessible to students.[6] Even beyond the continued academic failure and emotional harm created by this highly inappropriate school placement, irreparable harm should unquestionably be considered imminent and sufficiently likely unless this Court grants immediate injunctive relief.

---

[5] It should be noted that the impetus for this extended class exclusion, which include a 3-day in-school suspension and an 8-day full suspension, is in large part a response to the school's belief that it cannot keep T.W., his peers, and school staff safe given their inability to serve T.W.'s special needs.

[6] Information on these highly dangerous incidents was provided by Plaintiffs' educational consultant and expert, who was at the school to conduct a classroom observation. She informed counsel of these incidents and how she was forced to end the observation in order to intervene in an effort to prevent major harm to T.W. Following the school day, the classroom teacher informed counsel (who had driven the parent to the school to meet with the educational consultant) that she could not control T.W. and feared for his and her own safety.

## V. Relief from this Court is necessary and appropriate on an immediate basis

Defendants argue that this proceeding is unnecessary given the fact that a due process hearing has been scheduled on October 4, 2007 and October 9, 2007. Importantly, these dates do *not* indicate when a resolution might be expected. As the Defendant acknowledges, a Hearing Officer Determination is not due until October 14, 2007, at the conclusion of the 75-day statutory timeline. 20 U.S.C. § 1415(f)(1)(B)(ii); 34 C.F.R. § 300.515. Moreover, as Defendants have failed to meet a *single* statutory requirement or deadline to date, Plaintiffs have no assurance that this requirement will be met, further delaying any kind of resolution to the parent's complaint. At a minimum, Plaintiffs must wait more than two weeks before a Hearing Officer Determination is to be expected, including *at least* eleven (11) additional school days in which T.W. must remain in a highly dangerous and inappropriate school setting that has led to multiple major threats to his (and others') safety, health, and well being.[7] Accordingly, immediate placement at The Children's Guild is both necessary and appropriate.

## VI. Conclusion

Ultimately, the case law as well as the facts strongly support this Court having subject matter jurisdiction of this matter. To T.W.'s detriment, Defendants have essentially ignored and consistently failed to comply with every step of the administrative process, yet request that this case be dismissed to allow the administrative process to run its course. Meanwhile, seven-year old T.W. remains in a life-threatening and volatile

---

[7] Defendants assert counsel "rejected an offer by the Student Hearing Office to schedule the hearing for this week – September 27, 2007, and September 28, 2007." However, the Student Hearing Office never contacted counsel about either of these dates. Plaintiffs, per standard operating procedure, responded to the original hearing notice by providing alternative dates that were available to the parent and parent's counsel, also providing availability for a teleconference in order to discuss other available dates. The Student Hearing Office provided the new dates, October 4, 2007, and October 9, 2007, without further communication. *See* Defendant's Exhibits 2 and 3. Moreover, the relevant date for purposes of this Court remains October 14, 2007, when the Hearing Officer Determination is due based on the statutory timeline.

situation, placed in a classroom that can neither provide for his academic needs nor ensure even a minimum level of safety. Accordingly, this Court should find subject matter jurisdiction proper, find the four prongs for injunctive relief satisfied, and grant a temporary restraining order so that T.W. is finally provided an appropriate special education placement and program that will ensure appropriate behavioral supports and educational services, before another fire or major safety incident causes serious and even lifelong harm.

Respectfully submitted,

_____
Aaron J. Fischer, Esq.
D.C. Bar No. pending (admitted 9/10/07)
*Pro Bono* Counsel for Ms. Watson
The Children's Law Center
616 H Street, NW, Suite 300
Washington, DC 20001
202-467-4900, ext. 525
Fax: 202-552-7125
afischer@childrenslawcenter.org

_____
Tracy L. Goodman, Esq.
D.C. Bar No. 481088
Counsel for Ms. Watson
The Children's Law Center
616 H Street, NW – Suite 300
Washington DC, 20001
(202) 467-4900, X 503
(202) 467-4949 (fax)
tgoodman@childrenslawcenter.org